IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| U.S. Ethernet Innovations, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File |
| | ) | |
| v. | ) | No. 6:09cv448 |
| | ) | |
| Acer, Inc.; Acer America Corporation; Apple, Inc.; | ) | |
| ASUS Computer International; ASUSTeK | ) | |
| Computer Inc.; Dell Inc.; Fujitsu Ltd.; Fujitsu | ) | |
| America Inc.; Gateway, Inc.; Hewlett Packard Co.; | ) | |
| HP Development Company LLC; Sony Corporation; | ) | |
| Sony Corporation of America; Sony Electronics | ) | |
| Inc.; Toshiba Corporation; Toshiba America, Inc.; | ) | |
| and Toshiba America Information Systems, Inc.; | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**ANSWER AND COUNTERCLAIM**
**OF DEFENDANT DELL INC.**

Defendant Dell Inc. ("Dell"), states as follows as its answer and counterclaim to the

complaint of Plaintiff, U.S. Ethernet Innovations, LLC ("USEI"):

**ANSWER**

**NATURE OF THE ACTION**

1.      Plaintiff USEI ("USEI") owns United States Patent Nos. 5,307,459 (the "'459 Patent"), 5,434,872 (the "'872 Patent"), 5,732,094 (the "'094 Patent"), and 5,299,313 (the "'313 Patent").

**ANSWER:**      Dell lacks sufficient information to admit or deny whether USEI owns the

'459 Patent, the '872 Patent, the '094 Patent, and/or the '313 Patent (collectively "the patents-in-

suit").

2.      Each Defendant has made, used, imported, and/or sold and/or continues to make, use, import, and/or sell the technology claimed by the '459 Patent, the '872 Patent, the '094 Patent, and the '313 Patent in systems and methods without USEI's permission.

**ANSWER:**   Denied as to Dell.  Dell lacks sufficient knowledge to either admit or deny allegations of paragraph 2 and therefore denies the same.

3.       Plaintiff USEI seeks damages for each Defendant's infringement of the '459 Patent, the '872 Patent, the '094 Patent, and the '313 Patent.

**ANSWER:**   Dell denies that it infringes any valid claim of any of the patents-in-suit. Dell admits that the Complaint prays for an award of monetary damages.  Dell otherwise lacks sufficient information to admit or deny the remaining allegations of Paragraph 3 and therefore denies the same.

## PARTIES

4.       Plaintiff USEI is a Texas limited liability corporation. USEI's principal place of business is in Tyler, Texas.

**ANSWER:**   Dell lacks sufficient knowledge to admit or deny whether USEI is a Texas limited liability corporation or whether USEI's principal place of business is in Tyler, Texas and therefore denies the same.

5.       On information and belief, Acer, Inc. is a Taiwanese corporation, with a principal place of business at 8F, 88, Section 1, Hsin Tai Wu Road, Hsichih, Taipei 221, Taiwan. On information and belief, Acer America Corporation is a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of California, with a principal place of business at 333 West San Carlos Street, Suite 1500, San Jose, California 95110. On information and belief, Gateway, Inc. is also a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of Delaware, with a principal place of business at 7565 Irvine Center Drive, Irvine, California 92618. Acer, Inc., Acer America Corporation, and Gateway, Inc. will be referred to herein individually and collectively as the "Acer Defendants.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny allegations of paragraph 5 and therefore denies the same.

6.       On information and belief, Apple, Inc. ("Apple") is a corporation organized and existing under the laws of California, with a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 6 and therefore denies the same.


7.   On information and belief, ASUSTeK Computer Inc. is a Taiwanese company, with a
principal place of business at No. 15 Li-Te Road, Peitou, Taipei, Taiwan R.O.C. On
information and belief, ASUS Computer International is a wholly owned subsidiary of
ASUSTeK Computer Inc., and is organized and existing under the laws of California,
with a principal place of business at 800 Corporate Way, Fremont, California 94539.
ASUSTeK Computer Inc. and ASUS Computer International will be referred to herein
individually and collectively as the "ASUS Defendants.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 7 and therefore denies the same.


8.   On information and belief, Dell Inc. ("Dell") is a corporation organized and existing
under the laws of Delaware, with a principal place of business at One Dell Way, Round
Rock, Texas 78682.

**ANSWER:**   Admitted.


9.   On information and belief, Fujitsu Ltd. is a Japanese company, with a principal place of
business at Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-Ku, Tokyo 105-
7123, Japan. On information and belief, Fujitsu America, Inc. is a wholly owned
subsidiary of Fujitsu Ltd., and is organized and existing under the laws of California,
with a principal place of business at 1250 East Arques Avenue, Sunnyvale, California
94085. Fujitsu Ltd. and Fujitsu America, Inc. will be referred to herein individually and
collectively as the "Fujitsu Defendants

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 9 and therefore denies the same.


10.   On information and belief, Hewlett Packard Co. is a company organized and existing
under the laws of Delaware, with a principal place of business at 3000 Hanover Street,
Palo Alto, California 94304. On information and belief, HP Development Company LLC
is a wholly owned subsidiary of Hewlett Packard Co., and is organized and existing under
the laws of Delaware, with its principal place of business at 3000 Hanover Street, MS
1050, Palo Alto, California 94304. Hewlett Packard Co. and HP Development Company
LLC will be referred to herein individually and collectively as the "HP Defendants.

**ANSWER:**    Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 10 and therefore denies the same.

11.    On information and belief, Sony Corporation is a Japanese corporation, with a principal place of business at 1-7-1 Konan, Minato-Ku, Tokyo, 108-0075, Japan. On information and belief, Sony Corporation of America is a wholly owned subsidiary of Sony Corporation, and is organized and existing under the laws of New York, with a principal place of business at 550 Madison Avenue, 27th Floor, New York, New York 10022. On information and belief, Sony Electronics Inc. is also a wholly owned subsidiary of Sony Corporation of America, and is organized and existing under the laws of Delaware, with a principal place of business at 16530 Via Esprillo, San Diego, California 92127. Sony Corporation, Sony Corporation of America, and Sony Electronics Inc. will be referred to herein individually and collectively as the "Sony Defendants."

**ANSWER:**    Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 11 and therefore denies the same.

12.    On information and belief, Toshiba Corporation is a Japanese corporation, with a principal place of business at 1-1 Shibaura 1-Chome, Minato-Ku, Tokyo 105-8001, Japan. On information and belief, Toshiba America, Inc. is a wholly owned subsidiary of Toshiba Corporation, and is organized and existing under the laws of Delaware, with a principal place of business at 1251 Avenue of the Americas, New York, New York 10020. On information and belief, Toshiba America Information Systems, Inc. is a wholly owned subsidiary of Toshiba America, Inc., and is organized and existing under the laws of California, with a principal place of business at 9740 Irvine Boulevard, Irvine, California 92618. Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc. will be referred to herein individually and collectively as the "Toshiba Defendants."

**ANSWER:**    Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 12 and therefore denies the same.

## JURISDICTION AND VENUE

13.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*

**ANSWER:**    Admitted.

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**   Admitted.

15.   Venue is proper in this judicial district because each Defendant is a corporation subject to
personal jurisdiction in this judicial district, 28 U.S.C. §§ 1391(b)-(c).

**ANSWER:**   Denied that venue is proper in this judicial district.  Dell lacks sufficient

knowledge to either admit or deny the allegations of paragraph 15 and therefore denies the same.

16.   On information and belief, Defendants are subject to this Court's specific and general
personal jurisdiction consistent with the principles of due process and/or the Texas Long
Arm Statute, due at least to their substantial business in this forum, including: (1) a
portion of the infringements alleged herein, including making, using, importing, selling,
and/or offering to sell products, methods, and systems that infringe the claims of the '459
Patent, the '872 Patent, the '094 Patent, and the '313 Patent; (2) the presence of
established distribution channels for Defendants' products in this forum; and (3) regularly
doing or soliciting business, engaging in other persistent courses of conduct, and/or
deriving substantial revenue from goods and services provided to individuals in Texas
and in this judicial district.

**ANSWER:**   Dell admits that it is subject to personal jurisdiction in Texas.  Dell lacks

sufficient knowledge to either admit or deny the remaining allegations of paragraph 16 and

therefore denies the same.

17.   The '459 Patent, entitled "Network Adapter with Host Indication Optimization," was
duly and legally issued on April 26, 1994 by the U.S. Patent and Trademark Office to
3Com Corporation, the assignee of the named inventors Brian Petersen, W. Paul Sherer,
David R. Brown, and Lai-Chin Lo. A true and correct copy of the '459 Patent is attached
hereto as Exhibit A.

**ANSWER:**   Dell denies that the '459 Patent was "duly and legally issued."  Dell

admits that Paragraph 17 otherwise accurately summarizes information appearing on the cover

page of the '459 Patent, a copy of which is attached to the Complaint as Exhibit A.  Dell lacks

sufficient knowledge to either admit or deny that the '459 Patent accurately identifies the true

inventors of the claimed inventions and therefore denies the same.

18.     The '872 Patent, entitled "Apparatus for Automatic Initiation of Data Transmission," was duly and legally issued on July 18, 1995 by the U.S. Patent and Trademark Office to 3Com Corporation, the assignee of the named inventors Brian Petersen, David R. Brown, and W. Paul Sherer. A true and correct copy of the '872 Patent is attached hereto as Exhibit B.

**ANSWER:**     Dell denies that the '872 Patent was "duly and legally issued."  Dell admits that Paragraph 18 otherwise accurately summarizes information appearing on the cover page of the '872 Patent, a copy of which is attached to the Complaint as Exhibit B.  Dell lacks sufficient knowledge to either admit or deny that the '872 Patent accurately identifies the true inventors of the claimed inventions and therefore denies the same.

19.     The '094 Patent, entitled "Method for Automatic Initiation of Data transmission," was duly and legally issued on March 24, 1998 by the U.S. Patent and Trademark Office to 3Com Corporation, the assignee of the named inventors Brian Petersen, David R. Brown, and W. Paul Sherer. A true and correct copy of the '094 Patent is attached hereto as Exhibit C.

**ANSWER:**     Dell denies that the '094 Patent was "duly and legally issued."  Dell admits that Paragraph 19 otherwise accurately summarizes information appearing on the cover page of the '094 Patent, a copy of which is attached to the Complaint as Exhibit C.  Dell lacks sufficient knowledge to either admit or deny that the '094 Patent accurately identifies the true inventors of the claimed inventions and therefore denies the same.

20.     The '313 Patent, entitled "Network Interface with Host Independent Buffer Management," was duly and legally issued on March 29, 1994 by the U.S. Patent and Trademark Office to 3Com Corporation, the assignee of the named inventors Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo. A true and correct copy of the '313 Patent is attached hereto as Exhibit D.

**ANSWER:**     Dell denies that the '313 Patent was "duly and legally issued."  Dell admits that Paragraph 20 otherwise accurately summarizes information appearing on the cover page of the '313 Patent, a copy of which is attached to the Complaint as Exhibit C.  Dell lacks

sufficient knowledge to either admit or deny that the '313 Patent accurately identifies the true

inventors of the claimed inventions and therefore denies the same.

21.     USEI is the sole owner of the entire right, title, and interest in the '459 Patent, the '872
        Patent, the '094 Patent, and the '313 Patent (collectively, the "Patents-in-Suit") by virtue
        of assignment, including all rights necessary to prosecute this case and collect all
        damages, past, present and future, resulting from Defendants' infringement.

        **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 21 and therefore denies the same.

## ACCUSED PRODUCTS

22.     The Acer Defendants import, make, use, offer for sale, and/or sell certain products and
        devices which embody one or more claims of the Patents-in-Suit, including, without
        limitation, the TravelMate 621LV, Aspire 1680, Aspire 1800, Veriton 2800, 600Y GR,
        6518GZ, and M460 (collectively, the "Acer Accused Products").

        **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 22 and therefore denies the same.

23.     Apple imports, makes, uses, offers for sale, and/or sells certain products and devices
        which embody one or more claims of the Patents-in-Suit, including, without limitation,
        the Macbook Pro (collectively, the "Apple Accused Products").

