# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| U.S. Ethernet Innovations, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Acer, Inc., Acer America Corporation, Apple, Inc., ASUS Computer International, ASUSTeK Computer Inc., Dell Inc., Fujitsu Ltd., Fujitsu America, Inc., Gateway, Inc., Hewlett Packard Co., HP Development Company LLC, Sony Corporation, Sony Corporation of America, Sony Electronics Inc., Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc.,<br><br>    Defendants. | Case No. 6:09-CV-448-LED |

## INTEL CORPORATION'S MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, Intel Corporation ("Intel") hereby moves to intervene in this action as of right, or alternatively, with permission of the Court. Intel seeks to intervene in this patent infringement action filed by U.S. Ethernet Innovations, LLC ("U.S. Ethernet") to protect both its interests and the interests of many of its customers who have been named as defendants in this action.[1] Intel is seeking to intervene because a number of the patent infringement claims at issue relate to networking technology that Intel supplies to those

---

[1] Intel's customers include all of the Defendants, namely Acer, Inc., Acer America Corporation, Apple, Inc., ASUS Computer International, ASUSTeK Computer Inc., Dell Inc., Fujitsu Ltd., Fujitsu America, Inc., Gateway, Inc., Hewlett Packard Co., HP Development Company LLC, Sony Corporation, Sony Corporation of America, Sony Electronics Inc., Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc. (collectively, the "Intel Customers").

INTEL CORPORATION'S MOTION TO INTERVENE - Page 1

defendants.  Indeed, the complaint in this action explicitly accuses Intel® Pro/100 network adapters sold by Dell of infringement.

U.S. Ethernet's assertion that computer systems in which Intel products provide networking functionality infringe certain of its patents is tantamount to accusing Intel of infringement.  Intel, therefore, has a direct interest in the outcome of this litigation.  Moreover, Intel has agreed to defend and partially indemnify customers who have requested indemnity in connection with U.S. Ethernet's claims directed against Intel products incorporated into those customers' products.  As a result, Intel has a substantial direct financial interest in the outcome of this litigation.

Intel can also offer unique technical knowledge and expertise as the designer and manufacturer of networking technology that its customers incorporate into the accused products.  To the extent that U.S. Ethernet subsequently sues other Intel customers, Intel's interest in the issues to be litigated here, such as claim interpretation, validity, and infringement based on Intel components, will extend beyond this case to those future actions.  This case is still in its initial pleading phase and granting Intel leave to intervene would not prejudice any of the parties.  Denying the motion, however, would significantly prejudice Intel and other companies that use Intel products.  If Intel is denied the opportunity to defend its technology against U.S. Ethernet's allegations, its products may be found to infringe without Intel ever having had the benefit of a full and fair opportunity to litigate the issues.

Intel therefore requests leave to intervene as of right in this action under Rule 24(a)(2), or in the alternative, seeks the Court's permission to intervene pursuant to Rule 24(b)(1)(B).  In accordance with Rule 24(c), a copy of Intel's proposed Complaint in Intervention is attached as Exhibit A.

## I.     FACTUAL BACKGROUND

### A.     This Case Is In Its Initial Pleading Stage.

The Complaint was filed on October 9, 2009 for alleged infringement of United States Patents 5,307,459, 5,434,872, 5,732,094, and 5,299,313.  [Dkt. 1]  Defendants include many Intel Customers.  Defendants Apple Inc., Dell Inc., and Hewlett-Packard Co. filed answers and counterclaims to the Complaint on December 17, 2009.  The remaining Defendants received extensions and answered in mid January, 2010, and U.S. Ethernet received an extension to respond to counterclaims in February, 2010.  [Dkts. 37, 43, 55, 68, 82]

