**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| U.S. ETHERNET INNOVATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:09-cv-448-LED |
| | ) | |
| ACER, INC; ACER AMERICA | ) | JURY TRIAL DEMANDED |
| CORPORATION; APPLE INC; ASUS | ) | |
| COMPUTER INTERNATIONAL; ASUSTEK | ) | |
| COMPUTER INC; DELL INC; FUJITSU LTD; | ) | |
| FUJITSU AMERICA INC; GATEWAY, INC; | ) | |
| HEWLETT PACKARD CO; HP | ) | |
| DEVELOPMENT COMPANY LLC; SONY | ) | |
| CORPORATION; SONY CORPORATION OF | ) | |
| AMERICA; SONY ELECTRONICS INC; | ) | |
| TOSHIBA CORPORATION; TOSHIBA | ) | |
| AMERICA, INC; AND TOSHIBA AMERICA | ) | |
| INFORMATION SYSTEMS, INC; | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND ........................................................................................2

      A.      The Northern District of California Is Familiar with Three of the Four Patents at Issue. .................................................................................................................2

      B.      Relevant Documents and Key Witnesses Concerning the Allegedly Infringing Components Are Located in California, the Northern District In Particular. ..........2

      C.      Most of the Relevant Documents and Key Witnesses Concerning Defendants' Products Are Located in California, the Northern District In Particular. ................3

      D.      Most of the Key Witnesses and Relevant Documents Concerning the Patents-at-Issue Are Located in the Northern District of California. .......................................3

      E.      Prior Art Witnesses and Materials Are Located in the Northern District of California. ............................................................................................................4

      F.      Key Witnesses and Documents Are Not Located in the Eastern District of Texas. 4

III.    LEGAL STANDARD ..................................................................................................5

IV.     ARGUMENT ..............................................................................................................8

      A.      Plaintiff Could Have Brought This Action in the Northern District of California. ..8

      B.      The Private Interest Factors Clearly Weigh in Favor of Transfer to the Northern District of California. ...........................................................................................8

      C.      The Public Interest Factors Clearly Weigh in Favor of Transfer to the Northern District Of California. ...........................................................................................12

V.      CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) ..................................................................10

*Fifth Generation Computer Corp. v. Int'l Bus. Machs. Corp.*,
  No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 17, 2009) ......................8, 9

*Genentech Inc. v. Biogen Idec Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)...............................................................7, 8, 10, 12

*In re Hoffmann-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009).....................................................................7, 9, 10

*In re Horseshoe*,
  337 F.3d 429 (5th Cir. 2003) ..............................................................................11

*In re Nintendo Co.*,
  Misc. No. 914, 2009 U.S. App. LEXIS 27647 (Fed. Cir. Dec. 17, 2009) ......................6, 7, 11

*In re T.S. Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)...................................................................... passim

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ("Volkswagen II")....................................5, 6

*Invitrogen Corp. v. General Elec. Co.*,
  No. 6:08-cv-112, 2009 U.S. Dist. LEXIS 9127 (E.D. Tex. Feb. 9, 2009).............................12

*Odom v. Microsoft Corp.*,
  596 F. Supp. 2d 995 (E.D. Tex. 2009) ...................................................................14

*Regents of the Univ. of California v. Eli Lilly and Co.*,
  119 F.3d 1559 (Fed. Cir. 1997)............................................................................12

*Rich v. S. Gulf Operators*,
  879 F. Supp. 49 (E.D. Tex. 1995) ........................................................................11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).................................................................................14, 15

**STATUTES**

28 U.S.C. §§ 1391(b) and (c), and § 1400(b) ...................................................................8

28 U.S.C. § 1404(a) ...................................................................................1, 5, 6, 8

35 U.S.C. § 287...........................................................................................................4

California Code of Civil Procedure § 1989 ..............................................................10

Defendants[1] jointly move pursuant to 28 U.S.C. § 1404(a) to transfer this action from the United States District Court for the Eastern District of Texas to the United States District Court for the Northern District of California.[2]

## I.   INTRODUCTION

This case does not belong in Texas:

- Three of the four patents-in-suit were previously tried to verdict in the Northern District of California.  Hence, that court is already familiar with these patents, their file histories, much of the prior art, and the technology that is common to all four patents at issue.

- California—particularly the Northern District of California—is the location of the bulk of the witnesses and documents relevant to the design and development of the accused products' allegedly infringing features, the prior art, and the finances and marketing materials relevant to damages.  Most of the Defendants and suppliers of network interface controllers (the componentry at issue) are headquartered or maintain their principal place of business in California, while no Defendant has employees or documents in this District relevant to this case.

