IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| U.S. Ethernet Innovations, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>Acer, Inc.; Acer America Corporation; Apple, Inc.; ASUS Computer International; ASUSTeK Computer Inc.; Dell Inc.; Fujitsu Ltd.; Fujitsu America, Inc.; Gateway, Inc.; Hewlett Packard Co.; HP Development Company LLC; Sony Corporation; Sony Corporation of America; Sony Electronics Inc.; Toshiba Corporation; Toshiba America, Inc.; and Toshiba America Information Systems, Inc.,<br><br>    Defendants. | Civil Action File<br>No. 6:09-cv-448-LED |

**PLAINTIFF U.S. ETHERNET INNOVATIONS, LLC'S
<u>EMERGENCY MOTION FOR EQUITABLE RELIEF</u>**

  Plaintiff U.S. Ethernet Innovations, LLC ("USEI") hereby makes and files this Emergency Motion for Equitable Relief, seeking an order from the Court prohibiting Defendant Hewlett Packard Co. ("HP") from receiving or disclosing privileged and confidential documents regarding the Patents-in-Suit.

  Within the last 24 hours, USEI has learned that a pending merger between HP and 3Com Corporation ("3Com") is expected to close on Monday, April 12. When the merger closes, certain privileged and confidential documents related to the Patents-in-Suit here and belonging to USEI's parent company, Parallel Technology, LLC ("Parallel"),[1] may come into the possession of HP. Parallel has requested custody of these documents but has not received them. A court

---

[1] USEI is a wholly-owned subsidiary of Parallel.

order is essential to prevent HP from receiving the documents and/or unilaterally waiving the privileged nature of these documents, a privilege Parallel negotiated and paid for with significant consideration, until the parties have had an opportunity to review the documents and determine an appropriate resolution. In support of its Motion, USEI respectfully shows the Court as follows:

1. In November 2008, an agent of 3Com approached Parallel regarding a portfolio of 3Com patents (the "Patents"). Through its agent and directly, 3Com told Parallel there was significant infringement of the Patents occurring in the marketplace that 3Com could not effectively police because many infringers were 3Com customers and/or competitors that could assert counterclaims against 3Com. As a result, 3Com decided to transfer the Patents to a management group that would pursue the infringement actions. (Declaration of Laurence Rosenberg ("Rosenberg Dec.") at ¶ 3, attached as Exhibit A.)

2. The value of 3Com's infringement claims had been clearly demonstrated before the company's broker approached Parallel. In early 2008, 3Com won a jury verdict in an infringement action against chip manufacturer Realtek Semiconductor Corp. (the "Realtek Action"). The jury found that Realtek infringed four 3Com patents, three of which were included in the portfolio eventually sold to Parallel. The verdict resulted in a $70 million recovery for 3Com.

**The Patent Sale Agreement**

3. On May 29, 2009, Parallel and 3Com executed a Patent Sale Agreement (the "Agreement") pursuant to which Parallel acquired the entire right, title, and interest in the

Patents and "all of 3Com's files and original documents… relating to the Patents or the Patent Rights."[2] (Patent Sale Agreement § 2.1, attached in part as Exhibit B.)

4. The Agreement also established an identity of interest between 3Com and Parallel with regard to enforcement of the Patents. For example, the Agreement reflects that 3Com would provide material cooperation with Parallel's efforts to enforce the Patents. (Patent Sale Agreement § 3.1.) The Agreement specifically obligates 3Com to "do all things within its control and authority that are required in or reasonably necessary for a judicial, administrative, or government proceeding… to assist [Parallel] in effecting completely the transfer of the Patents and the Patent Rights …." (Patent Sale Agreement § 3.1.) The Agreement also guarantees Parallel access to specific employees in 3Com's Patent Licensing Group. (Patent Sale Agreement § 3.1.)

5. The identity of interest is explicitly recognized in Section 2.1, which states that 3Com and Parallel "have a commonality of and joint interest with respect to" materials and information exchanged between them, and that exchanges of privileged information "shall not, affect the confidentiality of any such materials or other information or waive or diminish the continued protection of any such materials or other information under the attorney-client privilege, work product doctrine or other applicable privilege, immunity or doctrine." (Patent Sale Agreement § 2.1.)

6. The Agreement also obligates 3Com to safeguard privileged and confidential information in its possession relating to the Patents. (Patent Sale Agreement § 6.3.) Section 2.1 provides in part as follows:

---

[2] The files and original documents relating to the Patents or the Patent Rights will hereafter be referred to as the "Parallel Documents."

3

> [T]he fully executed Assignment of Patent Rights…, the Assignment Agreements, the Docket, copies of the agreements pertaining to the encumbrances set forth in Exhibit B, and all of 3COM's files and original documents… , in paper, electronic, and any other forms, relating to the Patents or the Patent Rights… shall be kept confidential by 3COM in accordance with Section 6.3.

7. Parallel has never had access to privileged materials relating to the Realtek Action, or to information from that litigation that is subject to a confidentiality restriction. (Rosenberg Dec. at ¶ 4.)

8. Because the parties anticipated that 3Com would have a significant role in enforcing the Patents, 3Com maintained a copy of the Parallel Documents in its possession. (Rosenberg Dec. at ¶ 5.)

### The Infringement Action

9. After the transaction with 3Com closed, Parallel assigned certain of the Patents to USEI, a wholly-owned subsidiary. On October 9, 2009, USEI brought the instant action against several defendants, including HP, for infringement of four of the Patents. (Rosenberg Dec. at ¶ 6.)

