IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| U.S. Ethernet Innovations, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:09-CV-448-LED |
| v. | ) | |
| | ) | |
| Acer, Inc., Acer America Corporation, Apple, Inc., ASUS Computer International, ASUSTeK Computer Inc., Dell Inc., Fujitsu Ltd., Fujitsu America, Inc., Gateway, Inc., Hewlett Packard Co., HP Development Company LLC, Sony Corporation, Sony Corporation of America, Sony Electronics Inc., Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

## MARVELL SEMICONDUCTOR, INC.'S MOTION TO INTERVENE

Marvell Semiconductor, Inc. ("Marvell") hereby moves to intervene in this action as a matter of right under Fed R. Civ. P. 24(a)(2), or alternatively, with the permission of the Court under Fed. R. Civ. P. 24(b)(1). Rather than suing Marvell, Plaintiff U.S. Ethernet Innovations, LLC ("USEI") chose to sue Marvell's customers based on their use of Marvell products. Marvell seeks to intervene in this action to defend its own products and to protect its legal and financial interests.

As USEI's infringement contentions demonstrate, the structure and operation of Marvell's networking products lie at the heart of USEI's infringement allegations against Marvell's customers. Specifically, for each customer-defendant in this case, USEI has asserted

that such defendants' manufacture, use, and sale of computer products infringe the asserted claims of U.S. Patent Nos. 5,307,459, 5,434,872, 5,732,094 and 5,299,313 (the "patents-in-suit") *based on* their use of Marvell's products, particularly the Yukon family of Ethernet controllers. In fact, USEI cites to Marvell's products, documents and source code extensively throughout its infringement contentions.

Marvell thus has a significant and direct interest in the outcome of this litigation. Any adverse finding would materially harm Marvell's ability to sell its networking products, both to its customers who are defendants in this litigation, as well as other customers and potential customers of the accused Marvell controllers.

Further, the current parties in this litigation cannot adequately represent Marvell's interests. As the designer and supplier of the accused Yukon controllers, Marvell possesses unique insight into the operation of such products, and is best situated to provide the relevant documents and evidence pertaining to issues of infringement. Marvell also has a greater interest in defending its own products against charges of infringement, and achieving a final resolution as to itself and all of its customers, than would any of the individual customer-defendants in this litigation.

Finally, Marvell's motion to intervene is timely, and would not prejudice any of the parties. Indeed, just last month–in its motion to consolidate this action with another action– *USEI admitted* that this case remains in its "early stages," and that additional parties can be integrated into this lawsuit while still maintaining the schedule set by the Court.[1]

---

[1]  In accordance with Rule 24(c), a copy of Marvell's proposed Complaint in Intervention is attached hereto as Exhibit A.

MARVELL SEMICONDUCTOR, INC.'S MOTION TO INTERVENE – Page 2

## I.     FACTUAL BACKGROUND

### A.     The Lawsuit Is In Its Early Stages

On October 9, 2009, USEI filed this action for patent infringement, alleging that each of the defendants infringe the patents-in-suit [Dkt. 1] The last defendant filed its original answer on January 19, 2010 and defendant Dell, Inc. filed its first amended answer on January 21, 2010. [Dkts. 92, 102] Plaintiff USEI answered the last defendant's counterclaims on February 12, 2010. [Dkt. 122] On March 1, the Court conducted a Status Conference, setting the *Markman* hearing date for January 13, 2001, and a trial date of September 6, 2011. [Dkt. 133] On March 5, 2010, USEI served its Patent L.R. 3-1 infringement contentions, identifying for the first time Marvell's Yukon family of Ethernet controllers as allegedly infringing the patents in suit. *See* Exhibit C [Excerpts from March 5, 2010 Patent Local Rule 3.1 Charts served on Defendants Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc.]; Exhibit D [Excerpts from March 5, 2010 Patent Local Rule 3.1 Charts served on Defendants Hewlett Packard Co. and HP Development Company LLC]. On March 29, 2010, the Court entered its Docket Control Order, setting March 4, 2011 as the deadline for discovery cutoff. [Dkt. 169.] On April 2, 2010, USEI moved to consolidate this matter with *U.S. Ethernet Innovations, LLC,* v. *AT&T Inc., et al*., Civil Action File No. 6:10-CV-86, a separate patent infringement action filed in this District on March 10, 2010. [Dkt. 172].

