**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| U.S. ETHERNET INNOVATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:09-cv-448-JDL |
| | ) | |
| ACER INC.; ACER AMERICA | ) | JURY TRIAL DEMANDED |
| CORPORATION; APPLE INC.; ASUS | ) | |
| COMPUTER INTERNATIONAL; ASUSTEK | ) | |
| COMPUTER INC.; DELL INC.; FUJITSU | ) | |
| LTD.; FUJITSU AMERICA INC.; | ) | |
| GATEWAY, INC.; HEWLETT PACKARD | ) | |
| CO.; SONY CORPORATION; SONY | ) | |
| CORPORATION OF AMERICA; SONY | ) | |
| ELECTRONICS INC.; TOSHIBA | ) | |
| CORPORATION; TOSHIBA AMERICA, | ) | |
| INC.; AND TOSHIBA AMERICA | ) | |
| INFORMATION SYSTEMS, INC.; | ) | |
| | ) | |
| Acer Defendants. | ) | |
| | ) | |

**DEFENDANTS ACER INC., ACER AMERICA CORP., AND GATEWAY, INC.'S (1)**
**ANSWER TO U.S. ETHERNET INNOVATIONS, LLC'S FIRST AMENDED**
**COMPLAINT FOR PATENT INFRINGEMENT AND (2) COUNTERCLAIMS**

Defendants Acer Inc. ("Acer"), Acer America Corp. ("Acer America") and Gateway, Inc.

("Gateway") (collectively, "Acer Defendants") answer the allegations made in U.S. Ethernet

Innovations, LLC's ("Plaintiff" or "USEI") First Amended Complaint for Patent Infringement

(the "Complaint") as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Acer Defendants are without knowledge or information sufficient to form a belief

as to the truth of the allegation that USEI owns United States Patent Nos. 5,307,459 (the

"'459 Patent"); 5,434,872 (the "'872 Patent"); 5,732,094 (the "'094 Patent"); and 5,299,313 (the "'313 Patent") (collectively, the "Patents-in-Suit"), and for that reason deny the allegation.

2.      To the extent Paragraph 2 is directed to Acer Defendants, they deny the allegations of this paragraph.  To the extent Paragraph 2 directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom this allegation is directed, and no further response from Acer Defendants is required.

3.      To the extent Paragraph 3 is directed to Acer Defendants, they deny the allegations of this paragraph.  To the extent Paragraph 3 directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom this allegation is directed, and no further response from Acer Defendants is required.

## PARTIES

4.      Acer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4, and on that basis deny them.

5.      To the extent directed to Acer Defendants, Acer Defendants admit the allegations of Paragraph 5.

6.      Paragraph 6 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

7.      Paragraph 7 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

8.      Paragraph 8 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

9.      Paragraph 9 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

10.     Paragraph 10 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

11.     Paragraph 11 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

12.     Paragraph 12 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## JURISDICTION AND VENUE

13.     Acer Defendants admit that all of the claims asserted in the Complaint arise under 35 U.S.C. § 101, *et seq*.

14.     If USEI has standing to assert the patents in its own name, Acer Defendants admit this Court would have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

15.     Acer Defendants deny that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 (b)-(c) because Acer Defendants deny that the Eastern District of Texas is the most convenient venue.

16.     Acer Defendants admit that it has an established distribution channel for its products in this forum and that it regularly conducts business in and derives revenue from the sale of goods and services to individuals in Texas and this judicial district.  Acer Defendants deny all remaining allegations in Paragraph 16 only to the extent that they are directed to Acer Defendants.  To the extent allegations in Paragraph 16 are directed to defendants other than Acer Defendants, Acer Defendants defer to the defendant(s) to whom the allegations are directed.

## PATENTS-IN-SUIT

17.     On information and belief, Acer Defendants admit that the '459 Patent entitled "Network Adapter with Host Indication Optimization" issued on April 26, 1994 and a copy is attached as Exhibit A to USEI's Complaint.  Acer Defendants admit that on the face of the

'459 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 17 of the Complaint.

18.    On information and belief, Acer Defendants admit that the '872 Patent entitled "Apparatus for Automatic Initiation of Data Transmission" issued on July 18, 1995 and a copy is attached as Exhibit B to USEI's Complaint.  Acer Defendants admit that on the face of the '872 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer and David R. Brown are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 18 of the Complaint.

19.    On information and belief, Acer Defendants admit that the '094 Patent entitled "Method for Automatic Initiation of Data Transmission" issued on March 24, 1998 and a copy is attached as Exhibit C to USEI's Complaint.  Acer Defendants admit that on the face of the '094 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer and David R. Brown are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 19 of the Complaint.

20.    On information and belief, Acer Defendants admit that the '313 Patent entitled "Network Interface with Host Independent Buffer Management" issued on March 29, 1994 and a copy is attached as Exhibit D to USEI's Complaint.  Acer Defendants admit that on the face of the '313 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 20 of the Complaint.

21.    Acer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that USEI is the sole owner of the entire right, title, and interest in the '459, '872, '094 and the '313 Patents by virtue of assignment and for that reason deny the allegation.  Acer Defendants deny all remaining allegations in Paragraph 21 of the Complaint.

## ACCUSED PRODUCTS

22.    Acer Defendants deny the allegations of Paragraph 22 of the Complaint.

23.     Paragraph 23 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

24.     Paragraph 24 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

25.     Paragraph 25 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

26.     Paragraph 26 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

27.     Paragraph 27 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

28.     Paragraph 28 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

29.     Paragraph 29 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT I
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,307,459

30.     Acer Defendants restates and incorporates by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

31.     Acer Defendants deny the allegations in Paragraph 35 of the Complaint.

32.     Paragraph 32 is not directed to Acer Defendants.  Acer Defendants thus

defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

33.    Paragraph 33 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

34.    Paragraph 34 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

35.    Paragraph 35 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

36.    Paragraph 36 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

37.    Paragraph 37 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

38.    Paragraph 38 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT II
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,434,872

39.    Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

40.    Acer Defendants deny the allegations in Paragraph 40 of the Complaint.

41.    Paragraph 41 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of

Acer Defendants.

42.     Paragraph 42 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

43.     Paragraph 43 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

44.     Paragraph 44 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

45.     Paragraph 45 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

46.     Paragraph 46 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

47.     Paragraph 47 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT III
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,732,094

48.     Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

49.     Acer Defendants deny the allegations in Paragraph 49 of the Complaint.

50.     Paragraph 50 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

51.      Paragraph 51 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

52.      Paragraph 52 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

53.      Paragraph 53 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

54.      Paragraph 54 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

55.      Paragraph 55 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

56.      Paragraph 56 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT IV
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,299,313

57.      Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

58.      Acer Defendants deny the allegations in Paragraph 58 of the complaint.

59.      Paragraph 59 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

60.      Paragraph 60 is not directed to Acer Defendants.  Acer Defendants thus defer to the

defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

61.     Paragraph 61 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

62.     Paragraph 62 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

63.     Paragraph 63 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

64.     Paragraph 64 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

65.     Paragraph 65 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## DENIAL OF USEI'S PRAYER FOR RELIEF

To the extent the Prayer for Relief is directed to Acer Defendants, they deny that USEI is entitled to any of the relief sought in its Prayer for Relief or any other relief.  To the extent the Prayer for Relief is directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom it is directed, and no further response from Acer Defendants is required.

## DEMAND FOR JURY TRIAL

Acer Defendants admit that USEI requests a trial by jury

## DEFENSES

Further answering the Complaint, Acer Defendants assert the following defenses. Acer Defendants reserve the right to amend its answer with additional defenses as further information is obtained.

## FIRST DEFENSE:
## NON- INFRINGEMENT

1.    Acer Defendants have not infringed and do not infringe, contribute to the infringement of, or induce others to infringe any valid and enforceable claim of the Patents-in-Suit, either directly, indirectly, literally, or under the doctrine of equivalents.

## SECOND DEFENSE:
## INVALIDITY

2.    Each of the Patents-in-Suit is invalid for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C., including without limitation one or more of 35 U.S.C. §§ 101, 102, 103 and 112.

## THIRD DEFENSE:
## LIMITATION ON DAMAGES

3.    On information and belief, Plaintiff has failed to plead and meet the requirements of 35 U.S.C. § 284.

4.    Plaintiff's recovery for alleged infringement of the Patents-in-Suit if any, is limited to any alleged infringement committed no more than six years prior to the filing of its original complaint, pursuant to 35 U.S.C. § 286.

## FOURTH DEFENSE:
## LIMITATION ON COSTS

5.    Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

## FIFTH DEFENSE:
## FAILURE TO MARK

6.    On information and belief, Plaintiff has failed to plead and meet the requirements of 35 U.S.C. § 287, and has otherwise failed to show that it is entitled to any damages.

7.      Plaintiff's claims for damages predating the filing of this action are barred by 35 U.S.C. § 287.  Upon information and belief, Acer Defendants received no constructive notice of infringement via products adequately marked under 35 U.S.C. § 287 that are or were sold by one of Plaintiff or any predecessors-in-interest to the Patents-in-Suit, including 3Com Corporation, or parties licensed to the Patents-in-Suit, to manufacture, sell or distribute products that practice the Patents-in-Suit.

**SIXTH DEFENSE:**
**PROSECUTION HISTORY ESTOPPEL**

8.      Plaintiff's alleged causes of action for patent infringement are barred under the doctrine of prosecution history estoppel, and Plaintiff is estopped from claiming that the Patents-in-Suit cover or include any accused Acer Defendants product or method.

**SEVENTH DEFENSE:**
**DEDICATION TO THE PUBLIC**

9.      Plaintiff has dedicated to the public all methods, apparatus, and products disclosed in the Patents-in-Suit, but not literally claimed therein, and is estopped from claiming infringement by any such public domain methods, apparatus, and products.

**EIGHTH DEFENSE:**
**USE/MANUFACTURE BY/FOR UNITED STATES GOVERNMENT**

10.     To the extent that any accused product or method has been used or manufactured by or for the United States, Plaintiff's claims and demands for relief are barred by 28 U.S.C. § 1498.

**NINTH DEFENSE:**
**LACHES, WAIVER AND ESTOPPEL**

11.     Plaintiff's claims for relief are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

**TENTH DEFENSE:**
**UNCLEAN HANDS**

12.     On information and belief, Plaintiff has rendered the Patents-in-Suit

unenforceable under the doctrine of unclean hands.

## ELEVENTH DEFENSE:
## <u>INEQUITABLE CONDUCT</u>

13.     Each of the Patents-in-Suit is unenforceable due to inequitable conduct

committed by the inventors, their counsel, 3Com Corporation, and/or others involved in the

prosecution of each of the Patents-in-Suit during their respective prosecutions.  The particular

circumstances constituting the inequitable conduct and the factual basis for this defense are

detailed in the paragraphs below.  In brief, the specifications of each of the '459, '872, and

the '094 Patents state that they are all related to the '313 Patent and the specifications and figures

of each of the Patents-in-Suit have considerable overlapping material.  As such, the Patents-in-

Suit are related to each other and were in fact prosecuted by the same attorney.  While the

'459 and the '313 Patents were examined by one examiner at the USPTO and the '872 and

'094 Patents were examined by a different examiner at the USPTO, their co-pendency was not

disclosed to the respective examiners.  Furthermore, during the pendency of the three initial

applications that ultimately led to the four Patents-in-Suit, other related applications were filed on

variants of the technology at issue in this case.  During the prosecution of these related

applications, many references were cited against various combinations of elements claimed

to be novel in the Patents-in-Suit, and, in a number of instances, claims drawn to those

combinations were rejected.  Despite having constructive or actual notice of these references,

and despite having a duty to do so, those involved in the prosecution of the various

applications leading to the Patents-in-Suit failed to disclose these references during the

prosecutions of the other, related applications, including the applications leading to the

issuance of the Patents-in-Suit.  Neither was there disclosure of the rejections in parallel

prosecutions of combinations that were material to pending claims of the applications that led

to the Patents-in-Suit.  Taken collectively, all these prosecutions and the art cited in them, as well

as the various rejections by the various examiners suggest that the various elements claimed to

be novel in the Patents-in-Suit are anticipated or obvious in light of the prior art.  At the very

least, the references cited against any one patent of the Patents-in-Suit were relevant to the determination of novelty and nonobviousness of the other patents of the Patents-in-Suit and those involved in the prosecution of the Patents-in-Suit had a duty to disclose this information to the USPTO.  Because the original assignee of the Patents-in-Suit, its counsel, and various of the named inventors on the Patents-in-Suit did not disclose the co-pendency of these applications, the material art cited during them, or the existence of adverse office actions by other examiners rejecting combinations claimed to be novel by the Patents-in-Suit, the examiners in the Patents-in-Suit were not aware of information that would have been material to their examination of the Patents-in-Suit.  Many of the individuals with a duty of candor during the prosecutions leading to the Patents-in-Suit, thus, withheld information which they knew or should have known to be material to the Patents-in-Suit. In light of the failure to disclose references which other examiners had explicitly identified as invalidating claimed combinations, the applicants for the Patents-in-Suit engaged in inequitable conduct which renders each of the Patents-in-Suit unenforceable.

