**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS, LLC,  ) | |
| )  | |
| Plaintiff,  ) | |
| )  | |
| v.  ) | Case No. 6:09-cv-448-JDL |
| )  | |
| ACER INC.; ACER AMERICA  ) | JURY TRIAL DEMANDED |
| CORPORATION; APPLE INC.; ASUS  ) | |
| COMPUTER INTERNATIONAL; ASUSTEK  ) | |
| COMPUTER INC.; DELL INC.; FUJITSU  ) | |
| LTD.; FUJITSU AMERICA INC.;  ) | |
| GATEWAY, INC.; HEWLETT PACKARD  ) | |
| CO.; SONY CORPORATION; SONY  ) | |
| CORPORATION OF AMERICA; SONY  ) | |
| ELECTRONICS INC.; TOSHIBA  ) | |
| CORPORATION; TOSHIBA AMERICA,  ) | |
| INC.; AND TOSHIBA AMERICA  ) | |
| INFORMATION SYSTEMS, INC.;  ) | |
| )  | |
| Defendants.  ) | |
| ) | |

**DEFENDANTS ACER INC., ACER AMERICA CORP., AND GATEWAY, INC.'S (1)
FIRST AMENDED ANSWER TO U.S. ETHERNET INNOVATIONS, LLC'S FIRST
AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND (2)
COUNTERCLAIMS**

Defendants Acer Inc. ("Acer"), Acer America Corp. ("Acer America") and Gateway, Inc.

("Gateway") (collectively, "Acer Defendants") answer the allegations made in U.S. Ethernet

Innovations, LLC's ("Plaintiff" or "USEI") First Amended Complaint for Patent Infringement

(the "Complaint") as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Acer Defendants are without knowledge or information sufficient to form a belief

as to the truth of the allegation that USEI owns United States Patent Nos. 5,307,459 (the

"'459 Patent"); 5,434,872 (the "'872 Patent"); 5,732,094 (the "'094 Patent"); and 5,299,313 (the "'313 Patent") (collectively, the "Patents-in-Suit"), and for that reason deny the allegation.

2.      To the extent Paragraph 2 is directed to Acer Defendants, they deny the allegations of this paragraph.  To the extent Paragraph 2 directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom this allegation is directed, and no further response from Acer Defendants is required.

3.      To the extent Paragraph 3 is directed to Acer Defendants, they deny the allegations of this paragraph.  To the extent Paragraph 3 directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom this allegation is directed, and no further response from Acer Defendants is required.

## PARTIES

4.      Acer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4, and on that basis deny them.

5.      To the extent directed to Acer Defendants, Acer Defendants admit the allegations of Paragraph 5.

6.      Paragraph 6 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

7.      Paragraph 7 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

8.      Paragraph 8 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

9.      Paragraph 9 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

10.     Paragraph 10 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

11.     Paragraph 11 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

12.     Paragraph 12 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## JURISDICTION AND VENUE

13.     Acer Defendants admit that all of the claims asserted in the Complaint arise under 35 U.S.C. § 101, *et seq.*

14.     If USEI has standing to assert the patents in its own name, Acer Defendants admit this Court would have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

15.     Acer Defendants deny that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391 (b)-(c) because Acer Defendants deny that the Eastern District of Texas is the most convenient venue.

16.     Acer Defendants admit that it has an established distribution channel for its products in this forum and that it regularly conducts business in and derives revenue from the sale of goods and services to individuals in Texas and this judicial district.  Acer Defendants deny all remaining allegations in Paragraph 16 only to the extent that they are directed to Acer Defendants.  To the extent allegations in Paragraph 16 are directed to defendants other than Acer Defendants, Acer Defendants defer to the defendant(s) to whom the allegations are directed.

## PATENTS-IN-SUIT

17.     On information and belief, Acer Defendants admit that the '459 Patent entitled "Network Adapter with Host Indication Optimization" issued on April 26, 1994 and a copy is attached as Exhibit A to USEI's Complaint.  Acer Defendants admit that on the face of the

'459 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 17 of the Complaint.

18.     On information and belief, Acer Defendants admit that the '872 Patent entitled "Apparatus for Automatic Initiation of Data Transmission" issued on July 18, 1995 and a copy is attached as Exhibit B to USEI's Complaint.  Acer Defendants admit that on the face of the '872 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer and David R. Brown are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 18 of the Complaint.

19.     On information and belief, Acer Defendants admit that the '094 Patent entitled "Method for Automatic Initiation of Data Transmission" issued on March 24, 1998 and a copy is attached as Exhibit C to USEI's Complaint.  Acer Defendants admit that on the face of the '094 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer and David R. Brown are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 19 of the Complaint.

20.     On information and belief, Acer Defendants admit that the '313 Patent entitled "Network Interface with Host Independent Buffer Management" issued on March 29, 1994 and a copy is attached as Exhibit D to USEI's Complaint.  Acer Defendants admit that on the face of the '313 Patent, 3Com Corporation is listed as the assignee and that Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo are listed as inventors.  Acer Defendants deny all remaining allegations in Paragraph 20 of the Complaint.

21.     Acer Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that USEI is the sole owner of the entire right, title, and interest in the '459, '872, '094 and the '313 Patents by virtue of assignment and for that reason deny the allegation.  Acer Defendants deny all remaining allegations in Paragraph 21 of the Complaint.

## ACCUSED PRODUCTS

22.     Acer Defendants deny the allegations of Paragraph 22 of the Complaint.

23.     Paragraph 23 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

24.     Paragraph 24 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

25.     Paragraph 25 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

26.     Paragraph 26 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

27.     Paragraph 27 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

28.     Paragraph 28 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

29.     Paragraph 29 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT I
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,307,459

30.     Acer Defendants restates and incorporates by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

31.     Acer Defendants deny the allegations in Paragraph 35 of the Complaint.

32.     Paragraph 32 is not directed to Acer Defendants.  Acer Defendants thus

defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

33.     Paragraph 33 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

34.     Paragraph 34 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

35.     Paragraph 35 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

36.     Paragraph 36 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

37.     Paragraph 37 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

38.     Paragraph 38 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT II
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,434,872

39.     Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

40.     Acer Defendants deny the allegations in Paragraph 40 of the Complaint.

41.     Paragraph 41 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of

Acer Defendants.

42.     Paragraph 42 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

43.     Paragraph 43 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

44.     Paragraph 44 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

45.     Paragraph 45 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

46.     Paragraph 46 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

47.     Paragraph 47 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT III
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,732,094

48.     Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

49.     Acer Defendants deny the allegations in Paragraph 49 of the Complaint.

50.     Paragraph 50 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

51.     Paragraph 51 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

52.     Paragraph 52 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

53.     Paragraph 53 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

54.     Paragraph 54 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

55.     Paragraph 55 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

56.     Paragraph 56 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## COUNT IV
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,299,313

57.     Acer Defendants restate and incorporate by reference its responses to the allegations in Paragraphs 1-29 of the Complaint.

58.     Acer Defendants deny the allegations in Paragraph 58 of the complaint.

59.     Paragraph 59 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

60.     Paragraph 60 is not directed to Acer Defendants.  Acer Defendants thus defer to the

defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

61.     Paragraph 61 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

62.     Paragraph 62 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

63.     Paragraph 63 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

64.     Paragraph 64 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

65.     Paragraph 65 is not directed to Acer Defendants.  Acer Defendants thus defer to the defendant(s) to whom this allegation is directed, and no further response is required of Acer Defendants.

## DENIAL OF USEI'S PRAYER FOR RELIEF

To the extent the Prayer for Relief is directed to Acer Defendants, they deny that USEI is entitled to any of the relief sought in its Prayer for Relief or any other relief.  To the extent the Prayer for Relief is directed to any other defendant(s), Acer Defendants defer to the defendant(s) to whom it is directed, and no further response from Acer Defendants is required.

## DEMAND FOR JURY TRIAL

Acer Defendants admit that USEI requests a trial by jury

## DEFENSES

Further answering the Complaint, Acer Defendants assert the following defenses. Acer Defendants reserve the right to amend its answer with additional defenses as further information is obtained.

### FIRST DEFENSE:
### NON- INFRINGEMENT

1.      Acer Defendants have not infringed and do not infringe, contribute to the infringement of, or induce others to infringe any valid and enforceable claim of the Patents-in-Suit, either directly, indirectly, literally, or under the doctrine of equivalents.

### SECOND DEFENSE:
### INVALIDITY

2.      Each of the Patents-in-Suit is invalid for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C., including without limitation one or more of 35 U.S.C. §§ 101, 102, 103 and 112.

### THIRD DEFENSE:
### LIMITATION ON DAMAGES

3.      On information and belief, Plaintiff has failed to plead and meet the requirements of 35 U.S.C. § 284.

4.      Plaintiff's recovery for alleged infringement of the Patents-in-Suit if any, is limited to any alleged infringement committed no more than six years prior to the filing of its original complaint, pursuant to 35 U.S.C. § 286.

### FOURTH DEFENSE:
### LIMITATION ON COSTS

5.      Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

### FIFTH DEFENSE:
### FAILURE TO MARK

6.      On information and belief, Plaintiff has failed to plead and meet the requirements of 35 U.S.C. § 287, and has otherwise failed to show that it is entitled to any damages.

7.      Plaintiff's claims for damages predating the filing of this action are barred by 35 U.S.C. § 287.  Upon information and belief, Acer Defendants received no constructive notice of infringement via products adequately marked under 35 U.S.C. § 287 that are or were sold by one of Plaintiff or any predecessors-in-interest to the Patents-in-Suit, including 3Com Corporation, or parties licensed to the Patents-in-Suit, to manufacture, sell or distribute products that practice the Patents-in-Suit.

### SIXTH DEFENSE:
### PROSECUTION HISTORY ESTOPPEL

8.      Plaintiff's alleged causes of action for patent infringement are barred under the doctrine of prosecution history estoppel, and Plaintiff is estopped from claiming that the Patents-in-Suit cover or include any accused Acer Defendants product or method.

### SEVENTH DEFENSE:
### DEDICATION TO THE PUBLIC

9.      Plaintiff has dedicated to the public all methods, apparatus, and products disclosed in the Patents-in-Suit, but not literally claimed therein, and is estopped from claiming infringement by any such public domain methods, apparatus, and products.

### EIGHTH DEFENSE:
### USE/MANUFACTURE BY/FOR UNITED STATES GOVERNMENT

10.     To the extent that any accused product or method has been used or manufactured by or for the United States, Plaintiff's claims and demands for relief are barred by 28 U.S.C. § 1498.

### NINTH DEFENSE:
### LACHES, WAIVER AND ESTOPPEL

11.     Plaintiff's claims for relief are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

### TENTH DEFENSE:
### UNCLEAN HANDS

12.     On information and belief, Plaintiff has rendered the Patents-in-Suit

unenforceable under the doctrine of unclean hands.

## ELEVENTH DEFENSE:
## INEQUITABLE CONDUCT

13.     As its eleventh additional defense to the Patents-in-Suit, Acer Defendants allege that each of the Patents-in-Suit is unenforceable by reason of the patentee's inequitable conduct during their respective prosecutions.  The basis for this defense is detailed in the following paragraphs.  In summary, during the pendency of the five applications that ultimately led to the four Patents-in-Suit, various permutations of the same prosecution counsel, the same assignee, and the same inventors filed and prosecuted at least 22 US, US PCT, and foreign applications for patents on variants of the technology at issue in this case.

14.     That is, various subsets of the prosecution counsel, assignee, and the four inventors of the Patents-in-Suit filed the following 17 additional patent applications beyond the Patents-in-Suit:

      a.    International Patent Application PCT/US1993/07027, based on the '313 Patent ('313 PCT);

      b.    European Patent Application No. 0696462, based on the '313 PCT ('313 EP)

      c.    International Patent Application PCT/US1993/07060, based on the '872 Patent ('872 PCT);

      d.    European Patent Application No. 0606466, based on the '872 PCT ('872 EP);

      e.    International Patent Application PCT/US1993/07056, based on the '459 Patent ('459 PCT);

      f.    European Patent Application No. 0607412, based on the '459 PCT ('459 EP);

      g.    U.S. Patent No. 5,319,752 ('752 Patent);

      h.    International Patent Application PCT/US1993/08866, based on the '752

Patent ('752 PCT);

i.  European Patent Application No. 0660995, based on the '752 PCT ('752 EP);

j.  U.S. Patent No. 5,392,406 ('406 Patent);

k.  International Patent Application PCT/US1993/08840, based on the '406 Patent ('406 PCT);

l.  U.S. Patent No. 5,530,874 ('874 Patent);

m.  International Patent Application PCT/US1993/12652, based on the '874 Patent ('874 PCT);

n.  European Patent Application No. 0682791, based on the '874 PCT ('874 EP);

o.  U.S. Patent No. 5,517,627 ('627 Patent);

p.  International Patent Application PCT/US1994/09723, based on the '627 Patent ('627 PCT); and

q.  U.S. Patent No. 5,412,782 ('782 Patent).

15.     Many of these patent applications were identified as related to the applications that led to the Patents-in-Suit, yet their co-pendency was not disclosed to the examiners of the applications for the Patents-in-Suit. In most instances, the examiners in the Patents-in-Suit were not the examiners on the other related applications and had no way of knowing of their co-pendency.

16.     During the prosecution of these related applications, many references were cited that disclosed limitations of the claims of the Patents-in-Suit, and thus would have been of interest to the examiners of the Patents-in-Suit had they been disclosed.  In fact, between the applications for the Patents-in-Suit and these related, yet undisclosed, other applications, over 60 prior art references were cited in one or more applications.  Yet, during the prosecution of the applications that led to the asserted '313, '459, and '872 Patents, the applicants failed to cite even a single reference.  And, during the prosecution of the application that led to the '094

Patent, the applicants continued in their non-disclosure of references cited in related cases, submitting information disclosure statements that contained only a fraction of the 60-plus references that had been cited among the 22 related applications.

17.     Moreover, during the prosecution of the related applications, many references were cited against various combinations of elements claimed to be novel in the Patents-in-Suit, and, in a number of instances, claims drawn to those combinations were rejected. As noted, most of these references were not disclosed during the prosecutions of the Patents-in-Suit. Neither was there disclosure of the rejections in parallel prosecutions of combinations that were material to pending claims of the applications that led to the Patents-in-Suit. Taken collectively, all these prosecutions and the art cited in them, as well as the various rejections by the various examiners paint a picture of a technological landscape in which many of the claims of the Patents-in-Suit were anticipated and/or obvious and therefore not patentable.

