UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| U.S. ETHERNET INNOVATIONS, LLC, | § | Civil Action No. 6:09-cv-448-JDL |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | JURY TRIAL |
| | § | |
| ACER, INC., ACER AMERICA | § | |
| CORPORATION, APPLE, INC., ASUS | § | |
| COMPUTER INTERNATIONAL, ASUSTEK | § | |
| COMPUTER INC., DELL, INC., FUJITSU | § | |
| LTD., FUJITSU AMERICA, INC., | § | |
| GATEWAY, INC., HEWLETT-PACKARD | § | |
| COMPANY, SONY CORPORATION, SONY | § | |
| CORPORATION OF AMERICA, SONY | § | |
| ELECTRONICS, INC., TOSHIBA | § | |
| CORPORATION, TOSHIBA AMERICA, | § | |
| INC., and TOSHIBA AMERICA | § | |
| INFORMATION SYSTEMS, INC., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| ATHEROS COMMUNICATIONS, INC., | § | |
| INTEL CORPORATION,  MARVELL | | |
| SEMICONDUCTOR, INC., and NVIDIA | | |
| CORPORATION, | | |
| | | |
| Intervenors. | | |

**ATHEROS COMMUNICATIONS, INC.'S**
**AMENDED COMPLAINT IN INTERVENTION**

Atheros Communications, Inc.'s ("Atheros"), for its Complaint in Intervention against Plaintiff U.S. Ethernet Innovations, LLC ("USEI") pursuant to Federal Rule of Civil Procedure 24(c), and upon information and belief, states as follows:

## THE PARTIES

1.      Atheros Communications, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5480 Great America Parkway, Santa Clara, CA 95054.

2.      On information and belief, Plaintiff USEI is a Texas limited liability company with a principal place of business in Tyler, Texas.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these claims under, without limitation, 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and venue for these Counterclaims is proper in this district.

4.      This Court has personal jurisdiction over USEI by virtue of, among other things, its filing of the Complaint in this action.

## FACTUAL BACKGROUND

5.      On October 9, 2009, USEI filed its Complaint in this action alleging that various

Atheros customers, including Acer, Inc., Acer America Corporation, ASUS Computer
International, and ASUSTeK Computer Inc., Sony Corporation, Sony Corporation of America,
Sony Electronics, Inc., Toshiba Corporation, Toshiba America, Inc. and Toshiba America
Information Systems, Inc. (collectively, "Atheros Customers"), infringe United States Patent No.
5,299,313 ("the '313 patent") and other patents.

6.      In its proposed First Supplemental Infringement Contentions, USEI has directed
infringement allegations under the '313 patent against Atheros Customers' products that
incorporate Atheros' networking technology.

7.      USEI's assertion that Atheros Customers products in which Atheros technology
provides networking functionality infringe the '313 patent is tantamount to accusing Atheros of
infringement.  Accordingly, Atheros has a direct and substantial interest in defending against
USEI's infringement claims.

8.      As a result of USEI's infringement allegations under the '313 patent against
Atheros' Customers, Atheros has an objectively reasonable apprehension that USEI will claim
that Atheros' products directly or indirectly infringe the '313 patent.  Therefore, an actual
controversy exists between Atheros and USEI.  By intervening in this action, Atheros seeks the
Court's assistance and declaration concerning these matters, which have been and are the subject
of disagreement among the parties.

**<u>COUNT ONE</u>**

**(Declaratory Judgment Regarding U.S. Patent No. 5,299,313)**

9.      Atheros repeats and realleges each and every allegation in the foregoing
paragraphs as though fully set forth herein.

10.     An actual and justiciable controversy has arisen and exists between Atheros and USEI regarding the '313 patent.

11.     Atheros does not directly or indirectly infringe any valid and enforceable claim of the '313 patent.

12.     Atheros Customers do not directly or indirectly infringe any valid and enforceable claim of the '313 patent by making, using, selling, offering to sell, marketing, licensing or importing products that incorporate Atheros networking technology.

13.     Each claim of the '313 patent that USEI will accuse Atheros or any of its customers of infringing is invalid.

14.     USEI's infringement claims against Atheros Customers are barred in whole or in part by the doctrines of laches and/or equitable estoppel.