        **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 23 and therefore denies the same.

24.     The ASUS Defendants import, make, use, offer for sale, and/or sell certain products and
        devices which embody one or more claims of the Patents-in-Suit, including, without
        limitation, the P4T533-C Motherboard, P4PE  Motherboard, AP1710-E1 Server, and
        Rampage II Extreme (collectively, the "ASUS Accused Products").

        **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 24 and therefore denies the same.

25.     Dell imports, makes, uses, offers for sale, and/or sells certain products and devices which
        embody one or more claims of the Patents-in-Suit, including, without limitation, the Intel
        PRO/100, E1405, D420, and Inspiron 1525 (collectively, the "Dell Accused Products").

**ANSWER:**     Dell admits that it sells and offers for sale Intel PRO/100 network adapters and computers containing such adapters.  Dell admits that it makes, uses, offers for sale, and sells or has made used, offered for sale, and sold Inspiron E1405 computers, Dell Latitude D420 computers, and Dell Inspiron 1525 computers.  Dell denies that these products embody any claims of the Patents-in-Suit, and each and every remaining allegation of Paragraph 25.

26.     The Fujitsu Defendants import, make, use, offer for sale, and/or sell certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, the Lifebook T5010 Tablet PC, Lifebook N3410, Lifebook T4215, and Lifebook S7010 (collectively, the "Fujitsu Accused Products").

**ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 26 and therefore denies the same.

27.     The HP Defendants import, make, use, offer for sale, and/or sell certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, the Pavilion dv9000t CTO Notebook PC, D220, and DC7100 (collectively, the "HP Accused Products").

**ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 27 and therefore denies the same.

28.     The Sony Defendants import, make, use, offer for sale, and/or sell certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, the VAIO VGN-S460 and VGN-SZ740 (collectively, the "Sony Accused Products").

**ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 28 and therefore denies the same.

29.     The Toshiba Defendants import, make, use, offer for sale, and/or sell certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, the Satellite A55-S3063 and Tecra A3-S611 (collectively, the "Toshiba Accused Products").

**ANSWER:**    Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 28 and therefore denies the same.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 5,307,459

30.    USEI restates and realleges the allegations set forth in paragraphs 1 through 29 of this
       Complaint and incorporates them by reference.

    **ANSWER:**    Dell restates and reaffirms its answers to the allegations set forth in

paragraphs 1 through 29.


31.    Without a license or permission from USEI, the Acer Defendants infringed and continue
       to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by
       inducement, by importing, making, using, offering for sale, and/or selling products and
       devices which embody the patented invention, including, without limitation, one or more
       of the Acer Accused Products. The acts of infringement of the '459 Patent by the Acer
       Defendants have caused damage to USEI, and USEI is entitled to recover from the Acer
       Defendants the damages sustained by USEI as a result of the wrongful acts of the Acer
       Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive
       rights under the '459 Patent by the Acer Defendants will continue to damage USEI,
       causing irreparable harm, for which there is no adequate remedy at law, unless enjoined
       by this Court. The Acer Defendants have had actual or constructive knowledge of the
       '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by
       the Acer Defendants is willful and deliberate, entitling USEI to increased damages under
       35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under
       35 U.S.C. § 285.

    **ANSWER:**    Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 31 and therefore denies the same.


32.    Without a license or permission from USEI, the ASUS Defendants infringed and
       continue to infringe one or more claims of the '459 Patent, directly, contributorily, and/or
       by inducement, by importing, making, using, offering for sale, and/or selling products
       and devices which embody the patented invention, including, without limitation, one or
       more of the ASUS Accused Products. The acts of infringement of the '459 Patent by the
       ASUS Defendants have caused damage to USEI, and USEI is entitled to recover from the
       ASUS Defendants the damages sustained by USEI as a result of the wrongful acts of the
       ASUS Defendants in an amount subject to proof at trial. The infringement of USEI's
       exclusive rights under the '459 Patent by the ASUS Defendants will continue to damage
       USEI, causing irreparable harm, for which there is no adequate remedy at law, unless

enjoined by this Court. The ASUS Defendants have had actual or constructive knowledge of the '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by the ASUS Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 32 and therefore denies the same.

33.   Without a license or permission from USEI, Dell infringed and continues to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Dell Accused Products. The acts of infringement of the '459 Patent by Dell have caused damage to USEI, and USEI is entitled to recover from Dell the damages sustained by USEI as a result of the wrongful acts of Dell in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '459 Patent by Dell will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. Dell has had actual or constructive knowledge of the '459 Patent, yet continues to infringe said patent. The infringement of the '459 Patent by Dell is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Denied.

34.   Without a license or permission from USEI, the Fujitsu Defendants infringed and continue to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Fujitsu Accused Products. The acts of infringement of the '459 Patent by the Fujitsu Defendants have caused damage to USEI, and USEI is entitled to recover from the Fujitsu Defendants the damages sustained by USEI as a result of the wrongful acts of the Fujitsu Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '459 Patent by the Fujitsu Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Fujitsu Defendants have had actual or constructive knowledge of the '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by the Fujitsu Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 34 and therefore denies the same.

35.     Without a license or permission from USEI, the HP Defendants infringed and continue to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the HP Accused Products. The acts of infringement of the '459 Patent by the HP Defendants have caused damage to USEI, and USEI is entitled to recover from the HP Defendants the damages sustained by USEI as a result of the wrongful acts of the HP Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under  the '459 Patent by the HP Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The HP Defendants have had actual or constructive knowledge of the '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by the HP Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

     **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 35 and therefore denies the same.

36.     Without a license or permission from USEI, the Sony Defendants infringed and continue to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Sony Accused Products. The acts of infringement of the '459 Patent by the Sony Defendants have caused damage to USEI, and USEI is entitled to recover from the Sony Defendants the damages sustained by USEI as a result of the wrongful acts of the Sony Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '459 Patent by the Sony Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Sony Defendants have had actual or constructive knowledge of the '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by the Sony Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

     **ANSWER:**     Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 36 and therefore denies the same.

37.     Without a license or permission from USEI, the Toshiba Defendants infringed and continue to infringe one or more claims of the '459 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Toshiba Accused Products. The acts of infringement of the '459 Patent by the

Toshiba Defendants have caused damage to USEI, and USEI is entitled to recover from the Toshiba Defendants the damages sustained by USEI as a result of the wrongful acts of the Toshiba Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '459 Patent by the Toshiba Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Toshiba Defendants have had actual or constructive knowledge of the '459 Patent, yet continue to infringe said patent. The infringement of the '459 Patent by the Toshiba Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:** Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 37 and therefore denies the same.

## COUNT II

## <u>INFRINGEMENT OF U.S. PATENT NO. 5,434,872</u>

38. USEI restates and realleges the allegations set forth in paragraphs 1 through 29 of this Complaint and incorporates them by reference.

**ANSWER:** Dell restates and reaffirms its answers to the allegations set forth in

paragraphs 1 through 29.

39. Without a license or permission from USEI, the Acer Defendants infringed and continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Acer Accused Products. The acts of infringement of the '872 Patent by the Acer Defendants have caused damage to USEI, and USEI is entitled to recover from the Acer Defendants the damages sustained by USEI as a result of the wrongful acts of the Acer Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '872 Patent by the Acer Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Acer Defendants have had actual or constructive knowledge of the '872 Patent, yet continue to infringe said patent. The infringement of the '872 Patent by the Acer Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 39 and therefore denies the same.

40.   Without a license or permission from USEI, the ASUS Defendants infringed and
continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or
by inducement, by importing, making, using, offering for sale, and/or selling products
and devices which embody the patented invention, including, without limitation, one or
more of the ASUS Accused Products. The acts of infringement of the '872 Patent by the
ASUS Defendants have caused damage to USEI, and USEI is entitled to recover from the
ASUS Defendants the damages sustained by USEI as a result of the wrongful acts of the
ASUS Defendants in an amount subject to proof at trial. The infringement of USEI's
exclusive rights under the '872 Patent by the ASUS Defendants will continue to damage
USEI, causing irreparable harm, for which there is no adequate remedy at law, unless
enjoined by this Court. The ASUS Defendants have had actual or constructive knowledge
of the '872 Patent, yet continue to infringe said patent. The infringement of the '872
Patent by the ASUS Defendants is willful and deliberate, entitling USEI to increased
damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting
this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 40 and therefore denies the same.

41.   Without a license or permission from USEI, Dell infringed and continues to infringe one
or more claims of the '872 Patent, directly, contributorily, and/or by inducement, by
importing, making, using, offering for sale, and/or selling products and devices which
embody the patented invention, including, without limitation, one or more of the Dell
Accused Products. The acts of infringement of the '872 Patent by Dell have caused
damage to USEI, and USEI is entitled to recover from Dell the damages sustained by
USEI as a result of the wrongful acts of Dell in an amount subject to proof at trial. The
infringement of USEI's exclusive rights under the '872 Patent by Dell will continue to
damage USEI, causing irreparable harm, for which there is no adequate remedy at law,
unless enjoined by this Court. Dell has had actual or constructive knowledge of the '872
Patent, yet continues to infringe said patent. The infringement of the '872 Patent by Dell
is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and
to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Denied.

42.   Without a license or permission from USEI, the Fujitsu Defendants infringed and
continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or
by inducement, by importing, making, using, offering for sale, and/or selling products
and devices which embody the patented invention, including, without limitation, one or

more of the Fujitsu Accused Products. The acts of infringement of the '872 Patent by the Fujitsu Defendants have caused damage to USEI, and USEI is entitled to recover from the Fujitsu Defendants the damages sustained by USEI as a result of the wrongful acts of the Fujitsu Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '872 Patent by the Fujitsu Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Fujitsu Defendants have had actual or constructive knowledge of the '872 Patent, yet continue to infringe said patent. The infringement of the '872 Patent by the Fujitsu Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 42 and therefore denies the same.


43.   Without a license or permission from USEI, the HP Defendants infringed and continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the HP Accused Products. The acts of infringement of the '872 Patent by the HP Defendants have caused damage to USEI, and USEI is entitled to recover from the HP Defendants the damages sustained by USEI as a result of the wrongful acts of the HP Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '872 Patent by the HP Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The HP Defendants have had actual or constructive knowledge of the '872 Patent, yet continue to infringe said patent. The infringement of the '872 Patent by the HP Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 43 and therefore denies the same.


44.   Without a license or permission from USEI, the Sony Defendants infringed and continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Sony Accused Products. The acts of infringement of the '872 Patent by the Sony Defendants have caused damage to USEI, and USEI is entitled to recover from the Sony Defendants the damages sustained by USEI as a result of the wrongful acts of the Sony Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '872 Patent by the Sony Defendants will continue to damage USEI,

causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Sony Defendants have had actual or constructive knowledge of the '872 Patent, yet continue to infringe said patent. The infringement of the '872 Patent by the Sony Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

> **ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 44 and therefore denies the same.

45.   Without a license or permission from USEI, the Toshiba Defendants infringed and continue to infringe one or more claims of the '872 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Toshiba Accused Products. The acts of infringement of the '872 Patent by the Toshiba Defendants have caused damage to USEI, and USEI is entitled to recover from the Toshiba Defendants the damages sustained by USEI as a result of the wrongful acts of the Toshiba Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '872 Patent by the Toshiba Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Toshiba Defendants have had actual or constructive knowledge of the '872 Patent, yet continue to infringe said patent. The infringement of the '872 Patent by the Toshiba Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

> **ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 44 and therefore denies the same.

### COUNT III

### INFRINGEMENT OF U.S. PATENT NO. 5,732,094

46.   USEI restates and realleges the allegations set forth in paragraphs 1 through 29 of this Complaint and incorporates them by reference.

> **ANSWER:**   Dell restates and reaffirms its answers to the allegations set forth in

paragraphs 1 through 29.

47.   Without a license or permission from USEI, the Acer Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and

devices which embody the patented invention, including, without limitation, one or more of the Acer Accused Products. The acts of infringement of the '094 Patent by the Acer Defendants have caused damage to USEI, and USEI is entitled to recover from the Acer Defendants the damages sustained by USEI as a result of the wrongful acts of the Acer Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the Acer Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Acer Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent. The infringement of the '094 Patent by the Acer Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 47 and therefore denies the same.