### B.     This Action Implicates Products That Intel Sells To Its Customers.

Intel manufactures and sells networking solutions -- including the Intel® PRO/100 and PRO/1000 network adapters and computer motherboard chipsets with integrated network adapters -- that enable computers to connect to and communicate with networks and the Internet. The Intel Customers incorporate these network interface components into some of the products that are alleged to infringe U.S. Ethernet's patents.  In fact, U.S. Ethernet's Complaint expressly accuses an Intel component of infringement with respect to one defendant, stating "Dell imports, makes, uses, offers for sale, and/or sells certain products and devices which embody one or more claims of the Patents-in-Suit, including, without limitation, ***the Intel PRO/100***, E1405, D420, and Inspiron 1525 (collectively, the 'Dell Accused Products')."  [Complaint (Dkt. 1), ¶ 25 (emphasis added).]

Many of the named defendants are significant customers of Intel, accounting for more than one third of Intel's net revenue in 2007.  [*See* Intel 2008 Annual Report http://www.intc.com/intelAR2008/business/marketing/index.html (visited December 14, 2009).] Although Intel vigorously denies that its products or technology infringe U.S. Ethernet's patents,

it appears clear that U.S. Ethernet is accusing Intel networking technology incorporated in some of the Intel Customers' products.

### C. Intel Has Agreed to Partially Indemnify Its Customers Against Claims that Their Intel-Based Products Infringe U.S. Ethernet's Patents.

In the wake of the filing of the Complaint, at least six Intel customers – Asus, Toshiba, Fujitsu, Apple, Dell, and Sony – have already demanded that Intel indemnify, defend, and hold them harmless from U.S. Ethernet's claims in this action, based on indemnity agreements relating to their purchases of Intel networking products. [Ex. B (Declaration of Michael Labbee)] Based on the nature of the claims at issue in this suit, Intel has agreed to defend and partially indemnify those customers. *Id.* Other customer defendants may make similar indemnity demands.

## II. ARGUMENT

Intel is entitled to intervene in this action as a matter of right pursuant to Rule 24(a)(2). Alternatively, the Court should permit Intel to intervene under Rule 24(b)(1)(B).

### A. Intel Is Entitled To Intervene As A Matter Of Right.

Rule 24(a)(2) permits intervention on timely motion for anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In assessing a motion to intervene as a matter of right, four criteria are to be considered: (1) the timeliness of the motion; (2) the potential intervener's interest in the property or transaction that is the subject of the underlying lawsuit; (3) any impairment to the intervener's ability to protect its interest absent intervention; and (4) the adequacy of the representation of the potential intervener's interest by the existing parties. *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005); *State of Texas v. Am. Tobacco Co.*, No. 5-98CV-

270, 1999 WL 1022129, at *1 (E.D. Tex. Nov. 5, 1999). Where the intervener's interest is substantial, for example where a manufacturer seeks to intervene in a suit brought against its customer, the intervener's interest is to be given a greater weight. *See, e.g., Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. Civ. A. 04-1337-KAJ et al., 2005 U.S. Dist. LEXIS 22933, at *9-10 (D. Del. May 18, 2005); *accord LG Elecs., Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002).

"The inquiry under [Rule 24] subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application…intervention of right must be measured *by a practical rather than technical yardstick*." *Ross*, 426 F.3d at 753 (emphasis added). Thus, for example, intervention is proper when the prejudice to the potential intervener outweighs the potential prejudice to the remaining parties, particularly where there have been no legally significant proceedings other than discovery. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125-56 (5th Cir. 1970); *Ross*, 426 F. 3d at 753 ("Intervention should generally be allowed where 'no one would be hurt and great justice could be attained.'").

As explained below, Intel's request for intervention as a matter of right is well-founded.

### 1. Intel's motion to intervene is timely.

When evaluating whether a motion to intervene is timely, the Fifth Circuit has "set forth four factors that must be considered," including:

> Factor 1. The length of time during which the would-be intervener actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene. Factor 2. The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervener's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case. Factor 3. The extent of the prejudice that the would-be intervener may suffer if his petition for leave to intervene is denied. Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Ross*, 426 F.3d at 754 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)).