- A significant number of key witnesses, including at least two of the four named inventors of the patents-in-suit and the prosecuting attorney of the patents-in-suit, have been identified as residing in the Northern District of California.  Further, multiple additional witnesses are likely to be found in that venue given its ties to the parties, their suppliers, and the sources of prior art.

Indeed, the only relevant connection with this forum is that the Plaintiff purports to be a Tyler, Texas business.  But Plaintiff did not incorporate in Texas until eleven days before this case was filed, its principals appear to reside elsewhere, and there is no evidence of anything more than a shell in this forum.

In light of the foregoing, Defendants respectfully request that the Court transfer this action to the Northern District of California.

---

[1] Acer, Inc., Acer America Corporation, Apple Inc., ASUS Computer International, ASUSTeK Computer Inc. (collectively, "ASUS"), Dell Inc., Fujitsu America, Inc., Fujitsu Limited (collectively, "Fujitsu"), Gateway, Inc. (collectively with the Acer, Inc. and Acer America Corporation, "Acer"), Hewlett Packard Co. ("HP"), Sony Corporation, Sony Corporation of America, Sony Electronics Inc. (collectively, "Sony"), Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc. (collectively, "Toshiba") (collectively "Defendants")

[2] Defendants have conferred with Pending Intervenor Intel Corp. ("Intel"), and Intel intends to join this Transfer Motion if its Motion to Intervene is granted.

## II.  FACTUAL BACKGROUND

### A.  The Northern District of California Is Familiar with Three of the Four Patents at Issue.

In a case spanning from 2003 through 2008, Plaintiff's predecessor in interest tried to verdict claims that computer components known as network adapters or network interface controllers (NIC's) made, used, or sold by D-Link and Realtek infringed United States Patents Nos. 5,307,459, 5,434,872, and 5,732,094.  (the '459, '872, and '094 Patents).  (Brody Decl. ¶3).  The 785 docket entries in *3Com Corporation v. D-Link Systems, Inc., et al.*, 3:03-CV-02177 VRW (N.D. Cal).  ("*Realtek*"), include rulings on claim construction and multiple summary judgment motions.  (Brody Decl. ¶ 4).  They also reflect extensive motion practice on a variety of procedural and discovery issues, as well as jury instructions, motions *in limine*, post trial motions, and two weeks of trial.  (*Id*).  Thus, the Northern California court, has already invested substantial time and resources becoming familiar with the technology, legal issues, and subject matter of this case.

### B.  Relevant Documents and Key Witnesses Concerning the Allegedly Infringing Components Are Located in California, the Northern District In Particular.

As in the prior California case, the plaintiff in this case, U.S. Ethernet Innovations, LLC ("Plaintiff") alleges that Defendants' computer products infringe the '459, '872, and '094 Patents, as well as U.S. Patent No. 5,299,313 ("the '313 Patent") (together, "the patents-in-suit") (Compl. ¶¶ 1-3), primarily because the accused computers utilize the functionality incorporated in network interface cards, network interface controllers, and network adapters ("NICs").  The Defendants' accused computer products contain NICs designed and developed by third-party suppliers, namely Intel, Broadcom, Marvell, Realtek, and/or Atheros. (Brody Decl. ¶ 5).   Intel, Marvell, and Atheros are located in the Northern District of California (Brody Decl. ¶ 6; Verhoorn Decl. ¶ 3)., and Intel has a relevant facility in the Eastern District of California. (Verhoorn Decl. ¶ 8).  Broadcom is headquartered in the Central District of California, but has a facility in the Northern District of California.  (Brody Decl. ¶ 7).  Realtek is located in Taiwan.

(Brody Decl. ¶ 8).  Thus, most of the relevant witnesses, documents, and physical evidence regarding these component chips are located in California, and particularly in or near the Northern District of California.

C.     **Most of the Relevant Documents and Key Witnesses Concerning Defendants' Products Are Located in California, the Northern District In Particular.**

The Defendants in this case are members of eight corporate families.  At least one member from seven of these corporate families is based in California.  Not even Plaintiff contends that any of the Defendants have significant operations in this district.  (Compl. ¶¶ 4-12).  Apple and Hewlett Packard are headquartered in the Northern District of California.  (*Id).* Acer America Corporation, ASUS Computer International, and Fujitsu America, Inc., whose parents are based in Asia, have their principal U.S. places of business in the Northern District of California.  (*Id).*  Additionally, Gateway (an Acer subsidiary) is located in Southern California. (*Id).* Toshiba America Information Systems, Inc., and Sony Electronics Inc.—the Toshiba and Sony entities that import, use, offer for sale, or sell the accused computers—are also located in Southern California. (*Id).*  Unsurprisingly, most of the relevant documents, physical evidence, and key witnesses concerning Defendants' accused products are therefore also located in or near California, and in particular, the Northern District of California.