### The HP-3Com Merger

10. Unbeknownst to Parallel, before the Agreement was executed, 3Com began discussions with HP regarding a possible business combination. According to 3Com's December 4, 2009 Proxy Statement, while attending a Las Vegas trade show in May 2009, a 3Com executive:

> had an informal discussion with Marius Haas, Senior Vice President and General Manager of the ProCurve Networking business of HP, concerning a possible commercial relationship between 3Com and HP. Messrs. Sege and Haas agreed that such a relationship could have significant benefits for both companies and, therefore, agreed to further consider such a relationship with their respective business teams.

4

Parallel's first notice of the discussions between 3Com and HP was when a definitive agreement was announced on November 11, 2009. (Rosenberg Dec. at ¶ 7.)

11. Only one month after USEI brought the instant action, 3Com and HP announced the definitive agreement under which HP will purchase 3Com (the "HP-3Com Merger").

12. The initial announcement stated that the transaction was expected to close in the first half of calendar year 2010. Subsequent disclosures stated that the HP-3Com Merger would not close before April 2010. Then, on April 7, 2010, HP and 3Com announced that they expect to close the transaction on or about April 12, 2010.

13. When the HP-3Com Merger is closed, HP will step into the shoes of 3Com with respect to the privilege and confidentiality of the Parallel Documents. Section 6.4 of the Agreement provides that an acquirer of 3Com "agrees to be bound by the terms and conditions of this Agreement." In other words, 3Com's obligations under the Agreement will become HP's obligations under the Agreement.

**Parallel's Assertion of its
Rights and Efforts to Negotiate**

14. Beginning promptly after the November 11 announcement of the HP-3Com Merger, Parallel clearly asserted its concerns about the transaction. In letters to 3Com on November 18 and December 4, Parallel raised the question of whether the transaction would violate the confidentiality and assistance obligations in the Agreement, and advised that Parallel "reserve[d] all rights in connection with 3Com's failure to disclose a potential sale of 3Com to [HP]." (Letters of November 18, 2009 and December 4, 2009 from William M. Ragland, Jr., attached collectively as Exhibit C.) In a December 30 letter, Parallel advised that it would have no choice "but to strictly and aggressively enforce its rights under the Agreement." (Letter of December 30, 2009 from John C. Herman, attached as Exhibit D.)

15.     Parallel has also made a series of requests to recover the privileged and confidential Parallel documents from 3Com's possession.  (Letter of March 4, 2010 and E-mail of March 31 from David J. Margules, collectively attached as Exhibit E.)  To date, 3Com has not turned over any documents.  Instead, 3Com has resorted to dilatory tactics in an attempt to remain in possession of the documents until the HP-3Com Merger closing date.

16.     When it became clear that the parties could not reach an agreeable resolution on the issue, Parallel brought a breach of contract action against 3Com in Delaware, seeking among other things a Preliminary Injunction and Temporary Restraining Order.  The court denied Parallel's request for a Temporary Restraining Order in part because it viewed HP's handling of the Parallel Documents as "a matter for the Federal Court where the patent litigation is pending." Parallel's breach of contract action against 3Com remains pending in Delaware.

### A Temporary Order Will Prevent Violation of Privilege

17.     When the HP-3Com Merger closes, the Parallel Documents in 3Com's possession may be transferred to HP.  As mentioned above, these documents contain privileged and confidential information that belongs to Parallel.  HP should not be allowed to receive the Parallel Documents or to unilaterally destroy the privilege—a privilege Parallel negotiated and paid for—by transferring the Parallel Documents to any other party.

18.     USEI seeks a temporary order the primary effect of which would be to prevent HP from violating the Agreement provisions protecting the privilege and confidentiality of the Parallel Documents until such time as the parties can fully review the documents and determine an appropriate resolution to the issue.  Specifically, USEI seeks an Order barring HP from receiving or transferring any of the Parallel Documents to anyone other than a signatory to the Agreement.

19.     Because the HP-3Com Merger is set to close on Monday, April 12, USEI requests an immediate hearing on this motion.

Respectfully submitted, this 8th day of April, 2010.

        COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP

        /s/ Peter M. Jones
        John C. Herman
        Ryan K. Walsh
        Peter M. Jones
        Jason S. Jackson
        Jessica K. Redmond
        3424 Peachtree Street, N.E.
        Suite 1650
        Atlanta, Georgia 30326
        (404) 504-6500 (telephone)
        (404) 504-6501 (facsimile)
        jherman@csgrr.com
        rwalsh@csgrr.com
        pjones@csgrr.com
        jjackson@csgrr.com
        jredmond@csgrr.com

        and

        WARD & SMITH LAW FIRM
        T. John Ward, Jr.
        Wesley Hill
        P. O. Box 1231
        Longview, Texas 75606-1231
        (903) 757-6400 (telephone)
        (903) 757-2323 (fax)
        jw@jwfirm.com
        wh@jwfirm.com

        Attorneys for Plaintiff
        U.S. Ethernet Innovations, LLC

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h) and this Court's General Discovery Order, counsel for Plaintiff U.S. Ethernet Innovations, LLC met and conferred with counsel for Defendant HP regarding the subject matter of this motion. Counsel for Defendant HP was unable to consent to the relief requested.

/s/ Peter M. Jones
Peter M. Jones

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Peter M. Jones
Peter M. Jones