### B.     USEI's Infringement Allegations Directly Implicate Marvell Products

Marvell designs and sells networking products, such as Ethernet controllers. Exhibit B [Declaration of M. Ali Khan] at ¶ 2 The majority of the current defendants in this litigation have purchased networking products, such as Ethernet controllers, from Marvell. *Id*. at ¶ 3. Marvell's customers incorporate these networking products into their computer products before selling them to end users. *Id*. at ¶ 4.

USEI's infringement contentions against each of the customer-defendants in this case identify the Marvell Yukon family of Ethernet controllers as Accused Instrumentalities that allegedly infringe the claims of the patents in suit.  *See* Exhibit C, p. 1 ("Specifically, the Accused Instrumentalities include an apparatus, namely a device from the Marvell Yukon family …."). Indeed, the USEI infringement charts pertaining to the Marvell controllers are substantially similar across all such customer-defendants.  *E.g., compare* Exhibit C *with* Exhibit D.

## II.   ARGUMENT

### A.   Marvell Should Be Permitted To Intervene As A Matter Of Right

Rule 24(a) (2) provides that:

> On timely motion, a court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  In applying this standard, the Fifth Circuit has identified four key factors:  "(1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties." *In re Lease Oil Antitrust Litigation*, 570 F. 3d 244, 247 (5th Cir. 2009).  Each of these factors supports Marvell's intervention.

#### 1.   Marvell's Motion to Intervene Is Timely

On the question of timeliness, the Courts consider the following:  "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litigation*, 570 F. 3d at 247-8 (citing *Stallworth v. Monsanto Co.*, 558 F.2d

257 (5th Cir. 1977)). "The analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

         (a)       <u>Marvell Promptly Moved to Intervene After Learning the Full Extent of Its Interest</u>

As USEI represented to this Court in its motion to consolidate less than four weeks ago, the proceedings in this case remain at "an early stage." [Dkt. 172 at 5.] Trial is not scheduled for another seventeen months, and the *Markman* hearing and close of fact discovery are not scheduled for another eight and ten months, respectively.

Marvell was first informed of the full extent of its interest in this litigation on March 5, 2010, when USEI served its infringement contentions identifying Marvell's Yukon family of controllers as the alleged basis for infringement. Upon receipt of these contentions, Marvell promptly investigated the bases of USEI's claims and filed this Motion within two months of USEI's infringement contentions. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) (motion found timely when made within two months of becoming aware that interests were affected); *Ass'n of Professional Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (five month lapse found not unreasonable).

         (b)       <u>The Timing of Marvell's Intervention Would Not Prejudice the Other Parties</u>

"This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Ross v. Marshall*, 426 F. 3d 745, 755 (5th Cir. 2005) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996)).

USEI itself has admitted that adding new parties at this time would not prejudice the current parties, in stating that the action USEI seeks to consolidate—in which the defendants have yet to have answer the complaint—"can easily be placed on the same schedule" as this action. [Dkt. 172 at 5.]

Just as easily, Marvell could be "placed on the same schedule" as these other parties. Marvell has already represented to Plaintiff that, if Marvell were to intervene at this time, it would not request any modification of the current schedule based on the timing of its intervention. As a result, neither USEI nor any other party would suffer prejudice through Marvell's intervention. On the contrary, because Marvell possesses the substantial majority of technical information and documentation pertaining to the operation of the accused Marvell products, Marvell's direct participation as a party in this litigation will streamline the proceedings.

          (c)    <u>Marvell Will Be Substantially Prejudiced if Not Allowed to Intervene</u>

As more fully discussed in Sections II.A.3-4, *infra*, Marvell would suffer substantial prejudice if not permitted to intervene. First, denying Marvell's motion to intervene would substantially limit Marvell's ability to protect the significant interests in its own products at issue in this litigation. *John Doe# 1 v. Glickman*, 256 F.3d 371,379 (5th Cir. 2001) ("If not allowed to intervene, [movant], as a nonparty, will not be able to participate in the trial concerning that ruling nor will it be able to appeal that ruling."). Second, Marvell would be forced to rely on other parties–who do not possess Marvell's unique knowledge and expertise pertaining to Marvell's own products—to defend these interests. Finally, any adverse ruling against these parties would necessarily prejudice Marvell's ability to market and distribute the Marvell products at issue in this case.