14.     Acer Defendants allege that the '459 Patent is unenforceable by reason of inequitable conduct during the prosecution of the application that led to the issuance of the '459 Patent ("the '459 Prosecution") committed by the inventors, their counsel, 3Com Corporation, and/or others involved in the '459 Prosecution (collectively, "the '459 Applicants") as outlined below.

     a.    Application No. 07/920,898 ("the '459 Application"), which ultimately led to the '459 Patent, was filed on July 28, 1992 on behalf of named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo ("the '459 Named Inventors"), and named assignee, 3Com Corporation.  Mark Haynes acted as prosecution counsel from the filing of the '459 Application to the issuance of the '459 Patent. The '459 Patent issued on April 26, 1994.

     b.    The '459 Applicants committed inequitable conduct during the '459 Prosecution by failing to disclose the applications, rejections, and references related to another

of the Patents-in-Suit, the '872 Patent.

c.  Application No. 07/920,893 ("the '872 Application"), which ultimately led to the '872 Patent, was filed on the same date as the '459 Application. Prosecution attorney Mark Haynes, named inventors Brian Peterson and David R. Brown, and assignee 3Com Corporation (collectively, "the '872 Applicants") were also participants in the '459 Prosecution.

d.  Ultimately, a third of the '459 named inventors (W. Paul Sherer) was added as a named inventor on what became the '872 Patent.  W. Paul Sherer was also a participant in the '459 Prosecution and is also one of the '872 Applicants.

e.  PCT Application PCT/US1993/007060 ("the '872 PCT") claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and David Brown) and the same assignee (3Com Corporation) as the '459 Application.  The European Patent Application EP 93918428 ("the '872 EP") bears the same filing date as the '872 PCT and entered into the region phase on February 25, 1994 based on the '872 PCT.

f.  The USPTO examiner for the '459 Application ("the '459 Examiner") was different from the examiner for the '872 Application ("the '872 Examiner") and the '872 PCT.  The '459 Examiner was also different from the examiner for the '872 EP.

g.  The disclosures of the '459 Application and the '872 Application overlap to a significant extent.

h.  In his Notice of Allowability of October 14, 1993, the '459 Examiner stated that the pending claims of the '459 Application were being allowed because:

> The prior art does not show or render obvious, *inter alia*, the claimed network frame transfer apparatus in which the data frame is transferred between a network transceiver and a host computer via a buffer and

threshold logic is utilized to count the data transferred to and from the buffer and further in which an alterable storage location is provided which contains a threshold value and a counter, coupled to the buffer memory, is compared to the threshold value and an indication signal is generated and sent to the host computer responsive to the comparison.

i.   Shortly after the '459 Examiner sent the Notice of Allowability to prosecution attorney Mark Haynes indicating the '459 Examiner's belief that the prior art did not teach various elements of the '459 Patent, the '872 Examiner sent an Office action to Mr. Haynes on October 26, 1993.  In this Office action, the '872 Examiner rejected claims containing all of the limitations of the claims in the '459 Patent, except for the "indication signal," as anticipated and/or obvious in light of multiple prior art references.  The '872 Examiner rejected the claims in the '872 Application on multiple occasions, including the Office actions of October 26, 1993 and July 6, 1994 ("the '872 Rejections").  The '872 Rejections were material to the questions of novelty and/or obviousness of the claims in the '459 Application, and at least prosecution attorney Mark Haynes was aware of the '872 Rejections before the issuance of the '459 Patent.

j.   During '872 Prosecution, the following references were cited in support of the '872 Rejections: U.S. Patents 5,043,981 (Firoozmand *et al.*); 4,860,193 (Bentley); 4,258,418 (Heath); 4,715,030 (Koch); 5,195,093 (Tarrab); 5,210,749 (Firoozmand); and 5,278,956 (Thomsen) (collectively, "the '872 References").

k.   Brian Petersen, one of the '459 Named Inventors, executed a declaration on February 3, 1994 stating he was informed that pending claims 1, 3, 6 and 11 in the '872 Application were rejected as being anticipated based on Firoozmand, *et al.* David Brown, another of the '459 Named Inventors, executed the same declaration on February 15, 1994.

l.   The '872 References were material to, but not disclosed during, the '459 Prosecution.  The '872 Examiner determined the '872 References disclosed

15

singly or in obvious combination all limitations which the '459 Examiner determined to be missing from the prior art except the "indication signal" claimed in the '459 Patent.  That latter limitation was, in fact, disclosed by, inherent in, and/or obvious in light of one or more of the '872 References. At the very least, a reasonable examiner would have wanted to review the '872 Rejections and the '872 References to determine their effect on the patentability of the '459 Application.

m.   During the '459 Prosecution, three of the '872 References (Firoozmand *et al.*, Koch, Heath, and Tarrab) were cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '872 Application in the December 7, 1993 '872 PCT International Search Report ("the '872 ISR"). These references were identified *again* by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

n.   All of the '872 Applicants also participated in the '459 Prosecution, and were persons with a duty of candor before the USPTO in the '459 Prosecution.  At least the prosecuting attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecutions of the '872 PCT and the '872 EP and were persons with a duty of candor in the '459 Prosecution.

o.   The '872 Applicants knew of facts material to the '459 Prosecution: (i) the co-pendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 Rejection and the '872 ISR, and (iii) the '872 References. The '872 Applicants knew that the '872 Examiner had found these references to disclose most features of the combination which they had claimed to be novel in the '459 Application and which the '459 Examiner itemized in his Notice of Allowance. Further, they knew or should have known that the missing limitation was disclosed by, inherent in, or obvious in light of one or more of the '872 References or at a minimum that a reasonable examiner would have wanted to

16

review the '872 References to make his own determination on that point.

p.     None of (i) the co-pendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 Rejection and the '872 ISR, and (iii) the '872 References were disclosed in the '459 Prosecution.

q.     The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection, and the '872 References were therefore concealed from the '459 Examiner by the '872 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

r.     The '459 Applicants committed further acts of inequitable conduct during the '459 Prosecution by failing to disclose the applications and references related to the '313 Patent.

s.     Application No. 07/921,519 (the '313 Application), which ultimately led to the '313 Patent, was filed on the same date as the '459 Application. Prosecution attorney Mark Haynes, named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and assignee 3Com Corporation (collectively, "the '313 Applicants") were also participants in the '459 Prosecution.  All of the named inventors in the '313 Application were named inventors in the '459 Application.

t.     PCT Application PCT/US1993/007027 ("the '313 PCT") claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of all of the same named inventors (Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo) and the same assignee (3Com Corporation) as the '459 Application.  The European Patent Application EP 93918401 ("the '313 EP"), bears the same filing date as the '313 PCT and entered into the region phase on February 25, 1994 based on the '313 PCT.

u.     Although the '459 Examiner was the same as the examiner for the '313 Application ("the '313 Examiner"), the Federal Circuit has held that the duty to

17

cross-cite material information between related applications still holds in such situations. *See, e.g., McKesson Info. Solutions, Inc. v Bridge Med., Inc.*, 487 F.3d 897, 925 (Fed. Cir. 2007).

v.   The disclosures of the '459 Application and the '313 Application overlap to a significant extent.  The '459 Patent states that "[t]he present application is related to copending U.S. patent application entitled NETWORK INTERFACE WITH HOST INDEPENDENT BUFFER MANAGEMENT, Ser. No. 07/921,519, filed Jul. 28, 1992, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '459 Patent states that it is related to the '313 Application, but no mention of the '459 Application is made in the '313 Application.

w.   On September 21, 1993, about a month before the '459 Examiner issued his Notice of Allowability in the '459 Application, the '313 Examiner issued a Notice of Allowability in the '313 Application.

x.   In the Notice of Allowability of the '313 Application, the '313 Examiner cited U.S. Patent 4,672,570 (Benken) ("the Benken Reference").

y.   The Benken Reference was material to, but not disclosed during, the '459 Prosecution.

z.   The Benken Reference relates to the limitations of the '459 Patent that call for a buffer memory, network interface logic, host interface logic, transferring a data frame, and an alterable storage location.

aa.   While the '459 Prosecution was still pending, the Benken Reference was cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '313 Application in the November 26, 1993 '313 PCT International Search Report ("the '313 ISR"). The '313 ISR further cited U.S. Patents 4,471,427 (Harris); 4,604,682 (Schwan *et al.*); and 5,121,390 (Farrell *et al.*) ("the '313 ISR References") as relevant to the '313

PCT.

bb.  The '313 ISR References relate to the limitations of the '459 Patent that call for a buffer memory, network interface logic, host interface logic, transferring a data frame, and an alterable storage location.

cc.  The Benken Reference and the '313 ISR References were material to the claims of the '459 Application because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

dd.  All of the '313 Applicants were participants in the '459 Prosecution and had a duty of candor before the USPTO in the '459 Prosecution.

ee.  The '313 Applicants knew of facts material to the '459 Prosecution: (i) the copendency of the '313 PCT and the '313 EP, (ii) the '313 ISR, and (iii) the Benken Reference and the '313 ISR References.  That is, they knew of the *similarity in disclosure* between the '459 Application and '313 Application, and they knew that the '313 Examiner had found the Benken Reference material to the '313 Application and the examiner for the '313 PCT had found the '313 ISR References material to the '313 PCT.

ff.  However, neither the co-pendency of the '313 PCT and the '313 EP, nor the '313 ISR, the Benken Reference, and the '313 ISR References were disclosed in the '459 Prosecution.

gg.  The '313 Application, the '313 PCT, the '313 ISR, the Benken Reference, and the '313 ISR References were therefore concealed from the '459 Examiner by the '313 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

hh.  The '459 Applicants committed further acts of inequitable conduct during the '459 Prosecution by additionally failing to disclose the applications, rejections, and references related to U.S. Patent 5,319,752 ("the '752 Patent").

ii.    Application No. 07/947,773 (the '752 Application), which ultimately led to the '752 Patent, was filed on September 18, 1992, about two months after the filing of the '459 Application.  Prosecution attorney Mark Haynes, named inventors Brian Peterson and Lai-Chin Lo, and the assignee 3Com Corporation (collectively, "the '752 Applicants") were also participants in the '459 Prosecution.

jj.    PCT Application PCT/US1993/008866 ("the '752 PCT") claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee (3Com Corporation) as the '459 and '752 Applications.

kk.    The '459 Examiner was different from the examiner for the '752 Application ("the '752 Examiner") and the '752 PCT.

ll.    The disclosures of the '459 Application and the '752 Application overlap to a significant extent.

mm.    The '752 Application and Patent state "[t]he present application is related to co-pending U.S. patent application entitled NETWORK ADAPTER WITH HOST INDICATION OPTIMIZATION, Ser. No. 07/920,898, filed Jul. 28, 1992, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '752 Application and Patent both state that they are related the co-pending '459 Application, but no mention of the '752 Application is made in the '459 Application.

nn.    On January 26, 1993 and July 15, 1993, before the '459 Examiner issued his Notice of Allowability in the '459 Application, the '752 Examiner issued rejections ("the '752 Rejections") of the '752 Application.

oo.    During prosecution of the '752 Application ("the '752 Prosecution"), the following references were cited: U.S. Patents 4,546,467 (Yamamoto);

4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fisher) (collectively, "the '752 References").

pp.   All of the '752 References reviewed by the '752 Examiner were material to but not disclosed during the '459 Prosecution.

qq.   Fisher relates to the limitations of the '459 Application that call for an indication signal and an interrupt signal. Yamamoto, Kozlik, Chui, and Fisher relate to the limitations of the '459 Application that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '459 Application that call for network interface logic. Kozlik, Chiu, and Fisher relate to the limitations of the '459 Application that call for transferring a data frame. Francisco relates to the limitations of the '459 Application that call for an alterable storage location containing a threshold value.  Chiu relates to the limitations of the '459 Application that call for a counter for counting the amount of data transferred.

rr.   While the '459 Prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution attorney of the '752 Application in the December 23, 1993 '752 PCT International Search Report (the '752 ISR).

ss.   The '752 References were material to the claims of the '459 Application because the limitations of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

tt.   All of '752 Applicants were participants in the '459 Prosecution and had a duty of candor before the USPTO in the '459 Prosecution.

uu.   Some or all of the '752 Applicants knew of facts material to the '459 Prosecution: (i) the copendency of the '752 Application and the '752 PCT, (ii) the '752 Rejections, the '752 ISR, and (iii) the '752 References.  That is, they knew of the *similarity in disclosure* between the '459 Application and

'752 Application, and they knew that the '752 Examiner had found the '752 References relevant to the '752 Application and the '752 PCT and had twice rejected the '752 Application.

vv.     However, neither the co-pendency of the '752 Application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '459 Prosecution.

ww.     The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the '459 Examiner by the '752 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

xx.     The '459 Applicants committed further acts of inequitable conduct during the '459 Prosecution by failing to disclose the applications, rejections, and references related to U.S. Patent 5,392,406 ("the '406 Patent").

yy.     Application No. 07/947,055 ("the '406 Application"), which ultimately led to the '406 Patent was filed on September 18, 1992, about two months after the filing of the '459 Application.  Prosecution attorney Mark Haynes, named inventors Brian Peterson, Lai-Chin Lo, and David R. Brown, and assignee 3Com Corporation (collectively, "the '406 Applicants") were also participants in the '459 Prosecution.

zz.     PCT Application PCT/US1993/008840 (the '406 PCT) claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee (3Com Corporation) as the '459 and '406 Applications.

aaa.    The '459 Examiner was different from the examiner for the '406 Application ("the '406 Examiner") and the '406 PCT.

bbb.    The disclosures of the '459 Application and the '406 Application overlap to a

significant extent.

ccc.    On November 9, 1993 and April 26, 1994, the '406 Examiner issued rejections ("the '406 Rejections") of the '406 Application.

ddd.    During prosecution of the '406 Patent, the following references were cited: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken); 4,841,435 (Papenberg); 4,959,779 (Weber); 4,992,931 (Hirasawa); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively, "the '406 References").

eee.    All of the '406 References relate to the limitations of the '459 Application that call for generating a signal. Benken, Brooks, Kinoshita, Pleva, Nguyen, and Banks relate to the limitations of the '459 Application that call for an indication signal.  Benken, Brooks, Kinoshita, Pleva, Nguyen, and Banks relate to the limitations of the '459 Application that call for an interrupt signal.  Benken, Brooks, and Banks relate to the limitations of the '459 Application that call for a buffer memory.  Benken relates to the limitations of the '459 Application that call for transferring a data frame.  Benken relates to the limitations of the '459 Application that call for a network interface logic.  Benken relates to the limitations of the '459 Application that call for a transfer descriptor.

fff.    While the '459 Prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '406 Application in the January 11, 1994 '406 PCT International Search Report ("the '406 ISR").  These references were considered by the searching authority as relevant and/or invalidating.

ggg.     The '406 References were material to the '459 Prosecution because many, if
         not all, the features of the claims of the '459 Application were disclosed by,
         inherent in, or obvious in light of one or more of these references.

hhh.     All of the '406 Applicants also participated in the '459 Prosecution and
         therefore had a duty of candor before the USPTO in the '459 Prosecution.  At
         least the prosecution attorney (Mark Haynes) and the assignee (3Com
         Corporation) were participants in the prosecution of the '406 PCT and were
         persons with a duty of candor in the '459 Prosecution.

iii.     Some or all of the '406 Applicants knew of facts material to the '459
         Prosecution: (i) the co-pendency of the '406 Application and '406 PCT,
         (ii) the '406 Rejections and the '406 ISR, and (iii) the '406 References.  That is,
         all of the '406 Applicants knew of the *similarity in disclosure* between the '459
         Application and the '406 Application, and at least assignee 3Com Corporation
         and prosecution attorney Mark Haynes knew that the '406 Examiner had
         found the '406 References relevant to the '406 Application and the '406 PCT,
         and had twice rejected the '406 Application.

jjj.     However, the co-pendency of the '406 Application and the '406 PCT, the
         '406 Rejections, the '406 ISR, and the '406 References were not disclosed in the
         '459 Prosecution.

kkk.     The '406 Application, the '406 PCT, the '406 Rejections, and the '406
         References were therefore concealed from the '459 Examiner by the '406
         Applicants, with knowledge of their materiality and, on information and belief,
         with intent to deceive.

lll.     The '459 Applicants committed further inequitable conduct during the
         '459 Prosecution by failing to disclose the applications, rejections, and
         references related to U.S. Patent 5,530,874 ("the '874 Patent").