18.     Because the owner of the Patents-in-Suit, its counsel, and various of the named inventors on the Patents-in-Suit did not disclose the co-pendency of these applications, the material art cited during them, or the existence of adverse office actions by other examiners rejecting combinations claimed to be novel by the Patents-in-Suit, the examiners in the Patents-in-Suit were not aware of information that would have been material to their examination of the Patents-in-Suit.

19.     Many of the individuals with a duty of candor during the prosecutions leading to the Patents-in-Suit, thus, withheld information they knew or should have known to be material to the Patents-in-Suit. In light of the course of conduct by which the various prosecutions were each effectively soiled from one another and in light of the failure to disclose references that other examiners had explicitly identified as invalidating claimed combinations, the applicants for the Patents-in-Suit engaged in inequitable conduct, which renders each of the Patents-in-Suit unenforceable.

20.     As its eleventh additional defense to USEI's allegations that it has infringed the '459 Patent, Acer Defendants allege that the '459 Patent is unenforceable by reason of the

patentee's inequitable conduct during the prosecution of that patent as follows:

a.    Application No. 07/920,898 (the '459 Application), which ultimately led to the '459 Patent, was filed on July 28, 1992 on behalf of named inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee, 3Com Corporation. Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the owner and acted as prosecution counsel throughout. The '459 Patent issued on April 26, 1994.

<u>The '872 Patent, PCT, and EP Applications</u>

b.    The Patentee committed inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to the '872 Patent.

c.    Application No. 07/920,893 (the '872 Application), which ultimately led to the '872 Patent, was filed on the same date by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '459 Application (collectively, the '872 Applicants).

d.    Ultimately, a third of the '459 named inventors (Sherer) was added as a named inventor on what became the '872 Patent.

e.    PCT Application PCT/US1993/07060 (the '872 PCT) claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '459 Application. The European Patent Application EP0606466 (the '872 EP) based on the '872 PCT was filed on February 25, 1994, and lists three of the named inventors listed in the '459 Application (Petersen, Brown, and Sherer).

f.    The '459 Application was reviewed by a different examiner than the '872

Application, the '872 PCT, and the '872 EP.

g.    The '459 and '872 Patents' disclosures overlap to a significant extent.
      For example, both applications claim inventions involving beginning
      frame-processing operations prior to the complete buffering of frame data
      and using a frame buffering threshold to trigger such concurrent frame-
      processing operations.

h.    In his Notice of Allowability of October 14, 1993, the examiner of the
      '459 Patent stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, inter alia,
> the claimed network frame transfer apparatus in which
> the data frame is transferred between a network
> transceiver and a host computer via a buffer and
> threshold logic is utilized to count the data transferred to
> and from the buffer and further in which an alterable
> storage location is provided which contains a threshold
> value and a counter, coupled to the buffer memory, is
> compared to the threshold value and an indication signal
> is generated and sent to the host computer responsive to
> the comparison.

i.    During the prosecution of the '872 Patent, claims containing all of these
      limitations except for the "indication signal" were rejected as anticipated
      and/or obvious in light of multiple prior art references in the office action
      of October 26, 1993 (The October 26, 1993 Rejection).

j.    At least the following references were reviewed by the '872 examiner,
      were cited in support of the October 26, 1993 Rejection, and were
      material to, but not disclosed during, the prosecution of the '459 Patent:
      U.S. Patents 5,043,981 (Firoozmand *et al.*); 4,860,193 (Bentley);
      4,258,418 (Heath); 4,715,030 (Koch); 5,195,093 (Tarrab); and 5,210,749
      (Firoozmand) (collectively, the '872-459 References).

k.    On or about March 2, 1994, Petersen and Brown, named inventors of the

'459 Application filed a declaration stating that they were informed that the pending claims 1, 3, 6 and 11 in '872 Application were rejected as being anticipated by Firoozmand, *et al.*.

l.  The '872-459 References were material to, but not disclosed during, prosecution of the '459 Application. The '872-459 References were determined by the '872 examiner to disclose singly or in obvious combination all limitations determined by the '459 examiner to be missing from the prior art except the "indication signal" claimed in the '459 Patent, and that latter limitation was, in fact, disclosed by, inherent in, and/or obvious in light of one or more of the '872-459 References.

m.  During the prosecution of the '459 Patent, five of the '872-459 References (Firoozmand *et al.*, Koch, Heath, Tarrab, and Firoozmand) were cited again to at least the assignee and prosecution counsel of the '872 Application in the December 7, 1993 '872 PCT International Search Report (the '872 ISR). These references were identified again by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

n.  All of the '872 Applicants were participants in the prosecutions of the '872 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent. At least the '872 assignee and prosecution counsel were participants in the prosecutions of the '872 PCT, and the '872 EP and were persons with a duty of candor in the prosecution that led to the '459 Patent.

o.  The '872 Applicants knew of the materiality to the '459 prosecution of (i) the copendency of the '872 Application, the '872 PCT, and the '872 EP, (ii) the October 26, 1993 Rejection, and (iii) the '872-459 References, because they knew that the '872 examiner had found these references to

17

disclose most features of the combination which they had claimed to be novel in the '459 Patent and which the '459 examiner itemized in his notice of allowance. Further, they knew or should have known that the missing limitation was disclosed by, inherent in, or obvious in light of one or more of the '872-459 References or at a minimum that a reasonable examiner would have wanted to review the '872-459 References to make his own determination on that point.

p.   Additionally, and for the same reasons, at least the assignee of the '459 Patent and prosecution counsel were aware of the materiality of the '872 ISR to the '459 prosecution.

q.   None of the co-pendency of the '872 Application and the '872 PCT, the '872 EP, nor the October 26, 1993 Rejection and the '872-459 References were disclosed in the '459 Prosecution.

r.   The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection, and the '872-459 References were therefore concealed from the examiner in the '459 Prosecution by the '872 Participants with knowledge of the materiality of those references and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '752 Patent and PCT Applications</u>

s.   The Patentee committed further acts of inequitable conduct during the prosecution of the '459 Patent by additionally failing to disclose the applications, rejections, and references related to the U.S. Patent 5,319,752 (the '752 Patent).

t.   Application No. 07/947,773 (the '752 Application), which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-

Chin Lo) and the same assignee as the '459 Application (the '752 Applicants).

u.   PCT Application PCT/US1993/08866 (the '752 PCT) claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '459 and '752 Applications.

v.   The '459 Application was reviewed by a different examiner than the '752 Application and the '752 PCT.

w.   The '459 and '752 Patents' disclosures overlap to a significant extent. For example, the '752 Patent discloses a network adapter including "threshold logic for generating an early receive indication signal when a portion of [a] data frame is received," the very invention claimed in several claims of the '459 Patent.

x.   The '752 Application states that it is related to the co-pending '459 Application, but no mention of the '752 Application is made in the '459 Application.

y.   On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 Application.

z.   At least the following references were reviewed by the '752 examiner and were material to, but not disclosed during, prosecution of the '459 Patent: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fischer) (collectively the '752 References).

aa.   All of these references relate to the limitations of the '459 claims that call for generating a signal. Fischer relates to the limitations of the '459 claims that call for an indication signal and an interrupt signal. Yamamoto,

Kozlik, and Fischer relate to the limitations of the '459 claims that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '459 claims that call for network interface logic. Kozlik, Chiu, and Fischer relate to the limitations of the '459 claims that call for transferring a data frame. Francisco relates to the limitations of the '459 claims that call for an alterable storage location containing a threshold value. Chiu relates to the limitations of the '459 claims that call for a counter for counting the amount of data transferred.

bb.   While the '459 prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited again to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

cc.   The '752 References would have been material because the features of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

dd.   All of '752 Applicants had a duty of candor in the prosecution that led to the '459 Patent.

ee.   All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '752 Application. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '459 prosecution of (i) the copendency of the '752 PCT, and (ii) the '752 Rejections, the '752 ISR, and the '752 References. That is, they knew of the *similarity in disclosure* between the '459 and '752 Patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

ff.     However, neither the co-pendency of the '752 Application or the '752 PCT, nor the '752 Rejections, the '752 ISR, or the '752 References were disclosed in the '459 Prosecution.

gg.     The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '459 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '406 Patent and PCT Applications</u>

hh.     The Patentee committed further acts of inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,392,406 (the '406 Patent).

ii.     Application No. 07/947,055 (the '406 Application), which ultimately led to the '406 Patent, was filed on September 18, 1992 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 Application (the '406 Applicants).

jj.     PCT Application PCT/US1993/08840 (the '406 PCT) claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '459 and '406 Applications.

kk.     The '459 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

ll.     The '459 and '406 Patents' disclosures overlap to a significant extent.

mm.     On November 9, 1993 the '406 examiner issued a rejection (the '406

Rejection) of the '406 Application.

nn.     At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during, prosecution of the '459 Patent: U.S. Patents 4,447,878 (Kinnie); 4,672,570 (Benken); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671 (Kelly); and 5,185,876 (Nguyen) (collectively the '406-459 References).

oo.     All of these references relate to the limitations of the '459 Patent that call for generating a signal. Benken, Kinoshita, and Pleva relate to the limitations of the '459 Patent that call for an indication signal. Benken, Brooks, Kinoshita, Pleva, and Nguyen relate to the limitations of the '459 Patent that call for an interrupt signal. Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, and Nguyen relate to the limitations of the '459 Patent that call for a buffer memory. Benken and Brooks relate to the limitations of the '459 Patent that call for transferring a data frame. Benken and Pleva relate to the limitations of the '459 Patent that call for a network interface logic. Benken relates to the limitations of the '459 Patent that call for transfer descriptors.

pp.     All of the '406-459 References reviewed by the '406 examiner were therefore material to the '459 Application, but none of them were disclosed by the '459 Applicants during prosecution of the '459 Patent.

qq.     While the '459 prosecution was ongoing, all ten of the '406-459 References were cited again to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

rr.     The '406-459 References would have been material because the features

of the claims of the '459 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ss.　All of the persons who were participants in the prosecutions of the '406 Patent had a duty of candor in the prosecution that led to the '459 Patent. At least the '406 assignee and prosecution counsel were participants in the prosecutions of the '406 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

tt.　The '406 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '406 Application and '406 PCT. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the November 9, 1993 Rejection, the '406 ISR, and the '406-459 References. That is, all of the '406 Applicants knew of the *similarity in disclosure* between the '459 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-459 References relevant to the '406 Application and the '406 PCT, and had rejected the '406 Application.

uu.　However, the co-pendency of the '406 Application and the '406 PCT, the November 9, 1993 Rejection, the '406 ISR, and the '406-459 References were not disclosed in the '459 Prosecution.

vv.　The '406 Application, the '406 PCT, the November 9, 1993 Rejection, and the '406-459 References were therefore concealed from the examiner in the '459 prosecution by the '406 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '874 Patent and PCT Applications

ww.　The Patentee committed further inequitable conduct during the

prosecution of the '459 Patent by failing to disclose the applications related to the U.S. Patent 5,530,874 (the '874 Patent).

xx.    Application No. 08/012,561 (the '874 Application), which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '459 Application (the '874 assignee, prosecution counsel, Sherer, and Peterson are referred to herein as the '874 Applicants.)

yy.    PCT Application PCT/US1993/12652 (the '874 PCT) claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '874 Application and '459 Application.

zz.    The '459 Application was reviewed by a different examiner than the '874 Application and the '874 PCT.

aaa.    The '459 and '874 Patents' disclosures overlap to a significant extent.

bbb.    The '874 Application states that it is related to the co-pending '459 Application, but no mention of the '874 Patent is made in the '459 Application.

ccc.    All of the '874 Applicants were participants in the prosecution of the '874 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent. At least the '459 assignee and prosecution counsel were participants in the prosecutions of the '874 PCT and were persons with a duty of candor in the prosecution that led to the '459 Patent.

ddd.    The '874 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '874 Application and the '874 PCT. That is, they knew of the similarity in disclosure between the

'459 and '874 disclosures.

eee. However, neither the co-pendency of the '874 Application nor of the '874 PCT, were disclosed in the '459 Prosecution.

fff. The co-pendency of the '874 Application and the '874 PCT were therefore concealed by the '874 Applicants from the examiner in the '459 prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '627 Patent and PCT Applications

ggg. The Patentee committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 Patent).

hhh. Application No. 08/113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application (collectively the '627 Applicants).

iii. The '459 Application was reviewed by a different examiner than the '627 Application.

jjj. The '459 and '627 Patents' disclosures overlap to a significant extent.

kkk. All of the participants in the prosecutions of the '627 Patent were persons with a duty of candor in the prosecution that led to the '459 Patent.

lll. The '627 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '627 Application. That is, they knew of the similarity in disclosure between the '459 and '627 disclosures.

mmm.  On February 7, 1994, the '627 Applicants filed an Information Disclosure citing, *inter alia*, the following references: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen) (collectively the '627-459 References).  As detailed above, the '627-459 References relate to the limitations of the '459 Patent and would have been material.  In fact, their citation in the February 7, 1994 IDS represents no less than the third time they were cited in a related application prior to the issuance of the '459 Patent.

nnn.  All of the persons who were participants in the prosecutions of the '627 Patent had a duty of candor in the prosecution that led to the '459 Patent.

ooo.  The '627 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the '627-459 References.  That is, all of the '627 Applicants knew of the similarity in disclosure between the '459 and '627 disclosures, and at least the '627 assignee and prosecution counsel knew that the '627-459 References had been cited in the '627 Application.

ppp.  However, the co-pendency of the '627 Application and the '627-459 References were not disclosed in the '459 Prosecution.

qqq.  The '627 Application and the '627-459 References were therefore concealed from the examiner in the '459 prosecution by the '627 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '313 Patent, PCT, and EP Applications

rrr.  The Patentee committed inequitable conduct during the prosecution of the

26

'459 Patent by failing to disclose the applications, rejections, and references related to the '313 Patent.

sss.   Application No. 07/921,519 (the '313 Application), which ultimately led to the '313 Patent, was filed on the same date by the same counsel on behalf of the same named inventors (Peterson, Sherer, Brown, and Lo) and the same assignee as the '459 Application (collectively, the '313 Applicants).

ttt.   PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Brown, Sherer, and Lo) and the same assignee as the '459 Application. The European Patent Application EP0696462 (the '313 EP), based on the '313 PCT, was filed on February 25, 1994, and lists all four of the named inventors listed in the '459 Application.

uuu.   The '459 Application was reviewed by a different examiner than the '313 PCT and the '313 EP.  Although the '459 Application was reviewed by the same examiner as the '313 Application, the Federal Circuit has held that the duty to cross-cite material information between related applications still holds in such situations.  *See e.g., McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 925 (Fed. Cir. 2007).

vvv.   On September 21, 1993, the '313 Application received a Notice of Allowance in which the examiner cited U.S. Patent No. 4,672,570 (Benken).

www.  Although the '459 Applicants cited the copendency of the '313 Application upon the filing of the '459 Application on July 28, 1992, the '459 Applicants did not disclose to the examiner of the '459 Application either the September 21, 1993 Allowance or the Benken reference.