15.     The '313 patent is unenforceable by reason of the Applicants' inequitable conduct during the prosecution of that patent.  The basis for this allegation is as follows:

  a.       Application No. 07/921,519 (the '313 application), which ultimately led to the '313 patent, was filed on July 28, 1992 by Mark Haynes, 3Com Corporation, and their agents.  The '313 patent issued on March 29, 1994.

<u>The '872 Patent, PCT, and EP Applications</u>

  b.       3Com, 3Com's prosecution counsel, Mark Haynes of Fleisler, Dubb, Meyer & Lovejoy, and their agents (the Applicants) committed inequitable conduct

during the prosecution of the '313 patent by failing to disclose the applications, rejection, and references related to the '872 patent.

c.        The '872 application that ultimately led to the '872 patent was filed on the same date by the same counsel on behalf of the same assignee as the '313 application.

d.        Ultimately, a third of the '313 named inventors (Sherer) was added as a named inventor on what became the '872 patent.

e.        The '872 PCT claims priority to the '872 application (having substantially the same disclosure) and was filed on July 27, 1993 by the same counsel on behalf of the same assignee as the '313 application.  The '872 EP based on the '872 PCT was filed on February 25, 1994.

f.        In the '872 application, the Applicants disclosed, as required, that the '872 application was related to the co-pending '313 application.  Accordingly, upon information and belief, the Applicants certainly had knowledge of the important relationship between these co-pending applications.

g.        Despite this knowledge, however, the Applicants did not disclose the copending '872 application to the '313 examiner—a disclosure that would have surely borne on patentability of the substantively similar '313 patent.

h.        Despite this knowledge, however, the Applicants did not disclose the copending '872 application to the '313 examiner, and thereby gained the advantage

of siphoning off the issues and concerns raised by the '872 examiner that would have surely borne on patentability of the substantively similar '313 patent.

i.      The '313 application was reviewed by a different examiner than the '872 application, the '872 PCT, and the '872 EP.

j.      The '313 and '872 patents' disclosures overlap to a significant extent.

k.      The '872 application states that it is related to the co-pending '313 application, but no mention of the '872 application is made in the '313 application.

l.      On October 26, 1993 the '872 examiner issued a rejection of the '872 application.

m.      In his Notice of Allowability of September 21, 1993, the examiner of the '313 patent stated that the pending claims were being allowed because:

> The prior art does not show or render obvious, inter alia, the network interface controller for a host system/network transceiver in which a host system includes a host address space, and a buffer memory is located outside of the address space and further in which the interface manages data transfer between the host address space and the buffer memory in an operational manner transparent to the host system.

n.      In his consideration of the Notice of Allowability, the '313 examiner cited only one reference: U.S. Patent 4,672,570 (Benken).

o.      At least the following references were reviewed by the '872 examiner and were material to, but not disclosed during, prosecution of the '313 patent: U.S. Patents 5,043,981 (Firoozmand et al.), 4,860,193 (Bentley), 4,258,418 (Heath),

4,715,030 (Koch), 5,195,093 (Tarrab), and, 5,210,749 (Firoozmand) (collectively, the '872-313 References).

p.        In particular, these references relate to managing data transfers and a buffer memory.  Firoozmand et al. and Koch relate to a network interface means.  Firoozmand et al., Tarrab, and Firoozmand relate to a buffer memory outside of the host address space.

q.        These references would have been material because the features of the claims of the '313 application were disclosed by, inherent in, or obvious in light of one or more of these references.

r.        On October 26, 1993, prior to the issuance of the '313 patent, the Examiner for the '872 application mailed an Office Action to 3Com's prosecution counsel, Mark A. Haynes.  In the Office Action, the Examiner relied on Firoozmand et al. as a basis for a § 102(a) anticipation rejection.  The Examiner also relied on various combinations of the Firoozmand et al., Firoozmand, Heath, Koch, and Tarrab references as bases for obviousness-type rejections of certain claims pending in the '872 application.  In a Notice of References Cited, included with the October 26, 1993 Office Action, the Examiner made of record the Bentley reference.  In an Office Action dated July 6, 1994, the Examiner for the '872 application relied on Bentley as a basis for an obviousness-type rejection of certain pending claims.