48.   Without a license or permission from USEI, the ASUS Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the ASUS Accused Products. The acts of infringement of the '094 Patent by the ASUS Defendants have caused damage to USEI, and USEI is entitled to recover from the ASUS Defendants the damages sustained by USEI as a result of the wrongful acts of the ASUS Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the ASUS Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The ASUS Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent. The infringement of the '094 Patent by the ASUS Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 48 and therefore denies the same.

49.   Without a license or permission from USEI, Dell infringed and continues to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Dell Accused Products. The acts of infringement of the '094 Patent by Dell have caused damage to USEI, and USEI is entitled to recover from Dell the damages sustained by USEI as a result of the wrongful acts of Dell in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by Dell will continue to

damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. Dell has had actual or constructive knowledge of the '094 Patent, yet continues to infringe said patent. The infringement of the '094 Patent by Dell is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Denied.

50.     Without a license or permission from USEI, the Fujitsu Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Fujitsu Accused Products. The acts of infringement of the '094 Patent by the Fujitsu Defendants have caused damage to USEI, and USEI is entitled to recover from the Fujitsu Defendants the damages sustained by USEI as a result of the wrongful acts of the Fujitsu Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the Fujitsu Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Fujitsu Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent.  The infringement of the '094 Patent by the Fujitsu Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 50 and therefore denies the same.

51.     Without a license or permission from USEI, the HP Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the HP Accused Products. The acts of infringement of the '094 Patent by the HP Defendants have caused damage to USEI, and USEI is entitled to recover from the HP Defendants the damages sustained by USEI as a result of the wrongful acts of the HP Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the HP Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The HP Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent. The infringement of the '094 Patent by the HP Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 51 and therefore denies the same.

52.   Without a license or permission from USEI, the Sony Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Sony Accused Products. The acts of infringement of the '094 Patent by the Sony Defendants have caused damage to USEI, and USEI is entitled to recover from the Sony Defendants the damages sustained by USEI as a result of the wrongful acts of the Sony Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the Sony Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Sony Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent. The infringement of the '094 Patent by the Sony Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 52 and therefore denies the same.

53.   Without a license or permission from USEI, the Toshiba Defendants infringed and continue to infringe one or more claims of the '094 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Toshiba Accused Products. The acts of infringement of the '094 Patent by the Toshiba Defendants have caused damage to USEI, and USEI is entitled to recover from the Toshiba Defendants the damages sustained by USEI as a result of the wrongful acts of the Toshiba Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '094 Patent by the Toshiba Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Toshiba Defendants have had actual or constructive knowledge of the '094 Patent, yet continue to infringe said patent. The infringement of the '094 Patent by the Toshiba Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 44 and therefore denies the same.

## COUNT IV

## <u>INFRINGEMENT OF U.S. PATENT NO. 5,299,313</u>

54.    USEI restates and realleges the allegations set forth in paragraphs 1 through 29 of this Complaint and incorporates them by reference.

    <u>**ANSWER:**</u>   Dell restates and reaffirms its answers to the allegations set forth in paragraphs 1 through 29.

55.    Without a license or permission from USEI, the Acer Defendants infringed and continue to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Acer Accused Products. The acts of infringement of the '313 Patent by the Acer Defendants have caused damage to USEI, and USEI is entitled to recover from the Acer Defendants the damages sustained by USEI as a result of the wrongful acts of the Acer Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '313 Patent by the Acer Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Acer Defendants have had actual or constructive knowledge of the '313 Patent, yet continue to infringe said patent. The infringement of the '313 Patent by the Acer Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

    <u>**ANSWER:**</u>   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 55 and therefore denies the same.

56.    Without a license or permission from USEI, Apple infringed and continues to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Apple Accused Products. The acts of infringement of the '313 Patent by Apple have caused damage to USEI, and USEI is entitled to recover from Apple the damages sustained by USEI as a result of the wrongful acts of Apple in an amount subject to proof at trial. The infringement of  USEI's exclusive rights under the '313 Patent by Apple will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. Apple has had actual or constructive knowledge of the '313 Patent, yet continues to infringe said patent. The infringement of the '313 Patent by Apple is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. §

284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 56 and therefore denies the same.

57.   Without a license or permission from USEI, the ASUS Defendants infringed and continue to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the ASUS Accused Products. The acts of infringement of the '313 Patent by the ASUS Defendants have caused damage to USEI, and USEI is entitled to recover from the ASUS Defendants the damages sustained by USEI as a result of the wrongful acts of the ASUS Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '313 Patent by the ASUS Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The ASUS Defendants have had actual or constructive knowledge of the '313 Patent, yet continue to infringe said patent.  The infringement of the '313 Patent by the ASUS Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 57 and therefore denies the same.

58.   Without a license or permission from USEI, Dell infringed and continues to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Dell Accused Products. The acts of infringement of the '313 Patent by Dell have caused damage to USEI, and USEI is entitled to recover from Dell the damages sustained by USEI as a result of the wrongful acts of Dell in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '313 Patent by Dell will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. Dell has had actual or constructive knowledge of the '313 Patent, yet continues to infringe said patent. The infringement of the '313 Patent by Dell is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Denied.

59.   Without a license or permission from USEI, the Fujitsu Defendants infringed and
continue to infringe one or more claims of the '313 Patent, directly, contributorily, and/or
by inducement, by importing, making, using, offering for sale, and/or selling products
and devices which embody the patented invention, including, without limitation, one or
more of the Fujitsu Accused Products. The acts of infringement of the '313 Patent by the
Fujitsu Defendants have caused damage to USEI, and USEI is entitled to recover from
the Fujitsu Defendants the damages sustained by USEI as a result of the wrongful acts of
the Fujitsu Defendants in an amount subject to proof at trial. The infringement of USEI's
exclusive rights under the '313 Patent by the Fujitsu Defendants will continue to damage
USEI, causing irreparable harm, for which there is no adequate remedy at law, unless
enjoined by this Court. The Fujitsu Defendants have had actual or constructive
knowledge of the '313 Patent, yet continue to infringe said patent. The infringement of
the '313 Patent by the Fujitsu Defendants is willful and deliberate, entitling USEI to
increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in
prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 59 and therefore denies the same.

60.   Without a license or permission from USEI, the HP Defendants infringed and continue to
infringe one or more claims of the '313 Patent, directly, contributorily, and/or by
inducement, by importing, making, using, offering for sale, and/or selling products and
devices which embody the patented invention, including, without limitation, one or more
of the HP Accused Products. The acts of infringement of the '313 Patent by the HP
Defendants have caused damage to USEI, and USEI is entitled to recover from the HP
Defendants the damages sustained by USEI as a result of the wrongful acts of the HP
Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive
rights under the '313 Patent by the HP Defendants will continue to damage USEI,
causing irreparable harm, for which there is no adequate remedy at law, unless enjoined
by this Court. The HP Defendants have had actual or constructive knowledge of the '313
Patent, yet continue to infringe said patent. The infringement of the '313 Patent by the
HP Defendants is willful and deliberate, entitling USEI to increased damages under 35
U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35
U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of

paragraph 60 and therefore denies the same.

61.   Without a license or permission from USEI, the Sony Defendants infringed and continue
to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by

inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Sony Accused Products. The acts of infringement of the '313 Patent by the Sony Defendants have caused damage to USEI, and USEI is entitled to recover from the Sony Defendants the damages sustained by USEI as a result of the wrongful acts of the Sony Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '313 Patent by the Sony Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Sony Defendants have had actual or constructive knowledge of the '313 Patent, yet continue to infringe said patent. The infringement of the '313 Patent by the Sony Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 61 and therefore denies the same.

62.   Without a license or permission from USEI, the Toshiba Defendants infringed and continue to infringe one or more claims of the '313 Patent, directly, contributorily, and/or by inducement, by importing, making, using, offering for sale, and/or selling products and devices which embody the patented invention, including, without limitation, one or more of the Toshiba Accused Products. The acts of infringement of the '313 Patent by the Toshiba Defendants have caused damage to USEI, and USEI is entitled to recover from the Toshiba Defendants the damages sustained by USEI as a result of the wrongful acts of the Toshiba Defendants in an amount subject to proof at trial. The infringement of USEI's exclusive rights under the '313 Patent by the Toshiba Defendants will continue to damage USEI, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court. The Toshiba Defendants have had actual or constructive knowledge of the '313 Patent, yet continue to infringe said patent. The infringement of the '313 Patent by the Toshiba Defendants is willful and deliberate, entitling USEI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**   Dell lacks sufficient knowledge to either admit or deny the allegations of paragraph 62 and therefore denies the same.

**ADDITIONAL DEFENSES**

63.   As its first additional defense, Dell alleges that is has not and is not directly or contributorily infringing or inducing the infringement of any valid and enforceable claim of the patents-in-suit either literally or pursuant to the doctrine of equivalents.

64.     As its second additional defense, Dell alleges that the patents-in-suit are invalid and void because the specification and claims thereof fail to satisfy one or more of the provisions and/or requirements of 35 U.S.C. §§101, 102, 103, and/or 112.

65.     As its third additional defense, Dell alleges that the patentee has taken certain positions or done certain acts before the United States Patent and Trademark Office during the prosecution of the patents-in-suit to achieve allowance of the claims thereof that estop and/or preclude USEI from contending that Dell has infringed any of those claims.

66.     As its fourth additional defense, Dell alleges that certain of the Dell Accused Products are licensed to the Patents-in-Suit and/or subject to the doctrines of patent exhaustion or implied license.

67.     As its fifth additional defense to the patents-in-suit, Dell alleges that each of the patents-in-suit is unenforceable by reason of the patentee's inequitable conduct during their respective prosecutions.  The basis for this defense is detailed in the following paragraphs.  In summary, during the pendency of the three initial applications that ultimately led to the four patents-in-suit, various permutations of the same prosecution counsel, the same assignee, and the same inventors filed and prosecuted at least 19 US, US PCT, and foreign applications for patents on variants of the technology at issue in this case.  Many of these patent applications were identified as related to the applications which led to the patents-in-suit, but their co-pendency was not disclosed to the examiners on the files for the patents-in-suit.  In most instances, the examiners in the patents-in-suit were not the examiners on the other related applications and had no way of knowing of their co-pendency. During the prosecution of the related applications, many references were cited against various combinations of elements claimed to be novel in the

patents-in-suit, and, in a number of instances, claims drawn to those combinations were rejected. Most of these references were not disclosed during the prosecutions of the patents-in-suit. Neither was there disclosure of the rejections in parallel prosecutions of combinations that were material to pending claims of the applications that led to the patents-in-suit.  Taken collectively, all these prosecutions and the art cited in them, as well as the various rejections by the various examiners paint a picture of a technological landscape in which many of the claims of the patents-in-suit were anticipated and/or obvious and therefore not patentable.  Because the owner of the patents-in-suit, its counsel, and various of the named inventors on the patents-in-suit did not disclose the co-pendency of these applications, the material art cited during them, or the existence of adverse office actions by other examiners rejecting combinations claimed to be novel by the patents-in-suit, the examiners in the patents-in-suit were not aware of information that would have been material to their examination of the patents-in-suit.  Many of the individuals with a duty of candor during the prosecutions leading to the patents-in-suit, thus, withheld information which they knew or should have known to be material to the patents-in-suit.  In light of the course of conduct by which the various prosecutions were each effectively siloed from one another and in light of the failure to disclose references which other examiners had explicitly identified as invalidating claimed combinations, the applicants for the patents-in-suit engaged in inequitable conduct which renders each of the patents-in-suit unenforceable.

68.     As its fifth additional defense to USEI's allegations that it has infringed the '459 Patent, Dell alleges that the '459 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent as follows:

(a).     Application No. 07/920,898 (the '459 Application), which ultimately led to the '459 Patent, was filed on July 28, 1992 on behalf of named inventors Brian

Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named

assignee, 3Com Corporation.  Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy

was identified as counsel for the owner and acted as prosecution counsel

throughout.  The '459 Patent issued on April 26, 1994.

(b).    The Patentee committed inequitable conduct during the prosecution of the '459

Patent by failing to disclose the applications, rejections, and references related to

the '872 Patent.

(c).    Application No. 07/920,893 (the '872 Application), which ultimately led to the

'872 Patent, was filed on the same date by the same counsel on behalf of two of

the same named inventors (Peterson and Brown) and the same assignee as the

'459 Application.  (Collectively, the '872 Applicants)

(d).    Ultimately, a third of the '459 named inventors (Sherer) was added as a named

inventor on what became the '872 Patent.