Here, Intel is seeking to intervene at the initial stages of the litigation. No discovery has taken place, and a docket control order has not been issued. Intel's intervention will not prejudice any of the existing parties. There can be no question that Intel has moved timely to intervene. *Ross*, 426 F.3d at 756 (unless some result can be demonstrated that would not have occurred "but-for" Intel's failure to file its motion to intervene earlier, there is no prejudice to the other parties); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (motion to intervene was timely when filed before discovery had begun); *Alabama v. U.S. Army Corps of Eng'rs*, 229 F.R.D. 669, 672 (N.D. Ala. 2005) (motion to intervene was timely when court had not yet conducted proceedings on the merits and intervention would not delay the proceedings); *Travelsource Corp. v. Old Republic Int'l Corp.*, No. 85 C 8116, 1986 WL 3848, at *2 (N.D. Ill. Mar. 14, 1986) (motion to intervene was timely because suit was only six months old and no pleadings had been filed other than the complaint and answer).

### 2. Intel has a compelling interest related to the property at issue.

"A party has an interest relating to the subject matter of an action when it has a 'direct, substantial, legally protectable interest in the proceedings.'" *Am. Tobacco*, 1999 WL 1022129, at *2. "[T]he interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross*, 426 F.3d at 757 (citations omitted).

Intervention is routinely granted as of right in patent actions where, as here, accused products incorporate components manufactured by the intervening party. *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 US 53, 55 (1935) (manufacturer's intervention in patent infringement action against its customers was "necessary for the protection of its interest"); *Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1344 (Fed. Cir. 2006) ("[T]o the extent that [the interest of the manufacturer of allegedly infringing

products] may be impaired by the Texas litigation, [the manufacturer] may seek to intervene in that litigation."); *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 826 (2d Cir. 1963) ("There is no doubt of the propriety of [a party's] intervention as the manufacturer and vendor to [defendants] and others of the equipment alleged by [plaintiff] to be an infringement of its [] patent[s]."); *Honeywell*, 2005 U.S. Dist. LEXIS 22933, at *9-10 ("It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation.").[2]

Further, Intel has a substantial and protectable interest in defending the customers it has agreed to partially indemnify. See *Fisherman's Harvest, Inc. v. U.S.*, 74 Fed. Cl. 681, 685 (2006) ("An indemnitor may be allowed to intervene in a lawsuit brought against an indemnitee in order to protect its interest under an indemnity agreement.") (internal citations omitted); *IBM*, 1994 WL 706208, at *5 (patent infringement claims against an indemnitee are in effect claims against the indemnitor); *Lemelson v. Larami Corp.*, No. 80CIV6081, 1981 WL 319072 (S.D.N.Y. Mar. 23, 1981) (permitting intervention in patent infringement action by manufacturer that had an indemnification obligation). Moreover, Intel has many other customers that

---

[2] *Accord LG Elecs. Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 365 (N.D. Cal. 2002) ("[An intervening manufacturer] has more than a speculative economic interest, as the products that it sells will be at the heart of the [patent infringement] litigation"); *IBM Corp. v. Conner Peripherals, Inc.*, No. C-93-20117, 1994 WL 706208, at *5 (N.D. Cal. Dec. 13, 1994) (intervening manufacturer "played an important role in manufacturing and designing the controllers that allegedly infringed" and "should be able to present facts relevant to whether the controllers actually did infringe"); *Engineered Sports Prods. v. Brunswick Corp.*, 362 F. Supp. 722, 729 (D. Utah 1973) ("The manufacturer is the party of greatest interest in a determination of the patent's validity…").

incorporate its networking technology in their products. Consequently, the potential impact of this litigation on Intel and its customers may extend beyond claims made by those named in this suit.

### 3. The disposition of this action may impair Intel's ability to protect its interests.

The nature of the intervenor's interest and the effect that the outcome will have on its ability to protect that interest are closely related factors for determining whether a motion to intervene should be granted. *Chiles*, 865 F.2d at 1214. "'The second cannot be answered without reference to the first.'" *Id.* (quoting *Hobson v. Hansen*, 44 F.R.D. 18, 30 (D.D.C. 1968)). As a general rule, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should … be entitled to intervene." Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendments.