D.     **Most of the Key Witnesses and Relevant Documents Concerning the Patents-at-Issue Are Located in the Northern District of California.**

The key witnesses and documents concerning the asserted patents are also in the Northern District of California.  At least two of the four named inventors of the patents-at-issue, including the "lead" inventor on the patents-in-suit, reside in the Northern District of California. (Brody Decl. ¶ 9).  Moreover, Lai-Chin Lo, another named inventor of the '459 and '313 patents, is also believed to reside in or near the Northern District of California. (Brody Decl. ¶ 10). Similarly, the primary prosecuting attorney as to all four patents, Mark A. Haynes, resides in the Northern District of California, as does attorney Kent R. Richardson, who assisted in the prosecution of at least the '094 Patent.  (Brody Decl. ¶ 11).

Whether Plaintiff and its predecessor 3Com complied with the marking requirements of 35 U.S.C. § 287 will also be an issue in the litigation.  Annette Davis, a former 3Com engineer who testified during the *Realtek* case concerning 3Com's patent marking practices, resides in the Northern District of California.  (Brody Decl. ¶ 12).  Scott Mitchell, another 3Com engineer identified as having further information regarding the reasons why some 3Com products were not marked, also resides in the Northern District of California.  (Brody Decl. ¶ 13).  Thus, Ms. Davis and Mr. Mitchell are two additions to the long list of third-party witnesses in California.

### E.    Prior Art Witnesses and Materials Are Located in the Northern District of California.

Key witnesses relevant to the prior art that was asserted against the patents-in-suit in the *Realtek* case also currently reside in the Northern District of California.  For example, Farzin Firoozmand was an inventor of multiple patents cited during the prosecution of the patents-in-suit, including one reference that the examiner found anticipated several independent claims of the '872 Patent.  (Brody_Decl. ¶ 14).  Mr. Firoozmand also provided testimony during the *Realtek* litigation concerning the conception and development of a prior art high-speed network interface device by Advanced Micro Devices, Inc. (AMD), as did another AMD engineer, Gururaj Singh. (Brody_Decl. ¶¶ 14-15).  Both Messrs Firoozmand and Singh presently reside in the Northern District of California.  (Brody_Decl. ¶ ¶¶ 14-15).  AMD's corporate headquarters— presumably the depository for the relevant documents related to AMD's prior art network interface device—is also located in the Northern District of California. (Brody Decl. ¶16).

### F.    Key Witnesses and Documents Are Not Located in the Eastern District of Texas.

Defendants are aware of *no* relevant witnesses located in the Eastern District of Texas. (Brody Decl. ¶ 17).  Plaintiff's sole East Texas connection appears to be an office that Plaintiff established in Tyler about two weeks before filing suit.  The company's managers, David Kennedy and Larry Rosenberg, apparently reside on the East Coast.  (Brody Decl. ¶ 18).

While Defendant Dell has its principal place of business in Round Rock, Texas, Compl. at ¶ 8, Round Rock is in the Western District of Texas, and Dell's corporate headquarters are

located 267 miles from this courthouse.  (Brody Decl. ¶ 19).  Similarly, HP has a business location in Houston, Texas (the Southern District of Texas), (Weis Decl. ¶ 4, attached to Brody Decl. Ex. C), which is located 214 miles from this courthouse. (Brody Decl. ¶ 20).  To the extent that the convenience of Dell or HP's witnesses is to be consulted in this matter, drives from Round Rock or Houston to Tyler both take about four and a half hours, (*id*), about the same as the flights from those cities to San Francisco. (Brody Decl. ¶ 21).  Likewise, while certain Fujitsu, Dell, and HP entities have a physical presence in the Eastern District of Texas, plaintiff's allegations are not directed to these entities and they do not have information relevant to this case.  (Brody Decl. ¶ 17).  Similarly, although Fujitsu America, Inc. has a presence in Richardson, Texas, its activities there do not relate to the design or development of the accused features.  (*Id.*).  Further, Dell, HP, and Fujitsu's alleged liability, as explained above, will likely turn in significant part on the NICs from third-party suppliers based in California and abroad. (Brody Decl. ¶ 6-8).

### III.  LEGAL STANDARD

Congress has tempered a plaintiff's choice of venue by enacting the venue transfer statute, 28 U.S.C. § 1404(a).  As recognized by the Fifth Circuit:

> The underlying premise of § 1404(a) is that courts should prevent Plaintiffs from abusing their privilege under § 1391 by subjecting Defendants to venues that are inconvenient under the terms of § 1404(a).