          **2.**    **Marvell Has A Significant Interest In This Litigation That Justifies Mandatory Intervention**

To support a motion to intervene, a party must show "a direct, substantial, legally protectable interest in the action, meaning that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litigation*,

570 F.3d at 250 (citations and quotations omitted).  Routinely, courts allow suppliers of products accused of infringement to intervene in lawsuits involving their customers in order to protect their interests in such products.  *See Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (supplier's intervention in a patent infringement action against its customers held "necessary for the protection of its interest"); *Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1334 (Fed. Cir. 2006) (allowing the supplier to intervene in the litigation to the extent that its interest may be impaired).

Here, Marvell is the designer and supplier of the components directly implicated by USEI's infringement contentions.  Marvell therefore has a significant interest in defending its own networking products against USEI's infringement claims, and in resolving the intellectual property issues surrounding these products.  *See Ancora Tech., Inc. v. Toshiba Am. Information Sys., Inc.*, 2008 WL 4326788 at *1 (C.D. Cal. Sept. 22, 2008) (granting motion to intervene where "[a]pplicant has a significantly protectable interest because the Defendants are important OEM customers who make and sell computer products equipped with Applicant's software, and Plaintiff alleges patent infringement based on the Defendants' use of Applicant's software and technology in connection with making and selling computer products"); *see also IBM Corp. v. Conner Peripherals, Inc.*, 1994 WL 706208 at *5 (N.D. Cal. Dec. 13, 1994) (finding that intervenor had a sufficient interest where it "played an important role in manufacturing and designing the controllers that allegedly infringed IBM and Western Digital's products" [sic] and stating that intervenor "as the designer of the subject controllers should be able to present facts relevant to whether the controllers actually did infringe the IBM and Western Digital products before the court").  *Honeywell Intern, Inc. v. Audiovox Commc'ns Corp.*, No. CIV. A. 04-1337-KAJ, 2005 WL 2465898, at *4 (D.Del. May 18, 2005) (granting manufacturer's motion to

intervene, as it "puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product.")

### 3. An Adverse Disposition Would Impair Marvell's Interest

If Marvell is unable to participate in the claim construction, invalidity and liability determinations in this litigation, Marvell's interests in selling its products will be adversely affected without Marvell ever having the opportunity to litigate these issues.  *See LG Elecs., Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 365 (N.D. Cal. 2002) (a supplier's legally protectable interest "will unquestionably be impaired" if injunctive relief is granted and the supplier is prohibited from selling its product); *see also Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("there can be little question but that the interests of [a licensee] would be affected" if the parties to the litigation prevail and licenses are revoked).

Moreover, as a practical matter, an adverse disposition would have a significant impact on Marvell's relationship with its other customers, regardless of whether such disposition has a preclusive effect.  "[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977)).

Denying intervention may require Marvell to bring a separate action for declaratory judgment in order to protect itself and its other customers.  Such duplicative, parallel litigation and discovery would unnecessarily burden both the courts and Marvell.  *See Rivera v. City of San Antonio*, No. SA-06-CA-0235-XR, 2006 U.S. Dist. LEXIS 89578, at *9 (W.D. Tex. Dec. 12, 2006) (unopposed motion) ("[A]llowing intervention will prevent the needless expenditure of resources in substantially similar parallel litigation.").

### 4. The Current Defendants Cannot Adequately Represent Marvell's Interests

The Fifth Circuit has held that the burden of proving whether a proposed intervenor's interests is "minimal." *Ross*, 426 F. 3d at 761.  Thus, the party moving to intervene only needs to show that "representation by the existing parties *may be* inadequate" to protect its interests. *Id*.

Marvell cannot rely on the current customer-defendants to resolve conclusively, for Marvell and its other customers, the issues raised by USEI's complaint.  Moreover, a supplier like Marvell has a greater interest in defending such infringement allegations directed to its own products, and achieving a final resolution as to itself and all of its customers, than would any of its individual customers, many of whom purchase networking products from Marvell's competitors.  Any settlement by a customer-defendant would not immunize Marvell, the other customer-defendants or other Marvell customers from USEI's allegations or the possibility of future litigation.  *See Honeywell*, 2005 WL 2465898 at *4 (finding that intervenor's interests were not adequately represented by existing parties where intervenor's product was the "component which is at the heart of these cases").  *See also Certain Personal Computers with Memory Management Information Stored in External Memory*, Order No. 4, 337-TA-352, 1993 WL 852703 (July 15, 1993) ("Cyrix will not be adequately represented by the other parties in this investigation.  The Twinhead respondents have an interest in selling personal computers, not necessarily those with Cyrix microprocessors.").