mmm. Application No. 08/012,561 ("the '874 Application"), which ultimately led to

the '874 Patent was filed on February 2, 1993.  Prosecution attorney Mark Haynes, named inventors Brian Peterson and W. Paul Sherer, and assignee 3Com Corporation of the '874 Application (collectively, "the '874 Applicants") were also participants in the '459 Prosecution.

nnn.   PCT Application PCT/US1993/012652 ("the '874 PCT") claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee (3Com Corporation) as the '459 Application.

ooo.   The '459 Examiner was different from the examiner for the '874 Application ("the '874 Examiner") and the '874 PCT.

ppp.   The disclosures of the '459 Application and '874 Application overlap to a significant extent.

qqq.   The specification of '874 Application and Patent state "The present application is related to co-pending U.S. patent application entitled NETWORK ADAPTER WITH HOST INDICATION OPTIMIZATION, Ser. No. 07/920,898, filed Jul. 28, 1992, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '874 Application and Patent both state that they are related to the co-pending '459 Application.  However, no mention of the '874 Application is made in the '459 Application.

rrr.   All of the '874 Applicants also participated in the '459 Prosecution and therefore were persons with a duty of candor before the USPTO in the '459 Prosecution. At least the prosecution attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecution of the '874 PCT and were persons with a duty of candor in the '459 Prosecution.

sss.   The '874 Applicants, who all participated in the '459 Prosecution, knew of facts material to the '459 Prosecution: the co-pendency of the '874 Application

and the '874 PCT.  That is, they knew of the *similarity in disclosure* between the '459 Application and the '874 Application.

ttt.   However, neither the co-pendency of the '874 Application nor of the '874 PCT, were disclosed in the '459 Prosecution.

uuu.   The co-pendency of the '874 Application and the '874 PCT were therefore concealed from the '459 Examiner by the '874 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

vvv.   The '459 Applicants committed further acts of inequitable conduct during the '459 Prosecution by failing to disclose the application and references related to U.S. Patent 5,517,627 ("the '627 Patent").

www.   Application No. 08/113,417 ("the '627 Application"), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993. Prosecution attorney Mark Haynes, named inventor Brian Peterson, and assignee 3Com Corporation (collectively, "the '627 Applicants") were also participants in the '459 Prosecution.

xxx.   The '459 Examiner was different from the examiner for the '627 Application ("the '672 Examiner").

yyy.   During the '459 Prosecution and before the '459 Patent issued, on February 7, 1994, prosecution attorney Mark Haynes filed an Information Disclosure Statement ("the '627 IDS") citing ten references.  These references were Kinnie; Benken; Weber; Chisholm; Brooks; Kinoshita; Pleva; Vo; 5,179,671 (Kelly); and Nguyen (collectively, "the '627 IDS References").  Since the '627 IDS References were cited in the '627 Application, Mr. Haynes knew of these references at least as of the date on which the '627 IDS was filed.

zzz.   All of the '406 References relate to the limitations of the '459 Application that call for generating a signal.  Benken, Brooks, Kinoshita, Pleva, Kelly, and Nguyen relate to the limitations of the '459 Application that call for an

indication signal.  Benken, Brooks, Kinoshita, Pleva, and Nguyen relate to the limitations of the '459 Application that call for an interrupt signal. Benken, Brooks, and Kelly relate to the limitations of the '459 Application that call for a buffer memory.  Benken relates to the limitations of the '459 Application that call for transferring a data frame. Benken relates to the limitations of the '459 Application that call for a network interface logic.  Benken relates to the limitations of the '459 Application that call for a transfer descriptor. Despite having knowledge of the '627 IDS References, Mr. Haynes and the other '627 Applicants failed to disclose these references to the '459 Examiner.

aaaa.   The '627 References were material because some or all of the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  At the very least, a reasonable examiner would have wanted to review the '627 IDS References to determine their effect on the patentability of the '459 Application.

bbbb.   All of the '627 Applicants also participated in the '459 Prosecution and therefore had a duty of candor before the USPTO in the '459 Prosecution.

cccc.   Some or all of the '627 Applicants knew of facts material to the '459 Prosecution: (i) the co-pendency of the '627 Application, and (ii) the '627 IDS and the '627 IDS References.  That is, they knew of the '627 IDS References and knew that these references were material to the '627 Application.  They also knew that the '627 IDS References were material to the '459 Prosecution.

dddd.   However, neither the co-pendency of the '627 Application, nor the '627 IDS and the '627 IDS References were disclosed in the '459 Prosecution.

eeee.   The '627 Application, the '627 IDS, and the '627 IDS References were therefore concealed from the '459 Examiner by the '627 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

ffff.   The '459 Applicants committed further acts of inequitable conduct during

27

the '459 Prosecution by additionally failing to disclose the application, rejection, and references related to U.S. Patent 5,412,782 ("the '782 Patent").

gggg.  Application No. 07/907,946 ("the '782 Application"), which ultimately led to the '782 Patent, was filed on July 2, 1992, within one month of the filing of the '459 Application.  Named inventor Paul W. Sherer and the assignee 3Com Corporation (collectively, "the '782 Applicants") were also participants in the '459 Prosecution.

hhhh.  The '459 Examiner was different from the examiner for the '782 Application ("the '782 Examiner").

iiii.  The disclosures of the '459 Application and the '782 Application relate to substantially the same subject matter. For example, the '782 Patent discloses early receive interrupts.  This directly relates to the alleged invention claimed in the '459 Patent.

jjjj.  On January 14, 1994, before the '459 Patent issued, the '782 Examiner issued a rejection ("the '782 Rejection") of the '782 Application.

kkkk.  During the prosecution of the '782 Application ("the '782 Prosecution") and in the '782 Rejection, the '782 Examiner cited U.S. Patent 4,768,190 ("the Giancarlo Reference").

llll.  Giancarlo relates to the limitations of the '459 Patent that call for generating an interrupt signal, a buffer memory, and transferring a data frame.

mmmm.  The Giancarlo Reference was material to the claims of the '459 Application because the limitations of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

nnnn.  The '782 Applicants were participants in the '459 Prosecution and had a duty of candor before the USPTO in the '459 Prosecution.  That is, named inventor Paul W. Sherer and assignee 3Com Corporation had a duty of candor in the '459 Prosecution.

oooo.   The '782 Applicants knew of facts material to the '459 Prosecution: (i) the copendency of the '782 Application, (ii) the '782 Rejection, and (iii) the Giancarlo Reference.  That is, all of the '782 Applicants knew of the *similarity in subject matter* between the '459 Application and the '782 Application, and they knew that the '782 Examiner had found the Giancarlo Reference relevant to the '782 Application and had rejected the '782 Application.

pppp.   However, neither the copendency of the '782 Application, nor the '782 Rejection and the Giancarlo Reference were disclosed in the '459 Prosecution.

qqqq.   The '782 Application, the '782 Rejection, and the Giancarlo Reference were therefore concealed from the '459 Examiner by the '782 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

rrrr.   The existence of other patent applications that were co-pending with the '459 Patent, related to networking technology, and owned by 3Com Corporation or their subsidiary or associated corporation, including the applications' related foreign filings, and all material references cited in the applications' prosecution were not cited during the '459 Prosecution.  These other patent applications include the applications for U.S. Patents: 5,459,854; 5,392,399; 5,471,618; 5,483,640; 5,511,171; 5,459,840; 5,526,489; 5,386,470; 5,387,902; 5,473,765; and 5,423,002.

ssss.   Some or all of the persons with a duty of candor in the '459 Prosecution, were participants in the prosecution of these other patent applications.  Some or all of the persons with a duty of candor in the '459 Prosecution knew that these other applications were material to the '459 Prosecution.

tttt.   On information and belief, these other applications and materials were concealed from the '459 Examiner by the '459 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

15.     Acer Defendants allege that the '872 Patent is unenforceable by reason of inequitable conduct during the prosecution of the application that led to the issuance of the '872 Patent ("the '872 Prosecution") committed by the inventors, their counsel, 3Com Corporation, and/or others involved in the prosecution of the '872 Patent (collectively, "the '872 Applicants") as outlined below:

a.     The '872 Application, which ultimately led to the '872 Patent, was filed on the same date as the '459 Application on behalf of named inventors Brian Peterson and David R. Brown and named assignee, 3Com Corporation.  Ultimately, a third inventor (W. Paul Sherer) was added as a named inventor on what became the '872 Patent.  Mark Haynes acted as prosecution counsel from the filing of the '872 Application to the issuance of the '872 Patent. The '872 Patent issued on July 18, 1995.

b.     The '872 Applicants committed further acts of inequitable conduct during the '872 Prosecution by failing to disclose the applications and references related to the '313 Patent.

c.     The '313 Application, which ultimately led to the '313 Patent, was filed on the same date as the '872 Application.  Most of the '313 Applicants were also participants in the '872 Prosecution.  That is, prosecution attorney Mark Haynes, named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and assignee 3Com Corporation were also participants in the '872 Prosecution.

d.     The '313 PCT claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of all of the same named inventors (Brian Peterson, W. Paul Sherer, and David R. Brown) and the same assignee (3Com Corporation) as the '872 Application.  The '313 EP, based on the '313 PCT, entered the regional phase on February 25, 1994.

e.     The '872 Examiner was different from the '313 Examiner and the examiner for

30

the '313 PCT.

f.      The disclosures of the '872 Application and the '313 Application overlap to a significant extent.  The '872 Patent states that "[t]he present application is related to copending U.S. patent application entitled NETWORK INTERFACE WITH HOST INDEPENDENT BUFFER MANAGEMENT, application Ser. No. 07/921,519, filed Jul. 28, 1992, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '872 Patent states that it is related to the '313 Application, but no mention of the '872 Application is made in the '313 Application.

g.      On September 21, 1993, about a month before the '872 Examiner issued his first Office action in the '872 Application, the '313 Examiner issued a Notice of Allowability in the '313 Application.

h.      In the Notice of Allowability of the '313 Application, the '313 Examiner cited the Benken Reference.

i.      The Benken Reference was material to but not disclosed during the '872 Prosecution.

j.      The Benken Reference relates to the limitations of the '872 Patent that call for a buffer memory, network interface means, host interface means, means for initiating transmission of a frame, a transmit descriptor ring buffer, and a CSMA/CD (i.e., an Ethernet) network.

k.      While the '872 Application was still pending, the Benken Reference was cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '313 Application on November 26, 1993 in the '313 ISR.  The '313 ISR further cited the '313 ISR References as relevant to the '313 PCT.

l.      The '313 ISR References relate to the limitations of the '872 Application that call for a buffer memory and a network interface means.  At least Harris and Farrell

31

relate to the limitations of the '872 Application that call for a host interface means.  At least Harris, Schwan, and Farrell relate to the limitations of the '872 Application that call for a means for initiating transmission of a frame.

m.   Furthermore, while the '872 Application was still pending, another reference was cited in a Supplementary European Search Report ("the '313 EP SSR"), dated May 2, 1994, as a result of the examination of the '313 EP.  As a result of the '313 EP SSR, at least prosecution attorney Mark Haynes and 3Com Corporation became aware of U.S. Patent 4,947,366 ("the Johnson Reference").  The Johnson Reference relates to the limitation of the '094 Application that calls for transferring data to a buffer memory.  The European examiner indicated in the '313 EP SSR that the Johnson Reference was "particularly relevant if taken alone."

n.   The Benken Reference, the '313 ISR References, and the Johnson Reference were material to the claims of the '872 Application because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

o.   Most of the '313 Applicants were participants in the '872 Prosecution and had a duty of candor before the USPTO in the '872 Prosecution.  That is, prosecution attorney Mark Haynes, named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and assignee 3Com Corporation all had a duty of candor in the '872 Prosecution.

p.   The '313 Applicants knew of facts material to the '872 Prosecution: (i) the copendency of the '313 PCT and the '313 EP, (ii) the '313 ISR and the '313 EP SSR, and (iii) the Benken Reference, the '313 ISR References, and the Johnson Reference.  That is, they knew of the *similarity in disclosure* between the '872 Application and '313 Application, and they knew that the '313 Examiner had found the Benken Reference material to the '313 Application.  They also

knew that the examiner for the '313 PCT had found the '313 ISR References material to the '313 PCT and the examiner for the '313 EP had found the Johnson Reference material to the '313 EP.

q.    However, neither the co-pendency of the '313 Application, the '313 PCT, and the '313 EP, nor the '313 ISR, the Benken Reference, and the '313 ISR References were disclosed in the '872 Prosecution.

r.    The '313 Application, the '313 PCT, the '313 EP, the '313 ISR, the Benken Reference, and the '313 ISR References were therefore concealed from the '872 Examiner by the '313 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

s.    The '872 Applicants committed inequitable conduct during the '872 Prosecution by failing to disclose the applications, rejections, and references related to another of the Patents-in-Suit, the '459 Patent.

t.    The '459 Application, which ultimately led to the '459 Patent, was filed on the same date as the '872 Application.  The '872 Applicants, namely, prosecution attorney Mark Haynes, named inventors Brian Petersen, David R. Brown, and W. Paul Sherer, and named assignee 3Com Corporation were also participants in the '872 Prosecution.

u.    PCT Application PCT/US1993/007056 ("the '459 PCT") claims priority to the '459 Application and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of three of the same named inventors (Brian Petersen, David R. Brown, and W. Paul Sherer) and the same named assignee (3Com Corporation) as the '872 Application.  The European Patent Application EP 93918424 ("the '459 EP") bears the same filing date as the '459 PCT and entered into the regional phase on February 25, 1994 based on the '459 PCT.

v.    The '872 Examiner was different from the '459 Examiner and the examiner for the '459 PCT and the '459 EP.

w.     The disclosures of the '872 Application and the '459 Application overlap to a significant extent.

x.     During the '459 Prosecution, the following references were cited: U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper) (collectively, "the '459 References"). These references were cited to the '872 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

y.     All of the '459 References reviewed by the '459 Examiner were material to, but not disclosed during, the '872 Prosecution.

z.     All of the '459 References relate to the limitations of the '872 Application that call for a buffer memory.  All references relate to the limitations of the '872 Application that call for a network interface means.  All references relate to the limitations of the '872 Application that call for transferring frames of data. Finally, and perhaps most importantly, all references relate to the limitations of the '872 Application that call for *threshold determination* of an amount of data. At least Gulick 1 and Gulick 2 relate to the limitations of the '872 Application that call for a bad frame signal and to limitations that call for an underrun control logic.

aa.    While the '872 Prosecution was still pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '459 Application in the November 15, 1993 of the '459 International Search Report (the '459 ISR).

bb.    In the Response of February 23, 1994 during the '872 Prosecution, at least the prosecution counsel of the '872 Application disingenuously argued that:

    In particular, the invention as recited in the new claims
    is limited to a CSMA/CD network adapter. This kind

34

> of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. ***Firoozmand, et al. does not use the transmit threshold determination*** *for a first frame in a transmission sequence. Rather, this threshold determination is only used in succeeding frames.* See Firoozmand, at al. column 10, line 53-68. (emphasis added).