27

xxx.　The '459 and '313 Patents' disclosures overlap to a significant extent, as evidenced by the '459 Applicants' disclosure of the '313 Application as a related copending application.

yyy.　The Benken reference was material to, but not disclosed during, prosecution of the '459 Application. The Benken reference discloses various limitations of the claims of the '459 Application, such as a buffer memory, network interface logic, host interface logic, transfer descriptor logic, and upload logic.

zzz.　On November 26, 1993, during the prosecution of the '459 Patent, the following references were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,672,570 (Benken); 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

aaaa.　The '313 ISR References were material to, but not disclosed during, the prosecution of the '459 Application.  The '313 ISR References relate to the limitations of the '459 Patent.  For example, Harris relates to the limitations of the '459 Patent that call for a buffer memory, generating a signal, generating an interrupt, and network interface logic. Schwan relates to the limitations of the '459 Patent that call for a buffer memory, generating a preemptive signal, and interrupt signals.  Farrell relates to the limitations of the '459 Patent that call for a buffer memory, network interface logic, generating a signal, and an interrupt signal.

bbbb.　All of the '313 Applicants were participants in the prosecution of the '313 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent.

cccc.　The '313 Applicants knew of the materiality to the '459 prosecution of (i) the Benken reference, (ii) the co-pendency of the '313 PCT and '313 EP

28

Applications, (iii) the '313 ISR, and (iv) the '313 ISR References, yet failed to disclose any of these actions or references in the '459 Prosecution.

dddd.   The (i) Benken reference, (ii) co-pendency of the '313 PCT and '313 EP Applications, (iii) '313 ISR, and (iv) '313 ISR References were therefore concealed from the examiner in the '459 Prosecution by the '313 Participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '782 Patent Application</u>

eeee.   The Patentee committed further inequitable conduct during the prosecution of the '459 Patent by failing to disclose the application, rejection, and references related to U.S. Patent 5,412,782 (the '782 Patent).

ffff.   Application No. 07/907,946 (the '782 Application), which ultimately led to the '782 Patent was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '872 Application (Sherer and the assignee collectively referred to as the '782 Applicants).

gggg.   The '459 Application was reviewed by a different examiner than the '782 Application.

hhhh.   The '459 and '782 Patents' disclosures relate to substantially the same subject matter.  For example, the '782 Patent discloses "adjusting the TX start threshold to an amount larger than the packet, so transmission will not begin until the packet is completely copied into the adapter" and that "the adapter may be programmed to generate early receive interrupts

when only a portion of a packet has been received from the network, so as to decrease latency." These disclosures directly relate to the heart of the alleged invention claimed in the '459 Patent.

iiii.   U.S. Patent 4,768,190 (Giancarlo), cited by the '782 Examiner in the January 14, 1994 Office Action Rejection, was material to, but not disclosed during, prosecution of the '459 Patent.

jjjj.   Giancarlo relates to the limitations of the '459 Patent that call for generating a signal, an interrupt signal, a buffer memory, and/or transferring a data frame.

kkkk.   All of the '782 Applicants were participants in the prosecution of the '782 Patent and were persons with a duty of candor in the prosecution that led to the '459 Patent.

llll.   The '782 Applicants knew of facts sufficient to establish the materiality to the '459 prosecution of the copendency of the '782 Application. At least the '782 assignee knew of facts sufficient to establish the materiality of the Giancarlo reference and the January 14, 1994 Rejection.  That is, all of the '782 Applicants knew of the similarity in disclosure between the '459 and '782 disclosures, and at least the '782 assignee knew that the Giancarlo reference had been cited in the '782 Application.

mmmm.   However, the copendency of the '782 Application and the Giancarlo reference were not disclosed in the '459 Prosecution.

nnnn.   The '782 Application and the Giancarlo reference were therefore concealed from the examiner in the '459 prosecution by the '782 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>Intel 82586 local area network coprocessor</u>

30

oooo.   Intel 82586 local area network coprocessor and the documentation

describing it ("the Intel 82586") is material prior art as defined by 37

C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-

3 Invalidity Contentions filed June 4, 2010 (hereby incorporated by

reference as if more fully set forth herein), the Intel 82586 and the

documentation describing it separately and collectively invalidates all of

the asserted claims in the '459 Patent.  Accordingly, a reasonable

examiner would have found that the Intel 82586 and the documentation

describing it, alone or in combination with other information, was

material to the prosecution of the '459 Patent because, at a minimum, it

established a prima facie case of unpatentability for all claims in the '459

Patent.

pppp.   Further, the Intel 82586 was known by the inventors, their counsel, and

3Com (collectively "Applicants") to be prior art material to the

application which led to the '459 Patent, because the Intel 82586 is

recited as relevant prior art in the Background of the Invention section of

the '459 Application.

qqqq.   On information and belief, some or all of Applicants had full knowledge

of the operation and features of the Intel 82586, because they were able to

summarize certain aspects of the operations and features of the Intel

82586 in the Background Section of the '459 Patent.

rrrr.   The prosecution history  of the '459 Patent demonstrates that Applicants

withheld the source of their information concerning the operation and

functionality of the Intel 82586 from the PTO during the filing and

prosecution of the '459 Application because only very limited disclosure

was made of the Intel 82586 chip in the background of the '459 Patent

and no documentation describing its features or functionality was

provided to the PTO, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '459 Patent.

ssss.   As is set forth more fully in Defendants' Invalidity Contentions, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '459 Patent.

tttt.   A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability for the '459 Application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation demonstrating these inconsistencies but withheld by some or all of Applicants, was not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

uuuu.   The prosecution history  of the '459 Patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of the prior art, and specifically the features and operation of the Intel 82586.

vvvv.   The Applicants obtained allowance of claims then pending in the '459 Application as a result of not fully disclosing the Intel 82586 and withholding documentation concerning its features and functionality, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

wwww.  The '459 Patent is therefore unenforceable due to inequitable conduct.

xxxx.  There is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '459 Patent to issue.

yyyy.  None of the above identified references that were not cited during the prosecution of the '459 Patent, despite a duty to do so, were cumulative to the prior art made of record during the prosecution of the '459 Patent.  In fact, only three prior art references were cited during the entire prosecution of the '459 Patent - namely, U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper).  These references were cited by the '459 examiner in the October 14, 1993 Notice of Allowance without any analysis as to which claim limitations they disclosed.  Thus, neither the applicants nor the prosecuting attorney could reasonably have believed that any of the above identified references were cumulative, since no claim analysis existed in the record of the '459 Patent prosecution.

zzzz.  The references identified in the foregoing paragraphs 83(b)-(yyyy), in addition to being material to the prosecution of the '459 Patent as stated herein, are further material as invalidating the prior art with respect to the '459 Patent as set forth more fully in Defendants' Local Patent Rule 3-3 Invalidity Contentions served on Plaintiff on June 4, 2010, the contents of which are incorporated by reference in this answer as if more fully set forth herein.

21.    As its eleventh additional defense to USEI's allegations that it has infringed the '313 Patent, Acer Defendants allege that the '313 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent.

a.    Application No. 07/921,519 (the '313 Application) which ultimately led to the '313 Patent, was filed on July 28, 1992 on behalf of named

33

inventors Brian Peterson, W. Paul Sherer, David R. Brown, and Lai-Chin Lo, and named assignee, 3Com Corporation. Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the applicants and the assignee.

<u>The '872 Patent, PCT, and EP Applications</u>

b.    The Patentee committed inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejection, and references related to the '872 Patent.

c.    The '872 Application that ultimately led to the '872 Patent was filed on the same date by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '313 Application.

d.    Ultimately, a third of the '313 named inventors (Sherer) was added as a named inventor on what became the '872 Patent.

e.    The '872 PCT claims priority to the '872 Application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel on behalf of two of the same named inventors (Peterson and Brown) and the same assignee as the '313 Application. The '872 EP based on the '872 PCT was filed on February 25, 1994.

f.    In the '872 Application, the patentee disclosed, as required, that the '872 Application was related to the co-pending '313 Application. Accordingly, upon information and belief, the patentee certainly had knowledge of the important relationship between these co-pending applications.

g.    Despite this knowledge, however, the patentee did not disclose the co-pending '872 Application to the '313 examiner—a disclosure that would have surely borne on patentability of the substantively similar '313 Patent.

h.    Despite this knowledge, however, the patentee did not disclose the co-

pending '872 Application to the '313 examiner, and thereby gained the advantage of siphoning off the issues and concerns raised by the '872 examiner that would have surely borne on patentability of the substantively similar '313 Patent.

i.  The '313 Application was reviewed by a different examiner than the '872 Application, the '872 PCT, and the '872 EP.

j.  The '313 and '872 Patents' disclosures overlap to a significant extent.

k.  The '872 Application states that it is related to the co-pending '313 Application, but no mention of the '872 Application is made in the '313 Application.

l.  On October 26, 1993 the '872 examiner issued a rejection of the '872 Application.

m.  In his Notice of Allowability of September 21, 1993, the examiner of the '313 Patent stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, inter alia, the network interface controller for a host system/network transceiver in which a host system includes a host address space, and a buffer memory is located outside of the address space and further in which the interface manages data transfer between the host address space and the buffer memory in an operational manner transparent to the host system.

n.  In his consideration of the Notice of Allowability, the '313 examiner cited only one reference: U.S. Patent 4,672,570 (Benken).

o.  At least the following references were reviewed by the '872 examiner and were material to, but not disclosed during, prosecution of the '313 Patent: U.S. Patents 5,043,981 (Firoozmand *et al.*), 4,860,193 (Bentley), 4,258,418 (Heath), 4,715,030 (Koch), 5,195,093 (Tarrab), and, 5,210,749 (Firoozmand)  (collectively, the '872-313 References).

p.      In particular, these references relate to managing data transfers and a
buffer memory. Firoozmand *et al*. and Koch relate to a network interface
means. Firoozmand *et al*., Tarrab, and Firoozmand relate to a buffer
memory outside of the host address space.

q.      These references would have been material because the features of the
claims of the '313 Application were disclosed by, inherent in, or obvious
in light of one or more of these references.

r.      On October 26, 1993, prior to the issuance of the '313 Patent, the
Examiner for the '872 Application mailed an Office Action to 3Com's
prosecution counsel, Mark A. Haynes. In the Office Action, the Examiner
relied on Firoozmand *et al*. as a basis for a §102(a) anticipation rejection.
The Examiner also relied on various combinations of the Firoozmand *et
al*., Firoozmand, Heath, Koch, and Tarrab references as bases for
obviousness-type rejections of certain claims pending in the '872
Application. In a Notice of References Cited, included with the October
26, 1993 Office Action, the Examiner made of record the Bentley
reference. In an Office Action dated July 6, 1994, the Examiner for the
'872 Application relied on Bentley as a basis for an obviousness-type
rejection of certain pending claims.

s.      The '872-313 References are material to the '313 Patent. Each of these
references discloses elements of the alleged inventions claimed by the
'313 Patent. At least the Firoozmand *et al*. and Firoozmand references
fully anticipate (i.e., establish a prima facie case of invalidity of) certain
claims of the '313 Patent. The '872-313 References were later deemed
sufficiently material to include in an Information Disclosure Statement
(IDS) during later prosecution of the '094 Patent (another related Patent-
in-Suit) on August 18, 1995.

t.    The '872-313 References are not cumulative to the prior art made of record during the prosecution of the '313 Patent. On information and belief, there is a substantial likelihood that a reasonable examiner would have considered those references important in deciding whether to allow the '313 Patent to issue.

u.    Because the prosecuting attorney, Mark A. Haynes, had prosecuted both the '313 Patent and the '872 Patent, Mr. Haynes was aware of all of the '872-313 References.  Moreover, David R. Brown and Brian Petersen, named inventors on the '313 Patent and the '872 Patent, were aware of at least the Firoozmand *et al*. patent prior to the issuance of the '313 Patent. On or about March 2, 1994, both Mr. Brown and Mr. Petersen filed a declaration during the prosecution of the '872 Patent in which they declared as follows:

> We have been informed that claims 1, 3, 6 and 11 in the above identified U.S. Patent Application have been rejected under 35 U.S.C. §102(a) as being anticipated by Firoozmand, *et al*. U.S. Patent No. 5,043,981 which was issued August 27, 1991 and filed May 29, 1990 (the effective date of the reference"). ('893 Application, § 1.131 Declaration, p. 1).

v.    On information and belief, one or more of the inventors named on the face of the '313 Patent (including David R. Brown and Brian Petersen), the attorney(s) who prosecuted the '313 Patent (including Mark A. Haynes), and others substantively involved in the prosecution of the '313 Patent (collectively the "3Com Prosecuting Agents") were made aware of, and received copies of, the '872-313 References prior to the issuance of the '313 Patent.

w.    Even more, during the prosecution of the '313 Patent, five of the '872-313 References (Firoozmand *et al*., Firoozmand, Koch, Heath, and

Tarrab) were cited again to at least the assignee and prosecution counsel of the '872 Application in the December 7, 1993 '872 PCT International Search Report (the '872 ISR). These references were identified by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

x.   All of the '872 Applicants were participants in the prosecutions of each the '872 Patent, and were persons with a duty of candor in the prosecution that led to the '313 Patent.

y.   For the same reasons stated above, at least the assignee of the '313 Patent and prosecution counsel were aware of the materiality of the '872 PCT, '872 EP, and the '872 ISR to the '313 prosecution.

z.   None of the co-pendency of the '872 Application and the '872 PCT, and the '872 EP, nor the October 26, 1993 Rejection and the '872-313 References were disclosed in the '313 Prosecution.

aa.  The '872 Application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection, and the '872-313 References were therefore concealed from the examiner in the '313 Prosecution by the '872 Participants with knowledge of the materiality of those references and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '752 Patent and PCT Applications

bb.  The Patentee committed further acts of inequitable conduct during the prosecution of the '313 Patent by additionally failing to disclose the applications, rejections, and references related to the U.S. Patent 5,319,752 (the '752 Patent).

cc.  The '752 Application, which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same

named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '313 Application. (The '752 Applicants.).

dd.    The '752 PCT claims priority to the '752 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '313 and '752 Applications.

ee.    The '313 Application was reviewed by a different examiner than the '752 Application, and the '752 PCT.

ff.    The '313 and '752 Patents' disclosures overlap to a significant extent.

gg.    On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 Application.

hh.    At least the following references were reviewed by the '752 examiner and were material to, but not disclosed during, prosecution of the '313 Patent: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fischer) (collectively the '752 References).

ii.    The '752 References relate to the limitations of the '313 Patent. For example, these references relate to a buffer memory and a network interface means. Fischer, in particular, relates to a buffer memory outside of the host address space and sharing the host address space with the host.

jj.    During the prosecution of the '313 Patent, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited again to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

kk.    The '752 References would have been material because the features of the claims of the '313 Application were disclosed by, inherent in, or

obvious in light of one or more of these references.

ll.     All of the '752 Applicants had a duty of candor in the prosecution that led to the '313 Patent.

mm.     All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '752 Application and '752 PCT. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '313 prosecution of the '752 Rejections, the '752 ISR, and the '752 References. That is, they knew of the similarity in disclosure between the '313 and '752 Patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

nn.     However, neither the co-pendency of the '752 Application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '313 Prosecution.

oo.     The '752 Application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '313 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '406 Patent and PCT Applications</u>

pp.     The Patentee committed further acts of inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejection, and references related to the '406 Patent.

qq.     The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R.