s.        The '872-313 References are material to the '313 patent.  Each of these references discloses elements of the alleged inventions claimed by the '313 patent.  At least the Firoozmand et al. and Firoozmand references fully anticipate (i.e.,

establish a prima facie case of invalidity of) certain claims of the '313 patent. The '872-313 References were later deemed sufficiently material to include in an Information Disclosure Statement (IDS) during later prosecution of the '094 Patent (another related patent-in-suit) on August 18, 1995.

t.        The '872-313 References are not cumulative to the prior art made of record during the prosecution of the '313 patent. On information and belief, there is a substantial likelihood that a reasonable examiner would have considered those references important in deciding whether to allow the '313 patent to issue.

u.        Because the prosecuting attorney, Mark A. Haynes, had prosecuted both the '313 patent and the '872 patent, Mr. Haynes was aware of all of the '872-313 References.

v.        On information and belief, the attorney(s) who prosecuted the '313 patent (including Mark A. Haynes), and others substantively involved in the prosecution of the '313 patent (collectively the "3Com Prosecuting Agents") were made aware of, and received copies of, the '872-313 References prior to the issuance of the '313 patent.

w.        Even more, during the prosecution of the '313 patent, five of the '872-313 References (Firoozmand et al., Firoozmand, Koch, Heath, and Tarrab) were cited again to at least the assignee and prosecution counsel of the '872 application in the December 7, 1993 '872 PCT International Search Report (the '872 ISR). These

references were identified by the searching authority as of "particular relevance," rendering the claimed invention anticipated or obvious.

x.        All of the '872 Applicants were participants in the prosecutions of each the '872 patent, and were persons with a duty of candor in the prosecution that led to the '313 patent.

y.        For the same reasons stated above, at least the assignee of the '313 patent and prosecution counsel were aware of the materiality of the '872 PCT, '872 EP, and the '872 ISR to the '313 prosecution.

z.        None of the co-pendency of the '872 application and the '872 PCT, and the '872 EP, nor the October 26, 1993 Rejection and the '872-313 References were disclosed in the '313 Prosecution.

aa.      The '872 application, the '872 PCT, the '872 EP, the October 26, 1993 Rejection, and the '872-313 References were therefore concealed from the examiner in the '313 Prosecution by the '872 Participants with knowledge of the materiality of those references and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '752 Patent and PCT Applications</u>

bb.      The Applicants committed further acts of inequitable conduct during the prosecution of the '313 patent by additionally failing to disclose the applications, rejections, and references related to the U.S. Patent 5,319,752 (the '752 patent).

cc.        The '752 application, which ultimately led to the '752 patent, was filed on September 18, 1992 by the same counsel on behalf of the same assignee as the '313 application.  (The '752 Applicants.).

dd.        The '752 PCT claims priority to the '752 application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of the same assignee as the '313 and '752 applications.

ee.        The '313 application was reviewed by a different examiner than the '752 application, and the '752 PCT.

ff.        The '313 and '752 patents' disclosures overlap to a significant extent.

gg.        On January 26, 1993 and July 15, 1993, the '752 examiner issued rejections (the '752 Rejections) of the '752 application.

hh.        At least the following references were reviewed by the '752 examiner and were material to, but not disclosed during, prosecution of the '313 patent: U.S. Patents 4,546,467 (Yamamoto); 4,680,581 (Kozlik); 4,866,666 (Francisco); 5,101,402 (Chiu); and 5,103,446 (Fischer) (collectively the '752 References).

ii.        The '752 References relate to the limitations of the '313 patent.  For example, these references relate to a buffer memory and a network interface means. Fischer, in particular, relates to a buffer memory outside of the host address space and sharing the host address space with the host.

jj.　　　　During the prosecution of the '313 patent, three of the '752 References (Yamamoto, Kozlik, and Fischer) were cited again to at least the assignee and prosecution counsel of the '752 application in the December 27, 1993 '752 PCT International Search Report (the '752 ISR).

kk.　　　　The '752 References would have been material because the features of the claims of the '313 application were disclosed by, inherent in, or obvious in light of one or more of these references.

ll.　　　　All of the '752 Applicants had a duty of candor in the prosecution that led to the '313 patent.