(e).    PCT Application PCT/US1993/007060 (the '872 PCT) claims priority to the '872

Application (having substantially the same disclosure) and was filed on July 27,

1993 by the same counsel on behalf of two of the same named inventors (Peterson

and Brown) and the same assignee as the '459 Application.  The European Patent

Application EP0606466 (the '872 EP) based on the '872 PCT was filed on

February 25, 1994.

(f).    The '459 Application was reviewed by a different examiner than the '872

Application, the '872 PCT, and the '872 EP.

(g).    The '459 and '872 Patents' disclosures overlap to a significant extent.

(h).   In his Notice of Allowability of October 14, 1993, the examiner of the '459 Patent

stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, *inter alia*, the claimed
> network frame transfer apparatus in which the data frame is transferred
> between a network transceiver and a host computer via a buffer and
> threshold logic is utilized to count the data transferred to and from the
> buffer and further in which an alterable storage location is provided which
> contains a threshold value and a counter, coupled to the buffer memory, is
> compared to the threshold value and an indication signal is generated and
> sent to the host computer responsive to the comparison.

(i).   During the prosecution of the '872 Patent, claims containing all of these

limitations except for the "indication signal" were rejected as anticipated and/or

obvious in light of multiple prior art references on multiple occasions, including

the office actions of October 26, 1993 and July 6, 1994 (The '872 Rejections).

(j).   During prosecution of the '872 Patent, the following references were cited in

support of the '872 Rejections: U.S. Patents 5,043,981 (Firoozmand *et al.*);

4,860,193 (Bentley); 4,258,418 (Heath); 4,715,030 (Koch); 5,195,093 (Tarrab);

5,210,749 (Firoozmand); and  5,278,956 (Thomsen) (collectively, the '872

References).

(k).   Petersen, a named inventor of the '459 Application executed on February 3, 1994,

a declaration stating that he was informed that the pending claims 1, 3, 6 and 11 in

'872 Application were rejected as being anticipated by based on Firoozmand, *et

al.*.  Brown, another of the named inventors of the '459 Application, executed the

declaration on February 15, 1994.

(l).    The '872 References were material to, but not disclosed during, prosecution of

the '459 application.  The '872 References were determined by the '872 examiner

to disclose singly or in obvious combination all limitations determined by the

‘459 examiner to be missing from the prior art except the "indication signal" claimed in the ‘459 Patent, and that latter limitation was, in fact, disclosed by, inherent in, and/or obvious in light of one or more of the ‘872 References.

(m).   During the prosecution of the ‘459 Patent, three of the ‘872 References (Firoozmand *et al.*, Koch, Heath, and Tarrab) were cited *again* to at least the assignee and prosecution counsel of the ‘872 Application in the December 7, 1993 ‘872 PCT International Search Report (the ‘872 ISR).  These references were identified *again* by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

(n).   All of the ‘872 Applicants were participants in the prosecutions of the ‘872 Patent and were persons with a duty of candor in the prosecution that led to the ‘459 Patent. At least the ‘872 assignee and prosecution counsel were participants in the prosecutions of the ‘872 PCT, and the ‘872 EP and were persons with a duty of candor in the prosecution that led to the ‘459 Patent.

(o).   The ‘872 Applicants knew of the materiality to the ‘459 prosecution of (i) the co-pendency of the ‘872 Application, the ‘872 PCT, and the ‘872 EP, (ii) the October 26, 1993 Rejection, and (iii) the ‘872 References, because they knew that the ‘872 examiner had found these references to disclose most features of the combination which they had claimed to be novel in the ‘459 Patent and which the ‘459 examiner itemized in his notice of allowance.  Further,  they knew or should have known that the missing limitation was disclosed by, inherent in, or obvious in light of one or more of the ‘872 References or at a minimum that a reasonable

examiner would have wanted to review the '872 References to make his own determination on that point.

(p).     Additionally, and for the same reasons, at least the assignee of the '459 Patent and prosecution counsel were aware of the materiality of the '872 ISR to the '459 prosecution.

(q).     None of the co-pendency of the '872 Application and the '872 PCT, the '872 EP, nor the  October 26, 1993 Rejection and the '872 References were disclosed in the '459 Prosecution.

(r).     The '872 Application, the '872 PCT, the '872 EP, the  October 26, 1993 Rejection, and the '872 References were therefore concealed from the examiner in the '459 Prosecution by the '872 Participants with knowledge of the materiality of those references and, on information and belief, with an intent to deceive.

(s).     The Patentee committed further acts of inequitable conduct during the prosecution of the '459 Patent by additionally failing to disclose the applications, rejections, and references  related to the U.S. Patent 5,319,752 (the '752 Patent).

(t).     Application No. 07/947,773 (the '752 Application), which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors  (Brian Peterson and Lai-Chin Lo) and the same assignee as the '459 Application.  (The '752 Applicants.)

(u).     PCT Application PCT/US1993/008866 (the '752 PCT) claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993  by the same counsel on behalf of two of the same named

inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '459 and '752 Applications.

(v).    The '459 Application was reviewed by a different examiner than the '752 Application and the '752 PCT.

(w).    The '459 and '752 Patents' disclosures overlap to a significant extent.

(x).    The '752 Application states that it is related the co-pending '459 Application, but no mention of the '752 Application is made in the '459 Application.

(y).    On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 Application.

(z).    During prosecution of the '752 Patent, the following references were cited: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fisher) (collectively the '752 References).

(aa).   All of the '752 References reviewed by the '752 examiner were material to but not disclosed during prosecution of the '459 Patent.

(bb).   All of these references relate to the limitations of the '459 claims that call for generating a signal.  Fisher relates to the limitations of the '459 claims that call for an indication signal and an interrupt signal. Yamamoto, Kozlik, and Fisher relate to the limitations of the '459 claims that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '459 claims that call for network interface logic.  Kozlik, Chiu, and Fisher relate to the limitations of the '459 claims that call for transferring a data frame.  Francisco relates to the limitations of the '459 claims that call for an alterable storage location containing

a threshold value.  Chiu relates to the limitations of the '459 claims that call for a counter for counting the amount of data transferred.

(cc).     While the '459 prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution counsel of the '752 Application in the December 23, 1993 '752 PCT International Search Report (the '752 ISR).

(dd).     The '752 References would have been material because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(ee).     All of '752 Applicants had a duty of candor in the prosecution that led to the '459 Patent.

(ff).     All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '752 Application.  At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '459 prosecution of (i) the co-pendency of the '752 PCT, and (ii) the '752 Rejections, the '752 ISR, and the '752 References.  That is, they knew of the *similarity in disclosure* between the '459 and '752 Patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

(gg).     However, neither the co-pendency of the '752 Application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '459 Prosecution.

(hh).    The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '459 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive.

(ii).    The Patentee committed further acts of inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to the U.S. Patent 5,392,406 (the '406 Patent).

(jj).    Application No. 07/947,055 (the '406 Application), which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 Application.  (The '406 Applicants)

(kk).    PCT Application PCT/US1993/008840 (the '406 PCT) claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 and '406 Applications.

(ll).    The '459 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

(mm).    The '459 and '406 Patents' disclosures overlap to a significant extent.

(nn).    On November 11, 1993 and April 26, 1994, the '406 examiner issued rejections (the '406 Rejections) of the '406 Application.

(oo).    During prosecution of the '406 Patent, the following references were cited: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken);

4,841,435 (Papenberg); 4,959,779 (Weber); 4,992,931 (Hirasawa); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively the '406 References).

(pp). All of these references relate to the limitations of the '459 Patent that call for generating a signal. Benken, Kinoshita, Pleva, and Banks relate to the limitations of the '459 Patent that call for an indication signal. Benken, Brooks, Kinoshita, Pleva, Nguyen, and Banks relate to the limitations of the '459 Patent that call for an interrupt signal. Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, Nguyen, and Banks relate to the limitations of the '459 Patent that call for a buffer memory. Benken and Brooks relate to the limitations of the '459 Patent that call for transferring a data frame. Benken, Brooks, Pleva, and Banks relate to the limitations of the '459 Patent that call for a network interface logic. Benken relates to the limitations of the '459 Patent that call for transfer descriptors.

(qq). All of the '406 References reviewed by the '406 examiner were therefore material to the '459 Application, but none of them were disclosed during prosecution of the '459 Patent.

(rr). While the '459 prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

(ss).   The '406 References would have been material because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(tt).   All of the persons who were participants in the prosecutions of the '406 Patent had a duty of candor in the prosecution that led to the '459 Patent. At least the '406 assignee and prosecution counsel were participants in the prosecutions of the '406 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

(uu).   The '406 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '406 Application and '406 PCT.  At least the '406 assignee and prosecution counsel knew of fact sufficient to establish the materiality of the '406 Rejections, the '406 ISR, and the '406 References. That is, all of the '406 Applicants knew of the *similarity in disclosure* between the '459 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

(vv).   However, the co-pendency of the '406 Application and the '406 PCT, the '406 Rejections, the '406 ISR, and the '406 References were not disclosed in the '459 Prosecution.

(ww).   The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the examiner in the '459 prosecution by the '406 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive.

(xx).   The Patentee committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to the U.S. Patent 5,530,874 (the '874 Patent).

(yy).   Application No. 08/012,561 (the '874 Application), which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '459 Application.   (The '874 assignee, prosecution counsel, Sherer, and Peterson are referred to herein as the '874 Applicants.)

(zz).   PCT Application PCT/US1993/012652 (the '874 PCT) claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer)  and the same assignee as the '874 Application and '459 Application.

(aaa).   The '459 Application was reviewed by a different examiner than the '874 Application and the '874 PCT.

(bbb).   The '459 and '874 Patents' disclosures overlap to a significant extent.

(ccc).   The '874 Application states that it was related to the co-pending '459 Application, but no mention of the '459 Patent is made in the '874 Application.

(ddd).   All of the '874 Applicants were participants in the prosecutions of the '874 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent. At least the '874 assignee and prosecution counsel were participants in the prosecutions of the '459 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

(eee).   The '874 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '874 Application and the '874 PCT. That is, they knew of the *similarity in disclosure* between the '459 and '874 disclosures.

(fff).   However, neither the co-pendency of the '874 Application nor of the '874 PCT, were disclosed in the '459 Prosecution.

(ggg).   The co-pendency of the '874 Application and the '874 PCT were therefore concealed by the '874 Applicants from the examiner in the '459 prosecution with knowledge of their materiality and, on information and belief, with intent to deceive.

(hhh).   The existence of other patent applications that were co-pending with the '459 Patent, related to networking technology, and owned by 3Com Corporation or their subsidiary or associated corporation, including the applications' related foreign filings, and all material references cited in the applications' prosecution were not cited during the '459 Patent's prosecution. These other patent applications include the applications for U.S. Patents:  5459854, 5392399, 5471618, 5483640, 5511171, 5459840, 5526489, 5386470, 5517627, 5387902, 5473765, 5423002.

(iii).   Some or all of the persons with a duty of candor in the prosecution that led to the '459 Patent, were participants in the prosecution of these other patent applications.  Some or all of the persons with a duty of candor in the '459 prosecution knew of facts sufficient to establish the materiality to the '459 prosecution of these other applications and materials.

(jjj).   On information and belief, these other applications and materials were concealed from the examiner in the '459 prosecution with intent to deceive.

69.   As its fifth additional defense to USEI's allegations that it has infringed the '313 Patent, Dell alleges that the '313 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent.

(a).   Application No. 07/921,519 (the '313 Application) which ultimately led to the '313 Patent, was filed on July 28, 1992 on behalf of named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee, 3Com Corporation.  Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the owner.

(b).   The Patentee committed inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejections, and references related to the '872 Patent.

(c).   The '872 Application that ultimately led to the '872 Patent, was filed on the same date by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '313 Application.

(d).   Ultimately, a third of the '313 named inventors (Sherer) was added as a named inventor on what became the '872 Patent.