Intel's ability to protect its interest will be significantly impaired if it cannot intervene. A manufacturer has a strong interest in being heard on validity, infringement and claim construction issues where the accused products incorporate its components. See *Honeywell Int'l.*, 2005 U.S. Dist. LEXIS 22933, at *12-13 (in a patent infringement action, a manufacturer's interests "will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions [on validity and infringement] known"). Even if the result in this case may not have preclusive effects on Intel or its other customers, Intel's relationship with its customers will be affected if, as a practical matter, the outcome in this case effectively prohibits its customers from selling products that incorporate Intel networking technology. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse

ruling against its products") (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977)); *LG Elecs.*, 211 F.R.D. at 365 (a manufacturer's legally protectable interest "will unquestionably be impaired" if injunctive relief is granted and the manufacturer is prohibited from selling its product); *see also Ranger Ins. Co. v. United Housing of New Mexico, Inc.*, 488 F.2d 682, 683 (5th Cir. 1974) (the potential for a negative ruling and the potential consequence of such a ruling are sufficient to support intervention as of right); *Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("there can be little question but that the interests of [a licensee] would be affected" if the parties to the litigation prevail and licenses are revoked).

Finally, as already discussed, Intel has agreed to partially indemnify its customers. Given the high cost of patent litigation and its potential effects, Intel should be allowed to protect its interests first hand. Intel should not be required to stand back and watch its fate litigated without a say in the outcome.

### 4. The named defendants inadequately represent Intel's interests.

In evaluating whether a potential intervener's interests are adequately represented, the Fifth Circuit has described this burden as "minimal," noting that the potential intervener need only show that "representation by the existing parties *may* be inadequate." *Ross*, 426 F.3d at 761 (emphasis added); *see Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (minimal burden of would-be intervener to show inadequate representation met by showing that representation by existing parties "may" be inadequate); *Thurmond v. Compaq Computer Corp.*, No. 1:99-CV-711, 2000 U.S. Dist. LEXIS 20893, at *4 (E.D. Tex. June 26, 2000) (Federal Rule of Civil Procedure 24(a) should be "construed broadly, in favor of the applicant[] for intervention").

Existing parties may not adequately represent the intervenor's interests where they "possess interests inimical" to the proposed intervenor. *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 216 (11th Cir. 1993) (granting intervention where the party to the litigation possessed interests antagonistic to intervenor's objectives). In *Honeywell*, for example, the court found that because Seiko was uniquely situated to understand and defend its own products, its interests were not adequately represented by existing parties to the litigation, even though Seiko's customers obviously had an interest in vigorously defending against the allegations of infringement. *See Honeywell*, 2005 U.S. Dist. LEXIS 22933, at *13.

In this case, Intel cannot rely on the Intel Customers to protect its interests. A manufacturer like Intel is presumed to have a greater interest than its customers in defending against actions of patent infringement involving its products. In practical terms, it makes more sense for the manufacturer of component parts rather than the customer who uses those parts to litigate issues such as infringement. *Honeywell*, 2005 U.S. Dist. LEXIS 22933, at *11 ("[F]rom the perspective of the host of defendants [plaintiff] has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed.")

Further, the Intel Customers do not have the same knowledge or level of expertise that Intel has with its own technology. The Intel Customers incorporate Intel's highly complex networking technology components into their products, but do not design or manufacture them. Therefore, the Intel Customers may not be in a position to assert all applicable non-infringement defenses or invalidity arguments. *Id.* at *4 (because a manufacturer "is uniquely situated to understand and defend its own product, its interest are not adequately represented by existing parties to the litigation").