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) ("Volkswagen II"); see also *In re T.S. Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

Pursuant to the venue transfer statute, once the district court decides a case might have been brought in the destination venue, it must then turn to whether "the convenience of the parties and witnesses, in the interest of justice" requires transfer.  *Volkswagen II*, 545 F.3d at 312.  Under Fifth Circuit law, a transfer is to be ordered where the transferee forum is "clearly more convenient" than the venue chosen by Plaintiff.  *TS Tech*, 551 F.3d at 1319.  This determination of "convenience" turns on the assessment of four "public interest" and four

"private interest" factors.  *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839 (1947)).

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law.  *Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen")).

Consideration of each of these factors is appropriate in most transfer cases, but the list is not necessarily exhaustive or exclusive and "'none . . . can be said to be of dispositive weight.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  Moreover, "Fifth Circuit precedent clearly forbids treating Plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *TS Tech*, 551 F.3d at 1320. Rather, the Plaintiff's choice of venue is wholly accounted for in the moving party's burden of showing "good cause" for transfer.  *Volkswagen*, 545 F.3d at 315; *see also TS Tech*, 551 F.3d at 1320 ("the Plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue").

After weighing these factors in *In re Nintendo Co.*, the Federal Circuit recently granted a writ of mandamus, ordering the District Court to transfer a patent infringement action in "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the Plaintiff . . . ."  *In re Nintendo Co.*, Misc. No. 914, 2009 U.S. App. LEXIS 27647, at *6 (Fed. Cir. Dec. 17, 2009).  None of the identified key witnesses lived in East Texas and no relevant documentation or other evidence was located there.  *Id.* at *9-11.

Similarly, the Federal Circuit ordered the District Court in *TS Tech* to transfer the patent infringement action in a case in which there was "no relevant connection between the actions giving rise to th[e] case and the Eastern District of Texas except that certain vehicles containing TS Tech's headrest assembly have been sold in the venue." 551 F.3d at 1321.  Among the relevant factors in granting the transfer was the fact that none of the companies had offices in the Eastern District of Texas and no witnesses or evidence was located in the district.  Instead, the "vast majority of identified witnesses, evidence, and events leading to this case involve[d]" the transferee state (Ohio) or its neighboring state (Michigan).  *Id.*

Likewise, in *Genentech Inc. v. Biogen Idec Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009), the Federal Circuit on writ of mandamus directed the district court to transfer a case where one of the three parties was located in the transferee venue and a second was located in the transferee state; ten witnesses with knowledge of the prosecution of the patents-in-suit and the development and manufacture of the products at issue were in the transferee venue, and additional witnesses were in the transferee state.  No witnesses or parties were located in the transferor venue; nor were any witnesses subject to compulsory process in that venue.

Finally, in *In re Hoffmann-La Roche*, 587 F.3d 1333 (Fed. Cir. 2009), the Federal Circuit issued a writ of mandamus directing the district court to transfer a case where one of the three parties, four of the eighteen non-party witnesses, and three of seven party witnesses were located in the transferee forum.  The court discounted the presence of Plaintiff's documents in the Eastern District of Texas because they had been transferred to that district in anticipation of litigation.  The court also discounted the presence of a non-party witness in Houston, Texas because there was not complete subpoena power over that witness in the transferor venue.

Here, as in *Nintendo*, *TS Tech*, *Genentech*, and *Hoffmann-La Roche*, there are no identifiable ties to the Eastern District of Texas other than connections created in anticipation of litigation.  As set forth below, weighing these factors clearly demonstrates the Northern District of California is more convenient and a transfer therefore should be ordered.

## IV.   ARGUMENT

### A.    Plaintiff Could Have Brought This Action in the Northern District of California.

"The threshold determination to be made under Section 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought." *Fifth Generation Computer Corp. v. Int'l Bus. Machs. Corp.*, No. 9:08-CV-205, 2009 U.S. Dist. LEXIS 12502, at *6 (E.D. Tex. Feb. 17, 2009).   There should be no dispute that this case could have been filed in the Northern District of California.   Defendants Acer America Corporation, Apple, Inc., ASUS Computer International, Fujitsu America, Inc., and Hewlett Packard Co. each have their principal place of business within the Northern District and, as such, are subject to personal jurisdiction there.   Dell Inc., Gateway, Inc., Sony Electronics Inc., and Toshiba America Information Systems, Inc. are also subject to personal jurisdiction in the Northern District of California as they each sell accused products throughout California, including within the Northern District, (Brody Decl. ¶ 14) and therefore have sufficient contacts to establish jurisdiction in that district. *See e.g.*, 28 U.S.C. §§ 1391(b) and (c), and § 1400(b).   Because personal jurisdiction exists in the Northern District of California over each of these Defendants, the threshold determination is met. Thus, the transfer analysis turns on weighing the private and public interest factors.