Further, as noted previously, Marvell, as the designer and supplier of the accused Marvell products, "is uniquely situated to understand and defend its own product[s]."  *Honeywell*, 2005 WL 2465898 at *4; *see also Ancora Technologies*, 2008 WL 4326788 at *1 ("Applicant's interest is not adequately represented by the existing Defendants because none has comparable

expertise or incentive to defend Applicant's own software and technology."). Marvell's customers, who lack Marvell's extensive understanding of its own products, cannot adequately represent Marvell's interests. Rather, due to its unique position, only Marvell can ensure that the facts and arguments pertaining to its own products are fully developed and presented for adjudication.

### B. In The Alternative, the Court Should Grant Permissive Intervention

Pursuant to Rule 24(b)(1), "[o]n timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Securities and Exchange Commission v. U.S. Realty and Improvement Co.*, 310 U.S. 434, 459 (1940). Rather, under Rule 24(b), a court has the discretion to permit intervention when the third parties show "(1) that the application was timely, (2) that there exists a common question of law or fact, and (3) that there will be no undue delay of the rights of the original parties." *HBB Limited P'ship v. Ford Motor Co.*, 1992 WL 348870 at *2 (N.D. Ill. Nov. 10, 1992)

For many of the same reasons discussed above, the Court should permit Marvell to intervene. *See, e.g., Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) (granting supplier permissive intervention in patent infringement action due to common issues); *HBB Limited P'ship*, 1992 WL 348870 at *2 (permitting Rule 24(b) intervention by suppliers of allegedly infringing product in patent infringement suit against customers); *Lemelson v. Larami Corp.*, 1981 WL 319072, *1 (S.D.N.Y. Mar. 23, 1981) (permitting Rule 24(b) intervention by manufacturer in patent infringement suit against customer where manufacturer supplied critical material used in allegedly infringing process).

As explained previously, Marvell's motion is timely. Further, as the designer and supplier of the accused products, Marvell will raise the same questions of law or fact as "those currently existing in the case: patent invalidity and noninfringement." *Lemelson*, 1981 WL 310972 at *1.

Finally, Marvell's intervention in this proceeding will not result in any undue delay or prejudice to USEI. USEI has already admitted that parties can be added to the litigation at this stage without modifying the schedule put in place by this court. Finally, because Marvell possesses most of the relevant documents and information relating to its own products, allowing Marvell to intervene will, in fact, expedite discovery and streamline this litigation. *See HBB Limited P'ship*, 1992 WL 348870 at *2.

### III.   CONCLUSION

For the foregoing reasons, Marvell respectfully requests that the Court grant Marvell's motion to intervene under Fed. R. Civ. P. Rule 24(a), or, in the alternative, under Fed. R. Civ. P. 24(b).

Dated: May 4, 2010

Respectfully submitted,

By:   /s/ Jennifer P. Ainsworth

Jennifer P. Ainsworth
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Tel: 903-509-5000
Fax: 903-509-5092
jainsworth@wilsonlawfirm.com

Kevin P.B. Johnson
Ray R. Zado
QUINN EMANUEL URQUHART
& SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-801-5100
kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com

Sean Pak
QUINN EMANUEL URQUHART
& SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Tel: 415-875-6600
Fax: 415-875-6700
seanpak@quinnemanuel.com

Counsel for Marvell Semiconductor, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 4, 2010 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                                                         */s/ Jennifer P. Ainsworth*
                                                                                              Jennifer P. Ainsworth

## CERTIFICATE OF CONFERENCE REGARDING LOCAL RULE CV-7(h)

I hereby certify that on April 27, 2010 I conferred via telephone with Ryan Walsh, counsel for U.S. Ethernet Innovations, LLC**,** regarding the subject matter of this motion.  During that teleconference, counsel for USEI indicated it opposes this motion. USEI is currently opposed to similar motions filed by Intel Corporation and NVIDIA Corporation.

                                                                                            */s/ Sean Pak*
                                                                                                Sean Pak