That is, prosecution attorney Mark Haynes distinguished some claims of the '872 Application from Firoozmand *et al.* on the basis of CSMA/CD.

cc.   The '459 References were material to the claims of the '872 Application because many, if not all, the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  For example, these references are related to using the *threshold determination* for *any* frame.  The '872 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand *et al.* or other '872 references to make obvious the claims of the '872 Application directed to CSMA/CD.

dd.   Furthermore, while the '872 Application was still pending, at least prosecution attorney Mark Haynes and assignee 3Com Corporation became aware of additional references in view of the Supplementary European Search Report ("the '459 EP SSR") dated April 27, 1994.  The '459 EP SSR cited two additional references: "Early Interrupt for Disk Controller," IBM Technical Disclosure Bulletin, vol. 25, no. 9, February 1983, p. 4703 ("the IBM Reference") and U.S. Patent 5,179,709 ("Bailey") (collectively, "the '459 EP References").

ee.   The IBM Reference relates to the limitation of the '872 Application that calls for

an alterable threshold store for storing a threshold value.  Bailey relates to the limitation of the '872 Application that calls for a buffer memory, means for monitoring the transferring of data to the buffer memory to make a threshold determination of an amount of data transferred to the buffer memory.

ff.   Moreover, during prosecution of Application No. 08/715,253 (the "'094 Application"), the continuation of the '872 Application, the same examiner of both the '872 and '094 Applications discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure" and cited it in the Office Action of March 19, 1996 in the '094 Prosecution.

gg.   Almost all of the '459 Applicants were participants in the '872 Prosecution and had a duty of candor in the '872 Prosecution.  That is, at least prosecution attorney Mark Haynes, named inventors Brian Petersen, David R. Brown, and W. Paul Sherer, and named assignee 3Com Corporation had a duty of candor in the '872 Prosecution.

hh.   Some or all of the '872 Applicants knew of facts material to the '872 Prosecution: (i) the co-pendency of the '459 Application, the '459 PCT, and the '459 EP, (ii) the '459 ISR and the '459 EP SSR, and (iii) the '459 References and the '459 EP References.  That is, they knew of the *similarity in disclosure* between the disclosures of the '459 Patent and '872 Patent and they knew that the '459 Examiner had found the '459 References relevant to the '459 Application and the '459 PCT and that the examiner for the '459 EP had found the '459 EP References relevant to the '459 EP.

ii.   However, neither the co-pendency of the '459 Application and the '459 PCT and the '459 EP, nor the '459 ISR, the '459 EP SSR, the '459 References, and the '459 EP References were disclosed in the '872 Prosecution.

jj.   The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, the '459 EP SSR, the '459 References, and the '459 EP References were therefore

concealed from the '872 Examiner by the '459 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

kk.   The '872 Applicants committed further acts of inequitable conduct during the '872 Prosecution by failing to disclose the applications, rejections, and references related to the '752 Patent.

ll.   The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992, about two months after the filing of the '872 Application.  Most of the '752 Applicants were also participants in the '872 Prosecution.  That is, prosecution attorney Mark Haynes, named inventor Brian Peterson, and named assignee 3Com Corporation were also participants in the '872 Prosecution.

mm.   The '752 PCT was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of one of the same named inventors (Brian Peterson) and the same assignee (3Com Corporation) as the '872 Application.  The European Patent Application EP 93921684 ("the '752 EP"), bears the same filing date as the '752 PCT and entered into the region phase on March 6, 1995 based on the '752 PCT.

nn.   The '872 Examiner was different from the '752 Examiner and the examiner for

oo.   The disclosures of the '872 Application and '752 Application overlap to a significant extent.

pp.   At least the following '752 References reviewed by the '752 Examiner were material to, but not disclosed during, the '872 Prosecution: Yamamoto, Kozlik, Francisco, Chiu, and Fisher.

qq.   Yamamoto, Kozlik, and Fisher relate to the limitations of the '872 Application that call for a buffer memory.  Yamamoto, Kozlik and Chiu relate to the limitations of the '872 Application that call for a network interface means.  Kozlik, Chiu, and Fisher relate to the limitations of the '872 Application that call for transferring frames of data.

rr.     While the '872 Prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution attorney of the '752 Application on December 23, 1993 in the '752 ISR.

ss.     Further, while the '872 Application was still pending, at least prosecution attorney Mark Haynes and assignee 3Com Corporation became aware of additional references in view of the Supplementary European Search Report ("the '752 EP SSR") dated April 28, 1995.  The '752 EP SSR cited two additional references: U.S. Patent 3,789,365 ("Jen") and the IBM Reference (collectively, "the '752 EP References").

tt.     Jen relates to limitations of the '872 Application that call for a buffer memory.  The IBM Reference relates to the limitation of the '872 Application that calls for an alterable threshold store for storing a threshold value.

uu.     The '752 References and the '752 E References were material to the claims of the '872 Application because the limitations of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

vv.     Most of the '752 Applicants were participants in the '872 Prosecution and had a duty of candor before the USPTO in the '872 Prosecution.

ww.     The '752 Applicants knew of facts material to the '872 Prosecution: (i) the co-pendency of the '752 Application, the '752 PCT, and the '752 EP (ii) the '752 Rejections, the '752 ISR, and the '752 EP SSR, and (iii) the '752 References and the '752 EP References.  That is, they knew of the *similarity in disclosure* between the '872 Application and '752 Application, and they knew that the '752 Examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application. They also knew that the examiner for the '752 EP had found the '752 EP

References relevant to the '752 EP.

xx.     However, neither the co-pendency of the '752 Application, the '752 PCT, and the '752 EP nor the '752 Rejections, the '752 ISR, the '752 EP SSR, the '752 References, and the '752 EP References were disclosed in the '872 Prosecution.

yy.     The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, the '752 ISR, the '752 EP SSR, the '752 References, and the '752 EP References were therefore concealed from the '872 Examiner by the '872 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

zz.     The '872 Applicants committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

aaa.    The '406 Application, which ultimately led to the '406 Patent, was filed on September 18, 1992, about two months after the filing of the '872 Application. Most of the '406 Applicants were also participants in the '872 Prosecution. That is, prosecution attorney Mark Haynes, named inventors Brian Peterson and David R. Brown, and assignee 3Com Corporation were also participants in the '872 Prosecution.

bbb.    The '406 PCT was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee (3Com Corporation) as the '872 Application.

ccc.    The '872 Examiner was different from the '406 Examiner and the examiner for the '406 PCT.

ddd.    The disclosures of the '872 Application and the '406 Application overlap to a significant extent.

eee.   All of the '406 References were material to, but not disclosed during, the '872 Prosecution.

fff.   Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Pleva, Vo, Potter, Kelley, Nguyen, and Banks relate to the limitations of the '872 Application that call for a buffer memory.  Benken relates to the limitations of the '459 Patent that call for transferring a data frame. Benken relates to the limitations of the '872 Application that call for a transmit descriptor.

ggg.   While the '872 Prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '406 Application on January 11, 1994 in the '406 ISR.  These references were considered by the searching authority as relevant and/or invalidating.

hhh.   The '406 References were material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

iii.   All of the '406 Applicants also participated in the '872 Prosecution and therefore had a duty of candor before the USPTO in '872 Prosecution.

jjj.   Some or all of the '406 Applicants knew of facts material to the '872 Prosecution: (i) the co-pendency of the '406 Application and the '406 PCT, (ii) the '406 Rejections, the '406 ISR, and (iii) the '406 References.  That is, all of the '406 Applicants knew of the *similarity in disclosure* between the '872 Application and the '406 Application, and at least assignee 3Com Corporation and prosecution attorney Mark Haynes knew that the '406 Examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

kkk.   However, neither the co-pendency of the '406 Application and the '406 PCT,

nor the '406 Rejections, the '406 ISR, and the '406 References were disclosed in the '872 Prosecution.

lll.   The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the '872 Examiner by the '406 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

mmm. The '872 Applicants committed further acts of inequitable conduct during the '872 Prosecution by failing to disclose the applications, rejections, and references related to the '627 Patent.

nnn.   The '627 Application, which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993. Prosecution attorney Mark Haynes, named inventor Brian Peterson, and assignee 3Com Corporation (collectively, "the '627 Applicants") were also participants in the '872 Prosecution.

ooo.   PCT Application PCT/US1994/009723 ("the '627 PCT") claims priority to the '627 Application and was filed on August 25, 1994 by the same counsel (Mark Haynes) on behalf of one of the same named inventors (Brian Peterson) and the same assignee (3Com Corporation) as the '872 Application.

ppp.   The '872 Examiner was different from the '672 Examiner and the '627 PCT.

qqq.   On December 19, 1994, the '627 Examiner issued a rejection of the '627 Application ("the '627 Rejection").

rrr.   During the '627 Prosecution, the following references were cited: 4,131,940 (Moyer); Kinnie; 4,455,606 (Cushing); 4,654,781 (Schwartz); 4,663,732 (Robinson); 4,667,305 (Dill); Benken; Weber; Hirasawa; Chisholm; Brooks; Kinoshita; Pleva; Vo; 5,179,671 (Kelly); Nguyen; Banks; and 5,297,242 (Miki) (collectively, "the '627 References").

sss.   Prosecution attorney Mark Haynes cited ten of the '627 References (Kinnie,

Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in an Information Disclosure Statement filing of February 4, 1994 ("the '627 IDS") in the '627 Application. Therefore, at least Mr. Haynes had knowledge of these references by February 4, 1994.

ttt.    Of the '627 References, Moyer, Benken, and Brooks relate to the limitations of the '872 Application that call for a buffer memory.  Benken relates to the limitations of the '872 Application that call for transferring a data frame. Benken relates to the limitations of the '872 Application that call for a transmit descriptor.

uuu.    While the '872 Prosecution was pending, seven of the '627 References (Vo, Benken, Moyer, Schwartz, Hirasawa, Robinson, and Banks) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '627 Application in the February 13, 1995 '627 PCT International Search Report ("the '627 ISR"). Vo, Benken, and Moyer were identified by the searching authority as of particular relevance.

vvv.    The '627 References were material because some of the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  At the very least, a reasonable examiner would have wanted to review the '627 Rejection and the '627 References to determine their effect on the patentability of the '872 Application.

www.    All of the '627 Applicants also participated in the '872 Prosecution and therefore had a duty of candor before the USPTO in the '872 Prosecution. At least prosecution attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecution of the '627 PCT and were persons with a duty of candor in the '872 Prosecution.

xxx.    Some or all of the '627 Applicants new of facts material to the '872 Prosecution: (i) the co-pendency of the '627 Application and the '627 PCT, (ii)

the December 19, 1994 Rejection and the '627 ISR, and (iii) the '627 IDS and the '627 References.  That is, they knew that the '627 Examiner had found the '627 References relevant to the '627 Application and the '627 PCT, and had rejected the '627 Application.

yyy.   However, neither the co-pendency of the '627 Application and the '627 PCT, nor the '627 Rejection, the '627 ISR, and the '627 References were disclosed in the '872 Prosecution.

zzz.   The '627 Application, the '627 PCT, the '627 Rejection, the '627 ISR, and the '627 References were therefore concealed from the '872 Examiner by the '872 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

aaaa.   The '872 Applicants committed further acts of inequitable conduct during the '872 Prosecution by failing to disclose the applications, rejections, and references related to the '874 Patent.

bbbb.   The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993.  The '874 Applicants, namely prosecution attorney Mark Haynes, named inventors Brian Peterson and W. Paul Sherer, and assignee 3Com Corporation, were also participants in the '872 Prosecution.

cccc.   The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel (Mark Haynes) on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee (3Com Corporation) as the '872 Application. The European Patent Application EP 94905972 ("the '874 EP"), bears the same filing date as the '874 PCT and entered into the region phase on July 13, 1995 based on the '874 PCT.

dddd.   The '872 Examiner was different from the '874 Examiner and the examiner for the '874 PCT.

43

eeee.   The disclosures of the '872 Application and the '874 Application overlap to a significant extent.

ffff.   During prosecution of the '874 Patent, the following references were cited: U.S. Patents 3,905,025 (Davis); 4,349,872 (Fukasawa); 4,631,659 (Hayn); 4,768,149 (Konopik); 4,807,117 (Itoku); 4,847,752 (Akashi); 4,961,161 (Kojima); 4,987,535 (Takayama); 5,146,595 (Fujiyama); 5,161,228 (Yasui); 5,179,704 (Jibbe); 5,193,195 (Miyazaki); 5,283,904 (Carson) and articles Chiang, Al, "An EtherStar is Born", ESD: Magazine, Digital Design Publishing Company, March 1988 ("the Chiang Reference"); and EtherStar Ethernet/Starlan Controller, Fujitsu MB86950, May 1988 ("the Fujitsu Reference") (collectively, "the '874 References").

gggg.   On September 20, 1994 and May 19, 1995, the examiner of the '874 Application ("the '874 Examiner") issued rejections of the '874 Application ("the '874 Rejections").

hhhh.   At least the following '874 References reviewed by the '874 Examiner were material to but not disclosed during the '872 Prosecution: Davis, Fukasawa, Hayn, Konopik, Itoku, Akashi, Kojima, Takayama, Fujiyama, Yasui, Jibbe, Miyazaki, Carson, and the Chiang and Fujitsu References.

iiii.   Davis, Akashi, Takayama, Yasui, Jibbe, Miyazaki, and Carson relate to the limitations of the '872 Application that call for a buffer memory.  Carson relates to the limitations of the '872 Application that call for a network interface means.  The Chiang and Fujitsu References relate to the limitations of the '872 Application that call for a CSMA/CD network.

jjjj.   While the '872 prosecution was pending, three of the '874 References (Akashi, Takayama, and Fukasawa) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '874 Application in the August 1, 1994 '874 PCT International Search Report ("the '874

44

ISR").  These references were identified *again* by the searching authority as of particular relevance.

kkkk.  These '874 References were material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

llll.  All of the '874 Applicants also participated in the '872 Prosecution and therefore were persons with a duty of candor before the USPTO in the '872 Prosecution.  At least the prosecution attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecution of the '874 PCT and were persons with a duty of candor in the '872 Prosecution.