Brown) and the same assignee as the '313 Application. (The '406 Applicants).

rr.  The '406 PCT claims priority to the '406 Application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of three of the same named inventors (Brian Peterson, Lai-Chin Lo, and David R. Brown) and the same assignee as the '313 and '406 Applications.

ss.  The '313 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

tt.  The '313 and '406 Patents' disclosures overlap to a significant extent.

uu.  The '406 Application states that it was related to the application of the '313 Patent, but no mention of the '406 Patent is made in the '313 Application.

vv.  On November 9, 1993 the '406 examiner issued a rejection of the '406 Application.

ww.  At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during prosecution of the '313 Patent: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen) (collectively the '406-313 References).

xx.  These references relate to the limitations of the '313 Patent. Kinnie, Chisholm, Brooks, Kinoshita, Vo, Pleva, and Nguyen relate to the limitations of the '313 Patent that call for a buffer memory. Pleva relates to the limitations of the '313 Patent that call for a network interface device.

yy.  All of the '406-313 References reviewed by the '406 examiner were therefore material to the '313 Application, but none of them were

disclosed during prosecution of the '313 Patent.

zz.     While the '313 prosecution was ongoing, all of the '406-313 References were cited again to the to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

aaa.    The '406-313 References would have been material because the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

bbb.    All of the persons who were participants in the prosecutions of the '406 Patent and '406 PCT had a duty of candor in the prosecution that led to the '313 Patent.

ccc.    The '406 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '406 Application and '406 PCT. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the November 9, 1993 Rejection, the '406 ISR, and the '406-313 References.  That is, all of the '406 Applicants knew of the similarity in disclosure between the '313 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-313 References relevant to the '406 Application and the '406 PCT, and had rejected the '406 Application.

ddd.    However, the co-pendency of the '406 Application and the '406 PCT, the November 9, 1993 Rejection, the '406 ISR, and the '406-313 References were not disclosed in the '313 Prosecution.

eee.    The '406 Application, the '406 PCT, the November 9, 1993 Rejection, and the '406-313 References were therefore concealed from the examiner in the '313 prosecution by the '406 Applicants with knowledge of their

materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '874 Patent and PCT Applications

fff.  The Patentee committed further inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications related to the '874 Patent.

ggg.  The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '313 Application (the '874 Applicants).

hhh.  The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf the same named inventors and the same assignee as the '874 Application.

iii.  The '313 Application was reviewed by a different examiner than the '874 Application and the '874 PCT.

jjj.  The '313 and '874 Patents' disclosures overlap to a significant extent.

kkk.  All of the participants in the prosecutions of the '874 Patent and '874 PCT were persons with a duty of candor in the prosecution that led to the '313 Patent.

lll.  The '874 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '874 Application and the '874 PCT. That is, they knew of the similarity in disclosure between the '313 and '874 disclosures.  For example, the '874 Application discloses a network adapter buffer memory, host interface logic, and network interface logic.

mmm.  However, neither the co-pendency of the '874 Application nor of the '874 PCT, were disclosed in the '313 Prosecution.

nnn.  The co-pendency of the '874 Application and the '874 PCT were therefore concealed by the '874 Applicants from the examiner in the '313 prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '627 Patent and PCT Applications

ooo.  The Patentee committed further inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 Patent).

ppp.  Application No. 08/113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application (collectively the '627 Applicants).

qqq.  The '313 Application was reviewed by a different examiner than the '627 Application.

rrr.  The '313 and '627 Patents' disclosures overlap to a significant extent.

sss.  The '406 Application, of which the '627 Patent is a continuation-in-part, states that it is related to the copending '313 Application, but no mention of the '627 Application is made in the '313 Application.

ttt.  On February 7, 1994, the '627 Applicants filed an Information Disclosure citing, inter alia, the following references: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen)

(collectively the '627-313 References).  As detailed above, the '627-313 References relate to the limitations of the '313 Patent and would have been material.  In fact, their citation in the February 7, 1994 IDS represents no less than the third time they were cited in a related application prior to the issuance of the '313 Patent.

uuu.   All of the persons who were participants in the prosecutions of the '627 Patent had a duty of candor in the prosecution that led to the '313 Patent.

vvv.   The '627 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the '627-313 References.  That is, all of the '627 Applicants knew of the similarity in disclosure between the '313 and '627 disclosures, and at least the '627 assignee and prosecution counsel knew that the '627-313 References had been cited in the '627 Application.

www.  However, the co-pendency of the '627 Application and the '627-313 References were not disclosed in the '313 Prosecution.

xxx.   The '627 Application and the '627-313 References were therefore concealed from the examiner in the '313 prosecution by the '627 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '459 Patent, PCT, and EP Applications

yyy.   The Patentee committed inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications, rejections, and references related to the '459 Patent.

zzz.   The '459 Application which ultimately led to the '459 Patent, was filed on the same date by the same counsel on behalf of the same inventors

(Petersen, Brown, Sherer, and Lo) and the same named assignee as the '313 Application.

aaaa.   PCT Application PCT/US1993/07056 (the '459 PCT) was filed on July 27, 1993, and claims priority to the '459 Application by the same counsel on behalf of the same inventors (Petersen, Brown, Sherer, and Lo) and the same named assignee as the '313 Application and the '459 Application. The European Patent Application EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

bbbb.   The '313 Application was reviewed by a different examiner than the '459 PCT and the '459 EP.  Although the '313 Application was reviewed by the same examiner as the '459 Application, the Federal Circuit has held that the duty to cross-cite material references between related applications still holds in such situations.  *See e.g., McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 925 (Fed. Cir. 2007).

cccc.   The '313 and '459 Patents' disclosures overlap to a significant extent.

dddd.   During prosecution of the '459 Application, the following references were cited: U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper) (collectively the '459 References). These references were cited to the '313 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

eeee.   All of the '459 References reviewed by the '459 examiner were material to, but not disclosed during prosecution of, the '313 Patent.

ffff.   These references relate to the limitations of the '313 claims that call for a buffer memory, a network interface means, and a host interface means.

gggg.   While the '313 prosecution was pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited again to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993

'459 International Search Report (the '459 ISR), but still were not disclosed in the '313 prosecution.

hhhh.   The '459 References would have been material because the features of the claims of the '313 Application were disclosed by, inherent in, or obvious in light of one or more of these references. The '313 Examiner would have, therefore, considered these references highly material.

iiii.   At least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel had a duty of candor in the prosecution that led to the '313 Patent.

jjjj.   At least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel of knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '459 Application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '313 prosecution of (i) the co-pendency of the '459 PCT and the '459 EP and (ii) the '459 ISR, and the '459 References. That is, at least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel knew of the similarity in disclosure between the '459 and '313 Patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

kkkk.   However, neither the co-pendency of the '459 Application, the '459 PCT, and the '459 EP, nor the '459 ISR and the '459 References were disclosed in the '313 Prosecution.

llll.   The '459 Application, the '459 PCT, the '459 Rejections, and the '459 References were therefore concealed from the examiner in the '313 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

47

<u>The '782 Patent</u>

mmmm.  The Patentee committed further inequitable conduct during the prosecution of the '313 Patent by failing to disclose the application, rejection, and references related to U.S. Patent 5,412,782 (the '782 Patent).

nnnn.  Application No. 07/907,946 (the '782 Application), which ultimately led to the '782 Patent, was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '872 Application (Sherer and the assignee collectively referred to as the '782 Applicants).

oooo.  The '313 Application was reviewed by a different examiner than the '782 Application.

pppp.  The '313 and '782 Patents' disclosures relate to substantially the same subject matter.  For example, the '782 Patent discloses that "incoming packets can be transferred directly into host memory", which directly relates to the subject matter of the '313 Patent.

qqqq.  U.S. Patent 4,768,190 (Giancarlo), cited by the '782 Examiner in the January 14, 1994 Office Action Rejection, was material to, but not disclosed during, prosecution of the '459 Patent.

rrrr.  Giancarlo relates to the limitations of the '313 Patent that call for a buffer memory, network interface means, and host interface means.

ssss.  All of the '782 Applicants were participants in the prosecution of the '782 Patent and were persons with a duty of candor in the prosecution that led to the '313 Patent.

tttt.  The '782 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the copendency of the '782 Application. At least

the '782 assignee knew of facts sufficient to establish the materiality of the Giancarlo reference and the January 14, 1994 Rejection.  That is, all of the '782 Applicants knew of the similarity in disclosure between the '313 and '782 disclosures, and at least the '782 assignee knew that the Giancarlo references had been cited in the '782 Application.

uuuu.  However, the copendency of the '782 Application, the January 14, 1994 Rejection, and the Giancarlo references were not disclosed in the '313 Prosecution.

vvvv.  The '782 Application, the January 14, 1994 Rejection, and the Giancarlo references were therefore concealed from the examiner in the '313 prosecution by the '782 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '313 PCT and EP Applications

wwww.  The Patentee committed inequitable conduct during the prosecution of the '313 Patent by failing to disclose the applications and references related to the '313 PCT and '313 EP.

xxxx.  PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Brown, Sherer, and Lo) and the same assignee as the '313 Application. The European Patent Application EP0696462 (the '313 EP), based on the '313 PCT, was filed on February 25, 1994, and lists all four of the named inventors listed in the '313 Application.

yyyy.  On information and belief, the '313 Application was reviewed by a different examiner than the '313 PCT and the '313 EP.

zzzz.  The '313 PCT's and the '313 EP's disclosures overlap to a significant extent with the '313 Patent.

aaaaa.  On November 26, 1993, during the prosecution of the '313 Patent, the following references, inter alia, were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

bbbbb.  The '313 ISR References were material to, but not disclosed during, the prosecution of the '313 Application.  The '313 ISR References relate to the limitations of the '313 Patent.  For example, all of the '313 ISR References relate to the limitations of the '313 Patent that call for a buffer memory.  Harris and Farrell relate to the limitations of the '313 Patent that call for network interface logic.  Harris relates to the limitations of the '313 Patent that call for a shared memory space.

ccccc.  The participants in the prosecution of the '313 PCT and EP Applications were persons with a duty of candor in the prosecution that led to the '313 Patent.

ddddd.  The '313 PCT and EP Applicants knew of the materiality to the '313 Application prosecution of (i) the co-pendency of the '313 PCT and '313 EP Applications, (ii) the '313 ISR, and (iii) the '313 ISR References, yet failed to disclose any of these actions or references in the prosecution of the '313 Patent.

eeeee.  The (i) co-pendency of the '313 PCT and '313 EP Applications, (ii) '313 ISR, and (iii) '313 ISR References were therefore concealed from the examiner in the '313 Patent prosecution by the '313 PCT and EP participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

Intel 82586 local area network coprocessor

fffff.  Intel 82586 local area network coprocessor and the documentation

describing it ("the Intel 82586") is material prior art as defined by 37

C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-

3 Invalidity Contentions filed June 4, 2010 (hereby incorporated by

reference as if more fully set forth herein), the Intel 82586 and the

documentation describing it separately and collectively invalidates all of

the asserted claims in the '313 Patent.  Accordingly, a reasonable

examiner would have found that the Intel 82586 and the documentation

describing it, alone or in combination with other information, was

material to the prosecution of the '313 Patent because, at a minimum, it

established a prima facie case of unpatentability for all claims in the '313

Patent.

ggggg. Further, the Intel 82586 was known by the inventors, their counsel, and

3Com (collectively "Applicants") to be prior art material to the

application which led to the '313 Patent, because the Intel 82586 is

recited as relevant prior art in the Background of the Invention section of

the '313 Application.

hhhhh. On information and belief, some or all of Applicants had full knowledge

of the operation and features of the Intel 82586, because they were able to

summarize certain aspects of the operations and features of the Intel

82586 in the Background Section of the '313 Patent.

iiiii.  The prosecution history  of the '313 Patent demonstrates that Applicants

withheld the source of their information concerning the operation and

functionality of the Intel 82586 from the PTO during the filing and

prosecution of the '313 Application because only very limited disclosure

was made of the Intel 82586 chip in the background of the '313 Patent

and no documentation describing its features or functionality was provided to the PTO, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '313 Patent.

jjjjj.   As is set forth more fully in Defendants' Invalidity Contentions, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '313 Patent.

kkkkk.  A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability for the '313 Application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation demonstrating these inconsistencies but withheld by some or all of Applicants, was not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

lllll.   The prosecution history  of the '313 Patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of the prior art, and specifically the features and operation of the Intel 82586.

mmmmm.  The Applicants obtained allowance of claims then pending in the '313 Application as a result of not fully disclosing the Intel 82586 and withholding documentation concerning its features and functionality, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

nnnnn.  The '313 Patent is therefore unenforceable due to inequitable conduct.

ooooo. There is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '313 Patent to issue.

ppppp. None of the above identified references that were not cited during the prosecution of the '313 Patent, despite a duty to do so, were cumulative to the prior art made of record during the prosecution of the '313 Patent.  In fact, only one prior art reference was cited during the entire prosecution of the '313 Patent - namely, U.S. Patent No. 4,672,570 to Benken.  Benken was cited by the '313 examiner in the September 21, 1993 Notice of Allowance without any analysis as to which claim limitations Benken disclosed.  Thus, neither the applicants nor the prosecuting attorney could reasonably have believed that any of the above identified references were cumulative, since no claim analysis existed in the record of the '313 Patent prosecution.

qqqqq. The references identified in the foregoing paragraphs 84(b)-(ppppp), in addition to being material to the prosecution of the '313 Patent as stated herein, are further material as invalidating the prior art with respect to the '313 Patent as set forth more fully in Defendants' Local Patent Rule 3-3 Invalidity Contentions served on Plaintiff on June 4, 2010, the contents of which are incorporated by reference in this answer as if more fully set forth herein.