mm.　　　　All of the participants in the '752 prosecution knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '752 application and '752 PCT.  At least the '752 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '313 prosecution of the '752 Rejections, the '752 ISR, and the '752 References.  That is, they knew of the similarity in disclosure between the '313 and '752 patents' disclosures, and they knew that the '752 examiner had found the '752 References relevant to the '752 application and the '752 PCT, and had twice rejected the '752 application.

nn.　　　　However, neither the co-pendency of the '752 application and the '752 PCT, nor the '752 Rejections, the '752 ISR, and the '752 References were disclosed in the '313 Prosecution.

oo.      The '752 application, the '752 PCT, the '752 Rejections, and the '752 References were therefore concealed from the examiner in the '313 Prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '406 Patent and PCT Applications</u>

pp.      The Applicants committed further acts of inequitable conduct during the prosecution of the '313 patent by failing to disclose the applications, rejection, and references related to the '406 patent.

qq.      The '406 application, which ultimately led to the '406 patent was filed on September 18, 1992 by the same counsel on behalf of the same assignee as the '313 application.  (The '406 Applicants).

rr.      The '406 PCT claims priority to the '406 application (having substantially the same disclosure) and was filed on September 17, 1993 by the same counsel on behalf of the same assignee as the '313 and '406 applications.

ss.      The '313 application was reviewed by a different examiner than the '406 application and the '406 PCT.

tt.      The '313 and '406 patents' disclosures overlap to a significant extent.

uu.      The '406 application states that it was related to the application of the '313 patent, but no mention of the '406 patent is made in the '313 application.

vv.        On November 9, 1993 the '406 examiner issued a rejection of the '406 application.

ww.        At least the following references were reviewed by the '406 examiner and were material to, but not disclosed during prosecution of the '313 patent: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen) (collectively the '406-313 References).

xx.        These references relate to the limitations of the '313 patent.  Kinnie, Chisholm, Brooks, Kinoshita, Vo, Pleva, and Nguyen relate to the limitations of the '313 patent that call for a buffer memory.  Pleva relates to the limitations of the '313 patent that call for a network interface device.

yy.        All of the '406-313 References reviewed by the '406 examiner were therefore material to the '313 application, but none of them were disclosed during prosecution of the '313 patent.

zz.        While the '313 prosecution was ongoing, all of the '406-313 References were cited again to the to at least the assignee and prosecution counsel of the '406 application in the January 11, 1994 '406 PCT International Search Report (the '406 ISR).  These references were considered by the searching authority as relevant and/or invalidating.

aaa.　　　The '406-313 References would have been material because the features of the claims of the '313 application were disclosed by, inherent in, or obvious in light of one or more of these references.

bbb.　　　All of the persons who were participants in the prosecutions of the '406 patent and '406 PCT had a duty of candor in the prosecution that led to the '313 patent.

ccc.　　　The '406 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '406 application and '406 PCT.  At least the '406 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the November 9, 1993 Rejection, the '406 ISR, and the '406-313 References.  That is, all of the '406 Applicants knew of the similarity in disclosure between the '313 and '406 disclosures, and at least the '406 assignee and prosecution counsel knew that the '406 examiner had found the '406-313 References relevant to the '406 application and the '406 PCT, and had rejected the '406 application.

ddd.　　　However, the co-pendency of the '406 application and the '406 PCT, the November 9, 1993 Rejection, the '406 ISR, and the '406-313 References were not disclosed in the '313 Prosecution.

eee.　　　The '406 application, the '406 PCT, the November 9, 1993 Rejection, and the '406-313 References were therefore concealed from the examiner in the '313 prosecution by the '406 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '874 Patent and PCT Applications

fff.    The Applicants committed further inequitable conduct during the prosecution of the '313 patent by failing to disclose the applications related to the '874 patent.

ggg.    The '874 application, which ultimately led to the '874 patent was filed on February 2, 1993 by the same counsel on behalf of two of the same named inventors (Brian Peterson and W. Paul Sherer) and the same assignee as the '313 application (the '874 Applicants).

hhh.    The '874 PCT claims priority to the '874 application (having substantially the same disclosure) and was filed on December 28, 1993 by the same counsel on behalf of the same named inventors and the same assignee as the '874 application.