(e).   The '872 PCT claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '313 Application.  The '872 EP based on the '872 PCT was filed on February 25, 1994.

(f).    In the '872 Application, the patentee disclosed, as required, that the '872 Application was related to the co-pending '313 Application.  Accordingly, upon information and belief, the patentee certainly had knowledge of the important relationship between these co-pending applications.

(g).    Despite this knowledge, however, the patentee did not disclose the co-pending '872 Application to the '313 examiner—a disclosure that would have surely bore on patentability of the substantively similar '313 Patent.

(h).    Despite this knowledge, however, the patentee did not disclose the co-pending '872 Application to the '313 examiner, and thereby gained the advantage of siphoning off the issues and concerns raised by the '872 examiner that would have surely bore on patentability of the substantively similar '313 Patent.

(i).    The '313 Application was reviewed by a different examiner than the '872 Application, the '872 PCT, and the '872 EP.

(j).    The '313 and '872 Patents' disclosures overlap to a significant extent.

(k).    The '872 Application states that it is related the co-pending '313 Application, but no mention of the '872 Application is made in the '313 Application.

(l).    On October 26, 1993 the '872 examiner issued a rejection of the '872 Application.

(m).    In his Notice of Allowability of September 21, 1993, the examiner of the '313 Patent stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, inter alia, the network interface controller for a host system/network transceiver in which a host system includes a host address space, and a buffer memory is located outside of the address space and further in which the interface manages data transfer between the host address space and the buffer memory in an operational manner transparent to the host system.

(n).     In his consideration of the Notice of Allowability, the '313 examiner cited only one reference: U.S. Patent 4,672,570 (Benken).

(o).     At least the following '872 References reviewed by the '872 examiner were material to, but not disclosed during, prosecution of the '313 Patent: Firoozmand *et al.,* Bentley,   Heath,   Koch, Tarrab, and ,Firoozmand.

(p).     In particular, these references relate to managing data transfers and a buffer memory.  Firoozmand *et al.* and Koch  relate to a network interface means. Firoozmand *et al.*, Tarrab, and Firoozmand relate to a buffer memory outside of the host address space

(q).     These references would have been material because the features of the claims of the '313 application were disclosed by, inherent in, or obvious in light of one or more of these references.

(r).     On October 26, 1993, prior to the issuance of the '313 patent, the Examiner for the '872 Application mailed an Office Action to 3Com's prosecution counsel, Mark A. Haynes.  In the Office Action, the Examiner relied on Firoozmand *et al.* as a basis for a §102(a) anticipation rejection.  The Examiner also relied on various combinations of the Firoozmand *et al.*, Firoozmand, Heath, Koch, and Tarrab as bases for obviousness-type rejections of certain claims pending in the '872 Application.  In a Notice of References Cited, included with the October 26, 1993 Office Action, the Examiner made of record the Bentley reference.  In an Office Action dated July 6, 1994, the Examiner for the '872 Application relied on Bentley as a basis for an obviousness-type rejection of certain pending claims.

(s).     The '872 References are material to the '313 patent.  Each of these references

disclose elements of the alleged inventions claimed by the '313 patent.  At least

the Firoozmand *et al.* and Firoozmand fully anticipate (i.e., establish a prima facie

case of invalidity of) certain claims of the '313 patent.  The '872 References were

later deemed sufficiently material to include in an Information Disclosure

Statement (IDS) during later prosecution of U.S. Patent No. 5,732,094 (another

related patent-in-suit) on August 18, 1995.

(t).     The '872 References are not cumulative to the prior art made of record during the

prosecution of the '313 patent.  On information and belief, there is a substantial

likelihood that a reasonable examiner would have considered those references

important in deciding whether to allow the '313 patent to issue.

(u).     David R. Brown and Brian Petersen, named inventors on the '313 patent and the

'872 patent, were aware of at least the Firoozmand *et al.*  patent prior to the

issuance of the '313 patent.  By February 15, 1994, both Mr. Brown and Mr.

Petersen had executed a declaration in which they declared as follows:

(v).     We have been informed that claims 1, 3, 6 and 11 in the above identified U.S.

Patent Application have been rejected under 35 U.S.C. §102(a) as being

anticipated by Firoozmand, *et al.* U.S. Patent No. 5,043,981 which was issued

August 27, 1991 and filed May 29, 1990 (the effective date of the reference").

('893 Application, § 1.131 Declaration, p. 1).

(w).    On information and belief, one or more of the inventors named on the face of the

'313 patent (including David R. Brown and Brian Petersen), the attorney(s) who

prosecuted the '313 patent (including Mark A. Haynes), and others substantively

involved in the prosecution of the '313 patent (collectively the "3Com

Prosecuting Agents") were made aware of, and received copies of, the '872

References prior to the issuance of the '313 patent.

(x).    Even more, during the prosecution of the '313 Patent, four of the '872 References

(Firoozmand, Koch, Heath, and Tarrab) were cited again to at least the assignee

and prosecution counsel of the '872 Application in the December 7, 1993 '872

PCT International Search Report (the '872 ISR).  These references were identified

by the searching authority as of "particular relevance," rendering the claimed

invention anticipated or obvious.

(y).    All of the '872 Applicants were participants in the prosecutions of each the '872

Patent, and were persons with a duty of candor in the prosecution that led to the

'313 Patent.

(z).    For the same reasons stated above, at least the assignee of the '313 Patent and

prosecution counsel were aware of the materiality of the '872 PCT, '872 EP, and

the '872 ISR to the '313 prosecution.

(aa).   None of the co-pendency of the '872 Application and the '872 PCT, and the '872

EP, nor the  October 26, 1993 Rejection and the '872 References were disclosed

in the '313 Prosecution.

(bb).   The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection,

and the '872 References were therefore concealed from the examiner in the '313

Prosecution by the '872 Participants with knowledge of the materiality of those

references and, on information and belief, with an intent to deceive.

(cc).    The Patentee committed further acts of inequitable conduct during the prosecution of the '313 Patent by additionally failing to disclose the applications, rejections, and references related to the U.S. Patent 5,319,752 (the '752 Patent).

(dd).    The '752 Application, which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors  (Brian Peterson and Lai-Chin Lo) and the same assignee as the '313 Application.  (The '752 Applicants.).

(ee).    The '752 PCT claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993  by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '313 and '752 Applications.

(ff).    The '313 Application was reviewed by a different examiner than the '752 Application, and the '752 PCT.

(gg).    The '313 and '752 Patents' disclosures overlap to a significant extent.

(hh).    On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 Application.

(ii).    During prosecution of the '752 Patent, the following references were cited: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fisher) (collectively the '752 References).

(jj).    The '752 References reviewed by the '752 examiner were material to, but not disclosed, during prosecution of the '313 Patent: Yamamoto, Kozlik, Francisco, Chiu, and Fisher.

(kk).    The '752 References relate to the limitations of the '313 Patent.  For example, these references relate to a buffer memory and a network interface means.  Fisher, in particular, relates to a buffer memory outside of the host address space and sharing the host address space with the host.

(ll).    During the prosecution of the '313 Patent, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution counsel of the '752 Application in the December 23, 1993 '752 PCT International Search Report (the '752 ISR).

(mm).    The '752 References would have been material because the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(nn).    All of the '752 Applicants had a duty of candor in the prosecution that led to the '313 Patent.

(oo).    All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '752 Application and '752 PCT.  At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '313 prosecution of the '752 Rejections, the '752 ISR, and the '752 References.  That is, they knew of the *similarity in disclosure* between the '313 and '752 Patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

(pp).   However, neither the co-pendency of the '752 Application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '313 Prosecution.

(qq).   The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '313 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive.

(rr).   The Patentee committed further acts of inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

(ss).   The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '313Application.  (The '406 Applicants).

(tt).   The '406 PCT claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '313 and '406 Applications.

(uu).   The '313 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

(vv).   The '313 and '406 Patents' disclosures overlap to a significant extent.

(ww).  The '406 Application states that it was related to the application of the '313 Patent, but no mention of the '313 Patent is made in the '406 Application.

(xx).    On November 11, 1993 the '406 examiner issued a rejection (the '406 Rejection) of the '406 Application.

(yy).    During prosecution of the '406 Patent, the following references were cited: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken); 4,841,435 (Papenberg); 4,959,779 (Weber); 4,992,931 (Hirasawa); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively the '406 References).

(zz).    These references relate to the limitations of the '313 Patent.  Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, Nguyen, and Banks relate to the limitations of the '313 Patent that call for a buffer memory.  Benken and Brooks relate to the limitations of the '313 Patent that call for transferring a data frame.  Benken, Brooks, Pleva, and Banks relate to the limitations of the '313 Patent that call for a network interface logic.  Benken relates to the limitations of the '313 Patent that call for transfer descriptors.

(aaa).  All of the '406 References reviewed by the '406 examiner were therefore material to the '313 Application, but none of them were disclosed during prosecution of the '313 Patent.

(bbb).  While the '313 prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited again to the to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR).  These references were considered by the searching authority as relevant and/or invalidating.

(ccc).   The '406 References would have been material because the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(ddd).   All of the persons who were participants in the prosecutions of the '406 Patent and '406 PCT had a duty of candor in the prosecution that led to the '313 Patent.

(eee).   The '406 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '406 Application and '406 PCT.  At least the '406 assignee and prosecution counsel knew of fact sufficient to establish the materiality of the '406 Rejections, the '406 ISR, and the '406 References. That is, all of the '406 Applicants knew of the similarity in disclosure between the '313 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

(fff).   However, the co-pendency of the '406 Application and the '406 PCT, the '406 Rejection, the '406 ISR, and the '406 References were not disclosed in the '313 Prosecution.

(ggg).   The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the examiner in the '313 prosecution by the '406 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive.

(hhh).   The Patentee committed further inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejections, and references related to the '874 Patent.

(iii).     The '874 Application, which ultimately led to the '874 Patent was filed on
February 2, 1993 by the same counsel on behalf of two of the same named
inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '313
Application.  (The '874 assignee, prosecution counsel, and Peterson are referred
to herein as the '874 Applicants.).

(jjj).     The '874 PCT claims priority to the '874 Application (having substantially the
same disclosure) and was filed on December 28, 1993 by the same counsel on
behalf the same named inventors and the same assignee as the '874 Application.

(kkk).   The '313 Application was reviewed by a different examiner than the '874
Application and the '874 PCT.

(lll).     The '313 and '874 Patents' disclosures overlap to a significant extent.

(mmm).        All of the participants in the prosecutions of the '874 Patent and '874 PCT
were persons with a duty of candor in the prosecution that led to the '313 Patent.

(nnn).   The '874 Applicants knew of facts sufficient to establish the materiality to the
'313 prosecution of the co-pendency of the '874 Application and the '874 PCT.
That is, they knew of the *similarity in disclosure* between the '313 and '874
disclosures.

(ooo).   However, neither the co-pendency of the '874 Application nor of the '874 PCT,
were disclosed in the '313 Prosecution.

(ppp).   The co-pendency of the '874 Application and the '874 PCT were concealed
therefore concealed by the '874 Applicants from the examiner in the '313
prosecution with knowledge of their materiality and, on information and belief,
with intent to deceive.

(qqq).   The existence of other patent applications that were co-pending with the '313
Patent, related to networking technology, and owned by 3Com Corporation or
their subsidiary or associated corporation, including the applications' related
foreign filings, and all material references cited in the applications' prosecution
were not cited during the '313 Patent's prosecution. These other patent
applications include the applications for U.S. Patents:  5313854, 5392399,
5471618, 5483640, 5511171, 5313840, 5526489, 5386470, 5517627, 5387902,
5473765, and 5423002.

(rrr).   Some or all of the persons with a duty of candor in the prosecution that led to the
'313 Patent, were participants in the prosecution of these other patent
applications.  Some or all of the persons with a duty of candor in the '313
prosecution knew of facts sufficient to establish the materiality to the '313
prosecution of these other applications and materials.

(sss).   On information and belief, these other applications and materials were concealed
from the examiner in the '313 prosecution with intent to deceive.