Moreover, the Intel Customers may not see this case through to judgment. Settlement negotiations can begin and the cost of litigation often forces parties to settle without addressing the merits of the claims. Additionally, because the Intel Customers may have alternative suppliers, they may not have so great an interest as Intel does in obtaining findings of invalidity and non-infringement. Intervention as of right should be granted to one who may potentially present a "more vigorous presentation" of its interests than the existing parties. *N.Y. Pub. Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975).

**B.     Alternatively, the Court Should Exercise Its Discretion to Permit Intel to Intervene.**

Although Intel believes it is entitled to intervene as a matter of right, it moves in the alternative for leave to intervene with permission of the Court. Intervention is permitted on timely motion for anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Permissive intervention is allowed when three criteria are met: (1) the motion is sufficiently timely; (2) there is a common question of law or fact between the intervener's claim or defense and the main action; and (3) intervention will not unduly delay or prejudice the adjudication of rights of the original parties. *Am. Tobacco*, 1999 WL 1022129, at * 1. Permissive intervention under Rule 24(b)(2) should be construed liberally to permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, Civ. A. Nos. B-87-00507¬CA, B-88-00429-CA, 1989 WL 237732, at *4 (E.D. Tex. Feb. 14, 1989) ("Rule 24(b) 'plainly dispenses with any requirement that the intervener [shall] have a direct, personal or pecuniary interest in the subject of the litigation.'") (citation omitted).

As discussed previously, this motion has been filed timely. Moreover, there are issues of law and fact common among the indemnified Intel Customers and Intel. U.S. Ethernet is accusing them of infringement based on their use of Intel networking technology. The common questions of law and fact include whether the claims asserted in the accused patents are valid and enforceable and whether the Intel Customers' products that incorporate Intel networking technology infringe. Intel's Complaint in Intervention, which seeks declaratory judgment of non-infringement, invalidity and unenforceability of the patents in suit, raises questions of law and fact that overlap with the defenses that the Intel Customers will likely assert in this action. *See Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) (granting manufacturer permissive intervention in patent infringement action due to common issues); *Lemelson*, 1981 WL 319072, at *1 (common questions of fact and law exist when validity of patent is essential to both named defendants and intervenor); *Salem Eng'g Co. v. Nat'l Supply Co.*, 75 F. Supp. 993, 996 (W.D. Pa. 1948) (granting permissive intervention to manufacturer in patent infringement action because "'it is plain the applicant's defense and the main action have a question of law and fact in common.'").

Finally, Intel's intervention will not in any way delay the adjudication of these claims. To the contrary, Intel's intervention will simplify these proceedings given the complex nature of technology and the patent infringement claims.

## III.   CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant its Motion to Intervene as a matter of right pursuant to Rule 24(a)(2), or alternatively, to intervene by permission pursuant to Rule 24(b)(1)(B).

Dated:  January 29, 2010

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ Garland T. Stephens*
 Garland T. Stephens, Lead Attorney
 (24053910)
 David J. Healey (09327980)
 Benjamin C. Elacqua (24055443)
 **FISH & RICHARDSON P.C.**
 1221 McKinney Street
 Suite 2800
 Houston, TX 77010
 713-652-0115
 Fax: 713-652-0109
 stephens@fr.com
 healey@fr.com
 elacqua@fr.com

 John W. Thornburgh
 Seth M. Sproul
 **FISH & RICHARDSON P.C.**
 12390 El Camino Real
 San Diego, CA 92130
 858-678-5070
 Fax: 858-678-5099
 thornburgh@fr.com
 sproul@fr.com

Counsel for Intervening Party
INTEL CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 29, 2010 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                         */s/ Stacci H. Mahadeo*
                                         Stacci H. Mahadeo

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for **U.S. Ethernet Innovations, LLC,** regarding the subject matter of this motion on January 29, 2010 and they indicated they wanted us to file motion before they would decide whether or not they would oppose said motion.

                                         */s/ Garland T. Stephens*
                                         Garland T. Stephens

2010-01-29 Intel Corporation's Mtn to Intervene.doc