### B.    The Private Interest Factors Clearly Weigh in Favor of Transfer to the Northern District of California.

The private interest factors heavily favor transferring this case to the Northern District of California.   Here, four factors weigh in favor of transfer.

<u>The Relative Ease of Access to Sources of Proof</u>

The first private interest factor to be considered is "the relative ease of access to sources of proof," meaning documentary and physical evidence.   "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the Defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345.   The location of documentary evidence in this case strongly weighs

in favor of transfer to the Northern District of California. *See e.g.*, *TS Tech*, 551 F.3d at 1320-21; *Genentech*, 566 F.3d at 1345-46.

All but one of Defendant families and many of the third-party NIC manufacturers have principal places of business within or near the Northern District of California. Moreover, key third party witnesses – including prosecution counsel and third party prior art inventors – have their documents in the proposed transferee forum.

In contrast, documentary proof or other evidence relating to Plaintiff's claims is not known to be in the Eastern District of Texas. (Brody Decl. ¶ 17). That Plaintiff recently opened a Tyler office or transported documents to this venue in anticipation of this case being filed does not affect the venue determination. *Fifth Generation Computer Corp.*, 2009 U.S. Dist. LEXIS 12502, at *11-12 ("the fact that IBM maintains an office in the Southern District of Texas related to its Blue Gene-based on-line service, when . . . there is no showing that this office is likely to be the situs of documents relevant to this infringement action, does not establish a connection to the Eastern District of Texas."); *Hoffmann-La Roche*, 587 F.3d at 1336-37.

Accordingly, the ease-of-access-to-proof factor in this case weighs heavily in favor of transfer because a substantial majority of known sources of relevant documents are located in the Northern District of California, while none are known to exist in the Eastern District of Texas.

<u>The Compulsory Process to Secure the Attendance of Witnesses</u>

The second factor concerns the court's ability to compel non-party witnesses to attend trial. This factor favors transfer when more non-party witnesses reside within the proposed venue than in the Plaintiff's chosen venue and it most favors transfer when the proposed transferee forum has absolute subpoena power over third-party witnesses. *See In re Hoffmann-La Roche*, 587 F.3d at 1336-38.

Because there are a significant number of witnesses that are within the subpoena power of the Northern District of California, this factor weighs heavily in favor of transfer, under the Federal Circuit's analysis in *Genetech*.

> As noted above, there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here ***weighs in favor of transfer, and not only slightly***.

*Genentech*, 566 F.3d at 1345 (emphasis added); *see also In re Hoffman-La Roche Inc.*, 587 F.3d at 1337-38 (transferee venue's absolute subpoena power over a substantial number of witnesses favors transfer).

Here, Defendants know of no relevant witnesses within the complete subpoena power of this Court. (Brody Decl. ¶ 17).  Indeed, even Dell non-managerial witnesses located in Round Rock, Texas, are not under the absolute subpoena power of this District and cannot be compelled by this Court to give deposition testimony as they are located more than 100 miles from the court.

In contrast, there are likely a significant number of relevant third-party witnesses within the absolute subpoena power of the Northern District of California that could testify on the likely accused technology, the prior art, as well as the development of the technology claimed in the patents-in-suit.[3]  For example, the Northern District of California has absolute subpoena power over at least two of the inventors of the patents-in-suit, the primary prosecuting attorney, former 3Com engineers knowledgeable concerning 3Com's marking practices, and important AMD prior art witnesses.  (Brody Decl. ¶¶ 9-15).  If this case remains in the Eastern District of Texas, Defendants will be unable to compel live trial testimony from any of these third-party witnesses. Thus, the availability of compulsory process in California strongly favors transfer.