mmmm.    The '874 Applicants, who all participated in the '872 Prosecution, knew of facts material to the '872 Prosecution: (i) the co-pendency of the '874 Application, the '874 PCT, and the '874 EP, and (ii) the '874 Rejections and the '874 ISR, and (iii) the '874 References.  That is, they knew of the *similarity in disclosure* between the disclosures of the '872 Application and '874 Application, and they knew that the '874 Examiner had found the '874 References relevant to the '874 Application and the '874 PCT, and that the '874 Examiner had twice rejected the '874 Application.

nnnn.  However, neither the co-pendency of the '874 Application, the '874 PCT, and the '874 EP, nor the '874 Rejections, the '874 ISR, and the '874 References were disclosed in the '872 Prosecution.

oooo.  The co-pendency of the '874 Application, the '874 PCT, and the '874 EP, the '874 Rejections, the '874 ISR, and the '874 References were therefore concealed from the '872 Examiner by the '874 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

pppp.  The '872 Applicants committed further acts of inequitable conduct during the '872 Prosecution by additionally failing to disclose the application, rejection, and

references related to the '782 Patent.

qqqq.   The '782 Application, which ultimately led to the '782 Patent, was filed on
July 2, 1992, within one month of the filing of the '872 Application.  The
'782 Applicants were also participants in the '872 Prosecution.  That is,
named inventor Paul W. Sherer and the assignee 3Com Corporation
were also participants in the '872 Prosecution.

rrrr.   The '872 Examiner was different from the '782 Examiner.

ssss.   The disclosures of the '872 Application and the '782 Application relate to
substantially the same subject matter.  For example, the '782 Patent discloses
a host interface and a receive threshold and therefore relates to the limitations of
the '872 Application.

tttt.   During the '872 Prosecution, the '782 Examiner issued rejections on January
14, 1994 and on July 7, 1994 ("the '782 Rejections").

uuuu.   During the '782 Prosecution, the '782 Examiner reviewed the Giancarlo
Reference as well as U.S. Patents 5,210,829 (Bitner) and 5,121,479 (O'Brien)
(collectively, "the '782 References").

vvvv.   Giancarlo relates to the limitations of the '872 Patent that call for a buffer
memory, and transferring a data frame.  Bitner relates to the limitations of the
'872 Application that call for a host system alterable threshold store for storing a
threshold value.  O'Brien relates to the limitations of the '872 Application
that call for a buffer memory.

wwww.   The '782 References were material to the claims of the '872
Application because the limitations of the claims of the '872 Application were
disclosed by, inherent in, or obvious in light of one or more of these references.

xxxx.   The '782 Applicants were participants in the '872 Prosecution and had a duty of
candor before the USPTO in the '872 Prosecution.  That is, named inventor
Paul W. Sherer and assignee 3Com Corporation had a duty of candor in the

'872 Prosecution.

yyyy.   The '782 Applicants knew of facts material to the '872 Prosecution: (i) the copendency of the '782 Application, (ii) the '782 Rejections, and (iii) the '782 References.  That is, all of the '782 Applicants knew of the *similarity in disclosure* between the '872 Application and the '782 Application, and they knew that the '782 Examiner had found the '782 References relevant to the '782 Application and had twice rejected the '782 Application.

zzzz.   However, neither the copendency of the '782 Application, nor the '782 Rejections and the '782 References were disclosed in the '872 Prosecution.

aaaaa.  The '782 Application, the '782 Rejections, and the '782 References were therefore concealed from the '872 Examiner by the '782 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

bbbbb.  The existence of other patent applications that were co-pending with the '872 Patent, related to networking technology, and owned by 3Com Corporation or their subsidiary or associated corporation, including the applications' related foreign filings, and all material references cited in the applications' prosecution were not cited during the '872 Prosecution.  These other patent applications include the applications for U.S. Patents: 5,459,854; 5,392,399; 5,471,618; 5,483,640; 5,511,171; 5,459,840; 5,526,489; 5,386,470; 5,517,627; 5,387,902; 5,473,765; 5,423,002; 5,530,703; 5,541,911; and 5,535,338.

ccccc.  Some or all of the persons with a duty of candor in '872 Prosecution were participants in the prosecution of the other patent applications. Some or all of the persons with a duty of candor in the '872 Prosecution knew that these other applications were material to the '872 Prosecution.

ddddd.  On information and belief, these other applications and materials were concealed from the '872 Examiner by the '872 Applicants, with knowledge of their

47

materiality and, on information and belief, with intent to deceive.

16.     Acer Defendants allege that the '094 Patent is unenforceable by reason of inequitable conduct during the prosecution of the application that led to the issuance of the '094 Patent ("the '094 Prosecution") committed by the inventors, their counsel, 3Com Corporation, and/or others involved in the prosecution of the '094 Patent ("the '094 Applicants") as outlined below:

a.      The '094 Application, which ultimately led to the '094 Patent, was filed as a continuation of the '872 Application on September 16, 1996 on behalf of named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and named assignee 3Com Corporation. Mark Haynes acted as prosecution counsel from the filing of the '094 Application to the issuance of the '094 Patent.  The '094 Patent issued on March 24, 1998.

b.      The '094 Applicants committed further acts of inequitable conduct during the '094 Prosecution by failing to disclose the applications and references related to the '313 Patent.

c.      The '313 Application, which ultimately led to the '313 Patent, was filed on the same date as the '872 Application.  Most of the '313 Applicants were also participants in the '094 Prosecution. T hat is, prosecution attorney Mark Haynes, named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and assignee 3Com Corporation were also participants in the '094 Prosecution.

d.      The '313 PCT claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of all of the same named inventors (Brian Peterson, W. Paul Sherer, and David R. Brown) and the same assignee (3Com Corporation) as the '094 Application.  The '313 EP bears the same filing date as the '313 PCT and entered the regional phase on February 25, 1994.

e.      The '094 Examiner was different from the '313 Examiner and the examiner for

48

the '313 PCT.

f.  The disclosures of the '094 Application and the '313 Application overlap to a significant extent. The '872 Patent states that "[t]he present application is related to copending U.S. patent application entitled NETWORK INTERFACE WITH HOST INDEPENDENT BUFFER MANAGEMENT, application Ser. No. 07/921,519, filed Jul. 28, 1992, now U.S. Pat. No. 5,299,313, which was owned at the time of invention and is currently owned by the same assignee." That is, the '094 Patent states that it is related to the '313 Application, but no mention of the '094 Application is made in the '313 Application.

g.  On September 21, 1993 the '313 Examiner issued a Notice of Allowability in the '313 Application.

h.  In the Notice of Allowability of the '313 Application, the '313 Examiner cited the Benken Reference.

i.  The Benken Reference was material to but not disclosed during the '094 Prosecution.

j.  The Benken Reference relates to the limitations of the '094 Patent that call for transferring data of a frame to a buffer memory and initiating CSMA/CD (i.e., an Ethernet) transmission of the frame.

k.  The Benken Reference was cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '313 Application on November 26, 1993 in the '313 ISR.  The '313 ISR further cited the '313 ISR References as relevant to the '313 PCT.

l.  The '094 Applicants therefore had knowledge of the Benken Reference and the '313 ISR References prior to filing the '094 Application.

m.  The '313 ISR References relate to the limitations of the '094 Application that call for transferring data of a frame to a buffer memory.  At least Harris, Schwan, and Farrell relate to the limitations of the '094 Application that call for initiating

transmission of a frame.

n.    Furthermore, at least prosecution attorney Mark Haynes and 3Com Corporation
were aware of the Johnson Reference that was cited in the '313 EP SSR on
May 2, 1994.  The Johnson Reference relates to the limitation of the '094
Application that calls for transferring data to a buffer memory.  The European
examiner indicated in the '313 EP SSR that the Johnson Reference was
"particularly relevant if taken alone."

o.    The Benken Reference, the '313 ISR References, and the Johnson Reference were
material to the claims of the '094 Application because the features of the
claims of the '094 Application were disclosed by, inherent in, or obvious in
light of one or more of these references.

p.    Most of the '313 Applicants were participants in the '094 Prosecution and had a
duty of candor before the USPTO in the '094 Prosecution.  That is, prosecution
attorney Mark Haynes, named inventors Brian Peterson, W. Paul Sherer, and
David R. Brown, and assignee 3Com Corporation all had a duty of candor in the
'094 Prosecution.

q.    The '313 Applicants knew of facts material to the '094 Prosecution: (i) the '313
PCT, the '313 EP, '313 ISR, and the '313 EP SSR, and (ii) the Benken Reference,
the '313 ISR References, and the Johnson Reference.  That is, they knew of the
*similarity in disclosure* between the '094 Application and '313 Application, and
they knew that the '313 Examiner had found the Benken Reference material to the
'313 Application.  They also knew that the examiner for the '313 PCT had
found the '313 ISR References material to the '313 PCT and that the examiner
for the '313 EP had found the Johnson Reference material to the '313 EP.

r.    However, the '313 PCT, the '313 EP, the '313 ISR, the '313 EP SSR, the Benken
Reference, the '313 ISR References, and the Johnson Reference were not
disclosed in the '094 Prosecution.

s.   The '313 PCT, the '313 EP, the '313 ISR, the '313 EP SSR, the Benken Reference, the '313 ISR References, and the Johnson Reference were therefore concealed from the '094 Examiner by the '313 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

t.   The '094 Applicants committed inequitable conduct during the '094 Prosecution by failing to disclose the applications, rejections, and references related to another of the Patents-in-Suit, the '459 Patent.

u.   The '459 Application, which ultimately led to the '459 Patent, was filed on the same date as the parent of the '094 Application, the '872 Application.  Most of the '459 Applicants were also participants in the '094 Prosecution.  That is, prosecution attorney Mark Haynes, named inventors Brian Petersen, David R. Brown, and W. Paul Sherer, and named assignee 3Com Corporation, were also participants as the '094 Prosecution.

v.   The '459 PCT claims priority to the '459 Application and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of three of the same named inventors (Brian Petersen, David R. Brown, and W. Paul Sherer) and the same named assignee (3Com Corporation) as the '094 Application.  The '459 EP bears the same filing date as the '459 PCT and entered the regional phase on February 25, 1994 based on the '459 PCT.

w.   The USPTO examiner for '094 Application ("the '094 Examiner") was different from the '459 Examiner and the examiner for the '459 PCT and the '459 EP.

x.   The disclosures of the '094 Application and the '459 Application overlap to a significant extent.

y.   In the Preliminary Amendment of March 3, 1995, the '094 Applicants added claims directed to CSMA/CD.  When making a similar amendment in the parent application, the '872 Application, prosecution attorney Mark Haynes argued that:

51

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter.  This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al*.  In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network.  Thus, Firoozmand, *et al*. will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer.  ***Firoozmand, et al. does not use the transmit threshold determination*** *for a first frame in a transmission sequence.  Rather, this threshold determination is only used in succeeding frames.*  See Firoozmand, at al. column 10, line 53-68.  (emphasis added).

Response of February 23, 1994, '872 Application.

z.     All of the '459 References reviewed by the '459 Examiner were material to, but not disclosed during, the '094 Prosecution.

aa.    All of the '459 References relate to the limitations of the '094 Application that call for a buffer memory.  All references relate to the limitations of the '094 Application that call for a network interface device.  All references relate to the limitations of the '094 Application that call for a frame transmission task.  All references relate to the limitations of the '094 Application that call for a threshold determination based on a comparison of a count of data transferred and altering the threshold value.  At least Gulick 1 and Gulick 2 relate to the limitations of the '094 Application that call for a bad frame signal and limitations that call for an underrun control logic.

bb.    The '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '459 Application on November 15, 1993 in the '459 ISR.

cc.    The '459 References were material to the claims of the '094 Application because many, if not all, the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these

references.  For example, these references are related to using the *threshold determination* for *any* frame.  The '094 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand *et al.* or other '094 References to make obvious the claims of the '094 Application directed to CSMA/CD.  Moreover, during prosecution of the '094 Application, the '094 Examiner discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure", and cited it in the Office Action of March 19, 1996.  This constitutes a finding by the '094 Examiner of the relevance to the '094 Application of the Gulick 1 reference.  Yet the '094 Applicants failed to disclose it despite having knowledge of it.

dd.     Furthermore, at least prosecution attorney Mark Haynes and assignee 3Com Corporation were aware of additional references in view of the '459 EP SSR dated April 27, 1994. The '459 EP SSR cited the '459 EP References, namely, the IBM Reference and Bailey.

ee.     The IBM Reference relates to the limitation of the '094 Application that calls for an alterable threshold store for making a threshold determination.  Bailey relates to the limitation of the '094 Application that calls for a buffer memory and monitoring the transfer of data to the buffer memory to make a threshold determination on an amount of data transferred to the buffer memory.

ff.     Almost all of the '459 Applicants were participants in the '094 Prosecution and had a duty of candor in the '094 Prosecution.  That is, at least prosecution attorney Mark Haynes, named inventors Brian Petersen, David R. Brown, and W. Paul Sherer, and named assignee 3Com Corporation had a duty of candor in the '094 Prosecution.

gg.     Some or all of the '459 Applicants knew of facts material to the '094

Prosecution: (i) the '459 Application, the '459 PCT, and the '459 EP, (ii) the '459 ISR, and the '459 EP SSR, and (iii) the '459 References and the '459 EP References.  That is, they knew of the *similarity in disclosure* between the '459 Application and the '094 Application, and they knew that the '459 Examiner had found the '459 References relevant to the '459 Application and the '459 PCT and that the examiner for the '459 EP had found the '459 EP References relevant to the '459 EP.

hh.    However, neither the '459 Application, the '459 PCT, and the '459 EP, nor the '459 ISR, the '459 EP SSR, the '459 References, and the '459 EP References were disclosed in the '094 Prosecution.

ii.    The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, the '459 EP SSR, the '459 References, and the '459 EP References were therefore concealed from the '094 Examiner by the '459 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

jj.    The '094 Applicants committed further acts of inequitable conduct during the '094 Prosecution by failing to disclose U.S. Patent 5,278,956 ("the Thomsen Reference").

kk.    The '094 Applicants knew of the Thomsen Reference because it was cited during the prosecution of the parent Application to the '094 Application.  That is, the Thomsen Reference was cited during the '872 Prosecution.

ll.    The Thomsen Reference would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of the Thomsen Reference.

mm.    The Thomsen Reference relates to a buffer memory, transferring data, and a threshold determination.

nn.    The '094 Applicants, and in particular, prosecution attorney Mark Haynes and assignee 3Com Corporation had several opportunities between

December 21, 1994 to March, 19, 1996 to cite the Thomsen Reference, but failed to do so.

oo.    The '094 Examiner subsequently found the Thomsen Reference relevant and cited the Thomsen Reference in the Office Action of March 19, 1996 during the '094 Prosecution.

pp.    All of the '094 Applicants were participants in the prosecution of the '872 Patent and were persons with a duty of candor in the '094 Prosecution who knew of facts sufficient to establish the materiality to the '094 Prosecution of the Thomsen Reference.