22.     As its eleventh additional defense to USEI's allegations that it has infringed the '872 Patent, Acer Defendants allege that the '872 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent. In particular, Acer Defendants allege that:

a.     The '872 Application, which ultimately led to the '872 Patent, was filed

on the same date by Mark. A Haynes on behalf of named inventor Brian Peterson and David R. Brown and named assignee 3Com Corporation as the '459 Application. Ultimately, a third inventor (W. Paul Sherer) was added as a named inventor on what became the '872 Patent.

The '459 Patent, PCT, and EP Applications

b.      The Patentee committed inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '459 Patent.

c.      The '459 Application which ultimately led to the '459 Patent, was filed on the same date by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '872 Application.

d.      PCT Application PCT/US1993/07056 (the '459 PCT) was filed on July 27, 1993, and claims priority to the '459 Application by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '872 Application and the '459 Application. The European Patent Application EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

e.      The '872 Application was reviewed by a different examiner than the '459 Application, the '459 PCT, and the '459 EP.

f.      The '872 and '459 Patents' disclosures overlap to a significant extent.

g.      During prosecution of the '459 Application, the following references were cited: U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper) (collectively the '459 References). These references were cited to the '872 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

h.      All of the '459 References reviewed by the '459 examiner were material

to, but not disclosed during prosecution of, the '872 Patent.

i.    These references relate to the limitations of the '872 claims that call for supplying a signal. All references relate to the limitations of the '872 claims that call for a buffer memory. All references relate to the limitations of the '872 claims that call for a network interface means. All references relate to the limitations of the '872 claims that call for transferring data of frames. All references relate to the limitations of the '872 claims that call for a transmit logic. Gulick 1 and Gulick 2 relate to the limitations of the '872 claims that call for an underrun control logic. Finally, and perhaps most importantly, all references relate to the limitations of the '872 claims that call for threshold determination of an amount of data.

j.    While the '872 prosecution was pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited again to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993 '459 International Search Report (the '459 ISR), but still were not disclosed in the '872 prosecution.

k.    In the Response of February 23, 1994, during prosecution of the '872 Patent, at least the prosecution counsel of the '872 Application disingenuously argued that:

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter. This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. Firoozmand, *et al.* does not use the transmit threshold determination for a first frame in a transmission

sequence. Rather, this threshold determination is only used in succeeding frames. See Firoozmand, *et al.* column 10, line 53-68. *(emphasis added)*

l.    The '459 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references. For example, these references are related to using the threshold determination for any frame. The '872 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand et al. or other references cited during the '872 prosecution to make obvious the claims of the '872 Application directed to CSMA/CD.

m.    Moreover, during prosecution of Application No. 08/715,253 (the '094 Application), the continuation of the '872 Application, the same examiner of both the '872 and '094 Applications discovered Gulick 1 on his own, considered it "pertinent to applicant's disclosure," and cited it in the Office Action of March 19, 1996 in the '094 prosecution.  However, because Gulick 1 was never brought to his attention, the examiner did not have the opportunity to consider it prior to issuance of the '872, despite its high materiality.

n.    During prosecution of the '459 EP, the following references, inter alia, were cited: "Early Interrupt for Disk Controller," IBM Technical Disclosure Bulletin, vol. 25, no. 9, February 1983, p. 4703 (IBM) and 5,179,709 (Bailey) (collectively the '459 EP References).  These references were cited to the '872 Applicants in the April 27, 1994 Supplementary European Search Report ('459 EP SSR).

o.    These references relate to the limitations of the '872 Patent. IBM relates to the limitations of the '872 Patent that call for an alterable threshold value. Bailey relates to the limitations of the '872 Patent that call for a

56

buffer memory and means, coupled with the buffer memory, for monitoring the transferring of data to the buffer memory to make a threshold determination of an amount of data transferred to the buffer memory.

p.    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

q.    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '459 Application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '459 PCT and the '459 EP and (ii) the '459 ISR, the '459 References, the '459 EP SSR, and the '459 EP References. That is, at least Petersen, Brown, and Sherer and the '459 assignee and prosecution counsel knew of the similarity in disclosure between the '459 and '872 Patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

r.    However, neither the co-pendency of the '459 Application, the '459 PCT, or the '459 EP, nor the '459 ISR the '459 References, the '459 EP SSR, or the '459 EP References were disclosed in the '872 Prosecution.

s.    The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, the '459 Rejections, the '459 References, the '459 EP SSR, and the '459 EP References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of

any apparent other reason for their non-disclosure.

<u>The '752 Patent, PCT, and EP Applications</u>

t.      The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '752 Patent.

u.      The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and Lai-Chin Lo) and the same assignee as the '872 Application.

v.      The '752 PCT was filed on September 17, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '752 Applications. The '752 EP, based on the '752 PCT, was filed on September 17, 1993.


w.      The '872 Application was reviewed by a different examiner than the '752 Application, the '752 PCT, and the '752 EP.

x.      The disclosures of the '872 and '752 Patents overlap to a significant extent.

y.      At least the following '752 References reviewed by the '752 examiner were material to but not disclosed during prosecution of the '872 Patent: Yamamoto, Kozlik, Francisco, Chiu, and Fischer.

z.      All of these references relate to the limitations of the '872 claims that call for supplying a signal. Yamamoto, Kozlik, and Fischer relate to the limitations of the '872 claims that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '872 claims that call for a network interface means. Kozlik, Chiu, and Fischer relate to the limitations of the '872 claims that call for transferring data of frames.

aa. While the '872 prosecution was pending, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited again to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

bb. The '752 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

cc. At least Petersen, the '752 assignee, and the prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

dd. At least Petersen, the assignee, and the prosecution counsel of the '752 Application knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '752 Application. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '752 PCT and the '752 EP and (ii) the '752 Rejections, the '752 ISR, and the '752 References. That is, at least Petersen, and the '752 assignee, and prosecution counsel knew of the similarity in disclosure between the '872 and '752 disclosures, and at least the '752 assignee and prosecution counsel knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

ee. However, neither the co-pendency of the '752 Application, the '752 PCT, and the '752 EP nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '872 Prosecution.

ff. The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in

59

information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '406 Patent and PCT Applications

gg.     The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

hh.     The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown,) and the same assignee as the '872 Application.

ii.     The '406 PCT was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee as the '872 and '406 Applications.

jj.     The '872 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

kk.     The disclosures of the '872 and '406 Patents overlap to a significant extent.

ll.     On November 9, 1993 and the April 26, 1994 the '406 examiner issued rejections (the '406 Rejections) of the '406 Application.

mm.     At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during, prosecution of the '872 Patent: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken); 4,841,435 (Papenberg); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); and 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively the '406-872 References).

nn.     All of the '406-872 References reviewed by the '406 examiner were material to but not disclosed during prosecution of the '872 Patent.

oo.     These references relate to the limitations of the '872 Patent that call for supplying a signal. Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, and Nguyen relate to the limitations of the '872 Patent that call for a buffer memory. Benken relates to the limitations of the '872 Patent that call for transferring data of frames. Benken and Banks relate to the limitations of the '872 Patent that call for a network interface device. Benken relates to the limitations of the '872 Patent that call for transmit descriptors.

pp.     While the '872 prosecution was ongoing, all ten of the '406-872 References were cited again to at least the assignee and prosecution counsel of the '406 Application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR). These references were considered by the searching authority as relevant and/or invalidating.

qq.     The '406-872 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

rr.     At least Petersen, Brown, and the '406 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '872 Patent.

ss.     At least Petersen, Brown, and the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of the copendency of the '406 Application. At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the co-pendency of the '406 PCT, and (ii) the '406 Rejections, the '406 ISR, and the '406-872 References. That is, at least Petersen, Brown, and the '406 assignee and prosecution counsel

knew of the similarity in disclosure between the '872 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-872 References relevant to the '406 Application and the '406 PCT, and had twice rejected the '406 Application.

tt.     However, neither the co-pendency of the '406 Application and the '406 PCT, nor the '406 Rejections, the '406 ISR, and the '406-872 References were disclosed in the '872 Prosecution.

uu.     The '406 Application, the '406 PCT, the '406 Rejections, and the '406-872 References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

<u>The '627 Patent and PCT Applications</u>

vv.     The Patentee committed further acts of inequitable conduct during the prosecution of the '872 Patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 Patent).

ww.     Application No. 08/113,417 (the '627 Application), which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 Application (collectively the '627 Applicants).

xx.     PCT Application PCT/US1994/09723 (the '627 PCT) was filed on August 24, 1994 and claims priority to the '627 Application by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 and '627 Applications.

yy.    The '872 Application was reviewed by a different examiner than the '627 Application and the '627 PCT.

zz.    On December 19, 1994, the '627 examiner issued a rejection of the '627 Application.

aaa.    At least the following references were reviewed by the '627 examiner and were material to, but not disclosed during, the prosecution of the '872 Patent: 4,131,940 (Moyer); 4,447,878 (Kinnie); 4,654,781 (Schwartz); 4,663,732 (Robinson); 4,672,570 (Benken); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671 (Kelly); 5,185,876 (Nguyen); and 5,274,763 (Banks) (collectively the '627-872 References).

bbb.    The '627 Applicant cited ten of the '627-872 References (Kinnie, Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in an Information Disclosure Statement filing of February 7, 1994 ('627 IDS).

ccc.    The '627-872 References relate to the limitations of the '872 claims that call for supplying a signal. Moyer, Robinson, Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, and Nguyen relate to the limitations of the '872 claims that call for a buffer memory. Benken relates to the limitations of the '872 claims that call for transferring data of frames. Benken and Pleva relate to the limitations of the '872 claims that call for a network interface device. Benken relates to the limitations of the '872 claims that call for transmit descriptors.

ddd.    While the '872 prosecution was pending, seven of the '627-872 References (Vo, Benken, Moyer, Schwartz, Hirasawa, Robinson, and Banks) were cited again to at least the assignee and prosecution counsel of the '627 Application in the February 13, 1995 '627 PCT International Search Report (the '627 ISR). At least Vo, Benken, Moyer, and Banks

were identified by the searching authority as of particular relevance.

eee.     The '627-872 References would have been material because the features
of the claims of the '872 Application were disclosed by, inherent in, or
obvious in light of one or more of these references.

fff.     All of the '627 Applicants had a duty of candor in the prosecution that led
to the '872 Patent.

ggg.     All of the '627 Applicants knew of facts sufficient to establish the
materiality to the '872 prosecution of the co-pendency of the '627
Application. At least the '627 assignee and prosecution counsel knew of
facts sufficient to establish the materiality to the '872 prosecution of (i)
the '627 PCT, (ii) the December 19, 1994 Rejection, and (iii) the '627
IDS, '627 ISR, and '627-872 References. That is, at least the '627
assignee and prosecution counsel knew that the '627 examiner had found
the '627-872 References relevant to the '627 Application and the '627
PCT and had twice rejected the '627 Application.

hhh.     However, neither the co-pendency of the '627 Application and the '627
PCT, nor the '627 Rejections, the '627 ISR, and the '627-872 References
were disclosed in the '872 Prosecution.

iii.     The '627 Application, the '627 PCT, the '627 Rejections, the '627 ISR,
and the '627-872 References were therefore concealed from the examiner
in the '872 Prosecution with knowledge of their materiality and, in
information and belief, with intent to deceive, due to their high materiality
and the lack of an apparent other reason for their non-disclosure.

            The '874 Patent, PCT, and EP Applications

jjj.     The Patentee committed further acts of inequitable conduct during the
prosecution of the '872 Patent by failing to disclose the applications,
rejections, and references related to the '874 Patent.

64

kkk.   The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '872 Application.

lll.   The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '874 Application and '872 Application.

mmm. The '872 Application was reviewed by a different examiner than the '874 Application, the '874 PCT and '874 EP.

nnn.   The disclosures of the '872 and '874 Patents overlap to a significant extent.

ooo.   At least the following references reviewed by the '874 examiner were material to, but not disclosed during, the prosecution of the '872 Patent: U.S. Patents 3,905,025 (Davis); 4,349,872 (Fukasawa); 4,807,117 (Itoku); 4,847,752 (Akashi); 4,987,535 (Takayama); 5,146,595 (Fujiyama); 5,161,228 (Yasui); 5,179,704 (Jibbe); 5,193,195 (Miyazaki); 5,283,904 (Carson), and 5,349,667 (Kaneko) (collectively the '874-872 References).

ppp.   On September 20, 1994 and May 19, 1995, the '874 examiner issued rejections (the '874 Rejections) of the '874 Application.

qqq.   The '874-872 references relate to the limitations of the '872 Patent that call for supplying a signal. Davis, Fukasawa, Akashi, Takayama, Miyazaki, Carson, and Kaneko relate to the limitations of the '872 Patent that call for a buffer memory.

rrr.   While the '872 prosecution was pending, three of the '874-872 References (Akashi, Takayama, and Fukasawa) were cited again to at

least the assignee and prosecution counsel of the '874 Application in the August 1, 1994 '874 PCT International Search Report (the '874 ISR). These references were identified again by the searching authority as of particular relevance.  Likewise, while the '872 Application was pending, two additional '874-872 References (Yasui and Jibbe) were cited again to at least the assignee and prosecution counsel of the '874 Application in the June 19, 1995 '874 PCT Preliminary Examination Report (the '874 PCT Exam).

sss.     These '874-872 References would have been material because the features of the claims of the '872 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

ttt.     At least Petersen and the '874 assignee and prosecution had a duty of candor in the prosecution that led to the '872 Patent.

uuu.    At least Petersen and the '874 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '872 prosecution of the co-pendency of the '874 Application. At least the '874 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '872 prosecution of (i) the copendency of the '874 PCT and the '874 EP and (ii) the '874 ISR, the '874 PCT Exam, and the '874-872 References. That is, least Petersen and the '874 assignee and prosecution counsel knew of the similarity in disclosure between the '872 and '874 disclosures, and the '874 assignee and prosecution counsel knew that the '874 examiner had found the '874-872 References relevant to the '874 Application and the '874 PCT, and had twice rejected the '874 Application.  However, neither the co-pendency of the '874 Application and the '874 PCT, '874 EP, nor the '874 Rejections, the '874 ISR, the '874 PCT Exam, and the '874-872 References were disclosed in the '872

Prosecution.  The '874 Application, the '874 PCT, the '874 EP, the '874

Rejections, the '874 ISR, the '874 PCT Exam, and the '874-872

References were therefore concealed from the examiner in the '872

Prosecution with knowledge of their materiality and, on information and

belief, with intent to deceive, due to their high materiality and the lack of

an apparent other reason for their non-disclosure.