iii.    The '313 application was reviewed by a different examiner than the '874 application and the '874 PCT.

jjj.    The '313 and '874 patents' disclosures overlap to a significant extent.

kkk.    All of the participants in the prosecutions of the '874 patent and '874 PCT were persons with a duty of candor in the prosecution that led to the '313 patent.

lll.    The '874 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '874 application and the '874 PCT. That is, they knew of the similarity in disclosure between the '313 and '874 disclosures.  For example, the '874 application discloses a network adapter buffer memory, host interface logic, and network interface logic.

mmm.    However, neither the co-pendency of the '874 application nor of the '874 PCT, were disclosed in the '313 Prosecution.

nnn.    The co-pendency of the '874 application and the '874 PCT were therefore concealed by the '874 Applicants from the examiner in the '313 prosecution with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

### The '627 Patent and PCT Applications

ooo.    The Applicants committed further inequitable conduct during the prosecution of the '313 patent by failing to disclose the applications, rejections, and references related to U.S. Patent 5,517,627 (the '627 patent).

ppp.    Application No. 08/113,417 (the '627 application), which ultimately led to the '627 patent was a continuation-in-part application of the '406 patent and was filed on Aug 27, 1993 by the same counsel on behalf of one of the same named inventors (Brian Peterson) and the same assignee as the '872 application (collectively the '627 Applicants).

qqq.    The '313 application was reviewed by a different examiner than the '627 application.

rrr.    The '313 and '627 patents' disclosures overlap to a significant extent.

sss.     The '406 application, of which the '627 patent is a continuation-in-part, states that it is related to the copending '313 application, but no mention of the '627 application is made in the '313 application.

ttt.     On February 7, 1994, the '627 applicants filed an Information Disclosure citing, inter alia, the following references: U.S. Patents 4,447,878 (Kinnie); 5,014,186 (Chisholm); 5,058,051 (Brooks); 5,113,369 (Kinoshita); 5,125,080 (Pleva); 5,168,561 (Vo); and 5,185,876 (Nguyen) (collectively the '627-313 References).  As detailed above, the '627-313 References relate to the limitations of the '313 patent and would have been material.  In fact, their citation in the February 7, 1994 IDS represents no less than the third time they were cited in a related application prior to the issuance of the '313 patent.

uuu.     All of the persons who were participants in the prosecutions of the '627 patent had a duty of candor in the prosecution that led to the '313 patent.

vvv.     The '627 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '627 application.  At least the '627 assignee and prosecution counsel knew of facts sufficient to establish the materiality of the '627-313 References.  That is, all of the '627 applicants knew of the similarity in disclosure between the '313 and '627 disclosures, and at least the '627 assignee and prosecution counsel knew that the '627-313 References had been cited in the '627 application.

www.     However, the co-pendency of the '627 application and the '627-313 References were not disclosed in the '313 Prosecution.

xxx.     The '627 application and the '627-313 References were therefore concealed from the examiner in the '313 prosecution by the '627 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>The '459 Patent, PCT, and EP Applications</u>

yyy.     The Applicants committed inequitable conduct during the prosecution of the '313 patent by failing to disclose the applications, rejections, and references related to the '459 patent.

zzz.     The '459 application, which ultimately led to the '459 patent, was filed on the same date by the same counsel on behalf of the same inventors (Petersen, Brown, Sherer, and Lo) and the same named assignee as the '313 application.

aaaa.     PCT Application PCT/US1993/07056 (the '459 PCT) was filed on July 27, 1993, and claims priority to the '459 application by the same counsel on behalf of the same inventors (Petersen, Brown, Sherer, and Lo) and the same named assignee as the '313 application and the '459 application.  The European Patent Application EP0607412 (the '459 EP) was filed on February 25, 1994 based on the '459 PCT.

bbbb.     The '313 application was reviewed by a different examiner than the '459 PCT and the '459 EP.  Although the '313 application was reviewed by the same examiner as the '459 application, the Federal Circuit has held that the duty to cross-cite material references between related applications still holds in such situations.