70.   As its fifth additional defense to USEI's allegations that it has infringed the '872
Patent, Dell alleges that the '872 Patent is unenforceable by reason of the patentee's inequitable
conduct during the prosecution of that patent.  In particular, Dell alleges that:

(a).   The '872 Application, which ultimately led to the '872 Patent, was filed on the
same date by Mark. A Haynes on behalf of named inventor Brian Peterson and
David R. Brown and named assignee, 3Com Corporation as the '459 Application.
Ultimately, a third inventor (W. Paul Sherer) was added as a named inventor on
what became the '872 Patent.

(b).    The Patentee committed inequitable conduct during the prosecution of the '872

Patent by failing to disclose the applications, rejections, and references related to

the '459 Patent.

(c).    The '459 Application which ultimately led to the '459 Patent, was filed on the

same date by the same counsel on behalf of the same inventors (Petersen, Brown,

and Sherer) and the same named assignee as the '872 Application.

(d).    PCT Application PCT/US1993/007056 (the '459 PCT) was filed on July 27, 1993

and claims priority to the '459 Application by the same counsel on behalf of the

same inventors (Petersen, Brown, and Sherer) and the same named assignee as the

'872 Application  and the '459 Application.  The European Patent Application

EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

(e).    The '872 Application was reviewed by a different examiner than the '459

Application, the '459 PCT, and the '459 EP.

(f).    The '872 and '459 Patents' disclosures overlap to a significant extent.

(g).    During prosecution of the '459 Application, the following references were cited:

U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper)

(collectively the '459 References).  These references were cited to the '872

Applicants in the Notice of Allowability of October 14, 1993 of the '459

Application.

(h).    All of the '459 References reviewed by the '459 examiner were material to, but

not disclosed during prosecution, of the '872 Patent.

(i).    These references relate to the limitations of the '872 claims that call for supplying

a signal.  All references relate to the limitations of the '872 claims that call for a

buffer memory.  All references relate to the limitations of the '872 claims that call for a network interface means.  All references relate to the limitations of the '872 claims that call for transferring data of frames.  Finally, and perhaps most importantly, all references relate to the limitations of the '872 claims that call for *threshold determination* of an amount of data.

(j).     While the '872 prosecution was pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993 of the '459 International Search Report (the '459 ISR), but still never disclosed in the '872 prosecution.

(k).     In the Response of February 23, 1994 during prosecution of the '872 Patent, at least the prosecution counsel of the '872 Application disingenuously argued that:

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter. This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. ***Firoozmand, et al. does not use the transmit threshold determination** for a first frame in a transmission sequence. Rather, this threshold determination is only used in succeeding frames.* See Firoozmand, at al. column 10, line 53-68. (emphasis added)

(l).     The '459 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  For example, these references are related to using the *threshold determination* for *any* frame.  The '872 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand *et al.* or other '872 references to make obvious the claims of the '872 Application directed to CSMA/CD.

(m).    Moreover, during prosecution of Application No. 08/715,253 (the '094 Application), the continuation of the '872 Application, the same examiner of both the '872 and '094 Applications discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure" and cited it in the Office Action of March 19, 1996 in the '094 prosecution.

(n).    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution had a duty of candor in the prosecution that led to the '872 Patent.

(o).    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '459 Application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '459 PCT, the '459 EP, and (ii) the '459 ISR, and the '459 References.  That is, least Petersen, Brown, and Sherer, and the '459 assignee and prosecution knew of the *similarity in disclosure* between the '459 and '872 Patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

(p).    However, neither the co-pendency of the '459 Application and the '459 PCT and the '459 EP, nor the '459 ISR, and the '459 References were disclosed in the '872 Prosecution.

(q).    The '459 Application, the '459 PCT, the '459 Rejections, and the '459 References were therefore concealed from the examiner in the '872 Prosecution with

knowledge of their materiality and, in information and belief, with intent to deceive.

(r).     The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '752 Patent.

(s).     The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of one of the same named inventors  (Brian Peterson) and the same assignee as the '872 Application.

(t).     The '752 PCT was filed on September 17, 1993  by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '752 Applications.

(u).     The '872 Application was reviewed by a different examiner than the '752 Application, the '752 PCT, and the '752 EP.

(v).     The disclosures of the '872 and '752 Patents overlap to a significant extent.

(w).     At least the following '752 References reviewed by the '752 examiner were material to but not disclosed during prosecution of the '872 Patent: Yamamoto, Kozlik, Francisco, Chiu, and Fisher.

(x).     All of these references relate to the limitations of the '872 claims that call for supplying a signal.  Yamamoto, Kozlik, and Fisher relate to the limitations of the '872 claims that call for a buffer memory.  Yamamoto, Kozlik and Chiu relate to the limitations of the '872 claims that call for a network interface means.  Kozlik, Chiu, and Fisher relate to the limitations of the '872 claims that call for transferring data of frames.

(y).     While the '872 prosecution was pending, three of the '752 References

(Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and

prosecution counsel of the '752 Application in the December 23, 1993 '752 PCT

International Search Report (the '752 ISR).

(z).     The '752 References would have been material because the features of the claims

of the '872 Application were disclosed by, inherent in, or obvious in light of one

or more of these references.

(aa).    At least Petersen, and the '752 assignee, and prosecution counsel had a duty of

candor in the prosecution that led to the '872 Patent.

(bb).    At least Petersen, the assignee, and the prosecution counsel of the '752

Application knew of facts sufficient to establish the materiality to the '872

prosecution of the co-pendency of the '752 Application.  At least the '752

assignee and prosecution counsel knew of facts sufficient to establish the

materiality to the '872 prosecution of (i) the co-pendency of the '752 PCT, and

the '752 EP and (ii) the '752 Rejections, the '752 ISR, and the '752 References.

That is, at least Petersen, and the '752 assignee, and prosecution counsel knew of

the *similarity in disclosure* between the '872 and '752 disclosures, and at least the

'752 assignee and prosecution counsel knew that the '752 examiner had found the

'752 References relevant to the '752 Application and the '752 PCT, and had twice

rejected the '752 Application.

(cc).    However, neither the co-pendency of the '752 Application and the '752 PCT, and

the '752 EP nor the '752 Rejections, the '752 ISR, and the '752 References were

disclosed in the '872 Prosecution.

(dd). The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive.

(ee). The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

(ff). The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown,) and the same assignee as the '872 Application.

(gg). The '406 PCT  was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee as the '872 and '406 Applications.

(hh). The '872 Application was reviewed by a different examiner than the '406 Application, the '406 PCT.

(ii). The disclosures of the '872 and '406 Patents overlap to a significant extent.

(jj). All of the '406 References reviewed by the '406 examiner were material to but not disclosed during prosecution of the '872 Patent.

(kk). These references relate to the limitations of the '459 Patent that call for supplying a signal.  Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, Nguyen and Banks relate to the limitations of the '459 Patent that call for a buffer memory.  Benken and Brooks relate to the limitations of the '459

Patent that call for transferring data of frames.  Benken, Brooks, Pleva, and Banks relate to the limitations of the '459 Patent that call for a network interface device. Benken relates to the limitations of the '459 Patent that call for transmit descriptors.

(ll).   While the '872 prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited again to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR).  These references were considered by the searching authority as relevant and/or invalidating.

(mm).  The '406 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(nn).   At least Petersen, Brown, and the '406 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

(oo).   At least Petersen, Brown, and the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '406 Application. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '406 PCT, and (ii) the '406 Rejections, the '406 ISR, and the '406 References.  That is, at least Petersen, Brown, and the '406 assignee and prosecution counsel knew of the *similarity in disclosure* between the '872 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406 References

relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

(pp).    However, neither the co-pendency of the '406 Application and the '406 PCT, nor the '406 Rejections, the '406 ISR, and the '406 References were disclosed in the '872 Prosecution.

(qq).    The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive.

(rr).    The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the U.S. Patent 5,517,627 (the '627 Patent)

(ss).    Application No. 113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application. (collectively the '627 Applicants)

(tt).    PCT Application PCT/US1994/009723 (the '627 PCT) was filed on August 25, 1994 and claims priority to the '627 Application by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '752 Applications.

(uu).    The '872 Application was reviewed by a different examiner than the '627 Application, the '627 PCT.

(vv).    On December 19, 1994, the '627 examiner issued a rejection of the '627

Application.

(ww).    During prosecution of the '627 Patent, the following references were cited:

4,131,940 (Moyer); 4,447,878 (Kinnie); 4,455,606 (Cushing); 4,654,781

(Schwartz); 4,663,732 (Robinson); 4,667,305 (Dill); 4,672,570 (Benken);

4,959,779 (Weber); 4,992,931 (Hirasawa); 5,014,186 (Chisholm); 5,058,051

(Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671

(Kelly); 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,297,242 (Miki)

(collectively the '627 References).

(xx).    At least the following '627 References were reviewed by the '627 examiner, were

material to but not disclosed during prosecution of the '872 Patent: Moyer,

Kinnie, Schwartz, Robinson, Benken, Weber, Hirasawa, Chisholm, Brooks,

Kinoshita, Pleva, Vo, Kelly, Nguyen, and Banks.

(yy).    The '627 Applicant cited ten of the '627 References (Kinnie, Benken, Weber,

Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in an Information

Disclosure Statement filing of February 4, 1994 ('627 IDS).

(zz).    The references relate to the limitations of the '872 claims that call for supplying a

signal.  Moyer, Robinson, Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo,

Nguyen, and Banks relate to the limitations of the '872 claims that call for a

buffer memory.  Benken and Brooks relate to the limitations of the '872 claims

that call for transferring data of frames.  Benken, Brooks, and Pleva relate to the

limitations of the '872 claims that call for a network interface device.  Benken

relates to the limitations of the '872 claims that call for transmit descriptors.

(aaa).   While the '872 prosecution was pending, five of the '627 References (Vo, Benken, Schwartz, Hirasawa, and Robinson) were cited *again* to at least the assignee and prosecution counsel of the '627 Application in the February 4, 1994 '627 PCT International Search Report (the '627 ISR).  These references were identified by the searching authority as of particular relevance.

(bbb).   The '627 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(ccc).   All of the '627 Applicants had a duty of candor in the prosecution that led to the '872 Patent.

(ddd).   All of the '627 Applicants new of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '752 PCT, and (ii) the '627 PCT, (ii) the December 19, 1994 Rejection, and (iii) the '627 IDS, '627 ISR, and '627 References.  That is, at least the '627 assignee and prosecution counsel knew that the '627 examiner had found the '627 References relevant to the '627 Application and the '627 PCT, and had twice rejected the '627 Application.

(eee).   However, neither the co-pendency of the '627 Application and the '627 PCT, nor the '627 Rejections, the '627 ISR, and the '627 References were disclosed in the '872 Prosecution.

(fff).    The '627 Application, the '627 PCT, the '627 Rejections, the '627 ISR, and the

'627 References were therefore concealed from the examiner in the '872

Prosecution with knowledge of their materiality and, in information and belief,

with intent to deceive.

(ggg).   The Patentee committed further acts of inequitable conduct during the prosecution

of the '872 Patent by failing to disclose the applications, rejections, and references

related to the '874 Patent.

(hhh).   The '874 Application, which ultimately led to the '874 Patent was filed on

February 2, 1993 by the same counsel on behalf of two of the same named

inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '872

Application.

(iii).    The '874 PCT claims priority to the '874 Application (having substantially the

same disclosure) and was filed on December 28, 1993 by the same counsel on

behalf of the two same named inventors (Brian Peterson and W. Paul Sherer)  and

the same assignee as the '874 Application and '872 Application.

(jjj).    The '872 Application was reviewed by a different examiner than the '874

Application, the '874 PCT and '874 EP.

(kkk).   The disclosures of the '872 and '874 Patents overlap to a significant extent.

(lll).    During prosecution of the '874 Patent, the following references were cited: U.S.

Patents 3,905,025 (Davis); 4,349,872 (Fukasawa); 4,631,659 (Hayn); 4,768,149

(Konopik); 4,807,117 (Itoku); 4,847,752 (Akashi); 4,961,161 (Kojima); 4,987,535

(Takayama); 5,146,595 (Fujiyama); 5,161,228 (Yasui); 5,179,704 (Jibbe);

5,193,195 (Miyazaki); 5,283,904 (Carson) and articles, Chiang, Al, "An EtherStar

is Born", ESD:Magazine, Digital Design Publishing Company, March  1988; 1900 West Park Drive, Westborough, MA 01581; and  EtherStar Ethernet/Starlan Controller, Fujitsu MB86950, May, 1988  (collectively the '874 References).