---

[3] California district courts also have the power to subpoena witnesses throughout the state pursuant to Rule 45(b)(2)(C), which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows statewide service.  Section 1989 of the California Code of Civil Procedure authorizes such service.  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

### The Cost of Attendance for and Convenience of Willing Witnesses

The convenience of and cost of attendance to witnesses is an important factor in the transfer analysis. *Genentech*, 566 F.3d at 1343.  The Northern District of California is clearly a more convenient forum for the vast majority of the key witnesses due to its proximity to their residences.  As explained above, many of these witnesses, including several former employees, prior art witnesses, inventors and prosecuting attorneys are located in the Northern District of California, and most of the rest are located elsewhere in California.  If this case proceeds in the Eastern District of Texas rather than the Northern District of California, these key witnesses will be substantially inconvenienced by having to travel over 1,200 miles to attend trial in this District.  (Brody Decl. ¶ 22);  *see, e.g.*, *Nintendo*, 2009 U.S. App. LEXIS 27647, at *9 (finding this factor clearly favors transfer because no witnesses live in Texas and key domestic witnesses "would have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington state…").  For any non-U.S. witnesses, the availability of direct air connections to San Francisco makes a material difference in the difficulty of the trip required to attend trial in this matter.[4]

### Other Practical Problems That Make a Trial Easy, Expeditious, and  Inexpensive

No other practical problems favor this District.  *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003) (finding this factor is only applicable "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence.").  This case is in its preliminary stages.  Indeed, the Court has not yet issued a docket control or discovery order.  Because the Court has not yet invested significant resources in the merits of the case, transfer should not pose any significant burden or result in any delay.  *Rich v. S. Gulf Operators*, 879 F. Supp. 49, 51 (E.D. Tex. 1995) ("Additionally, the case is in its early stages, so there is little chance that a transfer of venue would create appreciable delay or prejudice.").

---

[4] Where there are direct flights to Dallas, the two-plus hour drive to Tyler is an added burden.  Where there are no direct flights, the additional flight time from a US point of entry to Dallas poses still further difficulties.

**C.    The Public Interest Factors Clearly Weigh in Favor of Transfer to the
Northern District Of California.**

Just as the private interest factors weigh in favor of transfer, so too do the public interest

factors.  Here, judicial economy and local interest favor transfer.[5]

Judicial Economy

Judicial economy is of paramount consideration when determining whether a transfer is

in the interest of justice. "When a Plaintiff brings similar suit in two different districts, the court

must consider the extent to which transfer may increase judicial economy and decrease the risk

of inconsistent adjudication."  *Invitrogen Corp. v. General Elec. Co.*, No. 6:08-cv-112, 2009

U.S. Dist. LEXIS 9127, at *12 (E.D. Tex. Feb. 9, 2009).  "[T]ransfer is most appropriate when

one court has extensive familiarity with the technology or the legal issues involved, a claim

construction opinion has been prepared, and the cases involve the same or similar Defendants

with the same or similar products." *Id.* (quoting *J2 Global Commc'ns, Inc. v. Protus IP

Solutions, Inc.*, No. 6:08-cv-11, 2008 U.S. Dist. LEXIS 103609, at *5 (E.D. Tex. Dec. 23,

2008)); *Invitrogen*, 2009 U.S. Dist. LEXIS 9127, at *14 (judicial economy favored transfer

because of overlap of earlier litigated issues in transferee venue).

As the Federal Circuit has noted,

> In a case such as this in which several highly technical factual issues are presented
> and the other relevant factors are in equipoise, the interest of judicial economy
> may favor transfer to a court that has become familiar with the issues.

*Regents of the Univ. of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *see

also In re Volkswagen*, 566 F.3d at 1351 ("[M]ultiple lawsuits involving the same issues is a

paramount consideration when determining whether a transfer is in the interest of justice.").

Judge Vaughn Walker in the Northern District of California has already invested

substantial time and judicial resources to learn and understand the underlying technology, the

patents-in-suit, and some of the legal issues particular to this case.  The Northern District of

---

[5] The remaining factors (court congestions, conflicts of laws, and familiarity with governing laws) are neutral, and
thus, will not be addressed.

California litigation[6] spanned a period of five years – from January 2003 to September 2008. The PACER index for the Northern District case includes 785 docket entries that Judge Walker presided over.  (Brody Decl. ¶ 4).  Significantly, during the earlier litigation involving three of the four patents-in-suit at issue here, Judge Walker resolved disputes concerning infringement contentions[7]; evaluated claim construction briefing[8]; conducted a claim construction hearing[9]; issued a claim construction order and jury instructions collectively construing twelve claim terms relevant to the patents-in-suit in the instant litigation[10]; conducted a two-week jury trial in which he heard invalidity, infringement, and damages arguments; prepared fifty-three page jury instructions[11]; considered motions for judgment as a matter of law[12]; and considered post-trial motions.[13]  (Brody Decl. ¶ 4).  As such, the Northern District of California is intimately familiar with this technology and with these patents.  This Court would have to duplicate much of the work already performed by Judge Walker if it does not transfer this case.  Accordingly, judicial economy considerations strongly favor transfer and this case can be transferred to the Northern District of California easily and expeditiously.  *See Zoltar Satellite Sys. Inc.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (reasoning that judicial economy strongly favored transfer to the Northern District of California because "Judge Ware's investment of time and effort with these patents has been, and continues to be, substantial. . . . A duplication of his efforts would be wasteful of judicial resources and detrimental to judicial economy.").