qq.    On information and belief, the Thomsen Reference was concealed from the '094 Examiner by the '094 Applicants, with knowledge of its materiality and, on information and belief, with the intent to deceive.

rr.    The '094 Applicants committed further acts of inequitable conduct during the '094 Prosecution by failing to disclose the applications, rejections, and references related to the '752 Patent.

ss.    The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992, about two months after the filing of the '872 Application, the parent application of the '094 Application.  Most of the '752 Applicants were also participants in the '094 Prosecution.  That is, prosecution attorney Mark Haynes, named inventor Brian Peterson, and named assignee 3Com Corporation were also participants in the '094 Prosecution.

tt.    The '752 PCT was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of one of the same named inventors (Brian Peterson) and the same assignee (3Com Corporation) as the '094 Application.  The '752 EP bears the same filing date as the '752 PCT and entered the region phase on March 6, 1995 based on the '752 PCT.

uu.    The '094 Examiner was different from the '752 Examiner and the examiner

for the '752 PCT and the '752 EP.

vv.     The disclosures of the '094 Application and '752 Application overlap to a significant extent.

ww.     At least the following '752 References reviewed by the '752 Examiner were material to, but not disclosed during, the '094 Prosecution: Yamamoto, Kozlik, Francisco, Chiu, and Fisher.

xx.     Yamamoto, Kozlik, Chui, and Fisher relate to the limitations of the '094 Application that call for a buffer memory.  Yamamoto, Kozlik and Chiu relate to the limitations of the '094 Patent that call for a network interface device. Kozlik, Chiu, and Fisher relate to the limitations of the '094 Patent that call for a frame transfer task. Francisco relates to the limitations of the '094 Application that call for a threshold value.

yy.     Three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited *again* to at least the assignee and prosecution counsel of the '752 Application in the December 23, 1993 '752 ISR.

zz.     Further, at least prosecution attorney Mark Haynes and assignee 3Com Corporation were aware of additional references in view of the '752 EP SSR dated April 28, 1995. The '752 EP SSR cited the '752 EP References, namely, Jen and the IBM Reference.

aaa.    Jen relates to limitations of the '094 Application that call for a buffer memory.  The IBM Reference relates to the limitation of the '094 Application that calls for threshold value that is dynamically programmable.

bbb.    The '752 References and the '752 EP References were material to the claims of the '094 Application because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ccc.    Most of the '752 Applicants were participants in the '459 Prosecution and

had a duty of candor before the USPTO in the '094 Prosecution.

ddd.     Some or all of the '752 Applicants knew of facts material to the '094 Prosecution: (i) the '752 Application, the '752 PCT, and the '752 EP, (ii) the '752 Rejections, the '752 ISR, and the '752 EP SSR, and (iii) the '752 References and the '752 EP References.  That is, they knew of the *similarity in disclosure* between the '094 and '752 disclosures, and they knew that the '752 Examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.  They also knew that the examiner for the '752 EP had found the '752 EP References relevant to the '752 EP.

eee.     However, neither the '752 Application, the '752 PCT, and the '752 EP nor the '752 Rejections, the '752 ISR, the '752 EP SSR, the '752 References, and the '752 EP References were disclosed in the '094 Prosecution.

fff.     The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, the '752 ISR, the '752 EP SSR, the '752 References, and the '752 EP References were therefore concealed from the '094 Examiner by the '752 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

ggg.     The '094 Applicants committed inequitable conduct during the '094 Prosecution by failing to disclose the applications, rejections, and references related to the '406 Patent.

hhh.     The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992, about two months after the filing of the '872 Application, the parent application of the '094 Application.  Most of the '406 Applicants were participants in the '094 Prosecution.  That is, prosecution attorney Mark Haynes, named inventors Brian Peterson and David R. Brown, and assignee 3Com Corporation were also participants in the '094 Prosecution.

iii.    The '406 PCT was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee (3Com Corporation) as the '094 Application.

jjj.    The '094 Examiner was different from the '406 Examiner and the examiner for the '406 PCT.

kkk.    The disclosures of the '094 Application and the '406 Application overlap to a significant extent.

lll.    All of the '406 References reviewed by the '406 Examiner were material to, but not disclosed during, the '094 Prosecution.

mmm.   Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Pleva, Vo, Potter, Kelley, Nguyen, and Banks relate to the limitations of the '094 Application that call for a buffer memory.  Benken relates to the limitations of the '094 Application that call for a frame transmission task.  Benken relates to the limitations of the '094 Application that call for a network interface device.  Benken relates to the limitations of the '094 Application that call for reading a descriptor for a frame.

nnn.    Five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '406 Application on January 11, 1994 in the '406 ISR.  These references were considered by the searching authority as relevant and/or invalidating.

ooo.    The '406 References were material to the '094 Prosecution because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ppp.    Most of the '406 Applicants also participated in the '094 Prosecution and therefore had a duty of candor before the USPTO in the '094 Prosecution.

That is, at least inventors Brian Petersen and David R. Brown, assignee 3Com Corporation, and prosecution attorney Mark Haynes had a duty of candor in the '094 Prosecution.

qqq.   Some or all of the '406 Applicants knew of facts material to the '094 Prosecution: (i) the '406 Application and the '406 PCT, (ii) the '406 Rejections and the '406 ISR, and (iii) the '406 References.  That is, they knew of the *similarity in disclosure* between the '094 Application and the '406 Application, and at least assignee 3Com Corporation and prosecution attorney Mark Haynes knew that the '406 Examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

rrr.   However, neither the '406 Application and the '406 PCT, nor the '406 Rejections, the '406 ISR, and the '406 References were disclosed in the '094 Prosecution.

sss.   The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the '094 Examiner by the '406 Applicants, with knowledge of their materiality of this information and, on information and belief, with intent to deceive.

ttt.   The '094 Applicants committed further acts of inequitable conduct during the '094 Prosecution by failing to disclose the applications, rejections, and references related to the '627 Patent.

uuu.   The '627 Application, which ultimately led to the '627 Patent was a continuation in-part application of the '406 Patent and was filed on Aug 27, 1993.  The '627 Applicants, namely, prosecution attorney Mark Haynes, named inventor Brian Peterson, and assignee 3Com Corporation were also participants in the '094 Prosecution.

vvv.   The '627 PCT claims priority to the '627 Application and was filed on August

25, 1994 by the same counsel (Mark Haynes) on behalf of one of the same named inventors (Brian Peterson) and the same assignee (3Com Corporation) as the '094 Application.

www.   The '094 Examiner was different from the '627 Examiner and the examiner for the '627 PCT.

xxx.   On December 19, 1994, and July 27, 1995, the '627 Examiner issued rejections ("the '627 Rejections") of the '627 Application.

yyy.   Prosecution attorney Mark Haynes cited ten of the '627 References (Kinnie, Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in the '627 IDS on February 4, 1994.  Therefore, on information and belief, at least Mr. Haynes had knowledge of these references by February 4, 1994.

zzz.   Moyer, Miki, Benken, and Brooks relate to the limitations of the '094 Application that call for a buffer memory.  Benken relates to the limitations of the '094 Application that call for a frame transmission task.  Benken relates to the limitations of the '094 Patent that call for reading a descriptor for a frame.

aaaa.   During the '094 Prosecution, seven of the '627 References (Vo, Benken, Moyer, Schwartz, Hirasawa, Robinson, and Banks) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '627 Application on February 13, 1995 in the '627 ISR. Vo, Benken, and Moyer were identified by the searching authority as of particular relevance.

bbbb.   The '627 References were material because some of the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  At the very least, a reasonable examiner would have wanted to review the '627 Rejection and the '627 References to determine their effect on the patentability of the '094 Application.

cccc.   All of the '627 Applicants also participated in the '094 Prosecution and

therefore had a duty of candor before the USPTO in the '094 Prosecution.  At least the prosecution attorney (Mark Haynes) and the assignee (3Com Corporation) were participants in the prosecution of the '627 PCT and were persons with a duty of candor in the '094 Prosecution.

dddd.   Some or all of the '627 Applicants new of facts material to the '094 Prosecution: (i) the co-pendency of the '627 Application and the '627 PCT, (ii) the December 19, 1994 Rejection, the '627 IDS, and the '627 ISR, and (iii) the '627 References.  That is, at least assignee 3Com Corporation and prosecution Mark Haynes knew that the '627 Examiner had found the '627 References relevant to the '627 Application and the '627 PCT, and had twice rejected the '627 Application.

eeee.   However, neither the '627 Application and the '627 PCT, nor the '627 Rejections, the '627 ISR, and the '627 References were disclosed in the '094 Prosecution.

ffff.   The '627 Application, the '627 PCT, the '627 Rejections, the '627 ISR, and the '627 References were therefore concealed from the '094 Examiner by the '094 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

gggg.   The '094 Applicants committed inequitable conduct during the '094 Prosecution by failing to disclose the applications, rejections, and references related to the '874 Patent.

hhhh.   The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993. The '874 Applicants, namely prosecution attorney Mark Haynes, named inventors Brian Peterson and W. Paul Sherer, and assignee 3Com Corporation, were also participants in the '094 Prosecution.

iiii.   The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel

(Mark Haynes) on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee (3Com Corporation) as the '874 Application and '094 Application.  The '874 EP bears the same filing date as the '874 PCT and entered the regional phase on July 13, 1995 based on the '874 PCT.

jjjj.   The '094 Examiner was different from the '874 Examiner and the examiner for the '874 PCT and the '874 EP.

kkkk.   The disclosures of the '094 Application and the '874 Application overlap to a significant extent.

llll.   In the Preliminary Amendment of March 3, 1995, the '094 Applicants added claims directed to a CSMA/CD network in the '094 Application.  During the '872 Prosecution, the '094 Applicants argued that the token ring network disclosed by Firoozmand *et al.* is distinguished from claims directed toward a CSMA/CD network.  Art related to a CSMA/CD network was therefore particularly material to the '094 Prosecution in view of the prosecution attorney's arguments for allowance of claims directed towards a CSMA/CD network.

mmmm.   All of the '874 References reviewed by the '874 Examiner were material to, but not disclosed during, the '094 Prosecution.  Applicants also cited two of the '874 References (the Chiang and Fujitsu References) to the '874 Examiner on January 5, 1996 in an Information Disclosure Statement ("the '874 IDS").  That is, at least by January 5, 1996, the '874 Applicants had knowledge of the Chiang and Fujitsu References and had knowledge of the materiality of these references to the '874 Prosecution.  The '094 Patent issued on March 24, 1998.

nnnn.   Davis, Akashi, Takayama, Yasui, Jibbe, Miyazaki, Carson, Chiang, and Etherstar relate to the limitations of the '094 Application that call for a buffer

memory.  Carson, the Chiang Reference, and the Fujitsu Reference relate to the limitations of the '094 Patent that call for a network interface device. The Chiang and Fujitsu References relate to the limitations of the '094 Patent that call for a frame transfer task and a CSMA/CD computer network.

oooo.   Three of the '874 References (Akashi, Takayama, and Fukasawa) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '874 Application in the '874 ISR on December 23, 1993.  These references were identified *again* by the searching authority as of particular relevance.

pppp.   The '874 References were material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

qqqq.   All of the '874 Applicants also participated in the '094 Prosecution and therefore were persons with a duty of candor before the USPTO in the '094 Prosecution.

rrrr.   Some or all of the '874 Applicants knew of facts material to the '094 Prosecution: (i) the '874 Application, the '874 PCT, and the '874 EP, (ii) the '874 IDS and the '874 ISR, and (iii) the '874 References.  That is, they knew of the *similarity in disclosure* between the '094 Application and the '874 Application, and they knew that the '874 Examiner had found the '874 References relevant to the '874 Application and the '874 PCT, and had twice rejected the '874 Application.

ssss.   However, neither the '874 Application, the '874 PCT, and the '874 EP, nor the '874 Rejections, the '874 ISR, the '874 IDS, and the '874 References were disclosed in the '094 Prosecution.

tttt.   The '874 Application, the '874 PCT, the '874 EP, the '874 Rejections, the '874 ISR, the '874 IDS and the '874 References were therefore concealed

from the '094 Examiner by the '094 Applicants, with knowledge of their

materiality and, on information and belief, with intent to deceive.

uuuu.   The '094 Applicants committed further acts of inequitable conduct during the

'094 Prosecution by additionally failing to disclose the application, rejection, and

references related to the '782 Patent.

vvvv.   The '782 Application, which ultimately led to the '782 Patent, was filed on

July 2, 1992. The '782 Applicants were also participants in the '094

Prosecution.  That is, named inventor Paul W. Sherer and the assignee 3Com

Corporation were also participants in the '094 Prosecution.

wwww.       The '094 Examiner was different from the '782 Examiner.

xxxx.   The disclosures of the '094 Application and the '782 Application relate to

substantially the same subject matter.  For example, the '782 Patent discloses

a host interface and a receive threshold and therefore relates to the limitations of

the '094 Application.

yyyy.   The '094 Applicants were aware of the '782 Rejections of January 14, 1994

and July 7, 1994.

zzzz.   During the '782 Prosecution, the '782 Examiner reviewed the '782 References.

aaaaa.  Giancarlo relates to the limitations of the '094 Patent that call for a buffer

memory, and transferring a data frame.  Bitner relates to the limitations of the

'094 Application that call for a threshold determination.  O'Brien relates to the

limitations of the '094 Application that call for a buffer memory.

bbbbb. The '782 References were material to the claims of the '094 Application

because the limitations of the claims of the '094 Application were disclosed

by, inherent in, or obvious in light of one or more of these references.

ccccc.  The '782 Applicants were participants in the '094 Prosecution and had a duty of

candor before the USPTO in the '094 Prosecution.  That is, named inventor

Paul W. Sherer and assignee 3Com Corporation had a duty of candor in the

'094 Prosecution.

ddddd. The '782 Applicants knew of facts material to the '094 Prosecution: (i) the '782 Application, (ii) the '782 Rejections, and (iii) the '782 References.  That is, all of the '782 Applicants knew of the *similarity in disclosure* between the '094 Application and the '782 Application, and they knew that the '782 Examiner had found the '782 References relevant to the '782 Application and had twice rejected the '782 Application.

eeeee.  However, neither the '782 Application, nor the '782 Rejections and the '782 References were disclosed in the '094 Prosecution.

fffff.   The '782 Application, the '782 Rejections, and the '782 References were therefore concealed from the '094 Examiner by the '782 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

ggggg. The existence of other patent applications that were co-pending with the '094 Patent, related to networking technology, and owned by 3Com Corporation or their subsidiary or associated corporation, including the applications' related foreign filings, and all material references cited in the applications' prosecution were not cited during the '094 Prosecution.  These other patent applications include the applications for U.S. Patents: 5,459,854; 5,392,399; 5,471,618; 5,483,640; 5,511,171; 5,459,840; 5,526,489; 5,386,470; 5,517,627; 5,387,902; 5,473,765; 5,423,002; 5,530,703; 5,541,911; 5,535,338; 5,781,726; 5,793,994; 5,805,827; 5,771,235; 5,828,835; 5,802,054; 5,784,582; 5,910,954; and 5,937,169.

hhhhh. Some or all of the persons with a duty of candor in the '094 Prosecution were participants in the prosecution of the other patent applications.  Some or all of the persons with a duty of candor in the '094 Prosecution knew that these other applications were material to the '094 Prosecution.

iiii.   On information and belief, these other applications and materials were concealed from the '094 Examiner by the '094 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive.