<u>The '313 Patent, PCT, and EP Applications</u>

vvv.   The Patentee committed inequitable conduct during the prosecution of the

'872 Patent by failing to disclose the applications, rejections, and

references related to the '313 Patent.

www.   Application No. 07/921,519 (the '313 Application), which ultimately led

to the '313 Patent, was filed on the same date by the same counsel on

behalf of the same named inventors (Peterson, Sherer, and Brown) and

the same assignee as the '872 Application (collectively, the '313

Applicants).

xxx.   PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to

the '313 Application (having substantially the same disclosure) and was

filed on July 27, 1993, by the same counsel on behalf of the same named

inventors (Peterson, Sherer, and Brown) and the same assignee as the

'872 Application. The European Patent Application EP0696462 (the '313

EP) based on the '313 PCT was filed on February 25, 1994, and lists all

three of the named inventors listed in the '872 Application.

yyy.   The '872 Application was reviewed by a different examiner than the '313

Patent, PCT, EP applications.

zzz.   On September 21, 1993, the '313 Application received a Notice of

Allowance in which the examiner cited U.S. Patent No. 4,672,570

(Benken).

aaaa.  Although the '872 Applicants cited the copendency of the '313 Application upon the filing of their October 11, 1994 Response to an Office Action, the '872 Applicants did not disclose to the examiner of the '872 Application either the September 21, 1993 Allowance of the '313 Patent or the Benken reference.

bbbb.  The '872 and '313 Patents' disclosures overlap to a significant extent, as evidenced by the '872 Applicants' disclosure of the '313 Application as a related copending application.

cccc.  The Benken reference was material to, but not disclosed during, prosecution of the '872 Application. The Benken reference discloses various limitations of the claims of the '872 Application, such as generating a signal, generating an interrupt, a buffer memory, network interface logic, host interface logic, transmit descriptor logic, and download logic.

dddd.  On November 26, 1993, during the prosecution of the '872 Patent, the following references were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,672,570 (Benken), 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

eeee.  The '313 ISR References were material to, but not disclosed during, the prosecution of the '872 Application.  The '313 ISR References relate to the limitations of the '872 Patent.  For example, Harris relates to the limitations of the '872 Patent that call for a buffer memory, supplying a signal, and network interface means. Schwan relates to the limitations of the '872 Patent that call for a buffer memory and supplying a signal. Farrell relates to the limitations of the '872 Patent that call for a buffer memory, network interface means, and supplying a signal.

ffff.   On May 2, 1994, during the prosecution of the '872 Patent, the European

        Patent Office issued a Supplemental European Search Report for the '313

        EP ('313 EP SSR) that cited U.S. Patent No. 4,947,366 (Johnson) as a

        reference that was "particularly relevant if taken alone."

gggg.   The Johnson reference was material to, but not disclosed during, the

        prosecution of the '872 Application.  For example, Johnson relates to the

        limitations of the '872 Patent that call for a buffer memory, supplying an

        indication signal, and parallel read and write operations.

hhhh.   All of the '313 Applicants were participants in the prosecutions of the

        '313 Patent and were persons with a duty of candor in the prosecution that

        led to the '872 Patent.

iiii.   The '313 Applicants knew of the materiality to the '872 prosecution of (i)

        the Benken reference, (ii) the co-pendency of the '313 PCT and '313 EP

        Applications, (iii) the '313 ISR and '313 EP SSR, and (iv) the '313 ISR

        and Johnson references, yet failed to disclose any of these actions or

        references in the '872 Prosecution.

jjjj.   The (i) Benken reference, (ii) co-pendency of the '313 PCT and '313 EP

        Applications, (iii) '313 ISR and '313 EP SSR, and (iv) '313 ISR and

        Johnson references were therefore concealed from the examiner in the

        '872 Prosecution by the '313 Participants with knowledge of their

        materiality and, on information and belief, with an intent to deceive, due

        to their high materiality and the lack of any apparent other reason for its

        non-disclosure.

                        The '782 Patent Application

kkkk.   The Patentee committed further inequitable conduct during the

        prosecution of the '872 Patent by failing to disclose the application,

        rejections, and references related to U.S. Patent 5,412,782 (the '782

Patent).

llll.    Application No. 07/907,946 (the '782 Application), which ultimately led
         to the '782 Patent, was filed on July 2, 1992, by prosecution attorney Eric
         H. Willgohs of Townsend and Townsend on behalf of one of the same
         named inventors (Paul W. Sherer) and the same assignee as the '872
         Application.

mmmm.  The '872 Application was reviewed by a different examiner than the
         '782 Application.

nnnn.   The '872 and '782 Patents' disclosures relate to substantially the same
         subject matter.  For example, the '782 Patent discloses "adjusting the TX
         start threshold to an amount larger than the packet, so transmission will
         not begin until the packet is completely copied into the adapter" and that
         "the adapter is allowed to begin packet transmission before the packet is
         completely transferred from the host to the adapter, which further reduces
         latency."  These disclosures directly relate to the heart of the alleged
         invention claimed in the '872 Patent.

oooo.   At least the following references were reviewed by the '782 examiner and
         were material to, but not disclosed during, prosecution of the '872 Patent:
         U.S. Patents 4,768,190 (Giancarlo), 5,210,829 (Bitner), and 5,121,479
         (O'Brien) (collectively the '782 References).

pppp.   On January 14, 1994 and July 7, 1994, the '752 examiner issued
         rejections (the '782 Rejections) of the '782 Application.

qqqq.   Giancarlo relates to the limitations of the '872 Patent that call for
         supplying a signal, a buffer memory, network interface means, and
         transferring data of frames. O'Brien relates to supplying a signal and a
         buffer memory.  Bitner relates to supplying a signal and underrun control
         logic.

rrrr. The '782 assignee was a participant in the prosecution of the '782 Patent and had a duty of candor in the prosecution that led to the '872 Patent.

ssss. At least the '782 assignee knew of facts sufficient to establish the materiality of the '782 References and the '782 Rejections. That is, the assignee knew of the similarity in disclosure between the '872 and '782 disclosures, and at least the '782 assignee knew that the '782 References had been cited in the '782 Application.

tttt. However, the copendency of the '782 Application, the '782 Rejections, and the '782 References were not disclosed in the '872 Prosecution.

uuuu. The '782 Application, the '782 Rejections, and the '782 References were therefore concealed from the examiner in the '872 prosecution by the '782 assignee with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

Intel 82586 local area network coprocessor

vvvv. Intel 82586 local area network coprocessor and the documentation describing it ("the Intel 82586") is material prior art as defined by 37 C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-3 Invalidity Contentions filed June 4, 2010 (hereby incorporated by reference as if more fully set forth herein), the Intel 82586 and the documentation describing it separately and collectively invalidates all of the asserted claims in the '872 Patent. Accordingly, a reasonable examiner would have found that the Intel 82586 and the documentation describing it, alone or in combination with other information, was material to the prosecution of the '872 Patent because, at a minimum, it established a prima facie case of unpatentability for all claims in the '872 Patent.

wwww.  Further, the Intel 82586 was known by the inventors, their counsel, and 3Com (collectively "Applicants") to be prior art material to the application which led to the '872 Patent, because the Intel 82586 is recited as relevant prior art in the Background of the Invention section of the '872 Application.

xxxx.  On information and belief, some or all of Applicants had full knowledge of the operation and features of the Intel 82586, because they were able to summarize certain aspects of the operations and features of the Intel 82586 in the Background Section of the '872 Patent.

yyyy.  The prosecution history  of the '872 Patent demonstrates that Applicants withheld the source of their information concerning the operation and functionality of the Intel 82586 from the PTO during the filing and prosecution of the '872 Application because only very limited disclosure was made of the Intel 82586 chip in the background of the '872 Patent and no documentation describing its features or functionality was provided to the PTO, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '872 Patent.

zzzz.  As is set forth more fully in Defendants' Invalidity Contentions, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '872 Patent.

aaaaa.  A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability for the '872 Application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation

demonstrating these inconsistencies but withheld by some or all of Applicants, was not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

bbbbb. The prosecution history of the '872 Patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of the prior art, and specifically the features and operation of the Intel 82586.

ccccc. The Applicants obtained allowance of claims then pending in the '872 Application as a result of not fully disclosing the Intel 82586 and withholding documentation concerning its features and functionality, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

ddddd. The '872 Patent is therefore unenforceable due to inequitable conduct.

eeeee. On information and belief, there is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '872 Patent to issue.

fffff. At least some of the above identified references that were not cited during the prosecution of the '872 Patent were not cumulative to the prior art made of record during the prosecution of the '872 Patent.

ggggg. The references identified in the foregoing paragraphs 85(b)-(fffff), in addition to being material to the prosecution of the '872 Patent as stated herein, are further material as invalidating the prior art with respect to the '872 Patent as set forth more fully in Defendants' Local Patent Rule 3-3 Invalidity Contentions served on Plaintiff on June 4, 2010, the contents of

which are incorporated by reference in this answer as if more fully set forth herein.

23.     As its eleventh additional defense to USEI's allegations that it has infringed the '094 Patent, Acer Defendants allege that the '094 Patent is unenforceable by reason of the patentee's inequitable conduct during the prosecution of that patent. In particular, Acer Defendants allege that:

a.     Application No. 08/715,253 (the '094 Application), which ultimately led to the '094 Patent, was filed as a continuation of abandoned Application No. 08/716,253 (the '253 Application), which itself was a continuation of the '872 Application, on September 16, 1996 on behalf of named inventors Brian Peterson, W. Paul Sherer, and David R. Brown, and named assignee, 3Com Corporation (for ease of reference, the prosecution of the '253 Application will be considered as synonymous with the prosecution of the '094 Application). Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy was identified as counsel for the owner.

The '459 Patent, PCT, and EP Applications

b.     The Patentee committed inequitable conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '459 Patent.

c.     The '459 Application which ultimately led to the '459 Patent, was previously filed by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '094 Application.

d.     PCT Application PCT/US1993/07056 (the '459 PCT) was filed on July 27, 1993 and claims priority to the '459 Application by the same counsel on behalf of the same inventors (Petersen, Brown, and Sherer) and the same named assignee as the '094 Application and the '459 Application.

The European Patent Application EP0607412 (the '459 EP) was filed on February 24, 1994 based on the '459 PCT.

e.    The '094 Application was reviewed by a different examiner than the '459 Application, the '459 PCT, and the '459 EP.

f.    The disclosures of the '094 and '459 Patents overlap to a significant extent.

g.    In the Preliminary Amendment of March 3, 1995, the '094 Applicants added claims directed to CSMA/CD. In the Response of March 2, 1994, during prosecution of the '872 Patent which is the parent of the '094 Patent, at least the prosecution counsel of the '094 Application argued that:

> In particular, the invention as recited in the new claims is limited to a CSMA/CD network adapter. This kind of network is fundamentally different from the FDDI network of Firoozmand, *et al.* In the FDDI environment, no transmissions are initiated until the transmitting station receives the token from the network. Thus, Firoozmand, *et al.* will not begin transmitting a first frame while the transmitting station has the token, unless at least one entire frame is present in the transmit buffer. Firoozmand, *et al.* does not use the transmit threshold determination for a first frame in a transmission sequence. Rather, this threshold determination is only used in succeeding frames. See Firoozmand, *et al.* column 10, line 53-68. (*emphasis added*)

h.    At least the following references reviewed by the '459 examiner were material to, but not disclosed during, the prosecution of the '094 Patent: U.S. Patents 4,907,225 (Gulick 2) and 5,101,477 (Casper) (collectively the '459-094 References). These references were cited to the '872 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

i.    The '459-094 References relate to the limitations of the '094 Patent that

call for supplying a signal, a buffer memory, a network interface device, a frame transmission task, and a threshold determination based on a comparison of a count of data transferred and a programmable threshold value.

j.     The '459 References (Gulick 1, Gulick 2, and Casper) were cited again to at least the assignee and prosecution counsel of the '459 Application in the November 15, 1993 of the '459 International Search Report (the '459 ISR).

k.     These '459 References would have been material because the limitations of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references. For example, these references are related to using the threshold determination for any frame. The '094 Examiner would have, therefore, considered these references highly material because they could have been combined with Firoozmand et al. or other '094 references to make obvious the claims of the '094 Application directed to CSMA/CD.

l.     During prosecution of the '459 EP, the following references, inter alia, were cited: "Early Interrupt for Disk Controller," IBM Technical Disclosure Bulletin, vol. 25, no. 9, February 1983, p. 4703 (IBM) and 5,179,709 (Bailey) (collectively the '459 EP References).  These references were cited to the '872 Applicants in the April 27, 1994 Supplementary European Search Report ('459 EP SSR).

m.     These references relate to the limitations of the '872 Patent. IBM relates to the limitations of the '872 Patent that call for an alterable threshold value. Bailey relates to the limitations of the '872 Patent that call for a buffer memory and making a threshold determination based on a comparison of a count of data transferred into the buffer memory with a

76

threshold value.

n.    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '094 Patent.

o.    At least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '094 prosecution of the co-pendency of the '459 Application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of the '459 PCT and the '459 EP and (ii) the '459 ISR and the '459 References, the '459 EP SSR, and the '459 EP References. That is, at least Petersen, Brown, and Sherer, and the '459 assignee and prosecution counsel knew of the similarity in disclosure between the '459 and '094 Patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 Application and the '459 PCT.