*See e.g.*, *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 925 (Fed. Cir. 2007).

cccc.     The '313 and '459 patents' disclosures overlap to a significant extent.

dddd.     During prosecution of the '459 application, the following references were cited: U.S. Patents 4,852,088 (Gulick 1), 4,907,225 (Gulick 2), and 5,101,477 (Casper) (collectively the '459 References). These references were cited to the '313 Applicants in the Notice of Allowability of October 14, 1993 of the '459 Application.

eeee.     All of the '459 References reviewed by the '459 examiner were material to, but not disclosed during prosecution of, the '313 patent.

ffff.     These references relate to the limitations of the '313 claims that call for a buffer memory, a network interface means, and a host interface means.

gggg.     While the '313 prosecution was pending, the '459 References (Gulick 1, Gulick 2, and Casper) were cited again to at least the assignee and prosecution counsel of the '459 application in the November 15, 1993 '459 International Search Report (the '459 ISR), but still were not disclosed in the '313 prosecution.

hhhh.     The '459 References would have been material because the features of the claims of the '313 application were disclosed by, inherent in, or obvious in light of one or more of these references. The '313 Examiner would have, therefore, considered these references highly material.

iiii.        At least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel had a duty of candor in the prosecution that led to the '313 patent.

jjjj.        At least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel of knew of facts sufficient to establish the materiality to the '313 prosecution of the co-pendency of the '459 application. At least the '459 assignee and prosecution counsel knew of facts sufficient to establish the materiality to the '313 prosecution of (i) the co-pendency of the '459 PCT and the '459 EP and (ii) the '459 ISR, and the '459 References. That is, at least Petersen, Brown, Sherer, Lo, the '459 assignee, and prosecution counsel knew of the similarity in disclosure between the '459 and '313 patents' disclosures, and at least the '459 assignee and prosecution counsel knew that the '459 examiner had found the '459 References relevant to the '459 application and the '459 PCT.

kkkk.        However, neither the co-pendency of the '459 application, the '459 PCT, and the '459 EP, nor the '459 ISR and the '459 References were disclosed in the '313 Prosecution.

llll.        The '459 application, the '459 PCT, the '459 Rejections, and the '459 References were therefore concealed from the examiner in the '313 Prosecution with knowledge of their materiality and, in information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

The '782 Patent

mmmm.   The Applicants committed further inequitable conduct during the prosecution of the '313 patent by failing to disclose the application, rejection, and references related to U.S. Patent 5,412,782 (the '782 patent).

nnnn.   Application No. 07/907,946 (the '782 application), which ultimately led to the '782 Patent, was filed on July 2, 1992, by prosecution attorney Eric H. Willgohs of Townsend and Townsend on behalf of one of the same named inventors (Paul W. Sherer) and the same assignee as the '872 application (Sherer and the assignee collectively referred to as the '782 Applicants).

oooo.   The '313 application was reviewed by a different examiner than the '782 application.

pppp.   The '313 and '782 patents' disclosures relate to substantially the same subject matter.  For example, the '782 patent discloses that "incoming packets can be transferred directly into host memory," which directly relates to the subject matter of the '313 patent.

qqqq.   U.S. Patent 4,768,190 (Giancarlo), cited by the '782 Examiner in the January 14, 1994 Office Action Rejection, was material to, but not disclosed during, prosecution of the '459 patent.

rrrr.   Giancarlo relates to the limitations of the '313 patent that call for a buffer memory, network interface means, and host interface means.

ssss.     All of the '782 applicants were participants in the prosecution of the '782 patent and were persons with a duty of candor in the prosecution that led to the '313 patent.

tttt.     The '782 Applicants knew of facts sufficient to establish the materiality to the '313 prosecution of the copendency of the '782 application. At least the '782 assignee knew of facts sufficient to establish the materiality the Giancarlo reference and the January 14, 1994 Rejection. That is, all of the '782 Applicants knew of the similarity in disclosure between the '313 and '782 disclosures, and at least the '782 assignee knew that the Giancarlo references had been cited in the '782 Application.

uuuu.     However, the copendency of the '782 application, the January 14, 1994 Rejection, and the Giancarlo references were not disclosed in the '313 Prosecution.

vvvv.     The '782 application, the January 14, 1994 Rejection, and the Giancarlo references were therefore concealed from the examiner in the '313 prosecution by the '782 Applicants with knowledge of their materiality and, on information and belief, with intent to deceive, due to their high materiality and the lack of any apparent other reason for their nondisclosure.