(mmm).   On September 20, 1994 and May 19, 1995, the '874 examiner issued rejections (the '874 Rejections) of the '874 Application.

(nnn).   At least the following '874 References reviewed by the '874 examiner were material to but not disclosed during prosecution of the '872 Patent: Davis, Fukasawa, Hayn, Konopik, Itoku, Akashi, Kojima, Takayama, Fujiyama, Yasui, Jibbe, Miyazaki, and Carson.

(ooo).   These references relate to the limitations of the '872 Patent that call for supplying a signal.  Davis, Fukasawa, Konopik, Akashi, Takayama, Miyazaki, and Carson relate to the limitations of the '872 Patent that call for a buffer memory.  Carson relates to the limitations of the '872 Patent that call for a network interface means.

(ppp).   While the '872 prosecution was pending, three of the '874 References (Akashi, Takayama, and Fukasawa) were cited *again* to at least the assignee and prosecution counsel of the '874 Application in the December 23, 1993 '874 PCT International Search Report (the '874 ISR). These references were identified *again* by the searching authority as of particular relevance.

(qqq).   These '874 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(rrr).   At least Petersen and the '752 assignee and prosecution had a duty of candor in the prosecution that led to the '872 Patent.

(sss).   At least Petersen and the '752 assignee and prosecution counsel of knew of facts

sufficient to establish the materiality to the '872 prosecution of the co-pendency

of the '874 Application. At least the '874 assignee and prosecution counsel knew

of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-

pendency of the '874 PCT, the '874 EP, and (ii) the '874 ISR, and the 874

References.  That is, least Petersen and the '874 assignee and prosecution counsel

knew of the *similarity in disclosure* between the '872 and '874 disclosures, and

the '874 assignee and prosecution counsel knew that the '874 examiner had found

the '874 References relevant to the '874 Application and the '874 PCT, and had

twice rejected the '874 Application.

(ttt).   However, neither the co-pendency of the '874 Application and the '874 PCT,

'874 EP, nor the '874 Rejections, the '874 ISR, and the '874 References were

disclosed in the '872 Prosecution.

(uuu).   The '874 Application, the '874 PCT, the '874 EP, the '874 Rejections, the '874

ISR, and the '874 References were therefore concealed from the examiner in the

'872 Prosecution with knowledge of their materiality and, in information and

belief, with intent to deceive.

(vvv).   The existence of other patent applications that were co-pending with the '872

Patent, related to networking technology, and owned by 3Com Corporation or

their subsidiary or associated corporation, including the applications' related

foreign filings, and all material references cited in the applications' prosecution

were not cited during the '872 Patent's prosecution. These other patent

applications include the applications for U.S. Patents:  5459854, 5392399,

5471618, 5483640, 5511171, 5459840, 5526489, 5386470, 5517627, 5387902, 5473765, 5423002, 5530703, 5541911, and 5535338.

(www).        Some or all of the persons with a duty of candor in the prosecution that led to the '872 Patent, were participants in the prosecution of the other patent applications.

(xxx).  Some or all of the persons with a duty of candor in the '872 prosecution knew of facts sufficient to establish the materiality to the '872 prosecution of these other applications and materials.

(yyy).  On information and belief, these other applications and materials were concealed from the examiner in the '872 Patent with the intent to deceive.

71.     As its fifth additional defense to USEI's allegations that it has infringed the '094 Patent, Dell alleges that the '094 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent.  In particular, Dell alleges that:

(a).     Application No. 08/715,253 (the '094 Application), which ultimately led to the '094 Patent, was filed as a continuation of the '872 Application on September 16, 1996 on behalf of named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and named assignee, 3Com Corporation.  Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the owner.

(b).     The Patentee committed inequitable conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '459 Patent.

(c). The '459 Application which ultimately led to the '459 Patent, was filed on the same date by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '094 Application.

(d). PCT Application PCT/US1993/007056 (the '459 PCT) was filed on July 27, 1993 and claims priority to the '459 Application by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '094 Application  and the '459 Application.  The European Patent Application EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

(e). The '094 Application was reviewed by a different examiner than the '459 Application, the '459 PCT and '459 EP.

(f). The disclosures of the '094 and '459 Patents overlap to a significant extent.

(g). In the Preliminary Amendment of March 3, 1995, the '094 Applicants added claims directed to CSMA/CD.  In the Response of February 23, 1994 during prosecution of the '872 Patent which is the parent of the '094 patent, at least the prosecution counsel of the '094 Application argued that:

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter. This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. ***Firoozmand, et al. does not use the transmit threshold determination*** *for a first frame in a transmission sequence. Rather, this threshold determination is only used in succeeding frames.* See Firoozmand, at al. column 10, line 53-68. (emphasis added)

(h). All of the '459 References reviewed by the '459 examiner were material to but not disclosed during prosecution of the '094 Patent.

(i).    All references relate to the limitations of the '094 Patent that call for supplying a signal.  All references relate to the limitations of the '094 Patent that call for a buffer memory.  All references relate to the limitations of the '094 Patent that call for a network interface device.  All references relate to the limitations of the '094 Patent that call for frame transmission task.  All references relate to the limitations of the '094 Patent that call for threshold determination based on a comparison of a count of data transferred and altering the threshold value.

(j).    The '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993 of the '459 International Search Report (the '459 ISR).

(k).    These '459 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references. For example, these references are related to using the *threshold determination* for any frame.  The '094 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand *et al.* or other '094 references to make obvious the claims of the '094 Application directed to CSMA/CD.  Moreover, during prosecution of the '094 Application, the examiner of both the '094 Application discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure", and cited it in the Office Action of March 19, 1996.

(l).    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution had a duty of candor in the prosecution that led to the '094 Patent.

(m).    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution

counsel of knew of facts sufficient to establish the materiality to the '094

prosecution of the co-pendency of the '459 Application At least the '459 assignee

and prosecution counsel knew of facts sufficient to establish the materiality to the

'094 prosecution of (i) the co-pendency of the '459 PCT, the '459 EP, and (ii) the

'459 ISR,  the '459 References.  That is, least Petersen, Brown, and Sherer, and

the '459 assignee and prosecution knew of the *similarity in disclosure* between

the '459 and '094 Patents' disclosures, and at least the '459 assignee and

prosecution counsel knew that the '459 examiner had found the '459 References

relevant to the '459 Application and the '459 PCT.

(n).    However, neither the co-pendency of the '459 Application and the '459 PCT and

the '459 EP, nor the '459 ISR, and the '459 References were disclosed in the '094

Prosecution.

(o).    The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, and the '459

References were therefore concealed from the examiner in the '872 Prosecution

with knowledge of their materiality and, in information and belief, with intent to

deceive.

(p).    The Patentee committed inequitable further acts of conduct during the prosecution

of the '094 Patent by failing to disclose U.S. Patent 5,278,956 (the Thomsen

Reference).

(q).    The '094 Applicants knew of the Thomsen Reference because it was cited during

the '872 Patent's prosecution.

(r).    The Thomsen Reference would have been material because the features of the claims of the '094 application were disclosed by, inherent in, or obvious in light of the Thomsen Reference.

(s).    The Thomsen Reference relates to a buffer memory, transferring data, supplying a signal, and threshold determination.

(t).    At least the '094 assignee and prosecution counsel had several opportunities between December 21, 1994 to March, 19, 1996 to cite the Thomsen Reference. At least the '094 assignee and prosecution counsel failed to do so.

(u).    The '094 examiner subsequently found the Thomsen Reference relevant and cited the Thomsen Reference in the Office Action of March 19, 1996 during the '094 Patent's prosecution.

(v).    All of the persons with a duty of candor in the prosecution that led to the '094 Patent, were participants in the prosecution of the '872 Patent.  All of the persons with a duty of candor in the '094 prosecution knew of facts sufficient to establish the materiality to the '094 prosecution of the Thomsen Reference.

(w).    On information and belief, the Thomsen Reference was concealed from the examiner in the '094 Patent with the intent to deceive.

(x).    The Patentee committed inequitable further acts of conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '752 Patent.

(y).    The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of one of the same named inventors  (Brian Peterson) and the same assignee as the '094 Application.

(z).      The '752 PCT was filed on September 17, 1993  by the same counsel on behalf of

          one of the same named inventors (Brian Peterson) and the same assignee as the

          '094 and '752 Applications.

(aa).     The '094 Application was reviewed by a different examiner than the '459

          Application, the '752 PCT and '752 EP.

(bb).     The disclosures of the '094 and '752 Patents overlap to a significant extent.

(cc).     At least the following '752 References reviewed by the '752 examiner were

          material to but not disclosed during prosecution of the '094 Patent: Yamamoto,

          Kozlik, Francisco, Chiu, and Fisher.

(dd).     All references relate to the limitations of the '094 Patent that call for supplying a

          signal.  Yamamoto, Kozlik, and Fisher relate to the limitations of the '094 Patent

          that call for a buffer memory.  Yamamoto, Kozlik and Chiu relate to the

          limitations of the '094 Patent that call for a network interface device.  Kozlik,

          Chiu, and Fisher relate to the limitations of the '094 Patent that call for a frame

          transfer task.

(ee).     Three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again*

          to at least the assignee and prosecution counsel of the '752 Application in the

          December 23, 1993 '752 PCT International Search Report (the '752 ISR).

(ff).     The '752 References would have been material because the features of the claims

          of the '094 Application were disclosed by, inherent in, or obvious in light of one

          or more of these references.

(gg).     At least Petersen, and the '752 assignee, and prosecution counsel had a duty of

          candor in the prosecution that led to the '094 Patent.

(hh).    At least Petersen, the assignee, and the prosecution counsel of the '752

Application knew of facts sufficient to establish the materiality to the '094

prosecution of the co-pendency of the '752 Application.  At least the '752

assignee and prosecution counsel knew of facts sufficient to establish the

materiality to the '094 prosecution of (i) the co-pendency of the '752 PCT, and

the '752 EP and (ii) the '752 Rejections, the '752 ISR, and the '752 References.

That is, at least Petersen, and the '752 assignee, and prosecution counsel knew of

the *similarity in disclosure* between the '094 and '752 disclosures, and at least the

'752 assignee and prosecution counsel knew that the '752 examiner had found the

'752 References relevant to the '752 Application and the '752 PCT, and had twice

rejected the '752 Application.

(ii).    However, neither the co-pendency of the '752 Application and the '752 PCT, and

the '752 EP nor the '752 Rejections, the '752 ISR, and the '752 References were

disclosed in the '094 Prosecution.

(jj).    The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, and the

'752 References were therefore concealed from the examiner in the '094

Prosecution with knowledge of their materiality and, in information and belief,

with intent to deceive.

(kk).    The Patentee committed inequitable conduct during the prosecution of the '094

Patent by failing to disclose the applications, rejections, and references related to

the '406 Patent.

(ll).     The '406 Application, which ultimately led to the '406 Patent was filed on

September 18, 1992 by the same counsel on behalf of two of the same named

inventors (Brian Peterson and David R. Brown,) and the same assignee as the '094 Application.

(mm).   The '406 PCT  was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee as the '094 and '406 Applications.  .

(nn).   The '094 Application was reviewed by a different examiner than the '406 Application, and the '406 PCT.

(oo).   The disclosures of the '094 and '406 Patents overlap to a significant extent.

(pp).   All of the '406 References reviewed by the '406 examiner were material to but not disclosed during prosecution of the '094 Patent.

(qq).   These references relate to the limitations of the '094 Patent that call for supplying a signal.  Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, Nguyen, and Banks relate to the limitations of the '094 Patent that call for a buffer memory.  Benken and Brooks relate to the limitations of the '094 Patent that call for a frame transmission task.  Benken, Brooks, Pleva, and Banks relate to the limitations of the '094 Patent that call for a network interface device. Benken relates to the limitations of the '094 Patent that call for a descriptor for a frame.

(rr).   Five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR).   These references were considered by the searching authority as relevant and/or invalidating.