<u>The Local Interest in Having Localized Interests Decided at Home</u>

The Northern District of California has an obvious connection and substantial local interest in adjudicating this case, as it is the locale for "the vast majority of identified witnesses, evidence, and events leading to this case." *TS Tech*, 551 F.3d at 1321.  The majority of the

---

[6] *3Com Corporation v. D-Link Systems, Inc.*, et al. 3:03-CV-02177 VRW (N.D. Cal)..
[7] *Id.* at Doc No. 251.
[8] *Id.* at Doc. Nos. 69, 70, 303, 325, 327, 330, 333, 338, 340, 343, 676.
[9] *Id.* at Doc. Nos. 320, 357.
[10] *Id.* at Doc. No. 375.
[11] *Id.* at Doc. No. 681.
[12] *Id.* at Doc. Nos. 680, 682.
[13] *Id.* at Doc. Nos. 725, 726, 728, 730, 731, 732.

Defendants are headquartered in California and employ thousands of California residents. (Brody Decl. ¶ 23).   The research, design, development, marketing, and/or sales for the bulk of the accused products took place in that district.   Consequently, the majority of the key witnesses and documentary evidence relating to the research, design, development, and product revenue for the bulk of the accused products are also in that district.   (*See id*).   Likewise, numerous suppliers of network interface controllers are based in the Northern District of California.   Moreover, "because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community," the Northern District's local interest is strong.   *Hoffmann*, 2009 U.S. LEXIS 26244, at *7.   Put simply, the activity which is at the center of this dispute – the design and development of the alleged infringing accused products and their network interface controllers, the prosecution of these patents, and the design and development of the prior art – largely took place in the Northern District of California and, as such, the Northern District has a strong local interest. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (agreeing with Defendant's argument that, because all of the events leading up to the infringement suit occurred in the transferee district, that district had a stronger local interest in the case).

In contrast, the Eastern District of Texas has minimal connections to this case.   (Brody Decl. ¶¶ 17-19, 24).   As explained above, the research or development of the identified accused products and the network interface controllers did not occur in the Eastern District.   Moreover, this district has minimal or no ties to the parties or witnesses.   Further, Plaintiff's managers are on the East Coast and thus its sole connection to the Eastern District of Texas is the locale of its place of incorporation and principal place of business, established on September 28, 2009, two weeks before the complaint was filed.   (Brody Decl. ¶ 24).   This connection, however, is too convenient to be coincidental – indeed a tactic to manipulate venue.

The Supreme Court has frowned upon such tactics, explaining that 1404(a) "should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just."

*Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964).  Here, Plaintiff's attempt to manufacture a more meaningful connection to the Eastern District of Texas by incorporating on the eve of litigation, while its managers remain on the East Coast, falls squarely within such prohibited activities.  *See e.g., Hoffman-La Roche*, 2009 U.S. App. LEXIS 26244, at *12 (rejecting Plaintiff's attempt to create a connection to East Texas and manipulate the propriety of venue by electronically shipping documents to East Texas and transferring case).  "The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum."  *Van Dusen*, 376 U.S. at 624.

Moreover, the fact that the accused products are sold in this District does not give the Eastern District of Texas a stronger interest in the case than other districts.  The Federal Circuit has recognized that where the products are "sold throughout the United States, . . . the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."  *TS Tech*, 551 F.3d at 1321.  Accordingly, to the extent that the citizens of the Eastern District of Texas have any general interest in this lawsuit, it cannot outweigh the substantial local interest—particular to this dispute—of the Northern District of California.

## V.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court transfer this case to the Northern District of California.

Dated: March 9, 2010                    Respectfully submitted,

                                  */s/ Deron R. Dacus*             

Deron Dacus (I.D. No. 00790553)
Ramey & Flock
100 East Ferguson, Suite 500
Tyler, Texas 75702
Main 903-597-3301
derond@rameyflock.com

15

Kimball Anderson
Michael L. Brody (ID No. 3124083)
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601
312/558-5600
kanderson@winston.com
mbrody@winston.com

Yasin Mohammad (ID No. 242798)
WINSTON & STRAWN
333 S. Grand Ave.
37th Floor
Los Angeles, California 90071
213/615-1700
ymohammad@winston.com

Hiep Huu Nguyen (ID No. 4610176)
WINSTON & STRAWN
200 Park Avenue
New York, New York 10166
(212) 294-6700
hnguyen@winston.com