17.   Acer Defendants allege that the '313 Patent is unenforceable by reason of inequitable conduct during the prosecution of the application that led to the issuance of the '313 Patent ("the '313 Prosecution") committed by the inventors, their counsel, 3Com Corporation, and/or others involved in the '313 Prosecution as outlined below:

a.   The '313 Application, which ultimately led to the '313 Patent, was filed on the same date as the '459 and '872 Applications (July 28, 1992) on behalf of named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee 3Com Corporation.  Mark Haynes acted as prosecution counsel from the filing of the '313 Application to the issuance of the '313 Patent.  The '313 Patent issued on March 29, 1994.

b.   The '313 Applicants committed inequitable conduct during the '313 Prosecution by failing to disclose the applications, rejections, and references related to another of the Patents-in-Suit, the '459 Patent.

c.   The '459 Application, which ultimately led to the '459 Patent, was filed on the same date as the '313 Application.  The '459 Applicants, namely, prosecution attorney Mark Haynes, named inventors Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee 3Com Corporation were also participants in the '313 Prosecution.

d.   PCT Application PCT/US1993/007056 ("the '459 PCT") claims priority to the '459 Application and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of all of the same named inventors (Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo) and the same named assignee (3Com Corporation) as the '313 Application.  The '459 EP bears the same filing date as the '459 PCT and entered the regional phase on February

25, 1994 based on the '459 PCT.

e.  Although the '313 Examiner was the same as the '459 Examiner Application, the Federal Circuit has held that the duty to cross-cite material information between related applications still holds in such situations.  *See, e.g.*, *McKesson Info. Solutions, Inc. v Bridge Med., Inc.*, 487 F.3d 897, 925 (Fed. Cir. 2007).

f.  The disclosures of the '313 Application and the '459 Application overlap to a significant extent.  The '459 Patent states "[t]he present application is related to copending U.S. patent application entitled NETWORK INTERFACE WITH HOST INDEPENDENT BUFFER MANAGEMENT, Ser. No. 07/921,519, filed Jul. 28, 1992, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '459 Patent states that it is related to the co-pending '313 Application, but no mention of the '459 Application is made in the '313 Application.  Thus, upon information and belief, the '459 Applicants had knowledge of the important relationship between the '313 and '459 Applications.

g.  All of the '459 References reviewed by the '459 Examiner and cited to the '313 Applicants in the October 14, 1993 Notice of Allowability were material to, but not disclosed during, the '313 Prosecution.

h.  All of the '459 References relate to the limitations of the '313 Application that call for a buffer memory.  At least the Gulick 1 reference relates to the limitations of the '313 Application that call for a network interface means and a host interface means.

i.  While the '313 Prosecution was still pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited *again* to at least the assignee (3Com Corporation) and prosecution attorney (Mark Haynes) of the '459 Application on November 15, 1993 in the '459 ISR.

j.  The '459 References were material to the claims of the '313 Application

because many, if not all, the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

k.     All of the '459 Applicants were participants in the '313 Prosecution and had a duty of candor in the '313 Prosecution.  That is, at least prosecution attorney Mark Haynes, named inventors Brian Petersen, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee 3Com Corporation of the '459 Prosecution had a duty of candor in the '313 Prosecution.

l.     Some or all of the '459 Applicants knew of facts material to the '313 Prosecution: (i) the co-pendency of the '459 Application, the '459 PCT, and the '459 EP, (ii) the '459 ISR, and (iii) the '459 References.  That is, they knew of the *similarity in disclosure* between the disclosures of the '459 Application and the '313 Application and they knew that the '459 Examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

m.     However, neither the co-pendency of the '459 Application and the '459 PCT and the '459 EP, nor the '459 ISR and the '459 References were disclosed in the '313 Prosecution.

n.     The '459 Application, the '459 PCT, the '459 EP, and the '459 References were therefore concealed from the '313 Examiner by the '459 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

o.     The '313 Applicants committed inequitable conduct during the '313 Prosecution by failing to disclose the applications, rejections, and references related to the '872 Patent.

p.     The '872 Application, which ultimately led to the '872 Patent, was filed on the same date by the same counsel (Mark Haynes) on behalf of two of the

same named inventors (Brian Peterson and David Brown) and the same assignee (3Com Corporation) as the '313 Application.

q.     Ultimately, a third of the named inventors in the '313 Application (W. Paul Sherer) was added as a named inventor on what became the '872 Patent.

r.     The '872 PCT claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and David Brown) and the same assignee (3Com Corporation) as the '313 Application.  The '872 EP bears the same filing date as the '872 PCT and entered into the region phase on February 25, 1994 based on the '872 PCT.

s.     The '313 Examiner was different from the '872 Examiner and the examiner for the '872 PCT and '872 EP.

t.     The disclosures of the '313 Application and the '872 Application overlap to a significant extent.

u.     The '872 Patent states "[t]he present application is related to copending U.S. patent application entitled NETWORK INTERFACE WITH HOST INDEPENDENT BUFFER MANAGEMENT, application Ser. No. 07/921,519, filed 28 Jul. 1992, now U.S. Pat. No. 5,299,313, which was owned at the time of invention and is currently owned by the same assignee."  That is, the '872 Patent states that it is related to the co-pending '313 Application, but no mention of the '872 Application is made in the '313 Application.  Thus, upon information and belief, the '872 Applicants had knowledge of the important relationship between the '313 and '872 Applications.

v.     In his Notice of Allowability of September 21, 1993, the '313 Examiner stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, inter alia,
> the network interface controller for a host

> system/network transceiver in which a host system
> includes a host address space, and a buffer memory is
> located outside of the address space and further in which
> the interface manages data transfer between the host
> address space and the buffer memory in an operational
> manner transparent to the host system.

w.   In his consideration of the Notice of Allowability, the '313 Examiner cited only the Benken reference.

x.   On October 26, 1993, prior to the issuance of the '313 Patent, the '872 Examiner mailed an Office Action to 3Com's prosecution counsel, Mark A. Haynes. In the Office Action, the Examiner relied on Firoozmand *et al.* as a basis for a § 102(a) anticipation rejection.  The Examiner also relied on various combinations of the Firoozmand *et al.*, Firoozmand, Heath, Koch, and Tarrab as bases for obviousness-type rejections of certain claims pending in the '872 Application.  In a Notice of References Cited, included with the October 26, 1993 Office Action, the Examiner made of record the Bentley reference.  In an Office Action dated July 6, 1994, the Examiner for the '872 Application relied on Bentley as a basis for an obviousness-type rejection of certain pending claims.

y.   The '872 References are material to the '313 Prosecution because the '872 References disclose, singly or in combination, most or all of the elements of the claims of the '313 Application listed by the '313 Examiner Notice of Allowance.  At least the Firoozmand *et al.* and Firoozmand references fully anticipate and/or render obvious a "network interface controller," a "host system [that] includes a host address space," a "buffer memory [] located outside of the address space," and "the interface manages data transfer between the host address space and the buffer memory in an operational manner transparent to the host system," all of which the '313 Examiner listed as novel in the Notice of Allowance in the '313 Application.  The '872

References were later deemed sufficiently material to include in an Information Disclosure Statement (IDS) during the '094 Prosecution (one of the Patents-in-Suit) on August 18, 1995.

z.    The '872 References are not cumulative to the prior art made of record during the '313 Prosecution. On information and belief, there is a substantial likelihood that a reasonable examiner would have considered those references important in deciding whether to allow the '313 Patent to issue.

aa.   David R. Brown and Brian Petersen, named inventors on the '313 Patent and the '872 Patent, were aware of at least the Firoozmand *et al.* patent prior to the issuance of the '313 Patent.  By February 15, 1994, both Mr. Brown and Mr. Petersen had executed a declaration in which they declared as follows:

> We have been informed that claims 1, 3, 6 and 11 in the above identified U.S. Patent Application have been rejected under 35 U.S.C. §102(a) as being anticipated by Firoozmand, *et al.* U.S. Patent No. 5,043,981 which was issued August 27, 1991 and filed May 29, 1990 (the effective date of the reference").

('872 Application, § 1.131 Declaration, p. 1).

bb.   During the '313 Prosecution, four of the '872 References (Firoozmand, Koch, Heath, and Tarrab) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '872 Application one December 7, 1993 in the '872 ISR.  These references were identified by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

cc.   All of the '872 Applicants also participated in the '313 Prosecution and were persons with a duty of candor before the USPTO in the '313 Prosecution. At least the prosecuting attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecutions of the '872 PCT and the

'872 EP and were persons with a duty of candor in the '313 Prosecution.

dd.    The '872 Applicants knew of facts material to the '313 Prosecution: (i) the co-pendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 Rejection, and (iii) the '872 References.  The '872 Applicants knew that the '872 Examiner had found these references to disclose the features of the combination which they had claimed to be novel in the '313 Application and which the '313 Examiner itemized in his Notice of Allowance.

ee.    Additionally, and for the same reasons, at least assignee 3Com Corporation and prosecution attorney Mark Haynes were aware of the materiality of the '872 ISR to the '313 Prosecution.

ff.    None of (i) the co-pendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 '872 Rejection, and (iii) the '872 References were disclosed in the '313 Prosecution.

gg.    The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 '872 Rejection, and the '872 References were therefore concealed from the '313 Examiner by the '872 Applicants, with knowledge of their materiality and, on information and belief, with an intent to deceive.

hh.    The '313 Applicants committed further acts of inequitable conduct during the '313 Prosecution by additionally failing to disclose the applications, rejections, and references related to the '752 Patent.

ii.    The '752 Application, which ultimately led to the '752 Patent, was filed on September 18, 1992, about two months after the filing of the '313 Application.  The '752 Applicants, namely prosecution attorney Mark Haynes, named inventors Brian Peterson and Lai-Chin Lo, and assignee 3Com Corporation were also participants in the '313 Prosecution.

jj.    The '752 PCT claims priority to the '752 Application (having substantially

the same disclosure) and was filed on September 17, 1993 by the same counsel
(Mark Haynes) on behalf of two of the same named inventors (Brian Peterson
and Lai-Chin Lo) and the same assignee (3Com Corporation) as the '313
Application.

kk.     The '313 Examiner was different from the '752 Examiner and the examiner
        for the '752 PCT.

ll.     The disclosures of the '313 Application and the '752 Application overlap
        to a significant extent.

mm.     On January 26, 1993 and July 15, 1993, before the '313 Examiner issued
        his Notice of Allowability in the '313 Application, the '752 Examiner issued the
        '752 Rejections on January 26, 1993 and on July 15, 1993.

nn.     All of the '752 References reviewed by the '752 Examiner were material to
        but not disclosed during, the '313 Prosecution.

oo.     The '752 References relate to a host system, a network interface means,
        and a buffer memory.  Fischer, in particular, relates to a buffer memory
        outside of the host address space and sharing the host address space with the
        host.

pp.     During the '313 Prosecution, three of the '752 References (Yamamoto,
        Kozlik, and Fischer) were cited *again* to at least the assignee and
        prosecution attorney of the '752 Application on December 23, 1993 in the
        '752 ISR.

qq.     The '752 References were material to the claims of the '752 Application
        because the limitations of the claims of the '313 Application were disclosed
        by, inherent in, or obvious in light of one or more of these references.

rr.     All of the '752 Applicants were participants in the '313 Prosecution and
        had a duty of candor before the USPTO in the '313 Prosecution.

ss.     Some or all of the '752 Applicants knew of facts material to the '313

73

Prosecution: (i) the co-pendency of the '752 Application and '752 PCT, (ii) the '752 Rejections and the '752 ISR, and (iii) the '752 References. That is, they knew of the *similarity in disclosure* between the '313 Application and '752 Application, and they knew that the '752 Examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

tt.     However, neither the co-pendency of the '752 Application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '313 Prosecution.

uu.     The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the '313 Examiner by the '752 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

vv.     The '313 Applicants committed further acts of inequitable conduct during the '313 Prosecution by failing to disclose the applications, rejections, and references related to the '406 Patent.

ww.     The '406 Application, which ultimately led to the '406 Patent, was filed on September 18, 1992, about two months after the filing of the '313, '459, and '872 Applications.  The '406 Applicants, namely, prosecution attorney Mark Haynes, named inventors Brian Peterson, Lai-Chin Lo, and David R. Brown, and assignee 3Com Corporation were also participants in the '313 Prosecution.

xx.     The '406 PCT claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee (3Com Corporation) as the '313 and '406 Applications.

yy.     The '313 Examiner was different from the '406 Examiner and the examiner for the '406 PCT.

zz.     The disclosures of the '313 Application and the '406 Application overlap to a significant extent.

aaa.    The '406 Application states that it is related to the '313 Application, but no mention of the '406 Application is made in the '313 Application.

bbb.    On November 11, 1993 the '406 Examiner issued a rejection of the '406 Application ("the '406 Rejection").

ccc.    During prosecution of the '406 Patent, the '406 References were cited against the '406 Application.

ddd.    These references relate to the limitations of the '313 Application. Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Pleva, Vo, Potter, Kelley, Nguyen, and Banks relate to the limitations of the '313 Patent that call for a buffer memory.  Benken relates to the limitations of the '313 Patent that call for transferring a data frame.  Benken relates to the limitations of the '313 Patent that call for a network interface logic.  Benken relates to the limitations of the '313 Patent that call for transfer descriptors.

eee.    All of the '406 References reviewed by the '406 Examiner were therefore material to the '313 Application, but none of them were disclosed during the '313 Prosecution.

fff.    While the '313 Prosecution was ongoing, five of the '406 References (Vo, Benken, Kinoshita, Chisholm, and Weber) were cited *again* to at least the assignee (3Com Corporation) and prosecution counsel (Mark Haynes) of the '406 Application on January 11, 1994 in the '406 ISR.  These references were considered by the searching authority as relevant and/or invalidating.

ggg.    The '406 References were material to the '313 Application because the

75

features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

hhh.  All of the '406 Applicants also participated in the '313 Prosecution and therefore had a duty of candor before the USPTO in the '313 Prosecution.  At least prosecution attorney (Mark Haynes) and assignee (3Com Corporation) were participants in the prosecution of the '406 PCT and were persons with a duty of candor in the '313 Prosecution.