p.    However, neither the co-pendency of the '459 Application, the '459 PCT, or the '459 EP, nor the '459 ISR the '459 References, the '459 EP SSR, or the '459 EP References were disclosed in the '094 Prosecution.

q.    The '459 Application, the '459 PCT, the '459 EP, the '459 ISR, the '459 Rejections, the '459 References, the '459 EP SSR, and the '459 EP References were therefore concealed from the examiner in the '872 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

The '752 Patent, PCT, and EP Applications

r.    The Patentee committed further acts of inequitable conduct during the

prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '752 Patent.

s.    The '752 Application which ultimately led to the '752 Patent, was filed on September 18, 1992 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '094 Application.

t.    The '752 PCT was filed on September 17, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '094 and '752 Applications.  The '752 EP, based on the '752 PCT, was filed on September 17, 1993.

u.    The '094 Application was reviewed by a different examiner than the '459 Application, the '752 PCT, and the '752 EP.

v.    The disclosures of the '094 and '752 Patents overlap to a significant extent.

w.    At least the following '752 References reviewed by the '752 examiner were material to but not disclosed during prosecution of the '094 Patent: Yamamoto, Kozlik, Francisco, Chiu, and Fischer.

x.    All references relate to the limitations of the '094 Patent that call for supplying a signal. Yamamoto, Kozlik, and Fischer relate to the limitations of the '094 Patent that call for a buffer memory. Yamamoto, Kozlik and Chiu relate to the limitations of the '094 Patent that call for a network interface device. Kozlik, Chiu, and Fischer relate to the limitations of the '094 Patent that call for a frame transfer task.

y.    Three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited again to at least the assignee and prosecution counsel of the '752 Application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

z.    The '752 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

aa.    At least Petersen, the '752 assignee, and prosecution counsel had a duty of candor in the prosecution that led to the '094 Patent.

bb.    At least Petersen, the assignee, and the prosecution counsel of the '752 Application knew of facts sufficient to establish the materiality to the '094 prosecution of the co-pendency of the '752 Application. At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of the '752 PCT, and the '752 EP and (ii) the '752 Rejections, the '752 ISR, and the '752 References. That is, at least Petersen, the '752 assignee, and prosecution counsel knew of the similarity in disclosure between the '094 and '752 disclosures, and at least the '752 assignee and prosecution counsel knew that the '752 examiner had found the '752 References relevant to the '752 Application and the '752 PCT, and had twice rejected the '752 Application.

cc.    However, neither the co-pendency of the '752 Application, the '752 PCT, and the '752 EP, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '094 Prosecution.

dd.    The '752 Application, the '752 PCT, the '752 EP, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '094 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

<u>The '406 Patent and PCT Applications</u>

ee.    The Patentee committed inequitable conduct during the prosecution of the

'094 Patent by failing to disclose the applications, rejections, and references related to the '406 Patent.

ff.    The '406 Application, which ultimately led to the '406 Patent was filed on September 18, 1992 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown,) and the same assignee as the '094 Application.

gg.    The '406 PCT was filed on September 17, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and David R. Brown) and the same assignee as the '094 and '406 Applications.

hh.    The '094 Application was reviewed by a different examiner than the '406 Application and the '406 PCT.

ii.    The disclosures of the '094 and '406 Patents overlap to a significant extent.

jj.    At least the following references were reviewed by the '406 examiner were material to, but not disclosed, during the prosecution of the '094 Patent: U.S. Patents 4,447,878 (Kinnie); 4,506,345 (Boothroyd); 4,672,570 (Benken); 4,841,435 (Papenberg); 4,959,779 (Weber); 4,992,931 (Hirasawa); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,170,477 (Potter); 5,179,671 (Kelly); and 5,185,876 (Nguyen); 5,274,763 (Banks); and 5,276,891 (Patel) (collectively the '406-094 References).

kk.    These references relate to the limitations of the '094 Patent that call for supplying a signal. Kinnie, Boothroyd, Benken, Papenberg, Chisholm, Brooks, Kinoshita, Vo, Potter, and Nguyen relate to the limitations of the '094 Patent that call for a buffer memory. Benken relates to the limitations of the '094 Patent that call for a frame transmission task. Benken and Banks relate to the limitations of the '094 Patent that call for

a network interface device. Benken relates to the limitations of the '094
Patent that call for a descriptor for a frame.

ll.    Ten of the '406-094 References (Vo, Benken, Kinoshita, Chisholm,
Weber, Kinnie, Brooks, Pleva, Kelly, and Nguyen) were cited again to at
least the assignee and prosecution counsel of the '406 Application in the
January 11, 1994 '406 PCT International Search Report (the '406 ISR).
These references were considered by the searching authority as relevant
and/or invalidating.

mm.    The '406-094 References would have been material because the features
of the claims of the '094 Application were disclosed by, inherent in, or
obvious in light of one or more of these references.

nn.    At least Petersen, Brown, and the '406 assignee and prosecution counsel
had a duty of candor in the prosecution that led to the '094 Patent.

oo.    At least Petersen, Brown, and the '406 assignee and prosecution counsel
knew of facts sufficient to establish the materiality to the '094 prosecution
of the copendency of the '406 Application. At least the '406 assignee and
prosecution counsel knew of facts sufficient to establish the materiality to
the '094 prosecution of (i) the co-pendency of the '406 PCT, and (ii) the
'406 Rejections, the '406 ISR, and the '406-094 References. That is, at
least Petersen, Brown, and the '406 assignee and prosecution counsel
knew of the similarity in disclosure between the '094 and '406 disclosures,
and at least the '406 assignee and prosecution counsel knew that the '406
examiner had found the '406-094 References relevant to the '406
Application and the '406 PCT, and had twice rejected the '406
Application.

pp.    However, neither the co-pendency of the '406 Application and the '406
PCT, nor the '406 Rejections, the '406 ISR, and the '406-094 References

were disclosed in the '094 Prosecution.

qq.   The '406 Application, the '406 PCT, the '406 Rejections, and the '406-094 References were therefore concealed from the examiner in the '094 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

### The '627 Patent and PCT Applications

rr.   The Patentee committed further acts of inequitable conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '627 Patent.

ss.   The '627 Application, which ultimately led to the '627 Patent was a continuation-in-part application of the '406 Patent and was filed on August 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '094 Application.

tt.   The '627 PCT was filed on August 24, 1994 and claims priority to the '627 Application by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '094 and '752 Applications.

uu.   The '094 Application was reviewed by a different examiner than the '627 Application and the '627 PCT.

vv.   On December 19, 1994, and July 27, 1995, the '627 examiner issued rejections (the '627 Rejections) of the '627 Application.

ww.   At least the following references reviewed by the '627 examiner were material to, but not disclosed during, the prosecution of the '094 Patent: 4,131,940 (Moyer); 4,447,878 (Kinnie); 4,455,606 (Cushing); 4,654,781 (Schwartz); 4,663,732 (Robinson); 4,667,305 (Dill); 4,672,570 (Benken); 4,959,779 (Weber); 5,014,186 (Chisholm); 5,058,051 (Brooks);

5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); 5,179,671 (Kelly); 5,185,876 (Nguyen); and 5,274,763 (Banks); and 5,297,242 (Miki) (collectively the '627-094 References).

xx.   The '627 Applicant cited ten of the '627-094 References (Kinnie, Benken, Weber, Chisholm, Brooks, Kinoshita, Pleva, Vo, Kelly, Nguyen) in an Information Disclosure Statement filing of February 7, 1994 ('627 IDS).

yy.   The '627-094 references relate to the limitations of the '094 Patent that call for supplying a signal. Moyer, Cushing, Robinson, Dill, Miki, Kinnie, Benken, Chisholm, Brooks, Kinoshita, Vo, and Nguyen relate to the limitations of the '094 Patent that call for a buffer memory. Benken relates to the limitations of the '094 Patent that call for a frame transmission task. Benken, Brooks, Pleva, and Banks relate to the limitations of the '094 Patent that call for a network interface device. Benken relates to the limitations of the '094 Patent that call for a descriptor for a frame.

zz.   During the prosecution of the '094 Patent, seven of the '627-094 References (Vo, Benken, Moyer, Schwartz, Hirasawa, Robinson, and Banks) were cited again to at least the assignee and prosecution counsel of the '627 Application in the February 13, 1995 '627 PCT International Search Report (the '627 ISR). At least Vo, Benken, Moyer, and Banks were identified by the searching authority as of particular relevance.

aaa.   The '627-094 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

bbb.   All of the '627 Applicants had a duty of candor in the prosecution that led to the '094 Patent.

ccc.   All of the '627 Applicants knew of facts sufficient to establish the

materiality to the '094 prosecution of the co-pendency of the '627 Application. At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of (i) the '627 PCT, (ii) the '627 Rejections, and (iii) the '627 IDS, '627 ISR, and '627-094 References. That is, at least the '627 assignee and prosecution counsel knew that the '627 examiner had found the '627-094 References relevant to the '627 Application and the '627 PCT, and had twice rejected the '627 Application.

ddd. However, neither the co-pendency of the '627 Application and the '627 PCT, nor the '627 Rejections, the '627 ISR, and the '627-094 References were disclosed in the '094 Prosecution.

eee. The '627 Application, the '627 PCT, the '627 Rejections, the '627 ISR, and the '627-094 References were therefore concealed from the examiner in the '094 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

The '874 Patent, PCT, and EP Applications

fff. The Patentee committed inequitable conduct during the prosecution of the '094 Patent by failing to disclose the applications, rejections, and references related to the '874 Patent.

ggg. The '874 Application, which ultimately led to the '874 Patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '094 Application.

hhh. The '874 PCT claims priority to the '874 Application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the two same named inventors (Brian

Peterson and W. Paul Sherer) and the same assignee as the '874
Application and '094 Application.  The '874 EP, based on the '874 PCT,
was filed on July 13, 1995.

iii.    The 094 Application was reviewed by a different examiner than the '874
Application, the '874 PCT, and the '874 EP.

jjj.    The disclosures of the '094 and '874 Patents overlap to a significant
extent.

kkk.    In the Preliminary Amendment of March 3, 1995, the '094 Applicants
added claims directed to CSMA/CD. In the Response of March 2, 1994,
during prosecution of the '872 Patent which is the parent of the parent of
the '094 Patent, at least the prosecution counsel of the '094 Application
argued that:

> In particular, the invention as recited in the new
> claims is limited to a CSMA/CD network adapter.
> (*emphasis added*)

lll.    At least the following references reviewed by the '874 examiner were
material to, but not disclosed during, the prosecution of the '094 Patent:
U.S. Patents 3,905,025 (Davis); 4,349,872 (Fukasawa); 4,631,659
(Hayn); 4,768,149 (Konopik); 4,807,117 (Itoku); 4,847,752 (Akashi);
4,961,161 (Kojima); 4,987,535 (Takayama); 5,146,595 (Fujiyama);
5,161,228 (Yasui); 5,179,704 (Jibbe); 5,193,195 (Miyazaki); 5,283,904
(Carson), and 5,349,667 (Kaneko) and articles, Chiang, Al, "An EtherStar
is Born", ESD: Magazine, Digital Design Publishing Company, March
1988; 1900 West Park Drive, Westborough, MA 01581; and EtherStar
Ethernet/Starlan Controller, Fujitsu MB86950, May, 1988 (collectively
the '874-094 References).

mmm. The Applicants also cited two of the '874-094 References (Chiang and

EtherStar) to the '874 Patent's examiner on January 5, 1996 in an Information Disclosure Statement ('874 IDS).

nnn.   The '874-094 References relate to the limitations of the '094 Patent that call for supplying a signal. Davis, Fukasawa, Konopik, Akashi, Takayama, Miyazaki, Carson, Chiang, and Etherstar relate to the limitations of the '094 Patent that call for a buffer memory. Chiang and Etherstar relate to the limitations of the '094 Patent that call for a network interface device. Chiang, Carson, and Etherstar relate to the limitations of the '094 Patent that call for frame transfer task and a CSMA/CD computer network.

ooo.   Three of the '874-094 References (Akashi, Takayama, and Fukasawa) were cited again to at least the assignee and prosecution counsel of the '874 Application in the August 1, 1994 '874 PCT International Search Report (the '874 ISR). These references were identified again by the searching authority as of particular relevance.  Likewise, while the '094 Application was pending, two additional '874-094 References (Yasui and Jibbe) were cited again to at least the assignee and prosecution counsel of the '874 Application in the June 19, 1995 '874 PCT Preliminary Examination Report (the '874 PCT Exam).

ppp.   These '874-094 References would have been material because the features of the claims of the '094 Application were disclosed by, inherent in, or obvious in light of one or more of these references.

qqq.   At least Petersen, Sherer, and the '874 assignee and prosecution counsel had a duty of candor in the prosecution that led to the '094 Patent.

rrr.   At least Petersen, Sherer, and the '874 assignee and prosecution counsel of knew of facts sufficient to establish the materiality to the '094 prosecution of the co-pendency of the '874 Application. At least the '874

assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '094 prosecution of (i) the co-pendency of the '874 PCT and the '874 EP and (ii) the '874 ISR and the '874-094 References. That is, at least Petersen, Sherer, and the '874 assignee and prosecution counsel knew of the similarity in disclosure between the '094 and '874 disclosures, and the '874 assignee and prosecution counsel knew that the '874 examiner had found the '874-094 References relevant to the '874 Application and the '874 PCT, and had twice rejected the '874 Application.

sss. However, neither the co-pendency of the '874 Application, the '874 PCT, and the '874 EP, nor the '874 Rejections, the '874 ISR, and the '874-094 References were disclosed in the '094 Prosecution.

ttt. The '874 Application, the '874 PCT, the '874 EP, the '874 Rejections, the '874 ISR, and the '874-094 References were therefore concealed from the examiner in the '094 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of an apparent other reason for their non-disclosure.