<u>The '313 PCT and EP Applications</u>

wwww.     The Applicants committed inequitable conduct during the prosecution of the '313 patent by failing to disclose the applications and references related to the '313 PCT and '313 EP.

xxxx.      PCT Application PCT/US1993/07027 (the '313 PCT) claims priority to the '313 application (having substantially the same disclosure) and was filed on July 27, 1993, by the same counsel on behalf of the same named inventors (Peterson, Brown, Sherer, and Lo) and the same assignee as the '313 application. The European Patent Application EP0696462 (the '313 EP), based on the '313 PCT, was filed on February 25, 1994, and lists all four of the named inventors listed in the '313 application.

yyyy.      On information and belief, the '313 application was reviewed by a different examiner than the '313 PCT and the '313 EP.

zzzz.      The '313 PCT's and the '313 EP's disclosures overlap to a significant extent with the '313 patent.

aaaaa.      On November 26, 1993, during the prosecution of the '313 patent, the following references, inter alia, were cited in the '313 International Search Report (the '313 ISR): U.S. Patents 4,471,427 (Harris), 4,604,682 (Schwan), and 5,121,390 (Farrell) (collectively the '313 ISR References).

bbbbb.      The '313 ISR References were material to, but not disclosed during, the prosecution of the '313 application. The '313 ISR References relate to the limitations of the '313 patent.  For example, all of the '313 ISR References relate to the limitations of the '313 patent that call for a buffer memory.  Harris and Farrell relate to the limitations of the '313 patent that call for network interface logic.  Harris relates to the limitations of the '313 patent that call for a shared memory space.

ccccc.    The participants in the prosecution of the '313 PCT and EP Applications were persons with a duty of candor in the prosecution that led to the '313 patent.

ddddd.    The '313 PCT and EP Applicants knew of the materiality to the '313 application prosecution of (i) the co-pendency of the '313 PCT and '313 EP Applications, (ii) the '313 ISR, and (iii) the '313 ISR References, yet failed to disclose any of these actions or references in the prosecution of the '313 patent.

eeeee.    The (i) co-pendency of the '313 PCT and '313 EP Applications, (ii) '313 ISR, and (iii) '313 ISR References were therefore concealed from the examiner in the '313 patent prosecution by the '313 PCT and EP participants with knowledge of their materiality and, on information and belief, with an intent to deceive, due to their high materiality and the lack of any apparent other reason for their non-disclosure.

<u>Intel 82586 local area network coprocessor</u>

fffff.    Intel 82586 local area network coprocessor and the documentation describing it ("the Intel 82586") is material prior art as defined by 37 C.F.R. § 1.56(b) because, as is set forth more fully in Defendants' P.R. 3-3 Invalidity Contentions filed June 4, 2010 (hereby incorporated by reference as if more fully set forth herein), the Intel 82586 and the documentation describing it separately and collectively invalidates all of the asserted claims in the '313 patent. Accordingly, a reasonable examiner would have found that the Intel 82586 and the documentation describing it, alone or in combination with other information, was material to the prosecution of the '313 patent because, at a minimum, it established a prima facie case of unpatentability for all claims in the '313 patent.

ggggg.    Further, the Intel 82586 was known by the inventors, their counsel, and 3Com (collectively "Applicants") to be prior art material to the application which led to the '313 patent, because the Intel 82586 as recited as relevant prior art in the Background of the Invention section of the '313 patent application.

hhhhh.    On information and belief, some or all of Applicants had full knowledge of the operation and features of the Intel 82586, because they were able to summarize pertinent aspects of the operations and features of the Intel 82586 in the Background Section of the '313 patent.

iiiii.    The prosecution history of the '313 patent demonstrates that Applicants withheld the source of their information concerning the operation and functionality of the Intel 82586 from the PTO during the filing and prosecution of the '313 patent application because no disclosure was made of the Intel 82586 chip or any documentation describing it, despite the fact that the chip and its documentation must have been known to some or all of Applicants in order to provide the information set forth in the Background Section of the '313 patent.