(ss).   The '406 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(tt).   At least Petersen, Brown, and the '406 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '094 Patent.

(uu).   At least Petersen, Brown, and the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of the co-pendency of the '406 Application. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of the '406 PCT, and (ii) the '406 Rejections, the '406 ISR, and the '406 References.  That is, at least Petersen, Brown, and the '406 assignee and prosecution counsel knew of the *similarity in disclosure* between the '094 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

(vv).   However, neither the co-pendency of the '406 Application and the '406 PCT, nor the '406 Rejections, the '406 ISR, and the '406 References were disclosed in the '094 Prosecution.

(ww).  The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the examiner in the '094 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive.

(xx).    The Patentee committed inequitable further acts of conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '627 Patent.

(yy).    The '627 Application, which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors  (Brian Peterson) and the same assignee as the '094 Application.

(zz).    The '627 PCT was filed on August 25, 1994 and claims priority to the '627 Application by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '094 and '752 Applications.

(aaa).   The '094 Application was reviewed by a different examiner than the '627 Application, the '627 PCT.

(bbb).   On December 19, 1994, and July 27, 1995, the '627 examiner issued rejections (the '627 Rejections) of the '627 Application.

(ccc).   All of the '627 References reviewed by the '627 examiner were material to but not disclosed during prosecution of the '094 Patent.

(ddd).   The '627 Applicant cited ten of the '627 References (Kinnie, Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in an Information Disclosure Statement filing of February 4, 1994 ('627 IDS).

(eee).   These references relate to the limitations of the '094 Patent that call for supplying a signal.  Moyer, Cushing, Robinson, Dill, Miki, Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, Nguyen, and Banks relate to the limitations of the '094 Patent that call for a buffer memory.  Benken and Brooks relate to the limitations

of the '094 Patent that call for a frame transmission task.  Benken, Brooks, Pleva, and Banks relate to the limitations of the '094 Patent that call for a network interface device.  Benken relates to the limitations of the '094 Patent that call for a descriptor for a frame.

(fff).   During the prosecution of the '094 Patent, five of the '627 References (Vo, Benken, Schwartz, Hirasawa, and Robinson) were cited *again* to at least the assignee and prosecution counsel of the '627 Application  in the February 4, 1994 '627 PCT International Search Report (the '627 ISR).  These references were identified by the searching authority as of particular relevance.

(ggg).   The '627 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

(hhh).   All of the '627 Applicants had a duty of candor in the prosecution that led to the '094 Patent.

(iii).   All of the '627 Applicants new of facts sufficient to establish the materiality to the '094 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of the '752 PCT, and (ii) the '627 PCT, (ii) the December 19, 1994 Rejection, and (iii) the '627 IDS, '627 ISR, and '627 References.  That is, at least the '627 assignee and prosecution counsel knew that the '627 examiner had found the '627 References relevant to the '627 Application and the '627 PCT, and had twice rejected the '627 Application.

(jjj).    However, neither the co-pendency of the '627 Application and the '627 PCT, nor

the '627 Rejections, the '627 ISR, and the '627 References were disclosed in the

'094 Prosecution.

(kkk).    The '627 Application, the'627 PCT, the '627 Rejections, the '627 ISR, and the

'627 References were therefore concealed from the examiner in the '094

Prosecution with knowledge of their materiality and, in information and belief,

with intent to deceive.

(lll).    The Patentee committed inequitable conduct during the prosecution of the '094

Patent by failing to disclose the applications, rejections, and references related to

the '874 Patent.

(mmm).      The '874 Application, which ultimately led to the '874 Patent was filed on

February 2, 1993 by the same counsel on behalf of two of the same named

inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '094

Application.

(nnn).    The '874 PCT claims priority to the '874 Application (having substantially the

same disclosure) and was filed on December 28, 1993 by the same counsel on

behalf of the two same named inventors (Brian Peterson and W. Paul Sherer)  and

the same assignee as the '874 Application and '094 Application.

(ooo).    The 094 Application was reviewed by a different examiner than the '874

Application, the '874 PCT and '874 EP.

(ppp).    The disclosures of the '094 and '874 Patents overlap to a significant extent.

(qqq).    In the Preliminary Amendment of March 3, 1995, the '094 Applicants added

claims directed to CSMA/CD.  In the Response of February 23, 1994 during

prosecution of the '872 Patent which is the parent of the '094 patent, at least the

prosecution counsel of the '094 Application argued that:

> In particular, the invention as recited in the new claims is limited to a
> *CSMA/CD* network adapter. (emphasis added)

(rrr).   All of the '874 References reviewed by the '874 examiner were material to but

not disclosed during prosecution of the '094 Patent.  Applicants also cited two of

the '874 References (Chiang and EtherStar) to the '874 Patent's examiner on

January 5, 1996 in an Information Disclosure Statement ('874 IDS).

(sss).   These references relate to the limitations of the '094 Patent that call for supplying

a signal.  Davis, Fukasawa, Konopik, Akashi, Takayama, Miyazaki, Carson,

Chiang, and Etherstar relate to the limitations of the '094 Patent that call for a

buffer memory.  Carson, Chiang, and Etherstar relate to the limitations of the '094

Patent that call for a network interface device.  Chiang and Etherstar relate to the

limitations of the '094 Patent that call for frame transfer task, and a CSMA/CD

computer network.

(ttt).   Three of the '874 References (Akashi, Takayama, and Fukasawa) were cited

*again* to at least the assignee and prosecution counsel of the '874 Application in

the December 23, 1993 '874 PCT International Search Report (the '874 ISR).

These references were identified *again* by the searching authority as of particular

relevance.

(uuu).   These '874 References would have been material because the features of the

claims of the '094 Application were disclosed by, inherent in, or obvious in light

of one or more of these references.

(vvv).   At least Petersen, Sherer and the '752 assignee and prosecution had a duty of
candor in the prosecution that led to the '094 Patent.

(www).       At least Petersen, Sherer and the '752 assignee and prosecution counsel of
knew of facts sufficient to establish the materiality to the '094 prosecution of the
co-pendency of the '874 Application. At least the '874 assignee and prosecution
counsel knew of facts sufficient to establish the materiality to the '094
prosecution of (i) the co-pendency of the '874 PCT, the '874 EP, and (ii) the '874
ISR, and the 874 References.  That is, least Petersen, Sherer and the '874 assignee
and prosecution counsel knew of the *similarity in disclosure* between the '094 and
'874 disclosures, and the '874 assignee and prosecution counsel knew that the
'874 examiner had found the '874 References relevant to the '874 Application
and the '874 PCT, and had twice rejected the '874 Application.

(xxx).   However, neither the co-pendency of the '874 Application and the '874 PCT,
'874 EP, nor the '874 Rejections, the '874 ISR, and the '874 References were
disclosed in the '094 Prosecution.

(yyy).   The '874 Application, the '874 PCT, the '874 EP, the '874 Rejections, the '874
ISR, and the '874 References were therefore concealed from the examiner in the
'094 Prosecution with knowledge of their materiality and, in information and
belief, with intent to deceive.

(zzz).   The existence of other patent applications that were co-pending with the '094
Patent, related to networking technology, and owned by 3Com Corporation or
their subsidiary or associated corporation, including the applications' related
foreign filings, and all material references cited in the applications' prosecution

were not cited during the '094 Patent's prosecution. These other patent

applications include the applications for U.S. Patents:  5459854, 5392399,

5471618, 5483640, 5511171, 5459840, 5526489, 5386470, 5517627, 5387902,

5473765, 5423002, 5530703, 5541911, 5535338, 5781726, 5793994, 5805827,

5771235, 5828835, 5802054, 5784582, 5910954, 5937169.

(aaaa). Some or all of the persons with a duty of candor in the prosecution that led to the

'094 Patent, were participants in the prosecution of the other patent applications.

Some or all of the persons with a duty of candor in the '094 prosecution knew of

facts sufficient to establish the materiality to the '094 prosecution of these other

applications and materials.

(bbbb). On information and belief, these other applications and materials were concealed

from the examiner in the '094 Patent with the intent to deceive.

72.     As its sixth additional defense, Dell alleges that USEI's claims are barred, in

whole or in part, by laches.  The delay in bringing this action was unreasonable and inexcusable

under the circumstances and such delay has resulted in material prejudice to Dell.


73.     As its seventh additional defense, Dell alleges that past damages are barred by

failure to comply with the Marking Statute, 35 U.S.C. § 287.

## COUNTERCLAIM

Dell by way of counterclaim against USEI, avers:

1.      Counts I-V of this counterclaim seek a declaratory judgment to settle an actual

controversy between the parties hereto with respect to the validity, infringement, and

unenforceability of the patents-in-suit.  This counterclaim arises under the patent statutes of the

United States,  Title 35 United States Code and this Court has jurisdiction of this action under Title 28 United States Code §§ 1338.

2.       Venue is proper pursuant to 28 U.S.C. § 1391.

3.       Counterplaintiff, Dell, is a corporation organized and existing under the laws of Delaware with a principal place of business located at One Dell Way, Round Rock, Texas 78682.

4.       On information and belief, Counterdefendant USEI is a Texas limited liability corporation with a principal place of business in Tyler, Texas.  USEI has asserted that it owns all right, title and interest in and has standing to sue for infringement of the Patents-in-Suit.

5.       An actual controversy has arisen as to whether or not Dell has infringed the patents-in-suit and as to whether those patents are valid and enforceable.

## COUNT I -- Declaration of Noninfringement

6.       Dell incorporates paragraphs 1-69 of its answer and 1-5 of this Counterclaim as paragraph 6 of this Counterclaim.

7.       Dell does not make, use, sell, offer to sell or otherwise infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the Patents-in-Suit.

## COUNT II -- Declaration of Invalidity

8.       Dell incorporates paragraphs 1-69 of its answer and 1-5 of this Counterclaim as paragraph 8 of this Counterclaim.

9.       The Patents-in-Suit are invalid because the specification and claims thereof fail to satisfy one or more of the provisions and/or requirements of 35 U.S.C. §§101, 102, 103, and/or 112.

**COUNT III -- Declaration of Unenforceability**

10.    Dell incorporates paragraphs 1-69 of its answer and 1-5 of this Counterclaim as paragraph 10 of this Counterclaim.

11.    The Patents-in-suit are unenforceable in whole or in part by reason of the patentee's inequitable conduct and/or laches.

**JURY DEMAND**

Dell requests a trial by jury on all issues presented in plaintiff's complaint and in this Answer and Counterclaim which are triable to a jury.

WHEREFORE, defendant Dell Inc., prays that this Court enter judgment in its favor granting the following relief:

A.    Dismissal with prejudice of all claims brought by USEI against Dell;

B.    A finding that this case is exceptional and an award to Dell of attorneys' fees and costs as provided by 35 U.S.C. § 285;

C.    A declaration that Dell's products do not infringe any claim of the patents-in-suit;

D.    A declaration that all claims of the patents-in-suit are invalid;

E.    A declaration that the patents-in-suit are unenforceable in whole or in part;

F.    A declaration that USEI's past damages are barred by the doctrine of laches;

G.    A declaration that USEI's past damages are barred by its failure to comply with the Marking Statute, 35 U.S.C. § 287; and,

H.    Such other and further relief as this Court or a jury may deem proper and just

Respectfully submitted,

*/s/ Deron R. Dacus*
Deron R. Dacus
Texas Bar No: 00790553

RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, TX  75702
903-597-3301
903-597-2413 (fax)
derond@rameyflock.com

Kimball Anderson (ID No. 0049980)
Michael L. Brody (ID No. 3124083)
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601
312/558-5600
kanderson@winston.com
mbrody@winston.com

Yasin Mohammad (ID No. 242798)
WINSTON & STRAWN
333 S. Grand Ave.
37th Floor
Los Angeles, California 90071
213/615-1700
ymohammad@winston.com

Hiep Huu Nguyen (ID No. 4610176)
WINSTON & STRAWN
200 Park Avenue
New York, New York 10166
(212) 294-6700
hnguyen@winston.com

Attorneys for Dell Inc.


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 17th day of  December, 2009.

/s/  Deron R. Dacus
Deron R. Dacus