**Attorneys for Defendant Dell Inc.**

*/s/ Melvin R. Wilcox*
Melvin R. Wilcox, III
Attorney-In-charge
Texas State Bar No. 21454800
YARBROUGH WILCOX, PLLC
100 E. Ferguson, Suite 1015
Tyler, TX 75702
Telephone: (903) 595-3111
Facsimile:  (903) 595-0191
mrw@yw-lawfirm.com

Craig S. Summers
Irfan A. Lateef
Marko R. Zoretic
Brian C. Claassen
M. Munes Tomeh
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502
craig.summers@kmob.com
irfan.lateef@kmob.com
marko.zoretic@kmob.com
brian.claassen@kmob.com
munes.tomeh@kmob.com

**Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., and Toshiba America
Information Systems, Inc.**

*/s/ Roderick B. Williams*_____
Roderick B. Williams
State Bar of Texas No. 21573700
K&L Gates LLP
111 Congress Ave., Ste. 900
Austin, Texas 78701
(512) 482-6880 (phone)
(512) 482-6859 (fax)
rick.williams@klgates.com

Michael J. Bettinger
Admitted pro hac vice
K&L Gates LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
(415) 882-8002 (phone)
(415) 882-8220 (fax)
michael.bettinger@klgates.com

David T. McDonald
Admitted pro hac vice
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 370-7957 (phone)
(206) 623-7022
(fax)David.McDonald@klgates.com

**Attorneys for Defendant Hewlett Packard Co.**


*/s/ Karl J. Kramer*
Karl J. Kramer
Christopher F. Jeu (State Bar No. 24050823)
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-813-5600
Facsimile: 650-494-0792
Email:  kkramer@mofo.com
Email:  cjeu@mofo.com

Andy Tindel
(State Bar No. 20054500)
PROVOST UMPHREY LAW FIRM, L.L.P.
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: 903-596-0900
Facsimile: 903-595-0909
Email: atindel@andytindel.com

**Attorneys for Defendants Fujitsu America Inc.
and Fujitsu Limited**

18

*/s/ Danny L. Williams*
Danny L. Williams (SBN 21518050)
Ruben S. Bains
Texas Bar No. 24001678
Christopher N. Cravey
Texas Bar No. 24034398
Drew Kim
Texas Bar No. 24007482
Williams, Morgan & Amerson, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011
E-mail: danny@wmalaw.com
E-mail: rbains@wmalaw.com
E-mail: cravey@wmalaw.com
E-mail: dkim@wmalaw.com

Eric M. Albritton
State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397
ema@emafirm.com

**Attorneys for Defendant Apple Inc.**

Lionel M. Lavenue (VA Bar # 49005)
Nicholas J. Nugent (VA Bar # 77141)
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700 (telephone)
(202) 408-4400 (facsimile)
E-mail: lionel.lavenue@finnegan.com
E-mail: nicholas.nugent@finnegan.com

Melvin R. Wilcox, III (TX Bar # 21454800)
Yarbrough Wilcox, PLLC
100 E. Ferguson, Suite 1015
Tyler, Texas 75702
(903) 595-1133 (telephone)
(903) 595-0191 (facsimile)
E-mail: mrw@yw-lawfirm.com

**Attorneys for Defendants Sony Corporation,
Sony Corporation of America, and Sony
Electronics, Inc.**


*/s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
Findlay Craft, LLP
6760 Old Jacksonville Hwy
Suite 101
Tyler, TX  75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

James H. Lin
Steven S. Baik
Kai Tseng
Orrick Herrington & Sutcliffe
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
jlin@orrick.com
sbaik@orrick.com
ktseng@orrick.com

**Attorneys for Acer, Inc., Acer America
Corporation and Gateway, Inc.**

Eric Findlay (SBN 00789886)
Findlay Craft, LLP
6760 Old Jacksonville Highway, Suite 101
Tyler, TX 75703
Phone: (903) 534-1100
Fax: 903-534-1137
Thomas Friel
James Brogan
Matthew Brigham
Kyle Chen
Cooley Godward Kronish LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Phone: (650) 843-5000
Fax: (650) 857-0663

**Attorneys for Defendants Asus Computer
International and Asustek Computer Inc.**

## CERTIFICATE OF CONFERENCE

Counsel for Defendants have conferred with counsel for Plaintiff on February 23, 2010 and Plaintiff is opposed to the relief requested.

/s/ *Deron R. Dacus*
Deron R. Dacus

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 9th day of March, 2010.

*/s/  Deron R. Dacus*
Deron R. Dacus