iii.  Some or all of the '406 Applicants knew of facts material to the '313 Prosecution: (i) the co-pendency of the '406 Application and '406 PCT, (ii) the '406 Rejection and the '406 ISR, and (iii) the '406 References. That is, all of the '406 Applicants knew of the *similarity in disclosure* between the '313 Application and the '406 Application, and at least assignee 3Com Corporation and prosecution attorney Mark Haynes knew that the '406 Examiner had found the '406 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

jjj.  However, the co-pendency of the '406 Application and the '406 PCT, the '406 Rejection, the '406 ISR, and the '406 References were not disclosed in the '313 Prosecution.

kkk.  The '406 Application, the '406 PCT, the '406 Rejections, and the '406 References were therefore concealed from the '313 Examiner by the '406 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

lll.  The '313 Applicants committed further inequitable conduct during the '313 Prosecution by failing to disclose the applications, rejections, and references related to the '874 Patent.

mmm.  The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993.  The '874 Applicants, namely prosecution attorney

Mark Haynes, named inventors Brian Peterson and W. Paul Sherer, and assignee 3Com Corporation were also participants in the '313 Prosecution.

nnn.   The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel (Mark Haynes) on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee (3Com Corporation) as the '313 Application.

ooo.   The '313 Examiner was different from the '874 Examiner and the examiner for the '874 PCT.

ppp.   The disclosures of '313 Application and the '874 Application overlap to a significant extent.

qqq.   All of the '874 Applicants also participated in the '313 Prosecution and therefore were persons with a duty of candor before the USPTO in the '313 Prosecution.  At least the prosecution attorney (Mark Haynes) and the assignee (3Com Corporation) were participants in the prosecution of the '874 PCT and were persons with a duty of candor in the '313 Prosecution.

rrr.   The '874 Applicants, who all participated in the '313 Prosecution, knew of facts material to the '313 Prosecution: the co-pendency of the '874 Application and the '874 PCT.  That is, they knew of the *similarity in disclosure* between the '313 and '874 Applications.

sss.   However, neither the co-pendency of the '874 Application nor of the '874 PCT were disclosed in the '313 Prosecution.

ttt.   The co-pendency of the '874 Application and the '874 PCT were therefore concealed from the '313 Examiner by the '874 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

uuu.   The '313 Applicants committed further acts of inequitable conduct during

77

the '313 Prosecution by failing to disclose the applications, rejections, and references related to the '627 Patent.

vvv.   The '627 Application, which ultimately led to the '627 Patent, was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993.  The '627 Applicants, namely, prosecution attorney Mark Haynes, named inventor Brian Peterson, and assignee 3Com Corporation were also participants in the '313 Prosecution.

www.   The '313 Examiner was different from the '627 Examiner.

xxx.   The '406 Application, of which the '627 Application was a continuation-in-part, states that it is related to the copending '313 Application.  But no mention of the '406 or the '627 Applications are made in the '313 Application.

yyy.   During the '313 Prosecution and before the '313 Patent issued, on February 7, 1994, prosecution attorney Mark Haynes filed the '627 IDS citing the '627 IDS References.  One of the '627 IDS References was the Benken Reference, which was cited earlier in the September 21, 1993 Notice of Allowance for the '313 Application.  Because Mr. Haynes cited the Benken Reference in the '627 Application in the '627 IDS, Mr. Haynes knew of the related nature of the '313 Application and the '627 Application.  Yet Mr. Haynes and the other '627 Applicants failed to disclose the other '627 IDS References to the '313 Examiner.

zzz.   The '627 References were material because some or all of the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.  At the very least, a reasonable examiner would have wanted to review the '627 IDS References to determine their effect on the patentability of the '313 Application.

aaaa.   All of the '627 Applicants also participated in the '313 Prosecution and therefore had a duty of candor before the USPTO in the '313 Prosecution.

78

bbbb.  Some or all of the '627 Applicants new of facts material to the '313 Prosecution: (i) the co-pendency of the '627 Application, and (ii) the '627 IDS and the '627 IDS References.  That is, they knew of the '627 IDS References and knew that these references were material to the '627 Application.  They also knew that the '627 IDS References were material to the '313 Prosecution.

cccc.  However, neither the co-pendency of the '627 Application, nor the '627 IDS and the '627 IDS References were disclosed in the '313 Prosecution.

dddd.  The '627 Application, the '627 IDS, and the '627 IDS References were therefore concealed from the '313 Examiner by the '627 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

eeee.  The '313 Applicants committed further acts of inequitable conduct during the '313 Prosecution by additionally failing to disclose the application, rejection, and reference related to the '782 Patent.

ffff.  The '782 Application, which ultimately led to the '782 Patent, was filed on July 2, 1992, within one month of the filing of the '313 Application. The '782 Applicants were also participants in the '313 Prosecution. That is, named inventor Paul W. Sherer and the assignee 3Com Corporation were also participants in the '313 Prosecution.

gggg.  The '313 Examiner was different from the '782 Examiner.

hhhh.  The disclosures of the '313 Application and the '782 Application relate to substantially the same subject matter.  For example, the '782 Patent discloses a buffer memory outside of the host address space and a host interface means for managing data transfers between the host address space and the buffer memory in operations transparent to the host system.  This directly relates to the alleged invention claimed in the '313 Patent.

iiii.    On January 14, 1994, before the '313 Patent issued, the '782 Examiner issued the '782 Rejection.

jjjj.    During the '782 Prosecution and in the '782 Rejection, the '782 Examiner cited the Giancarlo Reference.

kkkk.    Giancarlo relates to the limitations of the '313 Patent that call for a buffer memory and transferring data.

llll.    The Giancarlo Reference was material to the claims of the '313 Application because the limitations of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of the Giancarlo Reference.

mmmm.    The '782 Applicants were participants in the '313 Prosecution and had a duty of candor before the USPTO in the '313 Prosecution.  That is, named inventor Paul W. Sherer and assignee 3Com Corporation had a duty of candor in the '313 Prosecution.

nnnn.    The '782 Applicants knew of facts material to the '313 Prosecution: (i) the copendency of the '782 Application, (ii) the '782 Rejection, and (iii) the Giancarlo Reference.  That is, all of the '782 Applicants knew of the *similarity in disclosure* between the '313 Application and the '782 Application, and they knew that the '782 Examiner had found the Giancarlo Reference relevant to the '782 Application and had rejected the '782 Application.

oooo.    However, neither the copendency of the '782 Application, nor the '782 Rejection and the Giancarlo Reference were disclosed in the '313 Prosecution.

pppp.    The '782 Application, the '782 Rejection, and the Giancarlo Reference were therefore concealed from the '313 Examiner by the '782 Applicants, with knowledge of their materiality and, on information and belief, with intent to deceive.

qqqq.    The existence of other patent applications that were co-pending with the

'313 Patent, related to networking technology, and owned by 3Com

Corporation or their subsidiary or associated corporation, including the

applications' related foreign filings, and all material references cited in the

applications' prosecution were not cited during the '313 Prosecution.

These other patent applications include the applications for U.S. Patents:

5,459,854; 5,392,399; 5,471,618; 5,483,640; 5,511,171; 5,459,840;

5,526,489; 5,386,470; 5,387,902; 5,473,765, and 5,423,002.

rrrr.    Some or all of the persons with a duty of candor in the '313 Prosecution,

were participants in the prosecution of these other patent applications.

Some or all of the persons with a duty of candor in the '313 Prosecution knew

that these other applications were material to the '313 Prosecution.

ssss.    On information and belief, these other applications and materials were

concealed from the '313 Examiner by the '313 Applicants, with

knowledge of their materiality and, on information and belief, with intent to

deceive.

### TWELFTH DEFENSE:
### LICENSE AND PATENT EXHAUSTION

18.    Some or all of Acer Defendants' accused products are licensed under the Patents-in-Suit and/or subject to the doctrines of patent exhaustion and implied license.

### THIRTEENTH DEFENSE:
### FAILURE TO MITIGATE

19.    Plaintiff's claims are barred, in whole or in part, because it has failed to mitigate its damages, if any.

### FOURTEENTH DEFENSE:
### UNAVAILABILITY OF INJUNCTIVE RELIEF

20.    Claims by Plaintiff for injunctive relief are barred as a matter of law because Plaintiff has an adequate remedy at law for any claims included in the Complaint that Plaintiff may ultimately prevail on.

### FIFTEENTH DEFENSE:
### PLAINTIFF CANNOT PROVE EXCEPTIONAL CASE

21.     Plaintiff cannot prove that this is an exceptional case justifying award of attorney fees against Acer Defendants pursuant to 35 U.S.C. § 285.

### RESERVATION OF ADDITIONAL DEFENSES

Acer Defendants' investigation of their defenses is continuing, and Acer Defendants expressly reserve the right to allege and assert any additional defenses under Rule 8 of the Federal Rules of Civil Procedure, the patent laws of the United States and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case. Acer Defendants also expressly incorporate by reference herein all defenses pled by defendants in this action in their respective answers to the Complaint.

### ACER INC., ACER AMERICA CORP., AND GATEWAY INC.'S COUNTERCLAIMS

Counterclaimants Acer Inc., Acer America Corp. and Gateway, Inc. ("Counterclaimants") complains of counter-defendant U.S. Ethernet Innovations, LLC ("USEI") and alleges as follows:

### THE PARTIES

1.     Acer Inc. is a Taiwanese corporation, with a principal place of business at 8F, 88, Section 1, Hsin Tai Wu Road, Hsichih, Taipei 221, Taiwan. Acer America Corporation is a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of California, with a principal place of business at 333 West San Carlos Street, Suite 1500, San Jose, California 95110. Gateway, Inc. is also a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of Delaware, with a principal place of business at 7565 Irvine Center Drive, Irvine, California 92618. Acer Inc., Acer America Corporation, and Gateway, Inc. will be referred to herein individually and collectively as the "Counterclaimants."

2.     USEI has alleged that it is a Texas limited liability corporation having a principal

place of business in Tyler, Texas.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and the patent laws, 35 U.S.C. § 101 et seq.  This Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. §§ 1331 and 1338(a).  This Court has further subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1367(a).

4.      This court has personal jurisdiction over USEI as USEI filed suit against Counterclaimants in this district and has purposefully availed itself of the protection of the courts of this District.

5.      While Counterclaimants do not concede that venue is proper in this district with respect to the action brought by USEI, should that action remain in this district, venue on these counterclaims is proper in this district under 28 U.S.C. § 1391(b) because USEI alleges that its principal place of business is located in this district.

## FIRST COUNTERCLAIM
## DECLARATORY JUDGMENT OF NO INFRINGEMENT

6.      There is an actual and live controversy between Counterclaimants and USEI as to the alleged infringement U.S. Patent Nos. 5,307,459 (the "'459 Patent"); 5,434,872 (the "'872 Patent"); 5,732,094 (the "'094 Patent"); and 5,299,313 (the "'313 Patent"), which can be redressed by a judgment of this Court.

7.      Counterclaimants are not infringing, have not infringed either by direct infringement, contributory infringement, or induced infringement, any claim of the '459, '872, '094 or '313 Patents.

8.      Counterclaimants have no intent to cause others to infringe any claim of the '459, '872, '094 or '313 Patents by using any of Counterclaimants products or methods.

9.      Each of Counterclaimants' products or methods accused in this action is capable of substantial uses that do not infringe any claim of the '459, '872, '094 or '313 Patents.

## SECOND COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY

10.     There is an actual and live controversy between Counterclaimants and USEI as to validity of the '459, '872, '094 and '313 Patents which can be redressed by a judgment of this Court.

11.     The claims of the '459, '872, '094 and '313 Patents are invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD COUNTERCLAIM
## DECLARATORY JUDGMENT OF UNENFORCEABILITY

12.     There is an actual and live controversy between Counterclaimants and USEI as to the enforceability of the '459, '872, '094 and '313 Patents which can be redressed by a judgment of this Court.

13.     Counterclaimants incorporate by reference their Ninth, Tenth and Eleventh Defenses to USEI's Complaint as if fully set forth herein.

14.     The claims of the '459, '872, '094 and '313 Patents are unenforceable in whole or in part by reasons of inequitable conduct, laches, waiver, estoppel, and/or unclean hands.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants respectfully request that this Court enter judgment in its favor that:

A.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,307,459;

B.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,434,872;

C.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,732,094;

D.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,299,313;

E.     U.S. Patent No. 5,307,459 is invalid;

F.      U.S. Patent No. 5,434,872 is invalid;

G.      U.S. Patent No. 5,732,094 is invalid;

H.      U.S. Patent No. 5,299,313 is invalid;

I.      U.S. Patent No. 5,307,459 is unenforceable;

J.      U.S. Patent No. 5,434,872 is unenforceable;

K.      U.S. Patent No. 5,732,094 is unenforceable;

L.      U.S. Patent No. 5,299,313 is unenforceable;

M.      USEI's claims are dismissed in their entirety with prejudice;

N.      USEI take nothing by its Complaint against Acer Inc, Acer America Corp., and Gateway, Inc.;

O.      This is an exceptional case under 35 U.S.C. § 285 and Counterclaimants are entitled to recover its reasonable attorneys' fees and pre-judgment interest thereon; and

P.      Counterclaimants are entitled to recover its costs, and such other additional relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Counterclaimants hereby demand a jury trial on all issues so triable.


Dated:  May 19, 2010                        Respectfully submitted,



                                    By: /s/ Steven S. Baik
                                        Steven S. Baik
                                        James H. Lin
                                        Orrick Herrington & Sutcliffe
                                        1000 Marsh Road
                                        Menlo Park, CA 94025
                                        Telephone: (650) 614-7400
                                        Facsimile: (650) 614-7401
                                        sbaik@orrick.com
                                        jlin@orrick.com

Eric H. Findlay
State Bar No. 00789886
FINDLAY CRAFT, LLP
6760 Old Jacksonville Highway
Suite 101
Tyler, TX 75703
Phone: 903-534-1100
Fax: 903-534-1137
efindlay@findlaycraft.com

Attorneys for Acer Defendants
ACER INC., ACER AMERICA
CORPORATION, and GATEWAY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2010, I electronically filed the foregoing,

DEFENDANTS ACER INC., ACER AMERICA CORP., AND GATEWAY, INC.'S (1)

ANSWER TO U.S. ETHERNET INNOVATIONS, LLC'S FIRST AMENDED COMPLAINT

FOR PATENT INFRINGEMENT AND (2) COUNTERCLAIMS, with the Clerk of Court using

the CM/ECF system, which will send notification of such filing via electronic mail to all counsel

of record.

        /s/   Steven S. Baik         
        Steven S. Baik

OHS West:260914573.1

87