<u>The '313 Patent, PCT, and EP Applications</u>

uuu. The Patentee committed inequitable conduct during the prosecution of the '094 Patent by failing to disclose the references disclosed in the applications related to the '313 Patent.

vvv. Application No. 07/921,519 (the '313 Application), which ultimately led to the '313 Patent, was filed on July 28, 1992, by the same counsel on behalf of the same named inventors (Peterson, Sherer, and Brown) and the same assignee as the '094 Application (collectively, the '313 Applicants).

www. PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 Application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Sherer, and Brown) and the same assignee as the '094 Application. The European Patent Application EP0696462 (the '313 EP), based on the '313 PCT, was filed on February 25, 1994, and lists all three of the named inventors listed in the '094 Application.

xxx. On September 21, 1993, the '313 Application received a Notice of Allowance in which the examiner cited U.S. Patent No. 4,672,570 (Benken).

yyy. Although the '872 Applicants cited the copendency of the '313 Application during the prosecution of the '872 Patent, which is the parent of the '094 Patent, the '094 Applicants did not disclose to the examiner of the '094 Application the Benken reference.

zzz. The '094 and '313 Patents' disclosures overlap to a significant extent, as evidenced by the '094 Applicants' disclosure of the '313 Application as a related copending application in a parent application.

aaaa. The Benken reference was material to, but not disclosed during, prosecution of the '094 Application. The Benken reference discloses various limitations of the claims of the '094 Application, such as a buffer memory and transferring a data frame.

bbbb. On November 26, 1993, the following references were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,672,570 (Benken); 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

cccc. The '313 ISR References were material to, but not disclosed during, the prosecution of the '094 Application. The '313 ISR References relate to

the limitations of the '094 Patent.  For example, Harris relates to the limitations of the '094 Patent that call for a buffer memory, supplying a signal, and network interface logic. Schwan relates to the limitations of the '094 Patent that call for a buffer memory and supplying a signal. Farrell relates to the limitations of the '094 Patent that call for a buffer memory, network interface logic, and supplying a signal.

dddd.   On May 2, 1994, the European Patent Office issued a Supplemental European Patent Search Report for the '313 EP ('313 EP SSR) that cited U.S. Patent No. 4,947,366 (Johnson) as a reference that was "particularly relevant if taken alone."

eeee.   The Johnson reference was material to, but not disclosed during, the prosecution of the '094 Application.  For example, Johnson relates to the limitations of the '094 Patent that call for a buffer memory, supplying a signal, and parallel read and write operations.

ffff.   All of the '313 Applicants were participants in the prosecutions of the '313 Patent and were persons with a duty of candor in the prosecution that led to the '094 Patent.

gggg.   The '313 Applicants knew of the materiality to the '094 prosecution of the Benken reference, the Johnson reference, and the '313 ISR references, yet failed to disclose any of these actions or references in the '094 Prosecution.

hhhh.   The Benken reference, the Johnson reference, the '313 ISR References were therefore concealed from the examiner in the '094 Prosecution by the '313 Participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

## The '782 Patent Application

iiii.   The Patentee committed further inequitable conduct during the prosecution of the '094 Patent by failing to disclose the application, rejections, and references related to U.S. Patent 5,412,782 (the '782 Patent).

jjjj.   Application No. 07/907,946 (the '782 Application), which ultimately led to the '782 Patent, was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '094 Application (Sherer and the assignee collectively referred to as the '782 Applicants).

kkkk.   The '094 Application was reviewed by a different examiner than the '782 Application.

llll.   The '094 and '782 Patents' disclosures relate to substantially the same subject matter.  For example, the '782 Patent claims "receiving from said host computer and storing in said adapter receive buffer a remainder of said second packet, at least partially in parallel with transmitting said second packet through said transceiver from said adapter transmit buffer to said computer network communications media."  This disclosure directly relates to the heart of the alleged invention claimed in the '094 Patent.

mmmm.  At least the following references were reviewed by the '782 examiner and were material to, but not disclosed during, prosecution of the '094 Patent:  U.S. Patents 4,768,190 (Giancarlo), 5,210,829 (Bitner), and 5,121,479 (O'Brien) (collectively the '782 References).

nnnn.   On January 14, 1994 and July 7, 1994, the '752 examiner issued rejections (the '782 Rejections) of the '782 Application.

oooo.   Giancarlo relates to the limitations of the '872 Patent that call for
supplying a signal, a buffer memory, network interface means, and a
frame transmission task. O'Brien relates to supplying a signal and a
buffer memory.  Bitner relates to supplying a signal and detecting an
underrun condition.

pppp.   The '782 Applicants were participants in the prosecution of the '782
Patent and had a duty of candor in the prosecution that led to the '094
Patent.

qqqq.   The '782 Applicants knew of facts sufficient to establish the materiality
of the '782 References and the '782 Rejections.  That is, they knew of the
similarity in disclosure between the '094 and '782 disclosures, and at least
the '782 assignee knew that the '782 References had been cited in the
'782 Application.

rrrr.   However, the copendency of the '782 Application, the '782 Rejections,
and the '782 References were not disclosed in the '094 Prosecution.

ssss.   The '782 Application, the '782 Rejections, and the '782 References were
therefore concealed from the examiner in the '094 prosecution by the
'782 Applicants with knowledge of their materiality and, on information
and belief, with intent to deceive, due to their high materiality and the
lack of any apparent other reason for their non-disclosure.

Intel 82586 local area network coprocessor

tttt.   Intel 82586 local area network coprocessor and the documentation
describing it ("the Intel 82586") is material prior art as defined by 37
C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-
3 Inavalidity Contentions filed June 4, 2010 (hereby incorporated by
reference as if more fully set forth herein), the Intel 82586 and the
documentation describing it separately and collectively invalidates all of

the asserted claims in the '094 Patent.  Accordingly, a reasonable examiner would have found that the Intel 82586 and the documentation describing it, alone or in combination with other information, was material to the prosecution of the '094 Patent because, at a minimum, it established a prima facie case of unpatentability for all claims in the '094 Patent.

uuuu.  Further, the Intel 82586 was known by the inventors, their counsel, and 3Com (collectively "Applicants") to be prior art material to the application which led to the '094 Patent, because the Intel 82586 is recited as relevant prior art in the Background of the Invention section of the '094 Application.

vvvv.  On information and belief, some or all of Applicants had full knowledge of the operation and features of the Intel 82586, because they were able to summarize certain aspects of the operations and features of the Intel 82586 in the Background Section of the '094 Patent.

wwww.  The prosecution history  of the '094 Patent demonstrates that Applicants withheld the source of their information concerning the operation and functionality of the Intel 82586 from the PTO during the filing and prosecution of the '094 Application because only very limited disclosure was made of the Intel 82586 chip in the background of the '094 Patent and no documentation describing its features or functionality was provided to the PTO, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '094 Patent.

xxxx.  As is set forth more fully in Defendants' Invalidity Contentions, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete

and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '094 Patent.

yyyy.   A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability for the '094 Application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation demonstrating these inconsistencies but withheld by some or all of Applicants, was not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

zzzz.   The prosecution history  of the '094 Patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of the prior art, and specifically the features and operation of the Intel 82586.

aaaaa.  The Applicants obtained allowance of claims then pending in the '094 Application as a result of not fully disclosing the Intel 82586 and withholding documentation concerning its features and functionality, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

bbbbb.  The '094 Patent is therefore unenforceable due to inequitable conduct.

ccccc.  There is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '094 Patent to issue.

ddddd.  At least some of the above identified references that were not cited during the prosecution of the '094 Patent were not cumulative to the prior art made of record during the prosecution of the '094 Patent.

eeee.   The references identified in the foregoing paragraphs 86(b)-(ddddd), in

addition to being material to the prosecution of the '094 Patent as stated

herein, are further material as invalidating the prior art with respect to the

'094 Patent as set forth more fully in Defendants' Local Patent Rule 3-3

Invalidity Contentions served on Plaintiff on June 4, 2010, the contents of

which are incorporated by reference in this answer as if more fully set

forth herein.

## TWELFTH DEFENSE:
## LICENSE AND PATENT EXHAUSTION

24.     Some or all of Acer Defendants' accused products are licensed under the Patents-

in-Suit and/or subject to the doctrines of patent exhaustion and implied license.

## THIRTEENTH DEFENSE:
## FAILURE TO MITIGATE

25.     Plaintiff's claims are barred, in whole or in part, because it has failed to mitigate

its damages, if any.

## FOURTEENTH DEFENSE:
## UNAVAILABILITY OF INJUNCTIVE RELIEF

26.     Claims by Plaintiff for injunctive relief are barred as a matter of law because

Plaintiff has an adequate remedy at law for any claims included in the Complaint that Plaintiff

may ultimately prevail on.

## FIFTEENTH DEFENSE:
## PLAINTIFF CANNOT PROVE EXCEPTIONAL CASE

27.     Plaintiff cannot prove that this is an exceptional case justifying award of

attorney fees against Acer Defendants pursuant to 35 U.S.C. § 285.

## RESERVATION OF ADDITIONAL DEFENSES

Acer Defendants' investigation of their defenses is continuing, and Acer Defendants

expressly reserve the right to allege and assert any additional defenses under Rule 8 of the

Federal Rules of Civil Procedure, the patent laws of the United States and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case. Acer Defendants also expressly incorporate by reference herein all defenses pled by defendants in this action in their respective answers to the Complaint.

## ACER INC., ACER AMERICA CORP., AND GATEWAY INC.'S COUNTERCLAIMS

Counterclaimants Acer Inc., Acer America Corp. and Gateway, Inc. ("Counterclaimants") complains of counter-defendant U.S. Ethernet Innovations, LLC ("USEI") and alleges as follows:

## THE PARTIES

1.      Acer Inc. is a Taiwanese corporation, with a principal place of business at 8F, 88, Section 1, Hsin Tai Wu Road, Hsichih, Taipei 221, Taiwan. Acer America Corporation is a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of California, with a principal place of business at 333 West San Carlos Street, Suite 1500, San Jose, California 95110. Gateway, Inc. is also a wholly owned subsidiary of Acer, Inc., and is organized and existing under the laws of Delaware, with a principal place of business at 7565 Irvine Center Drive, Irvine, California 92618. Acer Inc., Acer America Corporation, and Gateway, Inc. will be referred to herein individually and collectively as the "Counterclaimants."

2.      USEI has alleged that it is a Texas limited liability corporation having a principal place of business in Tyler, Texas.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and the patent laws, 35 U.S.C. § 101 et seq. This Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. §§ 1331 and 1338(a). This Court has further subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1367(a).

4.      This court has personal jurisdiction over USEI as USEI filed suit against

Counterclaimants in this district and has purposefully availed itself of the protection of the courts of this District.

5.     While Counterclaimants do not concede that venue is proper in this district with respect to the action brought by USEI, should that action remain in this district, venue on these counterclaims is proper in this district under 28 U.S.C. § 1391(b) because USEI alleges that its principal place of business is located in this district.

## FIRST COUNTERCLAIM
## DECLARATORY JUDGMENT OF NO INFRINGEMENT

6.     There is an actual and live controversy between Counterclaimants and USEI as to the alleged infringement U.S. Patent Nos. 5,307,459 (the "'459 Patent"); 5,434,872 (the "'872 Patent"); 5,732,094 (the "'094 Patent"); and 5,299,313 (the "'313 Patent"), which can be redressed by a judgment of this Court.

7.     Counterclaimants are not infringing, have not infringed either by direct infringement, contributory infringement, or induced infringement, any claim of the '459, '872, '094 or '313 Patents.

8.     Counterclaimants have no intent to cause others to infringe any claim of the '459, '872, '094 or '313 Patents by using any of Counterclaimants products or methods.

9.     Each of Counterclaimants' products or methods accused in this action is capable of substantial uses that do not infringe any claim of the '459, '872, '094 or '313 Patents.

## SECOND COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY

10.     There is an actual and live controversy between Counterclaimants and USEI as to validity of the '459, '872, '094 and '313 Patents which can be redressed by a judgment of this Court.

11.     The claims of the '459, '872, '094 and '313 Patents are invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD COUNTERCLAIM
## DECLARATORY JUDGMENT OF UNENFORCEABILITY

12.     There is an actual and live controversy between Counterclaimants and USEI as to the enforceability of the '459, '872, '094 and '313 Patents which can be redressed by a judgment of this Court.

13.     Counterclaimants incorporate by reference their Ninth, Tenth and Eleventh Defenses to USEI's Complaint as if fully set forth herein.

14.     The claims of the '459, '872, '094 and '313 Patents are unenforceable in whole or in part by reasons of inequitable conduct, laches, waiver, estoppel, and/or unclean hands.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants respectfully request that this Court enter judgment in its favor that:

A.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,307,459;

B.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,434,872;

C.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,732,094;

D.     Counterclaimants are not infringing and has not infringed any claim of U.S. Patent No. 5,299,313;

E.     U.S. Patent No. 5,307,459 is invalid;

F.     U.S. Patent No. 5,434,872 is invalid;

G.     U.S. Patent No. 5,732,094 is invalid;

H.     U.S. Patent No. 5,299,313 is invalid;

I.     U.S. Patent No. 5,307,459 is unenforceable;

J.     U.S. Patent No. 5,434,872 is unenforceable;

K.     U.S. Patent No. 5,732,094 is unenforceable;

L.     U.S. Patent No. 5,299,313 is unenforceable;

M.     USEI's claims are dismissed in their entirety with prejudice;

N.     USEI take nothing by its Complaint against Acer Inc, Acer America Corp., and Gateway, Inc.;

O.     This is an exceptional case under 35 U.S.C. § 285 and Counterclaimants are entitled to recover its reasonable attorneys' fees and pre-judgment interest thereon; and

P.     Counterclaimants are entitled to recover its costs, and such other additional relief as the Court may deem just and proper under the circumstances.

### **JURY DEMAND**

Counterclaimants hereby demand a jury trial on all issues so triable.

Dated:  June 4, 2010            Respectfully submitted,

By: /s/ Steven S. Baik

Steven S. Baik
James H. Lin
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
sbaik@orrick.com
jlin@orrick.com

Eric H. Findlay
State Bar No. 00789886
FINDLAY CRAFT, LLP
6760 Old Jacksonville Highway
Suite 101
Tyler, TX 75703
Phone: 903-534-1100
Fax: 903-534-1137
efindlay@findlaycraft.com

Attorneys for Acer Defendants
ACER INC., ACER AMERICA
CORPORATION, and GATEWAY, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2010, I electronically filed the foregoing, DEFENDANTS

ACER INC., ACER AMERICA CORP., AND GATEWAY, INC.'S (1) FIRST AMENDED

ANSWER TO U.S. ETHERNET INNOVATIONS, LLC'S FIRST AMENDED COMPLAINT

FOR PATENT INFRINGEMENT AND (2) COUNTERCLAIMS, with the Clerk of Court using

the CM/ECF system, which will send notification of such filing via electronic mail to all counsel

of record.

                               /s/   Steven S. Baik
                               Steven S. Baik

OHS West:260928810.1