jjjjj.    As is set forth more fully in Defendants' Invalidity Contentions, the documentation for the Intel 82586 would have disclosed that Applicants' description of the functionality and operation of that chip was incomplete and misleading and that, in fact, the chip and its documentation invalidated at least all of the asserted claims of the '313 patent.

kkkkk.    A reasonable examiner also would have found that the Applicants' description of the Intel 82586 and Applicants' assertions of patentability for the '313

application were inconsistent with, and refuted by, the features and operation of the Intel 82586 and that the documentation demonstrating these inconsistencies but withheld by some or all of Applicants not cumulative to information in the prosecution record, including cited references and documented communications between the Applicants and PTO.

lllll.     The prosecution history of the '313 patent therefore demonstrates that the Applicants who were knowledgeable about the features and operation of the Intel 82586 chip misrepresented and knowingly and intentionally concealed material information regarding the state of prior art, and specifically the features and operation of the Intel 82586.

mmmmm. The Applicants obtained allowance of claims then pending in the '313 patent application as a result of not properly disclosing the Intel 82586 as material prior art, by misrepresenting the true state of the prior art, and by misrepresenting how the Intel 82586 operated.

nnnnn.     The '313 patent is therefore unenforceable due to inequitable conduct.

ooooo.     There is a substantial likelihood that a reasonable examiner would have considered the above identified references, co-pending applications, and rejections important in deciding whether to allow the '313 patent to issue.

ppppp.     None of the above identified references that were not cited during the prosecution of the '313 patent, despite a duty to do so, were cumulative to the prior art made of record during the prosecution of the '313 patent.  In fact, only one prior

art reference was cited during the entire prosecution of the '313 patent - namely, U.S. Patent No. 4,672,570 to Benken. Benken was cited by the '313 examiner in the September 21, 1993 Notice of Allowance without any analysis as to which claim limitations Benken disclosed. Thus, neither the applicants nor the prosecuting attorney could reasonably have believed that any of the above identified references were cumulative, since no claim analysis existed in the record of the '313 patent prosecution.

qqqqq.    The references identified in the foregoing paragraphs 8(b)-(ooooo), in addition to being material to the prosecution of the '313 patent as stated herein, are further material as invalidating the prior art with respect to the '313 patent as set forth more fully in Defendants' Local Patent Rule 3-3 Invalidity Contentions served on Plaintiff on June 4, 2010, the contents of which are incorporated by reference in this answer as if more fully set forth herein.

16.    A judicial declaration concerning these matters is necessary and appropriate at this time so that Atheros can ascertain its rights and duties with respect to the parties and with regard to designing, manufacturing, marketing and selling its products.

## PRAYER FOR RELIEF

WHEREFORE, Atheros prays for judgment as follows:

a.      A declaration that Atheros has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claims of the '313 patent;

b.      A declaration that Atheros customers have not infringed, contributed to the infringement of, or induced other to infringe, either directly or indirectly, any valid claims of the '313 patent by virtue of incorporating any Atheros products into any such customer's products;

c.      A declaration that the '313 patent is invalid;

d.      A declaration that the '313 patent is unenforceable;

e.      A declaration that this case is exceptional under 35 U.S.C. § 285 and an award to Atheros of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

f.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, Atheros respectfully demands a jury trial of all issues triable to a jury in this action.

DATED this the 12th day of August, 2010.

/s/Eric H. Findlay
Scott D. Baker, *Pro Hac Vice*
Jonah D. Mitchell, *Pro Hac Vice*
David Pollock, *Pro Hac Vice*
Richard T. Ting, *Pro Hac Vice*
REED SMITH LLP
101 Second Street
San Francisco, CA  94105
Email: sbaker@reedsmith.com
Email:  jmitchell@reedsmith.com
Email:  dpollock@reedsmith.com
Email:  rting@reedsmith.com
Telephone:          +1 415 543 8700
Facsimile:          +1 415 391 8269

Eric H. Findlay (State Bar No. 00789886)
Brian Craft (State Bar No. 04972020)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy
Suite 101
Tyler, TX 75703
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com

*Counsel for Intervenor*
*Atheros Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


Dated:  August 12, 2010                    */s/ Eric H. Findlay*